1  Michael D. Cooper (Bar No. 042761)
   Penn Ayers Butler (Bar No. 56663)
2  Elizabeth Berke-Dreyfuss (Bar No. 114651)
   Tracy Green (Bar No. 114876)
3  **WENDEL, ROSEN, BLACK & DEAN LLP**
   1111 Broadway, 24th Floor
4  Oakland, CA  94607-4036
   Telephone:  (510) 834-6600
5  Fax:  (510) 834-1928

6  Attorneys for Debtor-in-Possession
   CMR Mortgage Fund, LLC

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

| 12 | In Re | Case No.  08-32220 TEC |
|----|-------|------------------------|
| 13 | CMR MORTGAGE FUND, LLC, a California limited liability company, | Chapter 11 |

In Re

CMR MORTGAGE FUND, LLC, a
California limited liability company,

              Debtor-in-Possession.

Tax I.D. No. 94-3401173

Case No.  08-32220 TEC
Chapter 11

**CMR MORTGAGE FUND, LLC
DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN (DATED
MARCH 19, 2009)**

Date:      April 27, 2009
Time:      9:30 a.m.
Place:     235 Pine Street
           Courtroom No. 23
           San Francisco, Ca

(Honorable T.E. Carlson)

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

*CMR MORTGAGE FUND, LLC DISCLOSURE
STATEMENT FOR CHAPTER 11 PLAN (DATED
MARCH 19, 2009)*

015881.0003\1142926.4

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1
  A. Procedural Setting ............................................................................ 1
  B. Court Approval ................................................................................. 1
II. PLAN VOTING PROCEDURES ................................................................ 2
  A. Persons Entitled to Vote on the Plan ............................................. 2
  B. Voting Instructions .......................................................................... 3
III. HISTORY OF THE DEBTOR AND THE CHAPTER 11 CASE ............... 3
  A. Organizational Structure and Operations ...................................... 3
  B. CMR Fund Assets ............................................................................ 4
  C. The HDC Note History and Status ................................................. 7
  D. The Chapter 11 Case ....................................................................... 12
IV. DESCRIPTION OF THE CHAPTER 11 PLAN ..................................... 12
  A. Plan Summary ................................................................................. 12
  B. Designation of Classes and Interests ............................................. 13
    1. Non-Classified Claims ........................................................... 13
    2. Classification of Claims and Equity Interests ...................... 14
  C. Treatment of Non-Classified Claims .............................................. 14
  D. Treatment of Classified Claims and Interests ............................... 15
  E. Means for Implementation of Plan ................................................. 16
    1. Plan Effective Date and Funding ........................................... 16
    2. Post-Effective Date Operations and Management ................ 16
    3. Post Effective Date Vesting of Property ................................ 17
    4. Discharge of the Responsible Individuals ............................. 17
    5. Plan Account .......................................................................... 17
    6. Distributions. ......................................................................... 17
    7. Disputed Claims ..................................................................... 18
    8. De Minimis Distributions and Rounding .............................. 19
    9. Disputes Regarding Distributions .......................................... 19
    10. Objections to Claims .............................................................. 20
    11. Retained Claims and Defenses ............................................... 20
    12. Unclaimed Property ............................................................... 20
    13. U.S. Trustee Quarterly Fees .................................................. 21
    14. Undisbursed/Returned Funds ................................................ 21
    15. Surplus Funds ........................................................................ 21

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Case: 08-32220    Doc# 122    Filed: 03/20/09    Entered: 03/20/09 11:55:53    Page 2 of
38

| | | | |
|---|---|---|---|
| | 16. | Property | 21 |
| F. | | Preservation of Litigation Claims | 22 |
| | 1. | No Waiver | 22 |
| | 2. | Preservation of Litigation Claims | 22 |
| G. | | Modification | 22 |
| H. | | Executory Contracts and Unexpired Leases | 22 |
| I. | | Retention of Jurisdiction | 23 |
| J. | | General Plan Provisions | 24 |
| | 1. | Successors and Assigns | 24 |
| | 2. | Plan Supplement | 24 |
| | 3. | Destruction and Storage of Books, Records and Papers | 24 |
| | 4. | Post-Confirmation United States Trustee Quarterly Fees | 24 |
| | 5. | Final Decree | 25 |
| V. | CLAIMS IN THE ESTATE | | 25 |
| | A. | Unclassified Claims | 25 |
| | | 1. Administrative Claims | 25 |
| | B. | Classes of Claims. | 25 |
| | | 1. General Unsecured Claims | 25 |
| | | 2. Late Filed Claims | 25 |
| | C. | Acceptance or Rejection of Plan By Claimants | 25 |
| VI. | LEGAL STANDARDS REGARDING CONFIRMATION | | 26 |
| | A. | Confirmation Hearing and Objections to Confirmation. | 26 |
| | B. | Conditions to Confirmation Under the Bankruptcy Code | 26 |
| | | 1. Generally | 26 |
| | | 2. Acceptance by Impaired Classes | 28 |
| | | 3. Confirmation Without Acceptance by All Impaired Classes | 28 |
| | | 4. Feasibility | 29 |
| | | 5. The "Best Interests" Test: Liquidation Analysis and Alternatives to the Plan | 29 |
| | | 6. Modification or Revocation of the Plan | 30 |
| VII. | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | 30 |
| | A. | Consequences to the Debtor | 31 |
| | B. | Consequences to Holders of Allowed Claims | 31 |
| | | 1. Gain or Loss | 31 |

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 3 of 38

|  |  |  | Page |
|---|---|---|---|
|  | 2. | Information Reporting and Withholding | 31 |
| VIII. | LIQUIDATION UNDER CHAPTER 7 | | 32 |
| IX. | ALTERNATIVE PLAN OF REORGANIZATION | | 33 |
| X. | WINDING UP & FINAL DECREE | | 33 |
|  | A. | Final Report | 33 |
|  | B. | Post-Confirmation United States Debtor Quarterly Fees | 33 |
|  | C. | Final Decree | 33 |
| XI. | REQUEST FOR VOTE OF APPROVAL | | 33 |

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

This is the Disclosure Statement for the Chapter 11 Plan ("Disclosure Statement") filed by CMR Mortgage Fund LLC ("CMR Fund" sometimes referred to as the "Debtor"), debtor-in-possession in Case No. 08-32220 TEC.  All exhibits attached to this Disclosure Statement are incorporated into and made a part of this Disclosure Statement.  A copy of the Chapter 11 Plan dated March 19, 2009, is served with this Disclosure Statement.  Capitalized terms used in this Disclosure Statement shall have the meanings given to them in the Plan.

The statements contained in this Disclosure Statement are made as of the date of the Disclosure Statement, unless another time is specified.  Neither delivery of this Disclosure Statement nor any exchange of rights made in connection with the Disclosure Statement or the Plan shall be deemed to imply that there has been no change in the facts set forth since the date this Disclosure Statement was prepared.  The contents of this Disclosure Statement are complete and accurate to the best of the Debtor's knowledge, information and belief as of the date of this filing.

NO STATEMENTS OR INFORMATION CONCERNING THE PLAN, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR IN THE PLAN ITSELF, HAVE BEEN AUTHORIZED BY THE DEBTOR OR APPROVED BY THE COURT.  COURT APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT MEAN THAT THE COURT HAS CONDUCTED AN INQUIRY TO VERIFY THE ACCURACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

## A.    Procedural Setting

This Chapter 11 case was commenced by the filing of a voluntary petition by the CMR Fund with the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Court") on November 19, 2009 (the "Petition Date").  The CMR Fund is the Chapter 11 debtor-in-possession and the proponent of the Plan.

## B.    Court Approval

After notice and a hearing, the Bankruptcy Court approved this Disclosure Statement under Section 1125 of the Bankruptcy Code as containing information of a kind and in sufficient

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

detail in light of the nature and history of the Debtor, that would enable a hypothetical and reasonable investor, typical of Creditors of the CMR Fund to make an informed judgment to vote to accept or reject the Plan. The approval of this Disclosure Statement by the Bankruptcy Court does not constitute a recommendation by the Court to accept or reject the Plan.

In order to obtain Court approval ("Confirmation") of the Plan, the Debtor must demonstrate that the Confirmation of the Plan will provide to creditors at least as much than they would receive if the Chapter 11 case were converted to a liquidation under Chapter 7 of the Bankruptcy Code. Often this analysis turns on whether the operations of the reorganized debtor will return more to creditors than if the operations of the debtor were terminated and its assets liquidated. The Debtor believes that the treatment of Creditors under the Plan will result in a greater recovery for Creditors than would be achieved if the case was converted to a case under Chapter 7. In order for the value of the CMR Fund to be realized, the expertise and experience of the CMR Fund managers is required. Without the specific skill and knowledge of these managers, it is unlikely that there would be any value available for Unsecured Creditors. Accordingly, the Debtor believes that Confirmation of the Plan is in the best interest of Creditors and recommends that Creditors vote to Accept the Plan.

