1  DONNA S. TAMANAHA, Assistant U.S. Trustee (WI#1013199)
   JULIE M. GLOSSON, Trial Attorney (#230709)
2  U.S. Department of Justice
   Office of the United States Trustee
3  235 Pine Street, Suite 700
   San Francisco, CA 94104
4  Telephone: (415) 705-3333
   Facsimile: (415) 705-3379
5  Email: julie.m.glosson@usdoj.gov

6  Attorneys for Acting United States Trustee
   SARA L. KISTLER
7

                    UNITED STATES BANKRUPTCY COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10
   In re                              )  Case No. 08-32220 TEC 11
11                                     )
                                       )  Chapter 11
12 CMR MORTGAGE FUND, LLC,             )
                                       )
13                                     )
                 Debtor.               )
14                                     )
                                       )
15 ──────────────────────────────     )

16
          MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ACTING UNITED
17  STATES TRUSTEE'S MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE UNDER
        11 U.S.C. § 1104(a), OR IN THE ALTERNATIVE, FOR THE
18       APPOINTMENT OF AN EXAMINER UNDER 11 U.S.C. § 1104(c)

19

20

21

22

23

24

25

26

27

28

MPA RE UST'S MTN FOR TRUSTEE, OR EXAMINER

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -

II.     JURISDICTION AND STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 2 -

III.    POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

        A.      The Controlling Statutory Framework. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

        B.      The Burden of Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

        C.      A Trustee Should be Appointed Now Pursuant to 11 U.S.C. § 1104(a)(1). . . . . . . . . - 5 -

                1.      The United States Trustee Has A Statutory Duty to Seek Appointment of a
                        Trustee Pursuant to 11 U.S.C. § 1104(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

                2.      Factors Considered in Determining Whether "Cause" for Appointment of a
                        Trustee Exists Under 11 U.S.C. § 1104(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

                3.      The Burden of Proving That Appointment of a Trustee for Cause is Appropriate
                        Under 11 U.S.C. 1104(a)(1) is Met by the Record Before the Court.. . . . . . . . . - 6 -

                        a.      CMRI's Failure to Comply with Regulatory Requirements Constitutes
                                Both Gross Mismanagement and Cause for the Appointment of a Chapter
                                11 Trustee under 11 U.S.C. § 1104(a)(1). . . . . . . . . . . . . . . . . . . . . . . . - 6 -

                        b.      CMRI'S Failure to Adhere to Lending Standards Constitutes Both Gross
                                Mismanagement and Cause for the Appointment of a Chapter 11 Trustee
                                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 8 -

                        c.      CMRI'S Failure to Investigate Insider Transactions Constitutes Cause for
                                the Appointment of a Chapter 11 Trustee. . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

                                i.      David Choo's Use of CMRI to Manage Debtors as a Single
                                        Economic Enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

                                ii.     Intercompany Receivables Attributable to David Choo's Use of
                                        CMRI to Manage the Debtors as a Single Economic Enterprise
                                        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

                                iii.    Income Fund's $20.3 Million Secured Claim Against Fund II
                                        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

                                iv.     The Change in Hamilton Creek's Capitalization. . . . . . . . . . . - 12 -

                                v.      Inherent Conflicts Make it Unlikely that Insider Transactions Will
                                        Be Investigated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -

                        d.      Appointment Is in the Interests of Creditors, Equity Security Holders, and
                                the Estate Because CMRI Has Improperly Used the Chapter 11 Process to
                                Advance its Own Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 2 of
22

| | | | |
|---|---|---|---|
| | i. | CMRI Has Thwarted Investor Participation Throughout the Chapter 11 Process.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | - 15 - |
| | ii. | CMRI's Actions to Circumvent Classifying Hamilton Creek as Single Asset Real Estate Case. . . . . . . . . . . . . . . . . . . . . . . . . | - 16 - |
| | iii. | Appointment of a Trustee is in the Interests of Creditors and the Estate... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | - 16 - |
| D. | | In the Alternative, the Aforementioned Requires the Appointment of an Examiner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | - 17 - |
| IV. | CONCLUSION. | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | - 17 - |

**TABLE OF AUTHORITIES**

**FEDERAL STATUTES**

11 U.S.C. § 101 *et seq*... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

11 U.S.C. § 102(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -, - 6 -

11 U.S.C. § 1104(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -, - 2 -, - 4 -

11 U.S.C. § 1104(a)(1).. . . . . . . . . . . . . . . . . . - 3 -, - 4 -, - 5 -, - 6 -, - 13 -, - 14 -

11 U.S.C. § 1104(a)(2).. . . . . . . . . . . . . . . . . . . . . . . - 3 -, - 4 -, - 9 -, - 17 -

11 U.S.C. § 1104(a)(3).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -, - 4 -

11 U.S.C. § 1104(c). . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -, - 2 -, - 3 -, - 17 -

11 U.S.C. § 1104(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

11 U.S.C. § 1112(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

11 U.S.C. §307.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

28 U.S.C. § 1334(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 2 -

28 U.S.C. § 1408(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

28 U.S.C. § 157(b)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

28 U.S.C. § 157(b)(2)(O). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

28 U.S.C. §586.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -


**RULES**

FRE Rule 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 2 -

Fed. R. Bankr. P. Rule 1007(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 -


**CASES**

Altman, 230 B.R. 6, 16-17 (Bankr. D. Conn. 1999). . . . . . . . . . . . . . . . . . . - 4 -

Altman, 254 B.R. 509 (Bankr. D. Conn. 2000). . . . . . . . . . . . . . . . . . . . . . - 4 -

Bellevue Place Associates, 171 B.R. 615, 622, 623 (Bankr. N.D. Ill. 1994).. . . . . . - 6 -, - 13 -

