| | |
|---|---|
| HEINZ BINDER, #87908<br>ROBERT G. HARRIS, #124678<br>BINDER & MALTER, LLP<br>2775 Park Avenue<br>Santa Clara, CA 95050<br>Telephone: (408)295-1700<br>Facsimile: (408) 295-1531<br>Email: Rob@bindermalter.com<br><br>Attorneys for Debtor and Debtor In Possession CMR Mortgage Fund II, LLC | IAIN A. MACDONALD (#051073)<br>RENO F.R. FERNANDEZ III (#251934)<br>MACDONALD & ASSOCIATES<br>221 Sansome Street, Third Floor<br>San Francisco, CA 94104<br>Telephone: (415) 362-0449<br>Facsimile: (415) 394-5544<br><br>Attorneys for Debtor and Debtor In Possession CMR Mortgage Fund III, LLC |

PENN AYERS BUTLER (#56663)
ELIZABETH BERKE-DREYFUSS (#114651)
WENDEL, ROSEN, BLACK & DEAN, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036
Telephone: (510) 834-6600
Facsimile: (510) 834-1928

Attorneys for Debtor and Debtor In Possession CMR Mortgage Fund, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>                Debtors.<br><br>☐ Affects **FUND I**<br><br>☐ Affects **FUND II**<br><br>☐ Affects **FUND III**<br><br>X  Affects **ALL FUNDS** | Case Nos. 08-32220 TEC<br>               09-30788 TEC<br>               09-30802 TEC<br><br>Chapter 11<br><br>Date: March __, 2010<br>Time: 9:30 AM<br>Place: Courtroom 23rd floor<br>        235 Pine St.<br>        San Francisco, CA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER AUTHORIZING REIMBURSEMENT OF MANAGER'S EXPENSES AND PAYMENT OF PROFESSIONAL FEES AND RETAINERS**

## I. INTRODUCTION:

Debtors and debtors in possession CMR Mortgage Fund, LLC ("Fund I"), CMR Mortgage Fund II, LLC ("Fund II") and CMR Mortgage Fund III, LLC ("Fund III") collectively, the "Debtors") seek an order of the Court permitting the following:

- Authorization for payment of retainers (or sums toward the completion of retainers) to the McNutt Law Group, LECG, Binder and Malter LLP, MacDonald & Associates, and accountants Armanino McKenna.

- Authorization to make partial payment to the law firms of Stein & Lubin and Wendel, Rosen, Black & Dean on professional compensation already approved.

- Authorization under the terms of the Debtor's operating agreements to repay California Mortgage Realty, Inc. ("CMRI") for (a) secured debt service paid[1], and (b) other expenses advanced by CMRI to the non-debtor REO entities and the Funds themselves.

The Debtors seek to proceed as to the professionals under 11 U.S.C. section 363(b)(1) because none of the proceeds to be used to make payment are cash collateral. As to CMRI, the Debtors contend that CMRI holds an administrative claim resulting from debts incurred through the fulfillment of its duties under the Debtor's Operating Agreements in the form of advances to secured claimants and expenses incurred which were, in fact, beneficial to the estate.

///

---

[1] A portion of which will, in turn, be paid to the lenders CMRI, David Choo and California Mortgage Income Fund, LLC ("CMIF") who made it possible to continue with debt service.

## II. LEGAL ARGUMENT:

### A. The Debtors May, After Notice And A Hearing, Use Unencumbered Proceeds To Pay Professional Compensation And Retainers.

Debtors seek to make the proposed payments to professionals under the authority of 11 U.S.C. section 363(b)(1). The section provides as follows: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."

The Debtors respectfully submit that it is the business judgment standard which circumscribes the use of unencumbered funds, subject to the reasonable views of creditors and the discretion of the Court. In Walter v. Sunwest Bank (In re Walter), 83 B.R. 14 (9th Cir. BAP 1988), the Bankruptcy Appellate Panel of the Ninth Circuit adopted the "business judgment" standard previously enunciated by various other Circuits Courts of Appeal. The 9th Circuit Panel is In re Walter stated as follows:

> . . . for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling or leasing the property outside of the ordinary course of business.

In re Walter 83 B.R. 14, 19 (*quoting* In re Continental Airlines, 780 F.2d at 1226). Section 363 does not require that the Court substitute its own judgment for that of the debtor. See In re Ionosphere Clubs, 100 B.R. 670, 676 (Bankr. S.D.N.Y. 1989)(court will not substitute a hostile witness's business judgment for debtor's unless testimony "established that [the debtor] has failed to articulate a sound business justification for its chosen course"). Rather, the court should ascertain whether the debtor has justified the proposed transaction with sound business reasons. In re Continental Airlines, 780 F.2d at 1226. Whether a trustee has articulated a sufficient business reason to approve a section 363 sale depends on the facts of each case. In re Walter, 83 B.R. at 19-20.

Continental and its progeny suggests that a simple but reasonable justification will suffice.

In the matter at bar, the Debtors have stated that they wish to use unencumbered funds to

- Pay Fund I counsel Wendel, Rosen, Black & Dean, LLC $50,000 on approved fees and costs;

- Pay special counsel Stein & Lubin $40,000 on approved fees and costs;

- Pay the McNutt Law Group and LECG $100,000 as professionals retainers for the Investors' Committee;

- Pay Fund II counsel Binder & Malter, LLC $90,000 in partial completion of its professional retainer; and,

- Pay to Fund III counsel MacDonald & Associates $62,500 to complete its professional retainer.