## II.       PLAN VOTING PROCEDURES

### A.       Persons Entitled to Vote on the Plan

Under the Bankruptcy Code, only classes of Claims that are impaired under the terms and provisions of the Plan are entitled to vote to accept or reject the Plan. Classes of Claims that are not impaired are not entitled to vote on the Plan and are deemed to have accepted the Plan. Impaired classes of Claims or Interests that receive no distributions under the Plan are deemed to have rejected the Plan.

Creditors whose Claims have been objected to, are not eligible to vote unless such objections are resolved in their favor or, pursuant to Bankruptcy Rule 3018(a), the Court allows the Claim for the purpose of voting to accept or reject the Plan. Any Creditor whose Claim has been objected to that seeks its Claim allowed temporarily for the purpose of voting must take the steps necessary to arrange an appropriate hearing with the Court under Rule 3018(a).

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1   **B.      Voting Instructions**

2       A vote to accept or reject the Plan must be in writing; a ballot to be used for voting is

3   enclosed with a copy of the Disclosure Statement sent to each class entitled to vote on the Plan.

4   Creditors are required to indicate on the enclosed ballot whether the Creditor accepts or rejects

5   the Plan, sign and date the ballot, and indicate the name of the Creditor and then mail the ballot in

6   accordance with the instructions set forth on the ballot and instructional materials delivered with

7   the Disclosure Statement.  A vote will not be counted unless a ballot is properly completed,

8   signed, dated, and returned so that it is received no later than _____ p.m., Pacific Standard Time

9   on _____, 2009, by counsel for the Debtor at the following address:

10          Wendel, Rosen, Black & Dean LLP
            1111 Broadway, 24th Floor
11          Oakland, CA  94607-4036
            Attn: _____
12

13      A facsimile of a completed ballot will be counted if it is transmitted to counsel for the

14   Debtor at (510) 834-1928, but such facsimile must conform to all of the requirements set forth in

15   the instruction sheet that accompanies the ballot and must be received no later than _____ p.m.,

16   Pacific Standard Time, on _____, 2009.

17      If a ballot is damaged or lost, or the ballot recipient has any questions concerning voting

18   procedures, the recipient should contact _____.

19      A ballot, once submitted, cannot be changed or withdrawn except for cause shown to the

20   Bankruptcy Court within the time set for voting on the Plan.

21   **III.     HISTORY OF THE DEBTOR AND THE CHAPTER 11 CASE**

22      **A.      Organizational Structure and Operations**

23      The CMR Fund, which is managed by California Mortgage and Realty, Inc. ("Manager")

24   a Delaware corporation, is a California Limited Liability Company organized on November 17,

25   2000, for the purpose of making or investing in business loans secured by deeds of trust on real

26   estate properties — predominately commercial income producing structures or land held by

27   business — located primarily in California.  The land can be income producing (e.g., improved

28   commercial real estate ) or may be held for commercial or residential development.  Loans are

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

arranged and serviced by the Manager who is licensed as a California Finance Lender. The CMR Fund also has the ability to invest in loans that were not originated by the Manager, but since inception, the Fund has only invested in one loan that was not originated by the Manager. The Manager provides general operating and administrative services to the CMR Fund and has complete control of the CMR Fund business activities, subject to the voting rights of the members on specified matters and on other matters which the Manager wishes to submit to a vote. The Manager did not hold any membership interest in the CMR Fund as of December 31, 2007.

The CMR Fund currently has 363 members. Because the CMR Fund is a California limited liability company, the liability of each member is limited to the amount of the member's investment. The rights, duties and powers of the members are governed by the CMR Fund Operating Agreement ("Operating Agreement") and the Beverly-Killea Limited Liability Company Act.

### B.   CMR Fund Assets

The principle assets of the CMR Fund are notes secured by liens on real and personal property, other receivables and interests in limited liability corporations that own real property acquired by foreclosure. The following table summarizes the secured notes which are assets of the CMR Fund.

**Secured Loans**

| Loan Number | Borrower | Legal Balance (Note 1) | Interest Income and fee not recognized per GAAP | Allowance for Loan Losses | Book Balance |
|---|---|---|---|---|---|
| 00-014 | Marcel Mocho | 18,511 | (2,855) | | 15,656 |
| 02-051A | K & N Gas | 3,613 | (3,613) | | - |
| 03-045 | Ross | 45,614 | - | | 45,614 |
| 04-005 | John Franklin Hein, Trustee | 294,034 | (2,213) | (31,000) | 260,821 |
| 04-052 | T.J. Robinson | 270 | (270) | | - |
| 05-052A | Veasy & Horner Development, LLC | 8,764,597 | (6,709,574) | | 2,055,023 |
| 05-058 | Saigon Plaza Association, LLC | 520,989 | (94,365) | (144,000) | 282,624 |
| 05-061B | Dyer Mountain Associates, LLC | 447,395 | (57,395) | | 390,000 |
| 05-061C | Dyer Mountain Associates, LLC | 1,229 | 7,179 | | 8,408 |
| 05-062 | Veasy & Horner Development, LLC | 45 | - | | 45 |
| 06-021 | MB Properties | 633 | - | | 633 |
| 06-022 | MB Properties | 10,290 | - | | 10,290 |
| 06-038B | Eagle Meadows (Hogan) | 336,644 | (336,644) | | - |
| 06-038C | Eagle Meadows (Hogan) | 9,851,874 | (8,851,874) | | - |
| 06-061 | RWH-RSJF, LLC | 8,560 | (8,560) | | - |

015881.0003\1142926.4

| | | | | | |
|---|---|---|---|---|---|
| 07-002 | Maniar | 117 | - | | 117 |
| 07-004 | Halekua Development Corporation | 30,457,438 | (3,859,198) | (8,233,006) | 18,365,234 |
| 07-107 | Byron Park II Limited Partnership | 20,358 | - | (20,358) | - |
| Loan Loss Reserve | | | | (173,000) | (173,000) |
| Total | | 50,782,211 | (20,919,382) | (8,601,364) | 21,261,465 |

*Line 24*

Note: Scheduled Values for Loans and advances secured by DOT may not be in accordance with GAAP: they are based on the face amounts of the loans, taking into account the most recent available appraisals and internal valuations, without adjustment for litigation or foreclosure action risk contingencies.

Note 1: Refers to legal balance adjusted for REO principal and interest not recorded on a GAAP basis.

As is apparent from the summary above the most significant note holding of the CMR Fund is Loan number 07-004, the Halekua Development Corporation Note (the "HDC Note"). The circumstances and status the HDC Note are discussed more fully in Part C below.

The following table summarizes the interests in accounts receivables due the CMR Fund.

### Accounts Receivable

| | Total |
|---|---|
| California Mortgage and Realty, Inc. | 393,834 |
| First Street Commercial Mortgage Fund | 18,241 |
| Fremont 4170 | 2,126 |
| 721 5th Street, LLC | 22 |
| 4180 Montgomery, LLC | 3,441 |
| 724 Glenwood, LLC | 5,572 |
| 1515 Leaven, LLC | 500 |
| **Total** | **423,736** |

The following table summarizes the interests in accounts receivables due the CMR Fund from affiliates.

### Loans to Affiliates

| Affiliate | Total |
|---|---|
| California Mortgage and Realty, Inc. – Note | 430,940 |
| California Mortgage and Realty, Inc. – Note | 3,551 |
| California Mortgage and Realty, Inc. – Note | 161,714 |
| **Total** | **596,205** |

The following table summarizes the CMR Fund investments in affiliates.

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Case: 08-32220  Doc# 122  Filed: 03/20/09  Entered: 03/20/09 11:55:53  Page 9 of 38

**Investment in Affiliates**

| | Acquisition Value | Allowance | Total |
|---|---|---|---|
| Hanauma One | 46,536 | | 46,536 |
| **Total** | **46,536** | **-** | **46,536** |

The following table summarizes the interests owned by the CMR Fund in limited liability corporations.