Cajun Elec. Power Cooperative, Inc., 74 F.3d 599 (5th Cir. 1996). . . . . . . . . . . . - 13 -

Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985).. . . . - 4 -

Eichorn, 5 B.R. 755, 757 (Bankr. D.Mass. 1980). . . . . . . . . . . . . . . . . . . . . - 4 -

Fiesta Homes of Georgia, Inc., 125 B.R. 321, 325-26 (Bankr. S.D. Ga. 1990). . . . . - 13 -, - 14 -

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 4 of 22

Grogan v. Garner, 498 U.S. 279, 286 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

Intercat, Inc., 247 B.R. 911, 921, 922-23 (Bankr. S.D. Ga. 2000). . . . . . . . . . . . . . . . . . . . . . - 6 -, - 14 -

L.S. Good & Co., 8 B.R. 312 (Bankr. N.D. W. Va. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

Lowenschuss, 171 F.3d 673, 685 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

Marvel Entertainment Group, Inc., 140 F.3d 463, 471, 474 (3d Cir. 1998). . . . . . . . . . . . . . . - 4 -, - 13 -

Microwave Products of America, Inc., 102 B.R. 666, 671, 672 (Bankr. W.D. Tenn. 1989). . . . - 6 -, - 13 -

SunCruz Casinos, LLC, 298 B.R. 821, 828, 830, 831 (Bankr. S.D. Fla. 2003). . . . . . . . . . - 5 -, - 6 -, - 13 -

The 1031 Tax Group, LLC, 2007 WL 2298245, *4 07- 11448 MG (Bankr. S.D.N.Y. Aug. 13, 2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

Tradex Corp. v. Morse, 339 B.R. 823, 827, 830-32 (D. Mass. 2006). . . . . . . . . . . . . . . . . . . . - 4 -

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290
(1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

V. Savino Oil & Heating Co., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). . . . . . . . . . . . . . . . - 5 -, - 13 -

Wolf v.Weinstein, 372 U.S. 633, 649 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 5 of
22

1    Sara L. Kistler, Acting U.S. Trustee for the Northern District of California - Region 17, ("U.S.

2    Trustee") submits the following Memorandum of Points and Authorities in support of her Motion For

3    Appointment of Chapter 11 Trustee under 11 U.S.C. § 1104(a), or in the Alternative, for the

4    Appointment of an Examiner under 11 U.S.C. § 1104(c) ("Motion").

5        The Declaration of Julie M. Glosson ("Glosson Declaration") is filed along with this

6    Memorandum in support of the Motion.

7    **I.    INTRODUCTION**

8        The Debtor in this case, and three other separate but related chapter 11 cases are managed as a

9    single enterprise by a common non-member manager, California Mortgage and Realty, Inc. ("CMRI")[1].

10   Although each case is a separate bankruptcy estate, all of the Debtors in the cases identified below have

11   been subject to CMRI's direct managerial control at all points in time relevant to the issues raised in the

12   Motion:

13       a.    Hamilton Creek LLC (case no. 08-31285) filed on July 16, 2008;

14       b.    CMR Mortgage Fund, LLC (case no. 08-32220) filed on November 19, 2008;

15       c.    CMR Mortgage Fund II, LLC, (case no. 09-30788) filed on March 31, 2009; and

16       d.    CMR Mortgage Fund III, LLC (case no. 09-30802) filed on March 31, 2009.

17   See PACER (for filing dates); Glosson Declaration - Exhibits 4, 5, 8, 9, 10 (Operating Agreements for

18   respective Debtors).

19       The U.S. Trustee seeks the appointment of an independent fiduciary to scrutinize certain pre- and

20   post-petition matters that CMRI has not been inclined to investigate due to inherent, irreconcilable, and

21   debilitating conflicts of interest.  Those conflicts are readily apparent by reference to the Disclosure

22   Statements filed by Debtors as recently ast September 28, 2009.  Moreover, during the pendency of the

23   Debtors' bankruptcy cases, CMRI has neither examined nor pursued potential causes of action related to

24   a number of substantial intercompany and insider transactions.  The facts set forth in the Motion and in

25   this Memorandum demonstrate that it is highly unlikely that CMRI ever will do so.  While an Official

26   Committee of Equity Security Holders has been appointed, the Committee's presence does not cure, and

27

28

---

[1]Capitalized terms herein shall have the meaning assigned in the Motion.

MPA RE UST'S MTN FOR TRUSTEE, OR EXAMINER                                    -1-

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 6 of
22

has not stemmed, a pattern of gross mismanagement of the Debtors' business operations by CMRI.

Evidence of gross mismanagement of the Debtors' affairs by CMRI is both undisputed and sufficient to constitute cause for the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a). In its capacity as the Funds' non-member manager, CMRI has failed to comply with various regulatory requirements governing the lending business conducted by the Funds. CMRI also breached its fiduciary duty to investors by causing the Funds to make at least one loan in obvious and direct violation of two lending covenants contained in the Offering Circular. Evidence of gross mismanagement of one Debtor can reasonably be imputed to the other Debtors because the Debtors are managed as a single economic enterprise.

Appointment of a chapter 11 trustee is also in the interests of creditors, equity security holders, and the estate. In addition to failing to investigate and pursue insider and intercompany transactions, CMRI has used the chapter 11 process to advance its own interests and the interests of its principal, David Choo, to the detriment of creditors and investors. Cause exists for the appointment of a trustee as a result of CMRI's conduct, and such appointment is warranted under 11 U.S.C. § 1104(a). In the alternative, and at a minimum, an order for the appointment of an examiner should be entered pursuant to 11 U.S.C. § 1104(c).