The Court has approved (or, in the case of Armanino McKenna is being asked to approve) employment for each of the listed professionals. The terms for employment of MacDonald & Associates and Binder & Malter include terms for payment of more of the agreed-upon retainers after notice and opportunity. As to Wendel, Rosen and Stein & Lubin, the Court has already approved the fees and expenses of both firms as reasonable. The Debtors have made the determination that the payment of these essential professionals is required for the cases to continue to function. Ensuring that the professionals are all fully-engaged and paid is particularly important now when the plan and disclosure statement drafting process is in high gear.

Debtors' request to make the proposed payments amounts to a reasoned exercise of the Debtors' business judgment and should be approved.

## B. Repayment Of CMRI And Its Lenders Under The Terms Of Operating Agreement Should Also Be Approved.

The Debtors are parties to Operating Agreements which specifically provide at section 10.8 that "[t]he Manager shall be reimbursed by the Company for ***all organizational and syndication and operating expenses incurred on behalf of the Company including without limitation, out-of-pocket general and administrative expenses of the Company, accounting and audit fees, legal fees and expenses***, postage, and preparation of reports to Members."

The Operating Agreements have not been assumed under Bankruptcy Code section 365, and they cannot be construed as real property leases, so the basis for reimbursement as an administrative claim lies within sections 503(b) and 507 of the Code. Administrative claims are afforded priority under section 503(b) if the debt "both (1) arises from a transaction with the debtor-in-possession and (2) is beneficial to the debtor-in-possession in the operation of the business." In re Jartran, Inc., 732 F.2d 584, 587 (7th Cir.1984) (quotations omitted). "Despite the potentially broad reach of § 503(b), 'administrative priority claims are to be strictly construed because the presumption in bankruptcy cases is that the debtor has limited resources that will be equally distributed to creditors.'" In re Specialty Chem Prods. Corp., 372 B.R. 434, 440 (E.D.Wis.2007) (quoting In re Nat'l Steel Corp., 316 B.R. 287, 299 (Bankr.N.D.Ill.2004)). The moving party bears the burden of showing, by a preponderance of the evidence, its claim is entitled to administrative expense priority. *Id.* (citations omitted).

Here, the payments that CMRI made to WFF with funds supplied by Mr. Choo and CMIF should easily pass the tests set forth above. The payments were made pursuant to the terms of the Operating Agreement. They have prevented collection

activity against the REO entity which the Debtors own in which the estates appear to enjoy equity of $10-$20 million. The Investors' Committee has stipulated to the payment of these amounts because, presumably, it understands the benefit to the estate of having a Manager willing and able to advance the sums required to protect assets when needed. If that ability were lost by denial of the proposed reimbursements then the flexibility that these cases need to succeed will be lost.

CMRI also seeks reimbursement for direct operating expenses that the Operating Agreements authorize it to charge back to the Debtors as part of its fees for management services. The situation is analogous to a personal property lease under which a debtor uses the property during the case. In such a case the estate is liable for the reasonable value of the use and occupancy of the property during the period between filing and assumption or rejection of the unexpired lease. See In re Rhymes, Inc., 14 B.R. 807, 808 (Bkrtcy.D.Conn.1981); 2 Collier on Bankruptcy, ¶ 365.03[2] (15th ed. 1979). The Debtors should therefore be liable for the reasonable value of CMRI's management services.

The presumptively fair rate of compensation is the contract rate, although the court can authorize a different figure. In re Peninsula Gunite, Inc., 24 B.R. 593, 595 (9th Cir. BAP 1982). CMRI simply seeks to have the Debtors pay their share of the $72,205 in U.S. Trustee fees, insurance, temporary services, expert witness fees for an REO entity, a small retainer for special insurance counsel, and the retainer previously paid to MacDonald & Associates. These are "pass through" expenses, and there is no mark-up.

The Debtors have made the case that CMRI's services as Manager to the Debtors are beneficial to the estate, as set forth in the last paragraph of Mr. Seel's

supporting declaration.  Without the office, accounting, managerial, and legal support the Debtors would simply cease to operate and have to complete their administration in Chapter 7.  The expenses which CMRI seeks to have reimbursed also therefore qualify under section 503(b) for administrative treatment and should be reimbursed.

For all the reasons set forth above the Debtors therefore request that the Court grant the motion and authorize it to make all payments as requested.

Dated: March 5, 2010        WENDEL, ROSEN, BLACK & DEAN

                            By:/s/ Elizabeth Berke-Dreyfuss
                                Elizabeth Berke-Dreyfuss
                            Attorneys for CMR Mortgage Fund, LLC

Dated: March 5, 2010        BINDER & MALTER, LLC

                            By:/s/  Robert G. Harris
                                Robert G. Harris
                            Attorneys for CMR Mortgage Fund II, LLC

Dated: March 5, 2010        MACDONALD & ASSOCIATES

                            By:/s/   Reno F.R. Fernandez III
                                Reno F.R. Fernandez III

S:\Clients\California Mortgage Realty Fund II, LLP\Pleadings - CMR II\Managment Fees and Expense Reimbursement\Final Versions Filed 030510\Reimbursements MPA.v7.030510.wpd