**Investment in Real Estate Owned**

| | Appraisal Date | Acquisition Value | Allowance | Total |
|---|---|---|---|---|
| Investment in 1515 Leaven, LLC | 8/22/2008 | 3,142,814 | (2,134,907) | 1,007,907 |
| Investment in Hamilton Creek, LLC | 9/16/2008 | 397,002 | (54,613) | 342,389 |
| Investment in 5 Casa Grande Land, LLC | 8/22/2008 | 228,038 | (26,262) | 201,776 |
| **Total** | | **3,767,854** | **(2,215,782)** | **1,552,072** |

It is impossible to establish a fair market value of the assets of the CMR Fund at this time. In addition to the normal difficulties of valuing notes in default, secured by assets of uncertain worth, and the equity value of property acquired in foreclosure, the current national economic distress, market illiquidity and disruptions of capital markets have caused a breakdown in mechanisms that would normally allow for the valuing or disposition of the assets of the type owned by the CMR Fund. As a result any attempt to recapitalize or sell the assets or operations of the CMR Fund at this time is likely to fail or to produce such nominal revenues that the interests of Creditors would not be served. In addition, because the most significant asset of the CMR Fund, the HDC Note, is subject to major litigation risks and contingences, the ability of the CMR Fund to realize value from that asset is substantially impaired at present.

Accordingly, the core of the CMR Fund Chapter 11 Plan is premised on retaining its assets and conducting its business in the ordinary course until the market for its secured notes and other investments return to a more orderly and liquid state. The market for its assets is dependent upon and subject to the health of the real estate industry in the specific areas where the CMR

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

investments are located. As the general economy and the real estate markets improve and become more liquid, the ability of the CMR Fund to monetize or otherwise realize the value of its assets should improve and provide resources to satisfy the claims of Creditors in accordance with the terms of the Plan. In addition, when the current litigation and other contingencies affecting the value of the HDC Note are resolved favorably, the CMR Fund should be able to realize substantial value to satisfy its obligations under the Plan.

### C. The HDC Note History and Status

The singular most significant asset of the CMR Fund is its interest in the HDC Note and thus merits a more detailed discussion of the HDC Note and related pending litigation. The following discussion is based on a complaint filed by the CMR Fund on November 30, 2008.

**Factual Background**

In March 2007, the CMR Fund and Canpartners Realty Holding Company IV LLC ("Canyon") entered into a Credit Agreement with Halekua Development Corporation ("HDC") by which the CMR Fund and Canyon loaned to HDC the total principal sum of $97,900,000 (the "Loan"), of which the CMR Fund loaned $42,900,000 and Canyon loaned $55,000,000 to HDC. The Loan was used to acquire 161 acres of real property located in Hawaii (the "Property"), obtain the final entitlements and approvals for the development of the Property, and to prepare the Property for the construction of a residential development known as Royal Kunia II (the "Project"). As part of that transaction, HDC gave to Canyon, as the A Note Holder, a promissory note in the principal sum of $55,000,000 ("Canyon Note"), and gave to the CMR Fund, as the B Note Holder, a promissory note in the principal sum of $42,900,000 ("CMR Note"). (The Canyon Note and the CMR Note shall sometimes collectively be referred to as the "Notes.") In accordance with the understanding of the parties, immediately after the CMR Fund and Canyon made the Loan to HDC, the Loan was assumed by a subsidiary of HDC named Halekua-Kunia, LLC ("HK LLC"). (HDC and HK LLC may sometimes collectively be referred to as "HDC.") The Notes are secured by the Property, as well as by all of the membership interests of HK LLC and other personal property, including funds held in certain reserve accounts.

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 11 of 38

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1    Under the terms of the Credit Agreement between Canyon and the CMR Fund on the one

2  hand, and HDC on the other hand, a portion of the funds from the Loan were to be used to set up

3  certain reserve accounts, including, but not limited to, reserves for taxes, insurance, extension

4  fees, pre-development costs, monthly interest payments due on the Notes, and for an obligation to

5  provide soil fill material to a third party (collectively, the "Reserve Accounts").  Interest on the

6  Notes was to accrue and be payable monthly during the term of the Loan, and the Loan was to

7  mature, with all principal and unpaid interest due within one year from the closing date of the

8  Loan transaction.   The Credit Agreement included the right to extend the maturity date two

9  times, upon payment of an extension fee and satisfaction of certain other conditions.

10    To memorialize their agreement to fund the development Project by HDC, on or about

11  March 12, 2007, the CMR Fund and Canyon entered into a Co-Lender Agreement (the

12  "Agreement").   Pursuant to the terms of that Agreement, the CMR Fund contributed $42,900,000

13  and Canyon contributed $55,000,000 to fund the HDC development Project, and the CMR Fund

14  would provide any future advances of funds, while Canyon would provide services for

15  administering and servicing the Loan.

16    As part of the Loan transaction, Canyon required that defendant Stanford Carr ("Carr")

17  and his company, defendant SCD Kunia, LLC ("SCD"), be hired to provide management services

18  for development of the Project, including, but not limited to, obtaining certain land use

19  entitlements, including state and local government approvals, for the Project.  Consequently, in

20  March 2007, HDC and SCD entered into a Project Management Agreement ("Management

21  Agreement") in which HDC agreed to pay SCD a monthly management fee of $100,000.  Among

22  other things, the Management Agreement required that SCD work collaboratively with HDC "to

23  advance the pre-construction development process."

24    Carr and SCD also demanded and obtained an agreement by HDC to grant SCD or its

25  designees  "exclusive and irrevocable options" to purchase a portion of the residential super-pads

26  ("Super-Pads") created by HDC on the Property for further development into residential units.

27    HDC, SCD, Canyon and the CMR Fund entered into an Assignment And Subordination

28  Of Project Management Agreement dated March 12, 2007 ("Assignment"), in which HDC

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1    assigned the Management Agreement to Canyon and the CMR Fund as additional security for the

2    Loan.  In that Assignment, SCD agreed, among other things, to perform all of its obligations

3    under the Management Agreement.   In addition to their rights as secured parties, the Assignment

4    gave Canyon and the CMR Fund the right to exercise HDC's rights under the Management

5    Agreement against SDC, upon any default by HDC.

6          As the Loan approached its maturity date in March 2008, and in the months since then, the

7    CMR Fund believes Canyon engaged in a course of commercially unreasonable and inequitable

8    conduct designed to frustrate and block all efforts by the CMR Fund to negotiate a work-out with

9    HDC that would preserve the interests of both Canyon and the CMR Fund and assure that their

10   respective loans would be paid off.  The CMR Fund believes that Canyon has engaged in this

11   conduct in an effort to eliminate all of the CMR Fund's rights in the Loan, the security, the

12   Property and the Project, and seize the CMR Fund's equity in the Property, plus any potential

13   profits from the Project for itself.

14         In March 2008, the CMR Fund's manager, California Mortgage and Realty, Inc.

15   ("CMRI"), paid $1,375,000 to Canyon on behalf of the CMR Fund as an advance of the fee

16   required for extending the maturity date of the Loan for one year to March 2009.  The extension

17   fee paid by CMRI satisfied the provision in the Credit Agreement requiring a payment of 2.5% of

18   the principal amount due on the Canyon Note.  Although Canyon accepted the fee, it took the

19   position that the Loan had not been extended.  Despite contending that there was no extension,

20   Canyon refused to return the $1,375,000 fee to CMRI or the CMR Fund.  The CMR Fund and

21   HDC wanted the extension in order to give the parties time to either sell the Property, find an

22   investor, or negotiate some other work-out of the Loan obligations.

23         One of the Reserve Accounts created under the Credit Agreement was the HRT Fill

24   Reserve ("Fill Reserve").  The Fill Reserve was to be available to satisfy the fill obligation in the

25   event that HDC did not do so.  By the middle of 2008, the Fill Reserve contained approximately

26   $6.1 million.  Like the other Reserve Accounts, the Fill Reserve was pledged as additional

27   security for the Loan.

28

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 13 of
38

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1     In or about May 2008, the CMR Fund, HDC and Canyon negotiated to use the funds in

2     the Fill Reserve to provide a source of funds to pay the monthly interest debt service of $550,000

3     on the Canyon Note by drawing $450,000 per month from the Fill Reserve and supplementing

4     that with $100,000 per month paid by the CMR Fund. This agreement was partially performed as

5     the CMR Fund paid, and Canyon accepted, $100,000 per month from the CMR Fund for the

6     months of May through August 2008. The CMR Fund had also paid $330,000 to Canyon in April

7     2008 to cover interest due on Canyon's Note after the interest reserve for that note had been

8     exhausted.

9     Despite the partially performed agreement, including the Canyon acceptance of the

10    $100,000 monthly payments from the CMR Fund, Canyon took the position that HDC had to

11    obtain written acknowledgement from HRT that the obligation to provide fill no longer existed.