The U.S. Trustee requests the Court consider the Motion, this Memorandum of Points and Authorities, and the Declaration of Julie M. Glosson ("Glosson Declaration"). The U.S. Trustee also requests the Court take judicial notice of all documents filed in this case pursuant to Rule 201 of the Federal Rules of Evidence[2].

Although the U.S. Trustee has included the principal facts in the text that follows, she reserves her right to conduct discovery and, if appropriate under controlling laws and rules, to present further evidence in support of this motion at an evidentiary hearing.

## II.    JURISDICTION AND STANDING

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(a). Venue is

---

[2]To avoid confusion, and in the interest of judicial economy, the same motion and memorandum of points and authorities have been filed in each of the four cases, and the motions have been set for hearing on the same date and time.

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 7 of
22

appropriate in the Northern District of California pursuant to 28 U.S.C. § 1408(a). The Motion gives rise to a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The United States Trustee is charged with supervising the administration of bankruptcy cases under chapter 11 of the United States Bankruptcy Code[3]. 28 U.S.C. §586. In furtherance of that duty, the U.S. Trustee is granted standing to raise and be heard on any issue in any bankruptcy case or proceeding pursuant to 11 U.S.C. §307. The U.S. Trustee has standing to file a motion to appoint a chapter 11 trustee under 11 U.S.C. § 1104(a)(1) and (a)(2), and to file a motion to appoint an examiner under 11 U.S.C. § 1104(c).

**III.    POINTS AND AUTHORITIES**

**A.    The Controlling Statutory Framework**

Section 1104(a) of the Bankruptcy Code governs the appointment of a trustee, and provides as follows:

§ 1104.  Appointment of trustee or examiner

(a)    At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court ***shall*** order the appointment of a trustee--

(1)    for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount  of assets or liabilities of the debtor;

(2)    if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(3)    if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a) (emphasis added).

In general, the Bankruptcy Code requires the appointment of a chapter 11 trustee under three circumstances: when causes exists; if appointment is in the interests of creditors and the estate; or where

_____

[3]11 U.S.C. § 101 *et seq.* Unless otherwise indicated, the term "Code" as used in this Memorandum refers to the Bankruptcy Code. When the word "section" is used in this memorandum, it is used in  reference to the corresponding section of the Code.

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 8 of 22

cause exists to convert or dismiss a case under 11 U.S.C. § 1112(b) but appointment of a chapter 11 trustee is in the best interests of the estate and creditors. 11 U.S.C. § 1104(a)(1) - (3).

Section 1104(a) of the Bankruptcy Code is rooted in the concept of the debtor's fiduciary duty and obligation owed to all of its creditors and parties-in-interest. See, e.g., Wolf v. Weinstein, 372 U.S. 633, 649 (1963) ("so long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligations to the creditors as does the trustee for the Debtor out of possession"); Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) (stating that the willingness to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibility of a trustee"). The decision whether a chapter 11 trustee should be appointed under 11 U.S.C. § 1104(a) is a matter within the discretion of the bankruptcy court. In re Lowenschuss, 171 F.3d 673, 685 (9th Cir. 1999).

**B.      The Burden of Proof**

Parties seeking the appointment of a trustee pursuant to 11 U.S.C. § 1104(a)(1) bear the burden of proving by a preponderance of the evidence that the appointment of a trustee is appropriate. The higher standard of clear and convincing evidence does not control. See Tradex Corp. v. Morse, 339 B.R. 823, 830-32 (D. Mass. 2006); In re Altman, 230 B.R. 6, 16-17 (Bankr. D. Conn. 1999), vacated in part on other grounds, 254 B.R. 509 (D. Conn. 2000) (same); see also Grogan v. Garner, 498 U.S. 279, 286 (1991) (noting that the general standard of proof in civil and bankruptcy cases, and in non-dischargeability litigation in particular, is a preponderance of the evidence). But see In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998) (requiring clear and convincing evidence for the appointment of a trustee under 11 U.S.C. § 1104(a)); In re The 1031 Tax Group, LLC, 2007 WL 2298245, *4 07- 11448 MG (Bankr. S.D.N.Y. Aug. 13, 2007) (same). Although there is a presumption that a debtor will remain in possession, subsection (a)(1) "reflects criteria which mandate the appointment of a trustee for cause. . . .Under this subsection the court's discretionary powers are circumscribed and are limited to a judicial determination of whether 'cause,' as defined, exists." Tradex Corp., 339 B.R. at 827, quoting In re Eichorn, 5 B.R. 755, 757 (Bankr. D.Mass. 1980).

Case: 08-32220   Doc# 355   Filed: 12/18/09   Entered: 12/18/09 16:53:45   Page 9 of 22

**C.** **A Trustee Should be Appointed Now Pursuant to 11 U.S.C. § 1104(a)(1)**

      **1.** **The United States Trustee Has A Statutory Duty to Seek Appointment of a Trustee Pursuant to 11 U.S.C. § 1104(e)**

The enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") resulted in the addition of a new subsection (e) to section 1104:

> § 1104.  Appointment of trustee or examiner
> . . . . .
>     (e)    The United States trustee ***shall*** move for the appointment of a trustee under subsection (a) ***if there are reasonable grounds to suspect that current members of the governing body of the debtor***, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, ***participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor*** or the debtor's public financial reporting.

See 11 U.S.C. § 1104(e)(emphasis added).  The record evidence in this case is sufficient to trigger the U.S. Trustee's statutory duty under section 1104(e), and prompted the filing of the Motion.  The salient facts are fully developed and discussed in the Motion and this Memorandum.