12    When HDC could not obtain that written acknowledgement, even though fill material had already

13    been brought onto HRT's property and there was no further need for the Fill Reserve, Canyon

14    unilaterally, and without prior notice to or consent from the CMR Fund, seized all of the funds in

15    the Fill Reserve on August 11, 2008, and purported to pay itself over $1.0 million in penalty

16    interest and then pay down the principal amount of the Canyon Note by over $3.4 million. Both

17    HDC and the CMR Fund disputed the Canyon claim that penalty interest was due and owing.

18    The CMR Fund believes that the total amount Canyon seized from the Fill Reserve was

19    $6,106,529.03.

20    By seizing the funds in the Fill Reserve and applying them to the Canyon Note, Canyon

21    unilaterally, and without the CMR Fund's knowledge or consent released security that had been

22    given to secure both the Canyon Note and the CMR Fund's Note, thereby stripping HDC of funds

23    that could have been used to keep the monthly Loan payments current until the middle of 2009,

24    and depriving the CMR Fund of security that had been given to secure the CMR Fund's Note.

25    All of these actions were taken to disable the CMR Fund and HDC from being able to pay the

26    Canyon Note interest and to enable Canyon to seize the CMR Fund's secured rights in the

27    Property.

28

*CMR MORTGAGE FUND, LLC DISCLOSURE*
*STATEMENT FOR CHAPTER 11 PLAN (DATED*
*MARCH 19, 2009)*

10

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1   The Loan is also secured by a pledge by HDC of all of its membership interest in HK LLC

2   ("Pledged Membership Interests"). HDC gave this security interest to the CMR Fund and

3   Canyon by way of a Pledge Agreement--Membership Interests dated March 12, 2007 ("Pledge

4   Agreement"). The Pledge Agreement provides that HDC is the sole member of HK LLC, and

5   HDC grants to the CMR Fund and Canyon a "first priority perfected, continuing security interest

6   in and lien on" all of the HDC right, title and interest as sole member of HK LLC, including but

7   not limited to the HDC share of the profits, losses and capital of HK LLC and all proceeds and

8   distributions.

9       After the parties were unable to reach agreement on a work-out that included taking an

10  assignment of the Pledged Membership Interests, Canyon unilaterally issued a Notice Of Default

11  on October 16, 2008, and also gave notice that same day that it was going to conduct a UCC

12  public foreclosure sale of 100% of HK LLC's membership interests and other personal property

13  of HK LLC on November 20, 2008 ("Foreclosure Sale").

14      The CMR Fund believes that Canyon contends that after the Foreclosure Sale is complete,

15  and if Canyon is the successful bidder at that sale, all of the CMR Fund's rights in the Loan and

16  the security for that Loan will terminate pursuant to Paragraph 9(b) of the Agreement.

17      At the same time that Canyon was engaging in its efforts to deprive the CMR Fund of a

18  successful work-out of the Loan obligations, the manager picked by Canyon, SCD, acting through

19  its representative and agent, Stanford Carr, was engaging in conduct that effectively chilled the

20  market for any potential investors in the Project, by telling potential investors that the Super-Pads

21  would have a fair market value that was less than the costs to build out the remaining

22  infrastructure and pay off the existing debt. Carr's estimates of value for the lots were

23  intentionally and knowingly far lower than the true values as a means of chilling any investors

24  from working with the CMR Fund to protect the value of its note. As a result, potential investors,

25  such as DIVCO West, which had been willing to invest $40,000,000 in the Project, refused to

26  invest in the Project or buy the Property, thereby depriving the CMR Fund a means of obtaining

27  funds to pay off the Loan and preserve its security.

28

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1     The CMR Fund believes that SCD and Carr had a conflict of interest with the CMR Fund

2  arising out of the Option on the Super-Pads, because it was in their interest to dissuade potential

3  investors and preserve their Option on fifty percent of the Super-Pads and to enable a purchase at

4  below true values.

5     As a result of the wrongful conduct of Canyon, SCD, and Carr, the CMR Fund filed a

6  complaint in the United States Bankruptcy Court, Northern District of California, Adversary

7  Proceeding No. 08-03148. As of the date this Disclosure Statement was prepared, motions to

8  dismiss were filed by Canyon on the one hand, and SCD and Carr on the other hand. For details

9  concerning the CMR Fund allegations against Canyon, SCD and Carr please refer to the

10  complaint which is on file with the United States Bankruptcy Court.

11          **D.      The Chapter 11 Case**

12     As more fully described above the Canyon UCC Sale of the HDC membership interests

13  was scheduled for November 20, 2008. The CMR Fund sought to have the UCC sale delayed to

14  allow for a negotiated resolution of disputed matters with Canyon but was not able to obtain

15  consensual relief from Canyon. Accordingly, and because Canyon contended that a UCC sale

16  would effectively terminate the interest of the CMR Fund in the Note, the CMR Fund filed its

17  voluntary Chapter 11 petition on November 19, 2008, and the stay, effective under Section 362 of

18  the Bankruptcy Code, prevented Canyon from proceeding with the UCC Sale.

19  **The Canyon Stay Relief Motion**

20     On December 4, 2008, Canyon filed a motion for relief from stay to allow it to proceed

21  with its rights to enforce the HDC Note and related security Agreements. On February 5, 2009,

22  the Court granted Canyon relief from stay to foreclosures on the real estate collateral for the HDC

23  Note. Canyon has filed a motion to amend and the CMR Fund has filed an appeal of the

24  February 5, 2009 order. Both the motion and appeal are currently pending.

25  **IV.     DESCRIPTION OF THE CHAPTER 11 PLAN**

26          **A.      Plan Summary**

27     The goal of a chapter 11 case is the satisfaction of creditor claims through confirmation of

28  a chapter 11 plan that complies with the requirements of the Bankruptcy Code. The Chapter 11

Plan proposed by CMR Fund includes definitions of terms used in the Plan and the Disclosure Statement and specifications of the classes of creditor claims and the interests of members created by the Plan. The Plan proposes satisfaction of all allowed creditor claims by payment in full in cash, based on the legal priority each of such class of claims, and the preservation of all interests of members without legal impairment. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.

### B. Designation of Classes and Interests

The Plan designates Claims into Classified and Non-Classified sets. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest falls within the Class description. The Plan deals with all Claims against the Debtor or property of the Debtor or the Estate of whatever character, whether or not with recourse, whether or not contingent, disputed, or unliquidated and whether or not allowed by the Bankruptcy Court. However, only Allowed Claims will receive Distributions under the Plan.

A Claim or Equity Interest shall be deemed classified in a particular class only to the extent that the Claim or Equity Interest qualifies within the description of that class, and shall be deemed classified in a different class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different class. For purposes of voting and distribution, a Claim is in a particular class only to the extent that the Claim is an Allowed Claim in that class.

### 1. Non-Classified Claims.

The Plan provides that the following Claims shall not be classified:

**Administrative Claims and Bar Date for Administrative Claims**. All Administrative Claims, if any, allowed pursuant to Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code. Except as otherwise provided in the Plan, requests for payment of Administrative Claims including, of professionals or other entities requesting compensation or reimbursement of expenses as an Administrative Claim for services rendered prior to the Effective Date (except statutory fees) must be filed and served on all parties entitled to notice, no later than forty-five (45) days after the Effective Date. All requests for

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1   payment of Administrative Claims and applications for final allowance of compensation and

2   reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy

3   Court. Holders of Administrative Claims requesting compensation or reimbursement of expenses

4   that do not file such requests by the administrative bar dates noted above will be forever barred

5   from asserting such Claims against the Debtor and/or the Estate, or any of its property, successors

6   or assigns, unless the Court, upon a duly filed motion, extends the time for filing any such

7   request. No further notice of these bar dates is required to be given.

8       **Priority Tax Claims**.  All Allowed Claims of governmental units in respect to any

9   demand for payment of a tax entitled to priority pursuant to Section 507(a)(8) of the Code,

10  including any allowable interest or charges.

11      **U.S. Trustee Fees**.  The Allowed Claim of the Office of the U.S. Trustee in respect of any

12  demand for fees entitled to treatment pursuant to Section 1129(a)(12) of the Code.

13      **2.**    **Classification of Claims and Equity Interests.**

14      Allowed Claims that are not included in Non-Classified Class are divided into the

15  following classes:

16      **Class 1:  General Unsecured Claims**:  Class 1 consists of Allowed Claims which are

17  unsecured and not included in any other class designated in this Plan.

18      **Class 2:  Equity Interest Holders**.  Class 2 consists of the Equity Interests of the

19  members of CMR Fund.

20      **Effect of Claims Bar Date**.  The general deadline for filing a Proof of Claim or equity

21  interest was March 23, 2009.  In the event that any claim is filed after the Claims Bar Date, unless

22  otherwise ordered by the Bankruptcy Court at the request of a Creditor, the Late-Filed Claim shall

23  be barred and not entitled to receive any distribution under the Plan.