      **2.** **Factors Considered in Determining Whether "Cause" for Appointment of a Trustee Exists Under 11 U.S.C. § 1104(a)(1)**

The presence of fraud, dishonesty, incompetence, or gross mismanagement of a debtor's affairs constitutes "cause" for the appointment of a chapter 11 trustee under the plain language of section 1104(a)(1).  However, the presence of those factors is not a mandatory predicate to a finding that "cause" for appointment of a trustee exists under that section.  "Cause" for appointment of a trustee under 11 U.S.C. § 1104(a)(1) is a much broader concept:

> Section 1104(a) represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession.  Under § 1104(a)(1), the words "including" and "or similar cause" before and after the enumerated examples of cause and 11 U.S.C. § 102(3) indicate that the grounds for appointing a reorganization trustee are not even limited to the derelictions specifically enumerated.  The mandate of § 1104(a)(1) is explicit and should be enforced according to its plain language.  United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989).

In re V. Savino Oil & Heating Co., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989); see also SunCruz Casinos, 298 B.R. at 828 (11 U.S.C. § 1104(a)(1) "provides a nonexhaustive list, including fraud, dishonesty, incompetence, or gross mismanagement, as conduct warranting appointment of a trustee for 'cause'.");

Case: 08-32220   Doc# 355   Filed: 12/18/09   Entered: 12/18/09 16:53:45   Page 10 of 22

In re Microwave Products of America, Inc., 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989)(same, noting that courts may consider prepetition, as well as postpetition conduct in determining the necessity of a trustee); 11 U.S.C. § 102(3)("In this title . . . 'includes' and 'including' are not limiting[.]").

Courts have given credence to the nonexhaustive nature of the list of circumstances, and substance to the term "cause," found in the text of 11 U.S.C. § 1104(a):

> Determinations to appoint a trustee pursuant to Section 1104(a)(1) are fact intensive. [citation omitted]. In addition to Section 1104(a)(1)'s enumerated examples of conduct constituting cause - fraud, dishonesty, incompetence, or gross mismanagement - courts have found cause to appoint a trustee based on the following factors:
>
> (1)  Materiality of the misconduct;
> (2)  Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;
> (3)  The existence of pre-petition voidable preferences or fraudulent transfers;
> (4)  Unwillingness or inability of management to pursue estate causes of action;
> (5)  Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;
> (6)  Self-dealing by management or waste or squandering of corporate assets.

In re SunCruz Casinos, LLC, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003), citing In re Intercat, Inc., 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000); and In re Bellevue Place Associates, 171 B.R. 615, 622 (Bankr. N.D. Ill. 1994).

**3.  The Burden of Proving That Appointment of a Trustee for Cause is Appropriate Under 11 U.S.C. 1104(a)(1) is Met by the Record Before the Court**

As noted above, the record before the Court is sufficient to establish that cause exists for the appointment of a trustee in this case. That conclusion is inevitable regardless of whether the preponderance of the evidence standard, or the clear and convincing standard, is applied.

**a.  CMRI's Failure to Comply with Regulatory Requirements Constitutes Both Gross Mismanagement and Cause for the Appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104(a)(1)**

The lending business conducted by the Funds and CMRI is subject to regulation by the California Department of Corporations, the California Department of Real Estate, and the United States Securities and Exchange Commission. Prior to the filing of the respective Debtors, CMRI failed to ensure that the Funds were in compliance with multiple State and Federal regulatory requirements governing lending

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 11 of 22

operations. As a result of that gross mismanagement, cause for the appointment of a chapter 11 trustee exists.

To solicit investors for investment in loans secured by real property and to broker loans, CMRI and the Funds were required to obtain permits and licensing. In November, 2008, the CDOC suspended Fund III's permit to offer and sell securities because the CDOC determined that Fund III and CMRI (1) failed to provide audited financial statements for 2008 and a summary report, (2) for six consecutive months from June, 2008 to December, 2008, failed to provide monthly account statements for those investors/members who received cash distributions, and (3) failed to inform new investors that Fund III was unable to meet redemption requests as set forth in its offering circular. See Glosson Declaration - Exhibit 13 (CDOC Accusation). In addition, CMRI sold interests in Fund III to investors who did not meet suitability standards required under the CDOC permit, and failed to inform Fund III investors that CMRI did not adhere to the concentration limits in the Fund I Offering Circular. Id.

Beginning January, 2008, Fund II was required to register with the SEC, which required in part, periodic reporting, including the filing of audited financial statements with that agency. Fund II was unable to obtain audited financial statements for 2008. See Glosson Declaration - Exhibit 12 (Fund II SEC 10Q Report 9/30/08).

For the same reasons, Fund III was also required to register with the SEC. Unlike Fund II, and while under the management control of CMRI, Fund III failed to complete the registration process with the SEC[4]. See Glosson Declaration - Exhibit 14 (Fund III, April, 2009 Investor Newsletter). Both Fund II and Fund III to intend to continue operations after confirmation, however, neither are in compliance with the SEC regulatory requirements, and they do not hold the permits or licenses required to continue their business operations. The Joint Plan or Disclosure Statement fail to disclose that Fund II and Fund III are not in compliance with applicable regulatory requirements, and that they would be operating in violation of controlling law if the Joint Plan were to be confirmed. The SEC has informally expressed its concerns about the Joint Plan to Fund II. To date, Fund II has not amended the Disclosure Statement or Joint Plan. See Glosson Declaration - Exhibit 11 (SEC Letter dated 10/26/09). In addition to the

---

[4]In fact, Fund III was required to register with the SEC in March, 2007, however, continued to operate in violation of securities laws for at least 2 years.

Case: 08-32220     Doc# 355     Filed: 12/18/09     Entered: 12/18/09 16:53:45     Page 12 of 22

SEC's concerns, the auditor employed to prepare audited financial statements for Fund II expressed its reservations that Fund II could continue operating as a going concern. See Glosson Declaration - Exhibit 12 (Fund II SEC 10Q Report 9/30/08 - p. 23 and 24[5]).