24      **C.**    **Treatment of Non-Classified Claims**

25      The non-classified Claims (the "Non-Classified Claims") described in Section 2.3 of the

26  Plan shall be treated as follows:

27      Holders of Non-Classified Claims shall not be entitled to receive any payment on account

28  of any post-Petition Date interest on, or penalties with respect to or arising in connection with

015881.0003\1142926.4

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

such Claims, except as allowed by the Bankruptcy Court at the hearing on Confirmation of the Plan. With respect to Administrative Claims and Priority Tax Claims, to the extent, if any, that the holder of such a Claim has not been paid, then, within forty-five (45) days after the Effective Date or upon Bankruptcy Court approval, each holder of such a Claim shall receive cash equal to the allowed amount of such Claim, unless the holder of such Claim agrees to other treatment. With respect to U.S. Trustee Fees, to the extent, if any, that such a Claim has become due prior to the Confirmation Date and has not been paid, then, within fifteen (15) days after the Effective Date, the holder of the Claim shall receive cash equal to the allowed amount of the Claim.

### D. Treatment of Classified Claims and Interests

**Class 1 (General Unsecured Claims)**: Class 1 Claims are impaired under this Plan and holders of Allowed Class 1 Claims shall be entitled to receive a Pro Rata Share of the portion of the proceeds available for distribution to holders of Allowed unsecured Claims and any proceeds remaining after paying Allowed Claims of higher priority and reserving for Claims that are not Allowed Claims, as of the Initial Distribution Date, and future administrative fees, costs and expenses. After the payment of all Non-Classified Claims on or before the Initial Disbursement Date (or as soon as practicable thereafter), the Debtor shall make an initial distribution of Pro Rata Shares to holders of Allowed Claims in Class 1 from the proceeds available for distribution to holders of Allowed unsecured Claims, provided there are adequate reserves for Claims that are subject to dispute and adequate reserves for future administrative fees, costs and other expenses. The Disbursing Agent shall be authorized to make additional distributions to holders of Allowed Class 1 Claims of the Creditor's Pro Rata Share thereafter from time to time, in its discretion, as distributable proceeds become available until all Allowed Claims are paid in full with accrued interest on the allowed amount of the Claim from the Effective Date at the legal rate per annum as established in the Confirmation Order. Interest shall accrue only on the unpaid portion of the Allowed Claims.

**Class 2 (Equity Interest Holders)**: The interest of Class 2 are unimpaired under the Plan. Holders of Class 2 Interests will retain their membership in the CMR Fund without modification.

E.      **Means for Implementation of Plan**

1.      **Plan Effective Date and Funding.**

The Debtor shall file and serve the U.S. Trustee with notice of the Plan Effective Date promptly upon the declaration of its Plan Effective Date.  The Debtor will fund implementation of the Plan from cash on hand, collection of notes receivable in the ordinary course, net proceeds of the sale of assets, including notes receivable and interests in LLCs owned by the Debtor, and net litigation recoveries.

2.      **Post-Effective Date Operations and Management.**

On and after the Effective Date the Debtor will conduct its business and operations and manage its assets and affairs as the ordinary course in accordance with the provisions of the Operating Agreement (the "Operating Agreement") with its Manager, California Mortgage and Realty, Inc., without further Order of the Court and subject to the provisions of the Plan.

The Reorganized Debtor shall serve as the Disbursing Agent, to serve without bond, to make Distributions to Holders of Allowed Claims in accordance with the provisions of the Plan. In the event that the Reorganized Debtor is unable or unwilling to serve a Disbursing Agent, the Reorganized Debtor shall promptly notify the Office of the United States Trustee who shall appoint a successor Disbursing Agent on such terms and conditions as the Court shall order.

The Disbursing Agent shall maintain a cash reserve in the Plan Account in an amount, determined in the discretion of the Disbursing Agent, reasonably necessary to pay the then anticipated amount of operating expenses of the Disbursing Agent and the Reorganized Debtor until such time as all Allowed Claims have been satisfied under the terms of the Plan.

The Debtor may employ any person on any terms in the ordinary course after the Effective Date.  The Disbursing Agent may employ any Professional authorized to be employed by the Debtor during the Chapter 11 case for any purpose necessary to implementation of the Plan and may employ any other Professional subject to authorization by an Order of the Bankruptcy Court. Professionals employed by the Reorganized Debtor or the Disbursing Agent may be paid in the ordinary course.  All compensation paid to Professionals post-Effective Date by the Disbursing Agent related to implementation of the Plan or Plan Confirmation Order shall be interim and

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 20 of 38

subject to final Court approval as reasonable before entry of a Final Decree.

### 3. Post Effective Date Vesting of Property.

Subject to the provisions of this Plan and the Confirmation Order, the Estate shall remain in existence after the Effective Date until the entry of a Final Decree. On the Effective Date, all property of the Estate shall vest in the Reorganized Debtor pursuant to Section 1141(b) of the Bankruptcy Code, and shall be free and clear of all claims and interests of creditors, equity security holders, and members of the Debtor pursuant to Section 1141(c) of the Bankruptcy Code, except as otherwise provided in the Plan.

### 4. Discharge of the Responsible Individuals.

As of the Effective Date, the Responsible Individuals shall be deemed to have fulfilled their duties and shall be released and discharged from all further responsibilities to the Debtor.

### 5. Plan Account.

On or as soon as practical after the Effective Date, the Disbursing Agent shall open the Plan Account and fund the account with all cash constituting the Plan Assets. Thereafter, upon receipt of any proceeds constituting Plan Assets, such funds shall be promptly deposited into the Plan Account. Any interest, dividends or other income earned from funds in the Plan Account shall be Plan Assets. All distributions and payments to Creditors with Allowed Claims pursuant to this Plan shall be from the Plan Account, whether on account of Non-Classified Claims, Allowed Claims, or otherwise.

### 6. Distributions.

Distributions to the holders of Allowed Claims shall be made in such priority and such amount as are provided by this Plan or in such lesser priority and amount as agreed to by the holder of an Allowed Claim. No distributions may be made to the holders of Allowed Class 1 Claims until adequate reserves are established for the payment of anticipated operating expenses, including U.S. Trustee and Professional Fees of the Reorganized Debtor and Disbursing Agent and of Disputed Claims of equal and higher priority.

Distributions to the holders of Allowed Claims shall be made at such time as is provided by Plan or at such later time as agreed to by the holder of an Allowed Claim. If the time for or

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

015881.0003\1142926.4

amount of a distribution is not fixed, the distribution shall be made as the Disbursing Agent

determines in its discretion and may be made in full or on a Pro Rata basis or on an interim or

final basis depending on (i) the amount of allowed Non- Classified Claims, Allowed Claims and

Disputed Claims, (ii) the then available funds in the Plan Account and (iii) the then anticipated

Reorganized Debtor expenses and anticipated proceeds from Plan Assets.  Interim distributions

may be made to holders of Allowed Claims prior to the resolution by Final Order or otherwise of

all Disputed Claims.  Interim distributions shall not be required if the aggregate amount of Cash

to be distributed is less than the anticipated cost of such distribution.

Distributions shall be in U.S. Dollars and shall be made, in the Disbursing Agent's

discretion, either (a) by check, draft or warrant drawn on a domestic bank delivered by first-class

mail (or by other equivalent or superior means as determined by the Disbursing Agent).

Notwithstanding any other provision of the Plan, the Disbursing Agent may provide notice of

rights to a distribution in place of a distribution to any holder of an Allowed Claim if (a) a prior

distribution to the holder was returned as undeliverable without a proper forwarding address and

(b) the holder has not subsequently provided a new address to the Disbursing Agent.  Such a

notice shall be treated as a cash distribution for purposes of determining whether it becomes

unclaimed property.

### 7.    Disputed Claims.

No distributions shall be made on account of Disputed Claims unless such Claims become

Allowed Claims and then only to the extent of such allowance. Notwithstanding any contrary

provision of the Plan, no portion of any Disputed Claims shall become allowed and eligible for

treatment under this Plan until the full and final conclusion of all judicial proceedings that may, at

any time on or after the Effective Date, be pending or timely commenced with respect to such

Claims (regardless of whether such proceedings are pending as of the Effective Date), including,

any applicable appellate or similar proceedings.