CMRI's failure to obtain audited financial statements, failure to inform new investors of Fund III's liquidity crisis, failure to inform new investors of CMRI's breach of lending covenants, and allowing the Funds to conduct lending operations in violation of the terms of the CDOC permit constitutes gross mismanagement of the affairs of the Funds. As the non-member manager, CMRI is responsible for that gross mismanagement. As a result, a chapter 11 trustee should be appointed under 11 U.S.C. § 1104(a)(1).

> **b.** **CMRI'S Failure to Adhere to Lending Standards Constitutes Both Gross Mismanagement and Cause for the Appointment of a Chapter 11 Trustee**

Under the management and control of CMRI, Fund I made a $42 million loan, having solicited the necessary funds from investors through the use of a related Offering Circular. See Glosson Declaration - Exhibit 1 (Offering Circular). The Offering Circular contained express lending limit covenants which established both loan diversification and geographic restrictions[6], intended to protect investors' interests. As discussed in more detail below, CMRI caused Fund I to make the loan in obvious violation of those covenants.

Specifically, in March, 2007, CMRI caused Fund I to loan $42 million to Halekua Development Corporation secured by real property in Hawaii (the "HDC Loan"). This loan was made despite, and in direct violation of:

-       The "Loan Diversification" Covenant: This covenant contained in the Offering Circular, provides that no single loan within Fund I's loan portfolio would exceed the greater of (a) $1,000,000 or (b) 25% of total Fund capital at the time of the loan; and

---

[5]Note: page numbers identified in SEC 10Q Report are those at the bottom of the report.

[6]Fund III's Offering Circular contains the same covenants.

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 13 of 22

- The "Geographic Restriction" Covenant: This covenant, also found in the Offering Circular, mandates that "[l]ess than 20% of the proceeds of this offering will be used to invest in loans secured by properties outside California." Id.

The HDC Loan was 42 times the size of the $1 million limit contained in Loan Diversification Covenant. Equally remarkable is that the HDC Loan involved over 90% of Fund I's estimated total capital, more than 3 times the 25% capital limitation imposed by the covenant.

Not only was more than 90% of Fund I's estimated capital was used to make the HDC Loan, more than 40% of the proceeds of the offering was invested outside of California. See Glosson Declaration - Exhibits 6 and 7 (CMRI Financial Statements). The net result: a direct violation of the geographic and diversification limits contained in the Offering Circular.

By failing to ensure that Fund I adhered to the loan diversification and geographic restriction covenants, CMRI breached its fiduciary duty to act prudently when taking action on behalf of the Funds. It is noteworthy that as the Funds' non-member manager, CMRI assumed none of the risk attendant to the HDC Loan, yet continued to receive significant management-related compensation after the loan was made in violation of the covenants contained in the Offering Circular[7]. After the loan was made, CMRI received compensation from the Funds totaling $1.6 million between December, 2007 and March, 2008. Causing Fund I to make the HDC Loan in contravention to stated lending policies constitutes gross mismanagement, and thus, cause for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1).

c. **CMRI'S Failure to Investigate Insider Transactions Constitutes Cause for the Appointment of a Chapter 11 Trustee.**

Although the Funds are structured as separate limited liability companies, CMRI has sole control over the management of all the Debtors and manages them as a single enterprise. CMRI's single enterprise management approach resulted in extensive sharing of assets and equity interests by and

---

[7]Despite receiving over $1 million in compensation, CMRI's own financial condition is dire. See Glosson Declaration - Exhibits 6 and 7 (CMRI financial statements). In addition, Fund I investors and creditors are unaware that CMRI failed to adhere to the lending covenants as evidenced by its Disclosure Statement, and the inherent conflicts between Fund I and CMRI ensures no investigation of this breach will occur. The failure to disclose this breach in its Disclosure Statement comes as no surprise because disclosure could risk CMRI's continued management of the Funds thereby making appointment of a chapter 11 trustee in the interest of creditors and equity security holders under 11 U.S.C. § 1104(a)(2).

MPA RE UST'S MTN FOR TRUSTEE, OR EXAMINER -9-

between the Funds.  CMRI's management of the Funds has resulted in substantial insider transactions that have and will likely remain unquestioned in the absence of the appointment of an independent fiduciary.  See Schedules B, D, and F filed by Debtors.

        **i.**      **<u>David Choo's Use of CMRI to Manage Debtors as a Single Economic Enterprise</u>**

According to the Operating Agreements between CMRI and the Funds, CMRI in its capacity as non-member manager "shall have all necessary powers to manage and carry out the purposes, business and affairs of the Fund, including, without limitation, the power to exercise . . . on behalf and in the name of the [Fund] all the powers" afforded by statute and expressly identified in the Operating Agreement.  <u>See</u> Glosson Declaration - Exhibits 8, 9, and 10 (Operating Agreements for Funds).  In addition, CMRI and its employees are indemnified for all conduct except for conduct that constitutes fraud, bad faith or willful misconduct.  <u>Id.</u> at § 3.04.

At the helm of CMRI is David Choo.  Although he is not designated the responsible individual in any of the Debtors' four chapter 11 cases, his role in Fund I's bankruptcy is extensive.  According to time records, he has communicated with Fund I's attorneys concerning all aspects of the case: employment and compensation of processionals, inter-fund transactions, Canyon's motion for relief from stay, operating reports, amendments to operating agreements, communication with investors, discussion concerning the Court's ruling on the relief from stay, and matters related to Hamilton Creek.  <u>See</u> First Interim Application for Compensation and Reimbursement of Expense by Counsel for Fund I - 08-32220- docket #283.  Also reflected in the time records of the attorneys for Fund I are communications with the attorneys for Fund II, Fund III, and Hamilton Creek on matters such as lease assumption and indemnification.  According to the time records filed in support of the application for compensation by Hamilton Creek's attorneys, Mr. Choo is similarly involved.  <u>See</u> Application for Compensation filed in Hamilton Creek - 08-31285 - docket #137.