Upon each distribution to holders of Allowed Claims of equal or junior priority, the

Disbursing Agent also shall compute the amount of the distribution that would have been made to

holders of Disputed Claims had the Disputed Claims been Allowed Claims by using the Disputed

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Claims Amount. The amount computed shall be retained in the Plan Account for the Disputed Claims as a "Disputed Claims Reserve." No holder of a Disputed Claim shall have any right to Cash reserved with respect to such Claim unless such Disputed Claim shall become an Allowed Claim. No holder of a Disputed Claim shall be entitled to receive (a) any distribution greater than the amount reserved for such Claim as part of the Disputed Claims Reserve or (b) any interest or other compensation for delays in making a distribution except, and only to the extent that, this Plan expressly authorizes payment of interest on an Allowed Claim.

Promptly after a Disputed Claim is finally resolved, a distribution shall be made to said Creditor based on the amount of its Allowed Claim from the Plan Account in an amount equal to distributions to date on account of Allowed Claims in the same class. The amount of the Disputed Claims Reserve retained in the Plan Account for the resolved Disputed Claim shall be used to make such distribution and any remaining amount of such reserve shall then be available for distributions to holders of Allowed Claims pursuant to this Plan.

For the purposes of this Plan, the Court may estimate the amount of any Disputed Claim pursuant to section 502(c) and the amount fixed or liquidated by a Final Order shall be deemed to be an Allowed Claim pursuant to section 502(c) for purposes of making distributions.

### 8. De Minimis Distributions and Rounding.

Notwithstanding any other provision of the Plan, the Disbursing Agent shall not make a distribution to a holder of an Allowed Claim if the amount of cash otherwise due is less than $10. All Cash not so distributed shall be added to Plan Assets and distributed in accordance with this Plan. The Disbursing Agent may round the amount of all distributions that otherwise call for a fraction of a dollar down to the nearest dollar.

### 9. Disputes Regarding Distributions.

In the event of a dispute as to the right to receive any payment or distribution to be made under the Plan, the Disbursing Agent may either defer such payment or distribution until the dispute is resolved or interplead the amount of the payment or distribution for resolution of the dispute by the Court. In either event no interest or compensation shall be due as a result of any delay in the making or receipt of the payment or distribution.

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

### 10. Objections to Claims.

Except as to Claims allowed, disallowed, or settled under the Plan or pursuant to Final Orders entered before the Effective Date, the Disbursing Agent (acting for the Reorganized Debtor), and only the Disbursing Agent, may object to Claims. The Disbursing Agent shall be authorized to settle, or withdraw any objections to, any Disputed Claim.

### 11. Retained Claims and Defenses.

All claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of setoff, recoupment, subrogation or subordination held by the Debtor or the Estate as of Confirmation, shall be preserved and retained unless released or settled pursuant to a Final Order entered before the Effective Date (collectively, the "Retained Claims and Defenses"). None of the Retained Claims or Defenses shall be barred or be subject to estoppel because this Plan or the Disclosure Statement does not specifically identify a Retained Claim or Defense or the person against or by whom a Retained Claim or Defense may be asserted. The Court shall retain jurisdiction to determine any Retained Claims or Defenses that remain property of the Reorganized Debtor.

The Reorganized Debtor shall have and may enforce all powers and authority of a debtor in possession or trustee under the Bankruptcy Code to the extent of and consistent with its authority under the Plan. The Reorganized Debtor may investigate Retained Claims and Defenses and may assert, settle or enforce any such claims or defenses in its discretion to the extent of and consistent with its authority under the Plan. Any proceeds received from or on account of the Retained Claims and Defenses shall be Plan Assets. Without limiting the generality of the foregoing, (a) the Reorganized Debtor shall have all the powers of a trustee to request determinations of tax liability under Section 505, and (b) all rights and benefits available to the Debtor under Section 108 are preserved.

### 12. Unclaimed Property.

For a period of ninety (90) days following the date on which the related distribution was first attempted, unclaimed property shall be held solely for the benefit of the holders of Allowed Claims who have failed to claim such property. During such period, Unclaimed Property due the

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 24 of 38

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

holder of an Allowed Claim shall be released from the Plan Account, without any interest, and disbursed to such holder upon presentation of proper proof of entitlement. At the end of such period, the holders of Allowed Claims theretofore entitled to Unclaimed Property shall cease to be entitled thereto, and such Unclaimed Property shall be added to the Plan Assets and distributed in accordance with this Plan. The Reorganized Debtor, shall have no liability to any person for any unclaimed property that reverts to being a Plan Asset.

### 13.  U.S. Trustee Quarterly Fees.

At all times on and after the Effective Date until the Chapter 11 Case have been closed, converted or dismissed, the Disbursing Agent shall pay quarterly fees due to the U.S. Trustee pursuant to the provisions of section 1930(a)(6) of Title 28 of the United States Code, from the Plan Assets, provided that such fees owing to the U.S. Trustee shall be measured solely by distributions or payments from Plan Assets on account of Allowed Claims, as required by the provisions of the Plan.

### 14.  Undisbursed/Returned Funds.

All funds which are not disbursed by the Disbursing Agent or are returned to the Reorganized Debtor, including unclaimed distributions, and any other excess and undistributable cash, including de minimis distributions, shall be retained by the Debtor.

### 15.  Surplus Funds.

After all Allowed and disputed Claims have been satisfied or reserved for under the terms of the Plan , all remaining Plan Assets will be retained and administered by the Reorganized Debtor for the benefit of the holders of Allowed Class 2 Interests in accordance with the provisions of the Operating Agreement.

### 16.  Property.

Unless otherwise agreed, the Reorganized Debtor shall have sole and exclusive control over property of the Estate on or after the Effective Date. Pursuant to Section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved in the Plan shall be extinguished upon Confirmation. On the Effective Date, property dealt with by the Plan shall be free and clear of any and all liens, claims, interests, and

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 25 of 38

015881.0003\1142926.4

encumbrances, except as otherwise expressly provided under the Plan.

### F. Preservation of Litigation Claims

#### 1. No Waiver.

After Confirmation, all powers granted by the Bankruptcy Code, the Rules and the Local Rules, including without limitation, those with respect to preferences, fraudulent transfers and obligations, recovery of property, and objections to, and/or subordination of, Claims and Equity Interests and those described in the Disclosure Statement shall be vested in the Reorganized Debtor.

#### 2. Preservation of Litigation Claims.

The Debtor reserves for the Estate all rights to commence and pursue, as appropriate, any and all litigation claims, whether arising prior to or after the Petition Date, in any court or other tribunal, including without limitation, in an adversary proceeding filed in the Bankruptcy Court. The failure to list any potential or existing litigation claim, generally or specifically, is not intended to limit the rights of the Reorganized Debtor to pursue any such action. Unless a litigation claim against any person is expressly waived, relinquished, released, compromised or settled as provided or identified in a prior Bankruptcy Court order, the Debtor expressly reserves litigation claims for later adjudication. Therefore, no preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such litigation claim upon or after Confirmation or consummation of the Plan. In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt any claim alleged in any lawsuit in which the Reorganized Debtor is a defendant or an interested party.

### G. Modification

Pursuant to the provisions of Section 1127 of the Code, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior to Confirmation.

### H. Executory Contracts and Unexpired Leases

Nothing in the Plan is to be construed to cause the rejection, whether such contract is deemed executory or otherwise, of (i) any contract, settlement or agreement that was entered by

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

the Debtor after the Petition Date with the approval, if required, of the Bankruptcy Court, (ii) any insurance policy and any documents related thereto that provided, provides or may provide any coverage to the Debtor or its affiliates or representatives, or (iii) any contract or agreement constituting an organizational document of a Debtor, such as a limited liability company operating agreement, a charter or bylaws. Nothing contained in the Plan is to constitute or to be deemed a waiver of any cause of action that the Debtor may hold against any entity, including, without limitation, an insurer under any insurance policy.

**I.    Retention of Jurisdiction**

The Bankruptcy Court shall retain and have jurisdiction over the Case for all purposes provided by the Code, including, without limitation, for the following purposes:

1.    To determine any and all objections to the allowance of Claims and to allow, disallow, estimate, subordinate, liquidate, determine, or subordinate any Claim;

2.    To determine any and all motions for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Plan, including post-Confirmation fees and expenses, if necessary;

3.    To determine any and all requests for the rejection of Executory Contracts or unexpired leases to which the Debtor or the Estate is a party, and to hear and determine, and if need be to liquidate, any and all Claims arising from such rejection, pursuant to Sections 365 and 502 of the Bankruptcy Code;

4.    To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, except as provided in the Confirmation Order, or which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court;

5.    To consider any modifications of the Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

6.    To implement the provisions of the Plan and to issue orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Case: 08-32220    Doc# 122    Filed: 03/20/09    Entered: 03/20/09 11:55:53    Page 27 of 38

7.     To hear and adjudicate any and all claims made by the Debtor, which the Bankruptcy Court would have jurisdiction to hear if asserted by a trustee or debtor in possession prior to the Effective Date, including, without limitation, any and all claims made pursuant to Sections 108, 501 through 553, inclusive, of the Bankruptcy Code; and

8.     To resolve any post-Confirmation objections to any request for compensation.

**J.     General Plan Provisions**

    **1.     Successors and Assigns.**

The rights, benefits, and objections of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

    **2.     Plan Supplement.**

The Debtor may file other documents relating to the Plan, which shall be contained in the Plan Supplement, with the Bankruptcy Court at least seven (7) calendar days prior to the Ballot Date; provided however, that the Debtor may amend such documents through and including the Effective Date in a manner consistent with the Plan and Disclosure Statement. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtor.