At first blush, the Debtors appear to be separate entities, however, CMRI's presence as non-member manager for all the Funds caused a variety of assets and interests to be commonly held by all three Funds.  Of the aggregate 26 loans reported by Funds, twelve were common to two or more of the Funds.  <u>See</u> Schedule B filed by Funds and Glosson Declaration - Exhibit 16 (REO and Loan Summary).

MPA RE UST'S MTN FOR TRUSTEE, OR EXAMINER                               -10-

Fund II and Fund III had 7 loans in common for nearly 40% of the total combined loan portfolio of all three. Id. For example, Fund III made no loans in 2008 despite receiving an estimated $2.8 million in investor funds that year. See Glosson Declaration. Debtor explained that the investor funds were used to purchase participation interests in other loans. Id. All investor solicitations and the sale of participation interests were made by CMRI.

Similarly, at least 5 of the REO interests are shared. Id. Approximately 57 investors are invested in all three Funds and nearly 300 investors are common to Fund II and Fund III. See Glosson Declaration.

### ii. Intercompany Receivables Attributable to David Choo's Use of CMRI to Manage the Debtors as a Single Economic Enterprise

CMRI is vested with the authority to make all decisions regarding monies loaned, how much, to whom, and which of the Funds will participate. While exercising management authority over all Funds, CMRI caused Fund I to become indebted to Funds II and III and CMRI for over $2.7 million. See Fund I - Schedule F.

Fund II scheduled receivables totaling $2.8 million, including over $2.6 million due from Fund I and Fund III. See Schedule B - Fund II. Fund II's Disclosure Statement is silent as to whether it conducted an investigation and does not explain why receivables will not be a source of payment for unsecured creditors. Conversely, Fund III is indebted to Fund II for $1.4 million, and CMRI for $1.1 million. See Schedule F - Fund III.

Post-petition, CMRI disclosed that it owes Fund II over $3.8 million identified as "loans to affiliates" on the August, 2009 Operating Report. Interestingly, the Joint Plan makes no reference to the loans nor explains why the loans are not the source of payment to unsecured creditors.

### iii. Income Fund's $20.3 Million Secured Claim Against Fund II

The Income Fund's $20.3 million secured claim against assets of Fund II arises from another substantial insider transaction that should be closely scrutinized. The Income Fund was established as a investment vehicle for the benefit of Mr. Choo and his family. See Glosson Declaration - Exhibit 3 (§ 341 Meeting - Fund 3 - Transcript Excerpt 31:20-25; 32:13-17).

In its Joint Plan, Fund II acknowledges that Income Fund holds a secured claim against its assets.

MPA RE UST'S MTN FOR TRUSTEE, OR EXAMINER                                    -11-

See Joint Plan, p. 10 (docket #141, case no. 09-30788; docket #110, case no. 09-30802).  Fund II originally scheduled Income Fund as a holder of an unsecured claim, and later amended its schedules to reflect the Income Fund debt as a secured claim.  Compare Schedule B with amendment thereto (docket #22 and 42 - case no. 09-30788).  According to the Amended Statement of Financial Affairs filed by Fund II, in the three months prior to filing, Income Fund received payments from Fund II totaling over $367,000.  See Amended Statement of Financial Affairs - Fund II (docket #42).  These payments, made by or at the direction of Mr. Choo[8], inure to the benefit to Mr. Choo personally by freeing his own investments in Income Fund from attachment by the originating lender, Wells Fargo Foothill.  See Amended Statement of Financial Affairs - Fund II - docket #42).  The inter-relationships between Debtor, CMRI, Mr. Choo and Income Fund virtually ensures that no investigation or inquiry will be made to ascertain whether the claim is indeed properly perfected.

### iv.     The Change in Hamilton Creek's Capitalization

The Funds are all members of Hamilton Creek.  See Statement of Financial Affairs for each Debtor.  Although Hamilton Creek was formed by CMRI in January, 2008, CMRI caused Hamilton Creek to take title to two properties (311 Aspen Avenue[9] and the Brisbane Property) within days prior to Hamilton Creek's bankruptcy filing.  See Glosson Declaration.  Pursuant to the Operating Agreement for Hamilton Creek, the entity was capitalized by each of the Funds' respective interest or participation in an $18 million loan made to approximately 8 single purpose entities believed to be projects of one borrower-developer.  See Glosson Declaration - Exhibit 4 (Hamilton Creek Operating Agreement).

Less than one month prior to Fund I's bankruptcy filing, CMRI amended the Operating Agreement.  The amendment changed the capitalization structure provisions of the Operating Agreement by eliminating any reference to the Funds' contribution of their respective interests in the $18 million loan, and substituting new provisions requiring the Funds to instead contribute just $5,000 toward

---

[8]See Glosson Declaration - Exhibit 2 (§ 341 Meeting - Fund 2 - Transcript Excerpt 41:25 to 42:1-2).

[9]Title to 311 Aspen Avenue was previously held for a few months by 15 SSFDEV LLC, a REO formed by CMRI.  CMRI caused 15 SSFDEV LLC to transfer title to 311 Aspen to Hamilton Creek to raise cash.  See Glosson Declaration.