    **3.     Destruction and Storage of Books, Records and Papers.**

All books, records, or papers, electronic or otherwise required to be maintained by law, including all federal and state tax returns, shall be stored and maintained by the Debtor, or its designees, at its sole discretion.

    **4.     Post-Confirmation United States Trustee Quarterly Fees.**

Quarterly fees shall be paid by the Debtor to the U. S. Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until this Bankruptcy Case is converted, dismissed or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6). The Debtor will also provide post-Confirmation reports as may be requested or required by the U. S. Trustee.

*Wendel, Rosen, Black & Dean, LLP*
*1111 Broadway, 24th Floor*
*Oakland, CA 94607-4036*

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

**5. Final Decree.**

After the Plan is substantially consummated, the Debtor shall file an application for a Final Decree, and shall serve the application on the U. S. Trustee together with a proposed Final Decree. The Estate shall remain and be preserved until the final acts required under the Plan have been performed and the Final Decree has been entered, at which time the Estate shall terminate.

**V. CLAIMS IN THE ESTATE**

**A. Unclassified Claims.**

**1. Administrative Claims.**

The Debtor believes that at the time of the confirmation hearing of the Plan, the total amount of unpaid administrative expenses will be approximately $_____. Those expenses include estimated legal fees and costs for counsel, Wendel, Rosen, Black & Dean LLP.

**B. Classes of Claims.**

**1. General Unsecured Claims.**

The claims bar date is March 23, 2009. According to the Claim Registry, the total amount of of filed general unsecured claims as of the claims bar date is approximately $_____, which includes disputed, unliquidated and contingent claims. The total amount of scheduled general unsecured claims, excluding contingent, unliquidated or disputed claims is approximately $3,587,000.

**2. Late Filed Claims.**

Any Claim filed after the Claims Bar Date of March 23, 2009, unless otherwise ordered by the Bankruptcy Court at the request of a Creditor, shall be barred.

**C. Acceptance or Rejection of Plan By Claimants**

Claims (other than Administrative Expense Claims and Priority Tax Claims) and Equity Interests are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

/ / /

/ / /

/ / /

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 29 of 38

| Class | Designation | Impairment | Entitled To Vote |
|-------|-------------|------------|------------------|
| 1 | General Unsecured Claims | Yes | Yes |
| 2 | Equity Interest Holders | No | No |

## VI.  LEGAL STANDARDS REGARDING CONFIRMATION

### A.  Confirmation Hearing and Objections to Confirmation.

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation hearing on whether the Plan satisfies the requirements of Bankruptcy Code Section 1129. The confirmation hearing is presently scheduled for _____, 2009 at _____a.m., before the Honorable Thomas E. Carlson, United States Bankruptcy Judge for the Northern District of California, San Francisco Division. The Confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation hearing. At the Confirmation hearing, the Bankruptcy Court will determine whether the requirements of Bankruptcy Code Section 1129 have been satisfied and, if appropriate, the Bankruptcy Court will enter the Confirmation Order.

Any objection to Confirmation of the Plan must be made in writing and must provide the name and address of the objector, grounds for the objection, evidentiary support for the objection, and the amount of the claim of the objector or such other grounds that give the objector standing to assert an objection to the Plan.  Any objection must be filed with the Bankruptcy Court and served on Counsel for the Debtor in the manner described in the notice of the Confirmation hearing.

### B.  Conditions to Confirmation Under the Bankruptcy Code.

#### 1.  Generally.

Bankruptcy Code Section 1129(a) sets forth the requirements that must be satisfied for the Plan to be confirmed. Those provisions which are most appropriate in this case are as follows:

(a)  the Plan must comply with the applicable provisions of the Bankruptcy Code;

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1        **(b)**     the Debtor, as proponent of the Plan, must comply with the applicable

2  provisions of the Bankruptcy Code;

3        **(c)**     the Plan must be proposed in good faith and not by any means forbidden by

4  law;

5        **(d)**     each Creditor or interest holder in an impaired class must accept the Plan,

6  or must receive or retain under the Plan on account of its Claim or interest, property of a value, as

7  of the Effective Date, that is not less than the amount that such Creditor or interest holder would

8  so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the

9  Effective Date;

10        **(e)**     subject to the provisions for non-consensual Plan confirmation with respect

11  to each class of Claims and interests, each class must accept the Plan or the class must not be

12  impaired under the Plan.

13        **(f)**     except to the extent that the holder has agreed to a different treatment, the

14  Plan must provide that (a) with respect to a class of priority wage, employee benefit, consumer

15  deposit, and certain other priority unsecured Claims described in Bankruptcy Code sections

16  507(a)(3) (7), each holder of a Claim of such class must receive (i) if such class has accepted the

17  Plan, deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of

18  such Claim, or (ii) if such class has not accepted the Plan, cash on the Effective Date of the Plan

19  equal to the allowed amount of such claim; and (b) with respect to a Priority Tax Claim of a kind

20  specified in Bankruptcy Code section 507(a)(8), the holder of such Claim must receive on

21  account of such Claim deferred cash payments, over a period not exceeding six years after the

22  date of assessment of such Claim, of a value, as of the Effective Date of the Plan, equal to the

23  allowed amount of such Claim;

24        **(g)**     if a class of Claims is impaired under the Plan, at least one class of

25  impaired Claims must accept the Plan, without including any acceptance of the Plan by any

26  insider;

27

28

Case: 08-32220  Doc# 122  Filed: 03/20/09   Entered: 03/20/09 11:55:53  Page 31 of
38

1       **(h)**      Confirmation must not be likely to be followed by the liquidation, or the

2 need for further financial reorganization, of the Debtor, Reorganized Estate, or any successor

3 thereto, unless such liquidation or reorganization is proposed in the Plan; and

4       **(i)**      all fees payable under 28 U.S.C. §1930, as determined by the Bankruptcy

5 Court at the hearing on Confirmation, must have been paid, or the Plan must provide for the

6 payment of all such fees on the effective date of the Plan.

7         **2.**      **Acceptance by Impaired Classes.**

8        Except as described below, pursuant to Bankruptcy Code Section 1129(a)(8), the Plan

9 may not be confirmed unless it is accepted by each impaired class of Creditors eligible to vote on

10 the Plan. A class of Allowed Claims accepts the Plan if holders of at least two-thirds in dollar

11 amount and a majority in number of Claims of that class vote to accept the Plan, counting only

12 the votes of those holders of Claims that actually vote on the Plan, and excluding certain Claims,

13 if any, designated under Bankruptcy Code section 1126(e). Creditors who fail to vote are not

14 counted as either accepting or rejecting the Plan. (*See* above at Section II "Plan Voting

15 Procedures" section for a description of voting procedures with respect to the Plan by Creditors in

16 impaired classes that are eligible to vote on the Plan.)

17        Classes of Allowed Claims that are not impaired under the Plan are deemed to have

18 accepted the Plan. Thus, only those Persons who hold Allowed Claims designated as impaired

19 Classes that will retain or receive property under the Plan are generally entitled to vote on the

20 Plan. As noted above, a class is impaired if the legal, equitable, or contractual rights attaching to

21 the Allowed Claims of that Class are modified other than, in the case of a class of Allowed

22 Claims, by payment in full in Cash on the Effective Date.

23         **3.**      **Confirmation Without Acceptance by All Impaired Classes.**

24        The Plan may be confirmed even if not accepted by all impaired classes if at least one

25 impaired class of Claims has accepted it and the Plan meets certain standards. However, because

26 only one class of claims is created under the Plan, confirmation can only occur with acceptance

27 by that Class (Class 1).

28

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4. Feasibility.

The Bankruptcy Code permits a plan to be confirmed if it is not likely to be followed by liquidation or the need for further financial reorganization.  For purpose of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet the obligations under the Plan.  Because the Plan provides for the Post Effective Date, conduct of business in the ordinary course for the Debtor to collect on its notes receivable and to realize the value of its other investments, the Debtor believes it will be able to satisfy all obligations under the Plan and that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization.