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 17 of 22

Hamilton Creek's capitalization.  <u>See</u> Glosson Declaration - Exhibit 5 (Hamilton Creek Amended

Operating Report).  Thus, Fund I contributed cash totaling $2,532.22, Fund II contributed $717.28, and

Fund III contributed $1,750.  <u>Id.</u>

None of the Funds reported these transactions in their respective Statement of Financial Affairs

nor in their Disclosure Statements.  <u>See</u> Statement of Financial Affairs and Disclosure Statements filed

by the respective Funds.  The timing, change in capitalization, and lack of disclosure reflects the amount

of discretion and control CMRI exerts over the Debtors' as their non-member manager, and the arbitrary

manner in which that management control is exercised.

<b>v.</b>       <b><u>Inherent Conflicts Make it Unlikely that Insider Transactions</u></b>

<b><u>Will Be Investigated</u></b>

Because it is controlled by Mr. Choo, CMRI is burdened by conflicts of interest that at a

minimum interfere with, and at worst make it impossible for CMRI to discharge, the fiduciary duties it

owes to the Debtors as their non-member manager.  As explained by the court in <u>SunCruz Casinos</u> court:

> Fiduciary obligations [of a debtor in possession] include the duty of loyalty and good
> faith which forbid "directors and other business operators from using their position of
> trust and control over the rights of other parties to further their own private interest, either
> by usurping opportunities, holding undisclosed conflicts, or otherwise exploiting their
> position." <u>In re Microwave Products</u>, 102 B.R. at 672.  The willingness of Congress to
> leave a debtor in possession is premised on the expectation that current management can
> be depended upon to carry out the fiduciary responsibilities of a trustee.  And if the debtor
> in possession defaults in this respect, Section 1104(a)(1) commands that the stewardship
> of the reorganization effort must be turned over to an independent trustee.  <u>In re Marvel</u>,
> 140 F. 3d 463, 474 (3d Cir. 1998)(quoting <u>V. Savino Oil</u>, 99 B.R. at 326).

<u>SunCruz Casinos</u>, 298 B.R. at 830.  Various courts have concluded that the presence of such conflicts of

interest, without more, may constitute cause for appointment of a trustee.  <u>See</u> <u>SunCruz Casinos</u>, 298

B.R. at 831 (collecting cases holding that conflicts of interest alone are a sufficient basis to appoint a

trustee), <u>citing</u> <u>In re Cajun Elec. Power Cooperative, Inc.</u>, 74 F.3d 599 (5th Cir. 1996), <u>In re Fiesta</u>

<u>Homes of Georgia, Inc.</u>, 125 B.R. 321, 325 (Bankr. S.D. Ga. 1990), and <u>In re Bellevue Place Associates</u>,

171 B.R. 615, 623 (Bankr. N.D. Ill. 1994).

As noted previously, when Debtors' bankruptcy petitions were filed, CMRI was vested with the

authority to make all decisions regarding monies loaned, how much, to whom, and which of the Funds

will participate.  While exercising management authority over all of the Funds, and burdened by the

Case: 08-32220   Doc# 355   Filed: 12/18/09   Entered: 12/18/09 16:53:45   Page 18 of
22

resultant conflict of interest, CMRI:

-   Caused Fund I to become indebted to Funds II and III and CMRI for over $2.7 million; <u>see</u> Fund I - Schedule F;

-   Caused Fund III to become indebted to Fund II for $1.4 million, and CMRI for $1.1 million; <u>see</u> Fund III - Schedule F;

-   Caused Fund II to enter into intercompany transactions yielding intercompany receivables due from Fund I and Fund III scheduled at over $2.6 million; <u>see</u> Fund II - Schedule B; and

-   Participated in post-petition transactions that caused CMRI to become indebted to Fund II in an amount exceeding $3.8 million, as shown on the "loans to affiliates" line item on the August 2009 Operating Report.

A simple review of the docket confirms that CMRI, the Debtors' non-member manager, has taken no action to investigate or pursue recovery of any intercompany or insider claims since the Debtors' petitions were filed. CMRI's inaction certainly suggests that it is unable to cause the Debtors to take any substantive action directed toward recovery of their intercompany receivables. These facts are further evidence that cause exists in the context of section 1104(a)(1), and militate strongly in favor of the appointment of a trustee under that section. <u>See</u> <u>In re Fiesta Homes of Georgia, Inc.</u>, 125 B.R. 321, 325-26 (Bankr. S.D. Ga. 1990), <u>citing</u> <u>In re L.S. Good & Co.</u>, 8 B.R. 312 (Bankr. N.D. W. Va. 1980)(removal of present management and appointment of trustee is appropriate where there is a strong probability of conflict of interest such as to hinder management's ability to make impartial investigations and decisions in pursuing claims on behalf of the estate); <u>see</u> <u>also</u> <u>Intercat</u>, 247 B.R. at 922-23 (where debtor's manager, his family and closely held corporations were targets of claims held by debtor's estate, court found it "impossible to believe" that the manager would pursue those claims "in the manner that a disinterested person would.")

   d.   **Appointment Is in the Interests of Creditors, Equity Security Holders, and the Estate Because CMRI Has Improperly Used the Chapter 11 Process to Advance its Own Interests**

The chapter 11 process has also enabled CMRI to advance its agenda of buying time to secure additional funding from new or existing investors, eliminating future reporting requirements by reducing the number of investors in each of the Funds to less than 300, while depriving its largest constituency of an opportunity to vote in support or opposition to its efforts to reorganize.

Case: 08-32220   Doc# 355   Filed: 12/18/09   Entered: 12/18/09 16:53:45   Page 19 of 22

i.    **CMRI Has Thwarted Investor Participation Throughout the Chapter 11 Process.**

Investors are the largest constituency in the Debtors' cases. They have been largely ignored. At a minimum, the Debtors have actively and consistently impeded their participation in the chapter 11 process.