### 5. The "Best Interests" Test: Liquidation Analysis and Alternatives to the Plan.

Notwithstanding acceptance of the Plan by each impaired class entitled to vote, in order for the Bankruptcy Court to confirm the Plan, the Court must find, pursuant to Code section 1129(a)(7), that the Plan is in the "best interests" of each holder of a Claim or interest in any such impaired class who has not voted to accept the Plan. Accordingly, if an impaired class does not unanimously accept the Plan, the "best interests" test requires the Bankruptcy Court to find that the Plan provides to each member of such class, on account of each holder' Claim or interest within that class, a recovery that has a value, as of the Effective Date, at least equal to the value of the distribution that each such holder would receive if the case was to be liquidated under Chapter 7 of the Code on such date.

The type of Plan proposed by the Debtor provides for payment in full of all creditor claims over time with interest.  The Debtor believes that the value available for distribution would not be the same as in a Chapter 7 in part because the realization of the value of the estate requires the special expertise of the Debtor.  If the Chapter 11 case were converted to a case under Chapter 7 of the Bankruptcy Code, a Chapter 7 Trustee would be appointed to conduct the liquidation of the Estate and the expenses of the Chapter 7 case would be an additional senior charge against assets before a distribution could be made to creditors.

015881.0003\1142926.4

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 33 of 38

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

### 6. Modification or Revocation of the Plan.

Subject to the restrictions or modifications set forth in Bankruptcy Code Section 1127, the Debtor reserves the right to alter, amend, or modify the Plan before and after the Effective Date. No alterations, amendments, or modifications may be made by any party except the Debtor. If the Plan is modified by the Debtor, it may be necessary to amend the Disclosure Statement and to resolicit ballots from all or some voting classes. A hearing on such issues and any resolicitation of ballots likely would significantly delay Confirmation and delay distributions under the Plan. The Debtor further reserves the right to revoke or withdraw the Plan prior to the Effective Date. Depending on the nature and timing of such amendment, revocation or withdrawal, notice and a hearing may be required before any such amendment, revocation or withdrawal that would materially and adversely affect any class of Creditors becomes effective. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan will not be effective, and nothing contained in the Plan will prejudice the rights of the Debtor or Creditors in any further proceedings involving the Estate.

## VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discusses certain U.S. federal income tax considerations in connection with the implementation of the Plan relating to the Debtor and to holders of Allowed Claims and is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury regulations (the "Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date of this Disclosure Statement. These rules are subject to change, possibly on a retroactive basis, and any such change could significantly affect the federal income tax considerations described below.

The federal income tax considerations in connection with the Plan are complex and are subject to significant uncertainties, as a result of both the uncertainty of the law in certain contexts and the uncertainty regarding the precise manner in which the Plan will be implemented. The Debtor has not requested, nor does the Debtor expect to request, a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this description does not

address state, local, or foreign income or other tax considerations relating to the Plan, nor the federal income tax considerations relating to the Plan particular to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, persons holding an Allowed Claims as part of a hedging, integrated constructive sale or straddle, and investors in pass-through entities).

*Accordingly, the following summary of certain material U.S. federal income tax considerations is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to a holder of a Claim. Each holder of a Claim is urged to consult its own tax advisors for the federal, state, local and foreign income and other tax consequences applicable under the Plan.*

### A. Consequences to the Debtor.

To the best of its knowledge, the Debtor has not incurred any taxes owed to any federal, state, or local taxing authorities within the United States and will not incur any such tax in connection with the transactions contemplated by the Plan.

### B. Consequences to Holders of Allowed Claims.

#### 1. Gain or Loss.

In general, each holder of an Allowed Claim will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such holder in satisfaction of its Claim (other than any Claim representing accrued but unpaid interest) and (ii) such holder's adjusted tax basis in such Claim (other than any Claim representing accrued but unpaid interest). The "amount realized" by a holder of a Claim will equal the sum of the cash as received by such holder with respect to its Claim, excluding any portion required to be treated as imputed interest.

#### 2. Information Reporting and Withholding.

All distributions to holders of Allowed Claims under the Plan are subject to any applicable withholding (including employment tax withholding). Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable rate. Backup withholding generally applies if the holder

015881.0003\1142926.4

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

(i) fails to furnish its social security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails properly to report interest or dividends, or (iv) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is a United States person that is not subject to backup withholding. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax and the appropriate information is supplied to the IRS.

Treasury Regulations generally require disclosure by a taxpayer on its federal income tax return of certain types of transactions in which the taxpayer participated after January 1, 2003, including, among other types of transactions, the following: (1) certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds; and (2) certain transactions in which the taxpayer's book-tax differences exceed a specified threshold in any tax year. These categories are very broad; however, there are numerous exceptions. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the holders' tax returns.

## VIII.   LIQUIDATION UNDER CHAPTER 7

If no Chapter 11 plan can be confirmed, the case may be converted to a case under chapter 7 of the Bankruptcy Code, in which a trustee would be appointed to liquidate the assets of the Debtor.  The potential effect of a chapter 7 liquidation on the holders of Claims is set forth above. The Debtor believes that the full value of its assets could not be realized in a liquidation under chapter 7 and that a conversion to chapter 7 would also result in additional administrative claims attendant upon the appointment of a trustee and the trustee's employment of attorneys and other professionals, none of whom would not be familiar with the issues and claims presented in this case.   Debtor believes that unsecured creditors would receive little, and likely nothing in a hypothetical chapter 7 case.

/ / /

/ / /

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1   **IX.     ALTERNATIVE PLAN OF REORGANIZATION**

2           If the Plan is not confirmed, the Debtor or any other party in interest could attempt to

3   formulate a different plan of reorganization. Such a plan might involve either (i) a reorganization

4   and continuation of the business or (ii) an orderly liquidation of the assets of the Debtor.  Debtor

5   has concluded that the Plan represents the best alternative to protect the interests of creditors and

6   other parties in interest.  Debtor believes that the Plan enables it to successfully emerge from

7   Chapter 11 and allows creditors to realize the highest recoveries under the circumstances.

8   Accordingly, the Debtor believes that liquidation under Chapter 11 is much less attractive

9   alternative to creditors, because a greater return to creditors is provided for in the Plan.

10  **X.      WINDING UP & FINAL DECREE**

11          **A.      Final Report.**

12          The Disbursing Agent shall provide to the United States Trustee, a report within sixty (60)

13  days after the Effective Date, accounting for all assets administered by the Disbursing Agent and

14  all receipts and disbursements by the Debtor through the Confirmation Date.

15          **B.      Post-Confirmation United States Debtor Quarterly Fees.**

16          Quarterly fees shall be paid by the Disbursing Agent to the United States Trustee, based

17  upon all disbursements made by the Disbursing Agent post-Confirmation under the terms of the

18  Plan, whether from the Plan Assets or otherwise, for deposit into the treasury, for each quarter

19  (including any fraction thereof) until this case is converted, dismissed, or closed pursuant to a

20  final decree, as required by 28 U.S. C. §1930(a)(6). The Disbursing Agent will also provide post-

21  Confirmation reports as may be requested or required by the United States Trustee.

22          **C.      Final Decree.**

23          After the Plan is substantially consummated, the Disbursing Agent or its designee shall

24  file an application for a Final Decree, and shall serve the application on the United States Trustee,

25  together with a proposed Final Decree.

26  **XI.     REQUEST FOR VOTE OF APPROVAL**

27          This Disclosure Statement has been prepared and presented for the purpose of permitting

28  claimants to make an informed judgment as to whether or not they would accept or reject the

Plan.  Please read the Plan in full and consult with your counsel if you have questions. If the Plan is confirmed, its terms and conditions will be binding on all Creditors and the Debtor, regardless of whether the holders of particular Claims voted to accept the Plan.

The Debtor believes that the Plan, as presented, is in the best interest of creditors and that Confirmation of the Plan will provide the fastest and best recovery to all of the Creditors.  The Debtor therefore urges all claimants to vote to accept the Plan.


Dated:  March 19, 2009             CMR Mortgage Fund, LLC, a California limited liability company, Debtor and Debtor- In-Possession


By:  _/s/  Graham Seel_____
      Graham Seel
      Chapter 11 Responsible Individual for
      CMR Mortgage Fund, LLC

Dated:  March 19, 2009             WENDEL, ROSEN, BLACK & DEAN LLP


By:  _/s/  Penn A. Butler_____
      Penn A. Butler
      Attorneys for CMR Mortgage Fund, LLC,
      a California limited liability company,
      Debtor and Debtor-In-Possession

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

015881.0003\1142926.4

Case: 08-32220   Doc# 122   Filed: 03/20/09   Entered: 03/20/09 11:55:53   Page 38 of 38