CMRI deprived investors of an early opportunity to become engaged in the Debtors' bankruptcy proceedings by failing to serve them with notice of the Fund I bankruptcy filing as required by Rule 2002(d). CMRI gave investors notice of the commencement of the Fund II and Fund III cases, but only after the U.S. Trustee raised the issue of service at the meeting of creditors. See Glosson Declaration. Further, the filing of the list of equity security holders as required by Rule 1007(a)(3) was not timely filed in the Fund I case, and was made under seal in Fund II and Fund III proceedings without prior court approval. See PACER for respective cases.

The Joint Plan filed on behalf of Fund II and Fund III provides a mechanism by which equity security holders can convert their equity to debt after confirmation of the plan. See Joint Plan - Section 5.5 (docket #141, case no. 09-30788; docket #110, case no. 09-30802). The procedure proposed gives CMRI complete discretion over the terms of the conversion and the duration of the conversion period. Because this class is unimpaired and presumed to vote in favor of the Joint Plan, neither Fund II or Fund III are required to solicit the votes from the over 890 investors in Fund II and 700 investors in Fund III. By classifying equity security holders as unimpaired, CMRI has effectively deprived investors from casting a vote in opposition to CMRI's continued management and operations of the Funds.

Nearly 40% of Fund II investors and 30% of Fund III investors had requested redemptions of their interests totaling $18 million and $10 million, respectively. See Glosson Declaration - Exhibit 2 (§ 341 Meeting - Fund 2 - Transcript Excerpt p.15:12-13); Exhibit 3 (§ 341 Meeting - Fund 3 - Transcript Excerpt p.3:24). The Disclosure Statements filed by Fund II and Fund III make no mention of the scope and amount of the investors' pre-petition redemption requests.

Even as recent as the hearing on the Disclosure Statement filed by Fund II and Fund III, investors were given inadequate notice of the continuance of the Disclosure Statement hearing on two occasions. The continuance from November 6 to December 7, and from December 7 to December 14 was all done

MPA RE UST'S MTN FOR TRUSTEE, OR EXAMINER                                    -15-

Case: 08-32220    Doc# 355    Filed: 12/18/09    Entered: 12/18/09 16:53:45    Page 20 of 22

on less than five days notice to investors. The first continuance resulted in at least twenty investors appearing in Court unaware of the continuance. Although a Committee of Equity Security Holders has been appointed, many investors remain interested in the proceedings and as of November, 2009 many investors appeared to be unaware of the Committee's existence.

### ii. CMRI's Actions to Circumvent Classifying Hamilton Creek as Single Asset Real Estate Case

CMRI formed Hamilton Creek in early 2008. See Glosson Declaration - Exhibit 4 (Operating Agreement § 1.1). Approximately one day before causing it to file a chapter 11 bankruptcy petition, CMRI caused Hamilton Creek to take title to two real properties: a parking lot at 311 Aspen Avenue in South San Francisco, and a 144-acre limestone quarry in Brisbane, California, which was at risk of foreclosure by a senior note holder, E & F Financial. See Schedule A - Hamilton Creek. CMRI caused one of the Funds to foreclose on its interest in the Brisbane Property, and promptly caused Hamilton Creek to file for relief under chapter 11 to halt E & F Financial's foreclosure sale. The transfer of title to the Aspen Avenue property also enabled Hamilton Creek to avoid classification of its bankruptcy proceeding as a single asset real estate case.

Bypassing this designation and its accelerated deadlines enabled CMRI to buy additional time to (1) stave off foreclosure by the holder of the first deed of trust, E&F Financial and (2) gain control of the cash flow generated by the recently acquired and primary asset: the Brisbane quarry. Hamilton Creek filed a plan and disclosure statement in late 2008 which it has not advanced towards confirmation, while failing to timely file operating reports for 6 months[10].

### iii. Appointment of a Trustee is in the Interests of Creditors and the Estate.

CMRI's efforts to prevent investors from actively participating in the bankruptcy process, and the real estate transfers it caused to be made into Hamilton Creek to avoid the consequences of having that bankruptcy classified as a single asset real estate case, are good indicators that Debtors' management is not inclined to advance the interests of creditors, equity security holders, or the Debtors' estates.

---

[10]Prompted by the U.S. Trustee's inquiry, Hamilton Creek filed reports for March through September, 2009 on October 22, 2009.

Case: 08-32220   Doc# 355   Filed: 12/18/09   Entered: 12/18/09 16:53:45   Page 21 of 22

1 Appointment of a trustee is therefore appropriate pursuant to 11 U.S.C. § 1104(a)(2).

2      **D.**      **In the Alternative, the Aforementioned Requires the Appointment of an Examiner**

3      If the Court declines to order the appointment of a chapter 11 trustee, then the Court must order

4 the appointment of an examiner. The investigation to be carried out by the examiner may include "any

5 allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the

6 management of the affairs of the debtor." 11 U.S.C. § 1104(c). Assuming, without in any manner

7 conceding, that the foregoing facts do not establish cause for the appointment of a trustee, they are

8 sufficient to warrant the appointment of an examiner.

9 **IV.**   **CONCLUSION**

10      Based upon the foregoing and for the reasons discussed in the Motion, the U.S. Trustee

11 respectfully requests the Court to enter an order directing the U.S. Trustee to proceed with the

12 appointment of a chapter 11 trustee, or in the alternative, to appoint an examiner. The U.S. Trustee

13 further requests that the Court grant such other and additional relief as is appropriate.

14 Dated: December 18, 2009               Respectfully submitted,
                                        Sara L. Kistler, Acting U.S. Trustee

15

16                                       By:   /s/ Julie M. Glosson, 230709  
                                      Attorney for the U.S. Trustee

17

18

19

20

21

22

23

24

25

26

27

28

Case: 08-32220    Doc# 355   Filed: 12/18/09   Entered: 12/18/09 16:53:45   Page 22 of 22