McNUTT LAW GROUP LLP
MICHAEL A. SWEET (CSBN 184345)
DALE L. BRATTON (CSBN 124328)
LINDSEY R. MORAN (CSBN 242038)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone:    (415) 995-8475
Facsimile:    (415) 995-8487

Attorneys for Official Committee
of Equity Security Holders

(List of Counsel continued on following page)

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case Nos.  08-32220 TEC |
| | 09-30788 TEC |
| CMR MORTGAGE FUND, LLC, | 09-30802 TEC |
| CMR MORTGAGE FUND II, LLC, | |
| CMR MORTGAGE FUND III, LLC, | Chapter 11 |
| Debtors. | |

☐ Affects **FUND I**

☐ Affects **FUND II**

☐ Affects **FUND III**

☒ Affects **ALL FUNDS**

**EQUITY COMMITTEE AND DEBTORS JOINT PLAN OF REORGANIZATION**
**Dated May 24, 2010**

Date:         [To Be Set]
Time:
Place:        Courtroom 23
              235 Pine Street
              San Francisco, CA 94104

Judge:        The Hon. Thomas E. Carlson

HEINZ BINDER, #87908
ROBERT G. HARRIS, #124678
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408)295-1700
Facsimile: (408) 295-1531
Email: Rob@bindermalter.com

Attorneys for Debtor and Debtor In
Possession CMR Mortgage Fund II, LLC


IAIN A. MACDONALD (#051073)
RENO F.R. FERNANDEZ III (#251934)
MACDONALD & ASSOCIATES
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor and Debtor In
Possession CMR Mortgage Fund III, LLC


PENN AYERS BUTLER (#56663)
ELIZABETH BERKE-DREYFUSS (#114651)
WENDEL, ROSEN, BLACK & DEAN, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036
Telephone: (510) 834-6600
Facsimile: (510) 834-1928

Attorneys for Debtor and Debtor In
Possession CMR Mortgage Fund, LLC

# **TABLE OF CONTENTS**

**Page**

Article I Definitions and Rules of Construction...................................................................1

    A.    Definitions. ...................................................................................................1

    B.    Rules of Construction..................................................................................8

        1.    Defined Terms. ...............................................................................8

        2.    Rules of Interpretation....................................................................9

        3.    Exhibits........................................................................................10

Article II Consolidation of Multiple Debtors .....................................................................10

Article III Classification of Claims and Interests ..............................................................11

Article IV Treatment of Classes of Claims and Interests ..................................................12

    A.    Unclassified – Administrative Expenses and Priority Tax Claims, DIP Financing..................................................................................................12

        1.    Administrative Expense and Priority Tax Claims.......................12

        2.    U.S. Trustee Fees. ........................................................................13

        3.    Professional Fee and Expense Claims..........................................13

        4.    DIP Financing – Repayment. ......................................................13

    B.    Class 1 – Secured Claim of Wells Fargo Foothill.....................................14

    C.    Class 2 – Priority Claims (other than unclassified priority claims). ........18

    D.    Class 3A – General Unsecured Claims. ....................................................18

    E.    Class 3B – Claims for penalty, fine, or forfeiture. ...................................18

    F.    Class 4 – Claims of Equity Interest holders. ............................................18

Article V Treatment of Executory Contracts and Unexpired Leases ................................20

    A.    Rejection If Not Assumed. ........................................................................20

    B.    Approval of Rejections..............................................................................20

    C.    Objections to Rejection of Executory Contracts and Unexpired Leases..................20

    D.    Bar Date for Rejection Damages. ..............................................................21

Article VI Distributions; Disputed Claims ........................................................................21

| | | | |
|---|---|---|---|
| A. | | General. | 21 |
| | 1. | Priority of Distributions. | 22 |
| | 2. | Time of Distributions. | 22 |
| | 3. | Returned Distribution; Notice of Rights. | 22 |
| B. | | Disputed Claims or Equity Interests | 22 |
| | 1. | Objections to Claims or Equity Interests | 22 |
| | 2. | Amendments to Proof of Claim; Proof of Claim Filed After Bar Date. | 23 |
| | 3. | Distribution to Disputed Claims. | 23 |
| | 4. | Disputed Claim Reserve. | 23 |
| | 5. | Estimation of Disputed Claims and Equity Interests. | 24 |
| | 6. | Minimum Distributions; Rounding. | 24 |
| | 7. | Disputes Regarding Distributions. | 24 |
| | 8. | Distribution Of Unclaimed Property. | 24 |

Article VII Means For Execution and Implementation of the Plan ....... 25

| | | | |
|---|---|---|---|
| A. | | General Provisions. | 25 |
| B. | | Creation of the Wind-Down Trust | 26 |
| | 1. | The Wind-Down Trust | 26 |
| | 2. | The Wind-Down Trust Agreement | 27 |
| | 3. | Treatment of Transfer of Assets to the Wind-Down Trust | 27 |
| | 4. | Acceptance by Wind-Down Trust of Obligations under the Plan | 27 |
| | 5. | The Trustee of the Wind-Down Trust | 28 |
| | 6. | The Wind-Down Trust Supervisory Board | 31 |
| | 7. | Disposition of Wind-Down Trust Assets for benefit of beneficiaries | 32 |
| | 8. | Investment Powers of the Trustee | 32 |
| | 9. | Certain Tax Requirements | 33 |
| | 10. | Registry of Beneficial Interests | 33 |
| | 11. | Reporting to Beneficiaries | 33 |

| | | | |
|---|---|---|---|
| | 12. | Attorney-Client Privilege | 34 |
| | 13. | Right to Claims and Actions | 34 |
| | 14. | Limitation of Liability; Indemnification | 34 |
| | 15. | Request Approval of Bankruptcy Court | 35 |
| | 16. | Purpose of the Wind-Down Trust | 35 |
| | 17. | Termination of the Wind-Down Trust | 36 |
| C. | | Formation and Agreement with CMRAM | 36 |
| D. | | Settlement Negotiations Regarding Claims By And Against Manager | 36 |
| E. | | United States Trustee Quarterly Reports | 37 |
| F. | | Status of Committee Post Confirmation | 37 |
| G. | | Post-Effective Date Limited Notice List | 37 |

Article VIII Compensation and Reimbursement of Professional persons ... 38

| A. | Pre-Effective Date Compensation | 38 |
|---|---|---|
| B. | Post-Effective Date Compensation | 38 |

Article IX Retained Jurisdiction ... 39

Article X Wind-Down Trust Successor to Debtors ... 41

Article XI Transfers Under Plan Not Subject To Tax ... 41

Article XII Retention of Rights, Claims and Causes of Action ... 42

Article XIII Amendment and Interpretation of the Plan ... 42

| A. | Amendment | 42 |
|---|---|---|
| B. | Severability | 42 |
| C. | Conditions Precedent | 43 |
| D. | Notice | 43 |

Article XIV Effect of Confirmation and Injunction ... 44

| A. | Binding Effect of Plan | 44 |
|---|---|---|
| B. | Injunction | 44 |
| C. | Discharge | 45 |

Article XV Effect of Acceptance or Rejection of Plan ... 45

iii                                                    JOINT PLAN OF REORGANIZATION

A.    Voting Rights of Classes. ......................................................................45

B.    Reservation of Section 1129(b) Rights to seek Non-Consensual
       Confirmation. ...................................................................................45

17143531.1            iv        JOINT PLAN OF REORGANIZATION

This Chapter 11 plan of reorganization ("Plan") is proposed by the Official Committee of Equity Holders and the Debtors. The Debtors are CMR Mortgage Fund, LLC ("Fund I"), CMR Mortgage Fund II, LLC ("Fund II") and CMR Mortgage Fund III, LLC ("Fund III") (collectively the "Funds" or "Debtors"). Presentation of the Plan in these Chapter 11 cases of the Debtors on a substantively consolidated basis has been authorized by order of the Bankruptcy Court entered on March 31, 2010, and therefore the combined assets and liabilities of all three of the Funds are administered in this single Plan. The Disclosure Statement accompanying this Plan provides an overview of the Funds' consolidated assets and liabilities and contains a summary of this Plan. All creditors and equity interest holders are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No solicitation materials, other than the Disclosure Statement and the Plan, the exhibits attached thereto or referenced therein, and the Ballot, have been approved by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

## Article I

## Definitions and Rules of Construction

**A.    Definitions.**

In addition to such other terms as are defined in other Articles of this Plan, as used in this Plan and the related Disclosure Statement, the following terms (which appear in this Plan and the related Disclosure Statement as capitalized terms) shall have the following meanings:

**1    "Administrative Expense"** means a Claim (a) for costs and expenses of administration of the Chapter 11 Cases of the Funds incurred prior to the Effective Date and allowed under Sections 503(b) or 507(b) of the Bankruptcy Code, including all fees accrued or payable through the Effective Date under 28 U.S.C. Section 1930 and allowed by Final Order, (b) the fees and costs of Professionals incurred after the Effective Date in connection with the preparation and approval of their final applications for compensation and reimbursement of expenses through the Effective Date, and (c) the amounts allowed as compensation to CMRAM as set forth below, and (d) any unpaid amounts owed for advances for expenses by CMRAM or

CMRI after the date of filing of the Bankruptcy Cases and either allowed by the Bankruptcy Court as an administrative expense under Bankruptcy Code section 503(b)(3)(D) or payable after consent thereto by the Committee or Wind-Down Trustee.

2 **"Allowed Claim"** means a Claim as to which:

(a) A proof of claim was (i) timely filed not later than the Claims Bar Date in the Chapter 11 Cases, or any other applicable claim filing deadline, or (ii) deemed filed under 11 U.S.C. §1111(a), or (iii) filed late with permission of the Bankruptcy Court after notice and an opportunity for hearing appropriate in the circumstances; and

(b) Such claim is not a Disputed Claim, or, if a Disputed Claim, such claim has been allowed in whole or in part by a Final Order, provided that any such claim shall be an Allowed Claim only to the extent stated in any such Final Order. Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, no distributions shall be made under the Plan in respect of the disputed portion of any Disputed Claim until there is a Final Order specifying the allowed amount of such claim.

(c) No disputed portion of any claim shall be considered as an Allowed Claim if an objection to the allowance of such claim is made within the time set by the Plan or the Bankruptcy Court, and such objection to claim has not been denied by a Final Order of the Bankruptcy Court.

3 **"Allowed Equity Interest"** means an Equity Interest which is listed in the Schedules and the List of Equity Security Holders under Bankruptcy Rule 1007(a)(3), or proof of interest filed with the Bankruptcy Court, and provided that no objection has been interposed, or if objected to subsequently becomes allowed.

4 **"Ballot"** means the form approved by the Bankruptcy Court for voting on acceptance or rejection of the Plan.

5     **"Bankruptcy Code"** means Title 11 of the United States Code, as it was in effect on the date of filing of the Plan, as amended by any amendments applicable to these Chapter 11 Cases, and also includes Sections 157, 158, 1334, 1408-1412, and 1452 of Title 28 of the United States Code

6     **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of California, San Francisco Division, or any other courts or panels of courts having competent jurisdiction over the Chapter 11 Cases or appeals from orders entered in the Chapter 11 Cases.

7     **"Bankruptcy Rules"** means, collectively, the:  (a) Federal Rules of Bankruptcy Procedure, and (b) the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of California, as in effect at any applicable time.

8     **"Business Day"** means any day that is not a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

9     **"Chapter 7"** means Chapter 7 of the Bankruptcy Code.

10     **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

11     **"Chapter 11 Cases"** means the bankruptcy cases of Fund I, Fund II, or Fund III

12     **"Claim"** means a claim as defined in Section 101(5) of the Bankruptcy Code, against any of the Funds, whether or not Scheduled by a Fund as Debtor and whether or not the subject of a filed proof of claim, and whether or not asserted or allowed.

13     **"Claimant"** means the holder of a Claim.

14     **"Claims Bar Date"** means the deadlines for filing proofs of claim set in the Chapter 11 Cases of Fund I, Fund II, and Fund III by Bankruptcy Local Rule 3003-1, namely March 23, 2009, as to Fund I, and July 27, 2009, as to Fund II and Fund III.

15     **"Claims Objection Deadline"** means the date fixed under this Plan as the last day(s) to object to Claims.

16     **"Class"** means one of the classes of Claims or Equity Interests established under Article II of this Plan pursuant to Section 1122 of the Bankruptcy Code.

**17** **"CMRAM"** means CMR Asset Management, Inc., a California corporation to be formed on or before the Plan Effective Date, for the purpose of contracting with the Wind-Down Trust to provide managerial and administrative services to the Trustee of the Wind-Down Trust. One or more officers of CMRI will initially serve as officers of CMRAM, including Graham Seel, responsible individual for each of the Debtors in the Chapter 11 Cases.

**18** **"CMRI"** means California Mortgage and Realty, Inc., a California corporation, which has been the manager of each of the Funds and all of the REO Entities.

**19** **"Committee"** means the Official Committee of Equity Security Holders appointed by the Office of the United States Trustee in the Chapter 11 Cases of the Funds, as constituted prior to and on the Effective Date. All references to the Committees herein include the duly-appointed members of the Committee.

**20** **"Confirmation"** means the entry of the Confirmation Order.

**21** **"Confirmation Date"** means the date on which Confirmation occurs.

**22** **"Confirmation Hearing"** means the hearing held pursuant to Bankruptcy Rule 3020(b)(2), including any continuances thereof, at which the Bankruptcy Court will consider Confirmation of the Plan.

**23** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan, with any approved amendments to the Plan, under Section 1129 of the Bankruptcy Code.

**24** **"Consolidated Estate"** means the combined bankruptcy estates of Fund I, Fund II, and Fund III, pursuant to the Consolidation Order.

**25** **"Consolidation Order"** means the order of the Bankruptcy Court entered on March 31, 2010, conditionally ordering the substantive consolidation of the bankruptcy estates in the bankruptcy cases of Fund I, Fund II, and Fund III.

**26** **"Debtor"** means Fund I, Fund II, or Fund III as the context may require.

**27** **"Debtor-in-Possession"** means the Debtors when acting in their capacity as Debtor-in-possession prior to the Effective Date pursuant to Section 1107(a) of the Bankruptcy

Code, or the Consolidated Estate after entry of the Consolidation Order but prior to the Effective Date.

**28** **"Disclosure Statement"** means the Disclosure Statement, relating to this Plan, including all exhibits and schedules thereto, as such Disclosure Statement may be amended, modified or superseded, which is approved pursuant to Section 1125 of the Bankruptcy Code by the Bankruptcy Court.

**29** **"Disputed Claim"** means a Claim that is not an Allowed Claim.

**30** **"Disputed Claims Reserve"** means a segregated account, interest-bearing if practical, maintained and administered by the Wind-Down Trustee at a U.S. Trustee-approved depository institution, for the purpose of holding the *pro rata* share of funds attributable to Disputed Claims pending their resolution as allowed or disallowed.

**31** **"Disputed Equity Interest"** or **"Disputed Interest"** means an Equity Interest that is not an Allowed Equity Interest.

**32** **"Effective Date"** means (a) if no stay of the Confirmation Order is at any time in effect, the sixtieth (60th) calendar day after entry of the Confirmation Order; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day, after the later of (i) the date on which such stay is vacated, or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reserve or materially modify the Confirmation Order and (ii) the sixtieth (60th) calendar day after the entry of the Confirmation Order; provided, that the Committee in its discretion may declare the Effective Date earlier and the Effective Date as so declared shall have full force and effect for all purposes.

**33** **"Equity Interest"** means a Membership Interest in any of the three Funds, as well as any claim for redemption not completed, purchase or sale of a Membership Interest, rescission of such a purchase or sale, a claim for damages arising from the purchases or sale of a Membership Interest, a claim for reimbursement or contribution on account of a Claim related to a Membership Interest, and any other asserted right predicated on a Membership Interest in a Fund.

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 11 of 53

1      **34**     **"Estate"** means the estate created in the Chapter 11 Case of each Fund on its

2  respective Petition Date pursuant to Section 541 of the Bankruptcy Code.

3      **35**     **"Estimated Amount"** means, with respect to any Disputed Claim, or group of

4  Disputed Claims, the amount of such Claim or Claims, and with respect to any Disputed Interest,

5  or group of Disputed Interests, the amount of such Interest or Interests as estimated under the

6  provisions of this Plan.

7      **36**     **"Final Order"** means an order, decision, or judgment of the Bankruptcy Court, as

8  of the date entered on its docket, which has not been reversed, stayed, modified, or amended,

9  which is in full force and effect, and as to which (a) the time to appeal or seek certiorari has

10  expired and no appeal or petition for certiorari has been timely filed, or (b) any appeal that has

11  been or may be taken or any petition for certiorari that has been or may be filed has been resolved

12  by the highest court (or any other tribunal having appellate jurisdiction over such order, decision

13  or judgment) to which the order, decision or judgment was appealed or from which certiorari was

14  sought.

15      **37**     **"General Unsecured Claim"** means any unsecured Claim against a Fund, other

16  than an Administrative Expense, a Priority Tax Claim, a Priority Claim, or an unsecured Claim for

17  a penalty, fine, or forfeiture within the meaning of Section 726(a)(6) of the Bankruptcy Code.

18      **38**     **"Notice of Effective Date"** means the notice to be mailed by the Wind-Down

19  Trustee to the Limited Notice List and all holders of Claims against and Interests in the Funds, and

20  all necessary governmental agencies notifying them of (a) entry of the Confirmation Order, (b) the

21  occurrence of the Effective Date, (c) the rejection of executory contracts and unexpired leases as

22  provided in this Plan and the deadline for Claims relating to any rejected executory contracts and

23  unexpired leases which were not rejected prior to the Effective Date, (d) the deadline for filing

24  motions for allowance of Administrative Expenses arising on or after the Petition Date, through

25  the Effective Date as provided in this Plan, and (e) the procedure to be followed for inclusion on

26  the Post-Effective Date Limited Notice List.

27

28

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:16    Page 12 of
53

**39** **"Petition Date"** means November 18, 2008, for Fund I, and March 31, 2009, for Fund II and Fund III, the date the Debtors filed their respective petitions for relief under Chapter 11 of the Bankruptcy Code.

**40** **"Plan"** means this Joint Plan of Reorganization, either in its present form or as it may be altered, amended, supplemented or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**41** **"Post-Effective Date Limited Notice List"** means those persons listed on the Post-Effective Date Limited Notice List created pursuant to the procedures set forth in this Plan.

**42** **"Professionals"** mean those persons, such as attorneys and accountants, employed during the Chapter 11 Cases by the Debtors, the Committee, and by the Trustee and CMRI or CMRAM post-Confirmation.

**43** **"REO Entities"** means the single purpose real-estate entities owned by the Debtors as listed on Exhibit B to this Plan.

**44** **"Retained Claims and Defenses"** means all claims, causes of action, and defenses, including: counterclaims; rights of offset or recoupment; objections to Claims and Equity Interests; objections to the validity, priority, amount, allowance, or classification of any Claim or Equity Interest; rights to seek equitable or contractual subordination of Claims; and avoidance and recovery of prepetition or postpetition transfers (including but not limited to those arising under Bankruptcy Code sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553), which claims, causes of action, and defenses are against, arise out of, or are related to any of the following:

    (a)    All defenses, counterclaims, third party claims, offset claims, rights of recoupment, causes of action for equitable or contractual subordination, indemnity claims and coverage claims arising out of or related to any Claim against the Funds, whether based on the Bankruptcy Code or any applicable law;

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:13    Page 13 of 53

(b)     All claims related to taxes, and rights to file tax returns and amended returns and to seek tax determinations, including, without limitation, tax loss carryback claims, net operating loss claims, determinations of basis or depreciation, overpayment claims, offset and counterclaims;

(c)     All claims, causes of action and defenses against or with respect to financial institutions and any other person for the turnover of funds of, or due to, an Estate;

(d)     All rights, causes of action, defenses, claims, powers, privileges and licenses of the Consolidated Estate, any Estate, and the Debtors;

(e)     All causes of action, claims and defenses arising under the Plan, and the Bankruptcy Code;

(f)     All rights, claims, causes of action and defenses for coverage in or under any and all insurance policies of the Debtors, or any of them;

**45**     **"Scheduled"** means set forth in the Schedules of the Debtor.

**46**     **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders filed by the Debtors pursuant to the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

**47**     **"Secured Claim"** means a Claim that is secured by a valid unavoidable lien on real or personal property of the Consolidated Estate and, where specified herein, property held by an REO entity, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, of the Consolidated Estate's interest in the property of a Debtor that secured payment of the Claim.

**48**     **"Tax Claim"** means a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code, including interest and penalties, to the extent allowed.

**49**     **"Unclaimed Property"** has the meaning set forth in Section VI.B.8 below.

**B.**     **Rules of Construction.**

1.     <u>Defined Terms.</u>

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 14 of 53

Any term used in this Plan that is not defined in this Plan but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

2.   <u>Rules of Interpretation.</u>

For purposes of this Plan:

(a)   Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

(b)   Any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in the form or substantially on the terms and conditions as delivered and filed on or before the date of the Confirmation Hearing;

(c)   Any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented through and including the Confirmation Date with the express written consent of the Committee and Funds as proponents of this Plan and all other necessary or appropriate parties;

(d)   Unless otherwise specified in a particular reference, all references to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan;

(e)   Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(f)   All exhibits to this Plan are incorporated herein, regardless of when those exhibits are filed;

(g)   Wherever the terms of the Confirmation Order, or the Plan, contain a specific clause regarding a particular provision, such specific clause shall

17                                                                    JOINT PLAN OF REORGANIZATION

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 15 of 53

control over any general provision; provided, however, that the whole of each of the Confirmation Order and the Plan shall be taken together to give effect to every part thereof, if reasonably practicable.

(h)  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

(i)  All references in the Plan to any one of the masculine, feminine and neutral genders shall be deemed to include references to each other such genders.

(j)  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Any reference to "day" or "days" shall mean calendar days.

3.  Exhibits.

All Exhibits to this Plan are incorporated by reference into and are made a part of this Plan.

## Article II

## Consolidation of Multiple Debtors

The Bankruptcy Court has, by its order entered on March 31, 2010, conditionally substantively consolidated the bankruptcy estates of the three Funds into a single entity – the Consolidated Estate – for all purposes under this Plan.  Accordingly, for purposes of classification, voting, and distributions under this Plan, (a) all assets and liabilities of the Funds shall be deemed merged so that all of the assets of all of the Funds shall be available to pay all of the liabilities of all of the Funds as if they were one entity, (b) any obligation of any of the Funds and all guarantees of such obligation by or enforceable against any of the Funds and any joint and several liability of the Funds shall be treated as though they were a single obligation in the amount of the obligation owed by the primary obligor, (c) any Claim filed or to be filed against any of the Funds in connection with any such obligation and any such guarantees or any such joint and several liability shall be treated as if they were a single claim against the primary obligor, (d) all such guarantees of the Funds as to each other shall be deemed and extinguished, (e) all Claims of any

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 16 of 53

Fund against any other Fund shall be deemed cancelled and extinguished, and (f) no distributions shall be made under the Plan on account of any Interests of any Fund in one of the other Funds (i.e. an inter-Fund Interest).

This consolidation of the bankruptcy estates of the Funds does not, and shall not, waive, release, or extinguish any of the Avoidance Actions or Retained Claims provided for in Section XII below and shall preserve any and all liens recorded as to property of the Estates for the benefit of the Consolidated Estate and its creditors and interest holders. To the extent that any Fund is a necessary party to commence or prosecute an Avoidance Action or Retained Claim, the Wind-Down Trustee may sue or prosecute such action or claim in the name of the relevant Fund.

On and after the Effective Date, the Chapter 11 Cases shall be administered as a single case.

## Article III

## Classification of Claims and Interests

The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax claims) and Interests for all purposes, including voting, confirmation, and distribution pursuant to this Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date of the Plan.

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Unclassified | Administrative Claims and Priority Tax Claims | Receive treatment prescribed by the Bankruptcy Code – Unimpaired – not entitled to vote on Plan |
| 1 | Secured Claim of Wells Fargo Foothill | Impaired – entitled to vote on Plan |
| 2 | Priority Claims other than unclassified claims | Unimpaired – not entitled to vote on Plan |

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 17 of 53

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| 3A | General Unsecured Claims | Impaired – entitled to vote on Plan |
| 3B | Claims for penalty, fine, or forfeiture | Impaired – entitled to vote on Plan |
| 4 | Claims of Equity Interest holders in the three Funds | Impaired – entitled to vote on Plan |

Disputes regarding the proper classification of Claims or Interests not specifically classified in this Plan shall be resolved pursuant to the procedures established by the Bankruptcy Code and Bankruptcy Rules and other applicable law, the Bankruptcy Court, and this Plan; such resolution shall not be a condition precedent to Confirmation or consummation of this Plan.

Classes 1, 3A, 3B, and 4 are impaired within the meaning of Section 1124 of the Bankruptcy Code and shall be entitled to vote to accept or reject this Plan. Class 2 is unimpaired and, pursuant to Section 1126(f) of the Bankruptcy Code, is conclusively presumed to have accepted this Plan.

## Article IV

### Treatment of Classes of Claims and Interests

A.    **Unclassified – Administrative Expenses and Priority Tax Claims, DIP Financing.**

1.    Administrative Expense and Priority Tax Claims.

Each Administrative Expense and Tax Claim (other than Professional Fee Claims and DIP Financing Claims) that is an Allowed Claim shall be paid in full on the later of the Effective Date or the date such Administrative Expense becomes an Allowed Claim; provided, however, that Administrative Expenses representing liabilities incurred in the ordinary course of business by the Debtor shall be paid out of the Consolidated Estate in accordance with the terms and conditions of any agreements relating thereto. Payment on an Administrative Expense may be deferred to a date later than the Effective Date if so agreed between the Claimant and the Committee (if prior to the Effective Date) or between the Claimant and the Wind-Down Trustee if after the Effective Date).

/ / /

2.      U.S. Trustee Fees.

Any amount owed to the Office of the U.S. Trustee in respect of fees payable under Section 1930 of Title 28, U.S. Code, as determined by the Bankruptcy Court at the Confirmation Hearing if necessary, shall be paid in full on the Effective Date. All unpaid fees due to the United States Trustee from the Petition Dates through the calendar quarter in which the Effective Date occurs shall be paid on the Effective Date by the Wind-Down Trust Trustee and shall be based upon all Distributions by the Estate on or prior to the Effective Date. Commencing with the calendar quarter following the quarter in which the Effective Date occurs, the Wind-Down Trust Trustee shall pay to the United States Trustee from the assets of the Wind-Down Trust such amounts as are required to be paid under 28 U.S.C. Section 1930(a)(6) until the Chapter 11 Cases are converted, dismissed, or closed. The fees payable under this section of the Plan shall, pursuant to the Consolidation Order, be paid on account of the single, Consolidated Estate. No U.S. Trustee's fees shall be payable for any period during which the Consolidated Estate and the Bankruptcy Cases are closed notwithstanding any later re-opening thereof.

3.      Professional Fee and Expense Claims.

Professional Fee Claims shall be paid after appropriate fee applications or motions for approval are presented and ruled upon under the provisions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, and then within 30 days of an order determining the allowed amount of such Claims, unless a later date for payment is consented to by the claimant.

4.      DIP Financing – Repayment.

Debtor in Possession Financing ("DIP Financing") obtained by the Funds prior to the Effective Date will be treated under the Plan according to the DIP Financing terms, which are summarized as follows and affirmed hereby as an obligation of the Consolidated Estate and Wind-Down Trust:

(a)      Liens, Payments, Or Other Adequate Protection: Noteholders are to receive administrative priority under Bankruptcy Code Section 507(a)(2) subject to a carve-out for all allowed fees and costs of estate professionals and remain

1                                at all times junior to all secured claims as to the assets securing those

2                                claims.  The DIP Financing is not secured by any lien.

3        (b)     <u>Loan Amount</u>: $500,000 minimum as to each of Fund II and Fund III to $10

4                   million maximum combined for both Funds.

5        (c)     <u>Interest Rate</u>: 12% *per annum*.

6        (d)     <u>Maturity Date</u>: December 31, 2014.

7        (e)     <u>Events of Default</u>: Non-payment of principal plus interest at maturity.

8        (f)     <u>Borrowing Conditions</u>: Minimum participation of loans totaling $1 million

9                   and approval of the U.S. Bankruptcy Court (which has been obtained).

**B.     Class 1 – Secured Claim of Wells Fargo Foothill.**

Class 1 consists of the secured claim of Wells Fargo Capital Finance, Inc. ("WFCF"), in the principal a mount of $22,153,359 and together with any interest, fees and other expenses owed thereon the "Obligation."

The WFCF Secured Claim is briefly described as follows.  In 2006, Fund II sought a loan to partially fund a loan to a third party borrower.  At that time, CMR Income Fund, LLC ("CMRIF") had an existing loan facility with WFCF, then known as Wells Fargo Foothill, Inc. and WFCF was willing to and did increase its loan facility with CMRIF by $25 million (the "WFCF Term Loan"), in order to facilitate a loan from CMRIF to Fund II.  Accordingly, in May 2006, CMRIF drew on the WFCF Term Loan and advanced those funds to Fund II. CMRIF's obligations to WFCF – including the WFCF Term Loan – are secured by a first priority lien on all assets of CMRIF, including CMRIF's and Fund II's respective first priority security interest in the Wheatland Loan and the Wheatland Property.

The security interests and lien rights granted to WFCF in support of the Term Loan are provided in that certain Pledge And Security Agreement dated as of May 26, 2006 among Fund II as Pledgor and WFCF and CMRIF as Secured Parties.  The lien and security interests granted to WFCF attach to the following collateral:

**Grant of Security Interest**. As collateral security for the prompt and complete payment and performance of the Obligations when due, Pledgor hereby (i) pledges, transfers, hypothecates and assigns to Secured Party, and (ii) grants to Secured Party, a continuing first priority lien on and security interest in, all of Pledgor's right, title, and interest in and to the following, whether now or hereafter existing or acquired (the "Collateral"):

(a)    Promissory Note, dated as of May 25, 2006, in the original principal amount of Forty Eight Million Dollars ($48,000,000), executed by Eagle Meadows of Wheatland 187, LLC, Eagle Meadows of Wheatland 130, LLC and Eagle Meadows of Wheatland 115, LLC payable to the order of Pledgor (the "EMW Note"), the Deeds of Trust (as defined in the EMW Note), the Other Security Documents (as defined in the EMW Note) and any and all other documents evidencing or securing the EMW Note (collectively, the "Loan Documents"); and

(b)    all Proceeds of any of the foregoing.

Fund II utilized the $25 million advance from CMRIF and $23 million of its own funds to make the loan of $48 million ("Wheatland Loan") to the third-party borrower ("Wheatland Borrower"), which loan was secured by, among other things, approximately 435 acres of land in Wheatland, California (the "Wheatland Property"). Funds I, II and III also made additional loans to the Wheatland Borrower, secured primarily by liens on other real property: 1 Quarry Road, Brisbane, California (the "Brisbane Property"); and 900 acres in Casa Grande, Arizona (the "Casa Grande property"). WFCF also took a lien on Fund II's interests as junior lienholder against the Casa Grande Property, and against the Brisbane Property. The latter lien was released when Fund II released its junior note in connection with the foreclosure of the Brisbane Property through which the Funds became the owners of Hamilton Creek LLC.

The Wheatland Borrower defaulted on its obligations, and the third priority lienholder foreclosed on October 10, 2008. Thereafter, the Wheatland Property has been owned by Wheatland Holdings, LLC, an REO entity owned by the Funds. WFCF holds a lien against Fund II's first priority lien and Fund II's interest in Wheatland Holdings, by reason of the Pledge Agreement. The obligation owed to WFCF has matured, and absent satisfactory treatment of its claim in the Plan, WFCF would likely seek to foreclose on the first and second priority liens, which action would cause the Funds to lose their interest in the underlying Wheatland Property.

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 21 of 53

The Committee and Debtors believe that the property has substantial value, with medium-term prospects of realizing on that value. In addition, despite Fund II's junior position in the Brisbane Property and the Casa Grande Property, the Committee and Debtors also believe these could ultimately have significant value.

The Plan proposes a treatment of the WFCF Secured Claim that protects the realizable value of the Wheatland Property. WFCF has agreed to a resolution of the Obligation it holds with the following economic elements (the agreement relating to such arrangement being the "Participation Agreement"):

(1) The Funds or the Wind-Down Trust will purchase a participation in the Obligation, as described in the Participation Agreement, on or before June 30, 2010 or such other date as WFCF in its sole discretion may consent, for a purchase price of $2,000,000, together with any unpaid accrued interest. This participation interest will be junior to the interest of WFCF, and will be held by the Wind-Down Trust under the Plan.

(2) The Funds or Wind Down Trust may purchase WFCF's remaining interest in the Obligation for an additional payment of $10,500,000 on or before March 31, 2011. If such purchase occurs, this would result in the Funds or the Wind Down Trust obtaining a 100% interest in the Obligation, and upon receipt of the $10,500,000 payment WFCF would accordingly release all of its lien interests in the collateral securing the Obligation. Interest paid to WFCF during the period from July 1, 2010, through March 31, 2011, would be credited against principal outstanding on the Obligation.

(3) WFCF will forbear from exercising any rights and remedies on account of the Obligation from July 1, 2010, through March 31, 2011, absent the occurrence of certain events of default including without limitation, a) failure to make any interest payment under the Loan Documents (for the Term Loan) when due, b) conversion of the Funds' Chapter 11 Cases to Chapter 7 cases, c) other defaults under the Loan Documents, d) failure by the Funds or the Wind Down Trust to enter into the Participation Agreement by June 30, 2010, or such other date as WFCF may agree to in its sole discretion, or (e) failure to make any payment under the

Participation Agreement on or before the date such payment is due.)

(4)     Other than as otherwise provided under the Participation Agreement, WFCF will continue to have, and be entitled to exercise, all rights and remedies under its credit and security agreements with CMRIF and the Funds including the Pledge Agreement.  If the participation transaction is not performed in full by the Funds or the Wind-Down Trust before March 31, 2011, WFCF will, as of March 31, 2011, be entitled to take all enforcement actions, including but not limited to foreclosure, on any and all of its security interests in collateral for the Obligation, and neither the Funds nor the Wind-Down Trust shall take any action to prevent or hinder such enforcement.  No provision of this Plan shall in any respect bar such enforcement actions by WFCF.  Under the Plan, the WFCF Secured Claim will be paid in full on or before April 1, 2011.

(5)     The amount of the Obligation, and the validity, first priority, and enforceability of WFCF's liens and rights against all collateral set forth in that certain Loan and Security Agreement, dated as of August 11, 2005, by and among CMRIF, California Mortgage and Realty, Inc., and WFCF, as amended, and all other related agreements, notes, deeds of trusts and other documents executed in connection thereof, each, as amended (including without limitation, that certain Pledge and Security Agreement, dated as of May 6, 2006, among WFCF, CMRIF, and Fund II, as amended), are hereby affirmed, are not disputed, and are not affected by this Plan (except as provided in the Participation Agreement), notwithstanding any other provision of this Plan..

(6)     The Participation Agreement will be filed prior to Confirmation of the Plan, and shall be enforceable as an agreement made hereunder.

The Committee regards this treatment of the WFCF Secured Claim as advantageous to the Wind Down Trust.  It obtains needed forbearance from possible foreclosure that would result in loss of the Wheatland Property, and also offers the possibility of a significantly discounted payoff of the obligations otherwise owed on the WFCF Secured Claim.

The WFCF Secured Claim is "impaired" within the meaning of the Bankruptcy Code and will vote on acceptance of the Plan.

**C. Class 2 – Priority Claims (other than unclassified priority claims).**

Each Priority Claim that is an Allowed Claim shall be paid in full on the later of the Effective Date, or within 30 days of the date such Priority Claim becomes an Allowed Claim if later. Payment on a Priority Claim may be deferred to a date later than the Effective Date if so agreed between the Claimant and the Committee (if prior to the Effective Date) or between the Claimant and the Wind-Down Trustee if after the Effective Date).

**D. Class 3A – General Unsecured Claims.**

Each Allowed Class 3A Claim shall be paid in full, with interest at the federal legal rate or such other rate as the Court may direct, from the relevant Fund petition date to the date of payment (i) within 180 days of the Effective Date, unless otherwise agreed between the holder of such Claim and the Wind-Down Trustee, or (ii) if later, within 30 days after such Claim becomes an Allowed Claim.

**E. Class 3B – Claims for penalty, fine, or forfeiture.**

Each Allowed Class 3B Claim shall be paid in full, with interest at the federal legal rate or such other rate as the Court may direct from the relevant Fund petition date to the date of payment (i) within 180 days of the Effective Date, unless otherwise agreed between the holder of such Claim and the Wind-Down Trustee, or (ii) if later, within 30 days after such Claim becomes an Allowed Claim.

**F. Class 4 – Claims of Equity Interest holders.**

1. On the Effective Date, the Funds shall be dissolved, and their Equity Interests shall be converted into Beneficial Interests in the equity class of the Wind-Down Trust. The conversion shall be calculated as follows:

    a) The Equity Interest holder's percentage interest in each Fund in which the holder has a Member Interest as of the Plan Effective Date, shall be determined by reference to the Fund's books and records. The ratio of the Equity Interest holder's account value to the total of all Equity Interest holders' account values for the Fund in which the holder holds an interest as

of the Plan Effective Date, shall be the Equity Interest holder's "Percentage Interest" in that Fund.

b) The Equity Interest holder's Percentage Interest in a Fund shall be multiplied by 0.224185 if the interest is in Fund I, by 0.474160 if the interest is in Fund II, and by 0.301025 if the interest is in Fund III. The result shall be the Equity Interest holder's Beneficial Interest, which is their percentage share of the Wind-Down Trust's equity.

c) When an Equity Interest holder has more than one account in a Fund and/or accounts in more than one Fund, such holder's accounts shall each be converted to Beneficial Interests in the Wind-Down Trust as provided above.

d) The Wind-Down Trust will recognize the ownership of an Equity Interest holder's Beneficial Interest(s) based upon the Funds' books and records as of the Effective Date. After the Effective Date, transfers of ownership of an Equity Interest holder's Beneficial Interest will only be recognized by the Wind-Down Trust upon valid, written notice of such transfer to the Wind-Down Trustee. The Wind-Down Trustee may provide appropriate forms for this purpose.

e) The Wind-Down Trust will make distributions (consistent with the terms of this Plan) to the owners of record of the Equity Interest holder's Beneficial Interest as shown in the registry of Beneficial Interests maintained by the Wind-Down Trustee.

2. The Beneficial Interests in the Wind-Down Trust shall receive distributions as provided under the terms of the Wind-Down Trust. In general, Beneficial Interests will receive distributions, net of expenses and according to the proportion of their Beneficial Interests to the total of the equity class of the Trust, from time to time as asset sales and other realizations permit, subject to the treatment of classes superior to equity as provided above, ongoing expenses of the

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 25 of 53

Wind-Down Trust including – in the Wind-Down Trustee's discretion – protective and development expenses of Trust property, and both legally required and prudent reserves.  A final distribution, whether it results in recovery of less or more than the aggregate of all Claims of Equity Interest holders, will be made on Claims of Equity Interest holders – if not before – at or about the time of the end date of the Wind-Down Trust.  This sub-section is qualified in its entirety by reference to the detailed provisions for the Wind-Down Trust in Article VII below.

## Article V

## Treatment of Executory Contracts and Unexpired Leases

**A.      Rejection If Not Assumed.**

As of the Effective Date, each executory contract and unexpired lease not previously rejected by operation of law or by prior Final Order of the Bankruptcy Court, and not expressly assumed on or before to the Effective Date or the subject of a pending motion to assume as of the Effective Date, is rejected.

**B.      Approval of Rejections.**

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of the executory contracts and unexpired leases as provided for in this Plan, pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, as of the Effective Date.

**C.      Objections to Rejection of Executory Contracts and Unexpired Leases.**

Any party in interest wishing to object to the rejection of an executory contract or unexpired lease identified for rejection as provided for in this Plan shall, within the same deadline and in the same manner established for filing objections to Confirmation, file and serve any objection to such rejection.  Failure to file any such objection within the foregoing time period shall constitute consent to the rejection to the extent that such contract or lease is an executory contract or unexpired lease.  Failure to file a timely objection shall not constitute a waiver of any claims, rights or damages which a party may hold as a result of any such rejection, so long as such claims are asserted timely under Section IV.D. hereof.

/ / /

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:15    Page 26 of 53

**D.  Bar Date for Rejection Damages.**

If the rejection of an executory contract or unexpired lease pursuant to this Article IV gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 2A (General Unsecured Claims); provided, however, that any General Unsecured Claim arising from an executory contract or unexpired lease rejected under this Plan shall not be enforceable against the Consolidated Estate or Wind-Down Trust unless a proof of Claim is filed and served on the Wind-Down Trustee and the United States Trustee within thirty (30) days after the mailing of the Notice of Effective Date.

**E.  Insurance Policies Are Assumed Under the Plan.**

Notwithstanding any other provision of this Plan, any insurance policies under which any of the Funds are the owner or a named insured or have any beneficial interest in are not rejected under this Plan, but are hereby assumed and continued in force.

**F.  Adoption Of REO Operating Agreements As Modified**

The LLC Operating Agreements of the REO Entities shall be adopted by the Wind-Down Trust and performed as if assumed, subject to the following condition, to which the Manager under those Agreements shall expressly consent in writing:

All rights, power, and duties – including without limitation all powers to receive, handle, and disburse monies – shall be exercised only by the Wind-Down Trustee, who shall be deemed to have delegated them to the Manager but subject in all respects to the authority, oversight, and budgetary control of the Wind-Down Trustee and the Manager shall take no material act or omission without the express written consent of the Trustee.

## Article VI

## Distributions; Disputed Claims

**A.  General.**

Distributions shall be made by the Trustee, and shall be delivered by First Class United States Mail, or by other equivalent or superior means as determined by the Trustee.

/ / /

1.    <u>Priority of Distributions</u>.

Distributions to the holders of Allowed Claims and Allowed Equity Interests shall be made in such priority and such amounts as are provided by this Plan or in such lesser priority and amounts as agreed to by the holder.

2.    <u>Time of Distributions</u>.

Distributions to the holders of Allowed Claims and Allowed Equity Interests shall be made at such time as is provided by this Plan or the Wind-Down Trust Agreement or at such later time as agreed to by the holder.

3.    <u>Returned Distribution; Notice of Rights</u>.

Notwithstanding any other provision of the Plan, the Trustee may provide notice of rights to a Distribution in place of a Distribution to any holder of an Allowed Claim or Allowed Equity Interest if (a) a prior distribution to the holder was returned as undeliverable without a proper forwarding address and (b) the holder has not subsequently provided a new address to the Trustee. Such a notice shall be treated as a cash distribution for purposes of determining whether it becomes Unclaimed Property.

**B.    Disputed Claims or Equity Interests.**

1.    <u>Objections to Claims or Equity Interests</u>.

Following the Effective Date, the Trustee shall be authorized, and vested with the exclusive right, to object to any and all Claims or Equity Interests, and to initiate, file, and prosecute such objections on behalf of the Consolidated Estate so as to have the Bankruptcy Court determine the allowed amount, if any, of such Claims or Equity Interests to be paid under this Plan. All objections to Claims or Equity Interests shall be filed with the Court and served upon the holder of the Claim no later than one hundred eighty (180) days after the Effective Date. The Trustee shall be entitled to withdraw, settle, or compromise any such objections in his or her discretion, with the approval of the Wind-Down Trust Supervisory Board to the extent provided in the Wind-Down Trust Agreement, without notice, a hearing, or approval of the Court. The Court shall retain jurisdiction to adjudicate any objection to a Claim or Equity Interest, any counterclaim

Case: 08-32220   Doc# 554   Filed: 05/24/10   Entered: 05/24/10 23:01:18   Page 28 of 53

1  and any adversary proceeding related to a Claim or Equity Interest.

2      2.    <u>Amendments to Proof of Claim; Proof of Claim Filed After Bar Date</u>.

3      Any Proof of Claim that was required to be filed by the Claims Bar Date or the

4  Administrative Claims Bar Date but was not so filed shall be deemed disallowed without further

5  action by the Trustee or order of the Court.

6      3.    <u>Distribution to Disputed Claims</u>.

7      No payments or distributions shall be made on account of any portion of a Disputed Claim

8  or Disputed Equity Interest unless all objections to such Claim or Equity Interest have been

9  withdrawn, settled, or resolved by final, non-appealable order of the Bankruptcy Court.

10  Distributions on account of Allowed Claims or Equity Interests shall be made only to the extent of

11  such allowance. Distributions on account of Allowed Claims or Equity Interests to which an

12  objection was filed shall be made as soon as practical following allowance. Under no

13  circumstances will Distributions be made on account of Claims or Equity Interests that are not

14  allowed.

15      4.    <u>Disputed Claim Reserve</u>.

16      Upon each Distribution to holders of Allowed Claims of equal or junior priority, the

17  Disbursing Agent also shall compute the amount of the Distribution that would have been made to

18  holders of Disputed Claims had the Disputed Claims been allowed by using the Disputed Claims

19  Amount. The amount computed shall be held by the Trustee as the "Disputed Claims Reserve."

20  Provided, however, that the Trustee may, with Bankruptcy Court Approval, elect to hold back a

21  smaller sum as to a particular Disputed Claim having made the determination that adequate funds

22  will later be available to pay the holder of such Disputed Claim. No holder of a Disputed Claim

23  shall have any right to funds reserved with respect to such Claim or Interest unless and until such

24  time as it is allowed, but shall, pending resolution of the objection, be deemed to have a contingent

25  beneficial interest in the Wind-Down Trust. This provision shall apply equally to Disputed Equity

26  Interests.

27      After all Disputed Claims are either allowed or disallowed pursuant to a Final Order or by

28

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 29 of 53

operation of the provisions of this Plan, the Trustee shall apply any remaining funds in the Disputed Claims Reserve to the purposes of this Plan and the Wind-Down Trust.

5.    Estimation of Disputed Claims and Equity Interests.

For the purposes of effectuating the provisions of this Plan, the Court may estimate the amount of any Disputed Claim or Disputed Equity Interest pursuant to section 502(c), and the amount fixed or liquidated by a Final Order shall be deemed to be an Allowed Claim or Equity Interest pursuant to Section 502(c) for purposes of making Distributions.

6.    Minimum Distributions; Rounding.

No payment of less than one thousand dollars ($1,000.00) shall be made by the Wind-Down Trustee to any holder of an Allowed Claim or Allowed Interest, but instead amounts less than that minimum shall be cumulated and distributed at the time of the next distribution at which the claimant would be entitled to receive more than this minimum payment.  The Wind-Down Trustee may waive this requirement as to a particular distribution if a request therefor is made in writing within 30 days after the distribution date.  Notwithstanding the foregoing, a payment of less than one thousand dollars shall be made when it is the only payment that will be made on an Allowed Claim or Allowed Interest, or it is the final payment that will be made on an Allowed Claim or Allowed Interest.

The Trustee may round the amount to be received by any holder of an Allowed Claim or Equity Interest down to the nearest dollar.

7.    Disputes Regarding Distributions.

In the event of a dispute as to the right to receive any payment or distribution to be made under this Plan, the Trustee may either defer such payment or distribution until the dispute is resolved or interplead the amount of the payment or distribution for resolution of the dispute by the Court.  The Court shall retain jurisdiction to adjudicate such disputes.

8.    Distribution Of Unclaimed Property.

Subject to any present or prior obligations of the Debtors under State of California escheatment laws, any distribution under the Plan which is unclaimed ("Unclaimed Property")

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 30 of
53

shall be deposited into the Disputed Claims Reserve to be held for the benefit of the holders of Allowed Claims and Interests under the terms of the Plan. Upon presentation of proper proof by a Claimant entitled to such Unclaimed Property, the Unclaimed Property due the Claimant shall be released from the Disputed Claims Reserve and paid to such Claimant.

Notwithstanding the foregoing, six (6) months after the unclaimed Distribution is initially made, Claimants shall cease to be entitled to the Unclaimed Property in which they previously had an interest, and such Unclaimed Property shall then be transferred from the Disputed Claims Reserve and distributed in the same manner as other Distributions.

## **Article VII**

## **Means For Execution and Implementation of the Plan**

**A.** **General Provisions.**

1. This Plan contemplates that the Trustee of the Wind-Down Trust will liquidate all assets of the Consolidated Estate, for the benefit of Claimants and Interest holders, and otherwise administer the Chapter 11 Cases (which liquidation may include, among other things, objecting to Claims as appropriate and the initiation of litigation to collect amounts owing to the Funds) pursuant to the terms of the Wind-Down Trust Agreement.

2. On the Effective Date, all assets, including without limitation litigation assets, of the Funds shall vest in the Wind-Down Trust. The Funds shall thereupon be deemed to have made a distribution of all Beneficial Interests in the Wind-Down Trust to the holders of Claims and Interests.

3. On the Effective Date, the matters under this Plan involving or requiring corporate or limited liability company ("LLC") action of the Debtors or any of them, including but not limited to actions requiring a vote or other approval of the manager or members of an LLC and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the manager or members of any of the Funds.

4.     Immediately after the occurrence of the Effective Date, (i) the Funds shall be deemed dissolved and the Wind-Down Trust shall be authorized to take all actions reasonably necessary to dissolve such entities under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary papers or documents; and (ii) no assets shall revest in the Debtors.  Notwithstanding the foregoing provision, to the extent that any Fund is a necessary party to commence or prosecute an Avoidance Action or Retained Claim, the Wind-Down Trustee may sue or prosecute such action or claim in the name of the relevant Fund, as a wind-down activity associated with such Fund.

5.     The Wind Down Trust shall be deemed the member or members of any REO Entity in which any one or more of the Funds has a membership interest, in place of such Fund or Funds, and as sole member where only the Funds were members of such REO Entity.

6.     The Wind-Down Trust shall be deemed to receive an assignment of the Funds' fractional interests in all loans, secured or otherwise, against property of the REO Entities and other entities against which the Funds hold a lien or claim.

7.     Not later than ten (10) days after the Effective Date, the Wind-Down Trustee shall mail the Notice of Effective Date to the Limited Notice List and all holders of Claims against, and Equity Interests in, the Funds.

**B.     Creation of the Wind-Down Trust**

1.     <u>The Wind-Down Trust</u>

On or before the Effective Date, the Wind-Down Trust shall be formed.  The holders of Claims against and Interests in the Funds shall be the sole beneficiaries of the Wind-Down Trust. There shall be two classes of beneficial interests in the Wind-Down Trust, the Creditor Class and the Equity Class.

(a)     The Creditor Class shall consist of the Allowed Claims of all holders of creditor claims of any and every nature against any of the Funds.  A

Disputed Claim that becomes an Allowed Claim shall, from the time of allowance, have a Beneficial Interest to the extent of the amount of its Allowed Claim. Beneficial Interests in the Creditor Class shall be equal to the dollar amount of their Allowed Claims, but pro rata with all other Allowed Claims of holders of creditor claims if insufficient to pay all such claims as provided in this Plan.

(b) The Equity Class shall consist of the Allowed Interests of all Equity Interest Holders in any of the Funds. A Disputed Interest that becomes an Allowed Interest shall, from the time of allowance, have a Beneficial Interest to the extent of the amount of its Allowed Interest. Beneficial Interests in the Equity Class shall be equal to the amount of their Allowed Interests calculated according to the treatment of Class 4 under this Plan..

2. The Wind-Down Trust Agreement

The Wind-Down Trust Agreement shall be in the form attached to the Plan as Exhibit A. The Wind-Down Trust Agreement shall, if the Wind-Down Trust has been formed, take effect on the Effective Date. The Wind-Down Trust Agreement may be amended if the Supervisory Board deems it appropriate, upon motion to and approval by the Bankruptcy Court. In the event of any inconsistencies or conflicts between the Wind-Down Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

3. Treatment of Transfer of Assets to the Wind-Down Trust

For federal income tax purposes, all parties including without limitation the Funds, the Trustee, and the holders of Claims and Interests (whether allowed on or after the Effective Date) shall treat the vesting of assets of the Funds in the Wind-Down Trust, in accord with this Plan, as a transfer of such assets by the Funds to the Wind-Down Trust, and thereupon a distribution by the Funds of all Beneficial Interests in the Wind-Down Trust to the holders of Claims and Interests.

4. Acceptance by Wind-Down Trust of Obligations under the Plan

On and as of the Effective Date, all rights and obligations with respect to each Claim and

Equity Interest treated by the Plan shall be deemed accepted by the Wind-Down Trust Trustee.

5. <u>The Trustee of the Wind-Down Trust</u>

(a) On the Effective Date, F. Wayne Elggren shall be appointed Trustee of the Wind-Down Trust. The successor to the Trustee of the Wind-Down Trust, if any, shall be appointed as provided in the Wind-Down Trust Agreement.

(b) The initial compensation for the Trustee shall be at the rate of $625 per hour plus reimbursement for reasonable personal expenses incurred in the performance of the duties of the Trustee. Compensation of the Trustee may be adjusted thereafter as the Supervisory Board, in its business judgment, shall deem appropriate. The Trustee is authorized to employ his firm for managerial and administrative assistance, at its customary rates, subject to review by the Supervisory Board.

(c) From time to time after the Effective Date, the Trustee of the Wind-Down Trust and, with the Trustee's approval CMRAM, may employ, engage the services of, and compensate other persons (which may include employees, temporary employees, or independent contractors) and professional persons (which may include Professionals), reasonably necessary to assist the Trustee of the Wind-Down Trust in performing his or her duties under the Wind-Down Trust Agreement and this Plan. The fees and expenses of such persons may be paid by the Wind-Down Trust Trustee without the necessity of further authorization or allowance of fees and expenses by the Bankruptcy Court.

(d) The Wind-Down Trust Trustee shall be deemed the Consolidated Estate's representative the representative of the estate of any one of the Funds, in accord with Section 1123 of the Bankruptcy Code, and shall have all powers, authority, and responsibilities specified in this Plan and the Wind-Down Trust Agreement, including, without limitation, the powers of a

trustee under sections 704, 108, and 1106 of the Bankruptcy Code (including without limitation commencing, prosecuting, or settling Avoidance Actions or Retained Claims and Defenses).

(e) The duties and powers of the Wind-Down Trustee shall include those set forth in the Wind-Down Trust Agreement, which include but are not limited to the following:

(i) To maintain all funds of the Wind-Down Trust, make interim and final distributions on claims and interests, and take other actions consistent with this Plan, including the maintenance of appropriate reserves;

(ii) To take all steps necessary to wind up the affairs of the Funds and the Wind-Down Trust and terminate the existence of the Funds as limited liability companies;

(iii) To seek a determination of tax liability under Section 505 of the Bankruptcy Code if appropriate;

(iv) To seek estimation of contingent or unliquidated Claims under Section 502(c) of the Bankruptcy Code for Claims filed against the any of the Debtors, or their estates;

(v) To borrow not more than $20 million in exit financing on terms approved by the Supervisory Board and not inconsistent with this Plan (inclusive of the DIP Financing);

(vi) To sell or otherwise transfer for value any assets of the Wind-Down Trust, with the authorization of the Supervisory Board to the extent provided in the Wind-Down Trust Agreement;

(vii) To transfer funds to REO Entities, including Hamilton Creek LLC, to defray their expenses as determined necessary or appropriate to

facilitate recoveries for the Trust, and to agree upon budgets with CMRI or CMRAM for the administration of REO Entities;

(viii)  To receive an assignment of the claims of investors in the Funds or others, and with the approval of the Supervisory Board to pursue, prosecute, and/or settle such claims;

(ix)  To abandon any property or assets of the Funds, or of the Wind-Down Trust, that cannot be sold or otherwise disposed of for value and whose distribution to holders of Allowed Claims or Allowed Equity Interests would not be feasible or cost-effective based in the judgment and discretion of the Trustee, with the authorization of the Supervisory Board, and without the necessity of a hearing or approval by the Bankruptcy Court;

(x)  To file with the Bankruptcy Court the reports and other documents required by the Plan or otherwise required to close, convert or dismiss the Chapter 11 Cases;

(xi)  To compensate CMRAM under the terms of a retention agreement between the Wind-Down Trust and CMRI or CMRAM, or such other contractual arrangement as may be entered into between the Wind-Down Trust and CMRI or CMRAM;

(xii)  To set off amounts owed to the Funds or the Wind-Down Trust against any amounts to be distributed to the holder of a Claim or Equity Interest under the Plan;

(xiii)  To appear in, defend, or otherwise be heard as a party in interest in (i) appeals from the Confirmation Order and any proceedings related thereto; (ii) proceedings related to the enforcement or interpretation of the Plan or the Wind-Down Trust Agreement; (iii) proceedings related to modifications or amendments to the Plan or the Wind-

Down Trust Agreement; (iv) proceedings related to the establishment and administration of the Wind-Down Trust; and (v) proceedings related to the allowance of Claims for compensation or expenses of professionals employed by the Debtors, the estates, the Committee or the Liquidating Trust;

(xiv)   To take all other actions not inconsistent with the provisions of this Plan and the Wind-Down Trust Agreement.

6.   The Wind-Down Trust Supervisory Board

(a)   For giving oversight and direction to the Trustee, the Wind-Down Trust shall have a Supervisory Board comprised initially of five members. As of the Effective Date, the members of the Supervisory Board shall be those members of the Equity Committee who are willing to serve on the Supervisory Board. If such number is less than five, the initial members of the Supervisory Board shall select sufficient initial members, from among the holders of Beneficial Interests, to bring the total number up to five. After the Effective Date, the Supervisory Board is authorized to appoint additional suitable members of the Supervisory Board, except that the number of members of the Board shall not exceed nine. If Supervisory Board members resign or are removed, successor Supervisory Board members shall be selected as provided in the Wind-Down Trust Agreement. A Supervisory Board member may be removed upon vote of a majority of the Board members, without counting the subject Board member.

(b)   Initially, the Supervisory Board shall not be compensated, other than reimbursement of actually incurred expenses in the performance of their duties. However, this Plan contemplates that it may subsequently, depending on the work load of the Supervisory Board, be appropriate to compensate Supervisory Board members for their services. Accordingly,

the Trustee may, if the Supervisory Board and Trustee agree that such compensation is appropriate, seek approval from the Bankruptcy Court to pay compensation to the Board members.

(c) Any member of the Supervisory Board who disposes of his entire Beneficial Interest in the Wind-Down Trust shall be deemed to have resigned from the Board, and the vacancy shall be filled as for any other resignation from the Board.

7. Disposition of Wind-Down Trust Assets for benefit of beneficiaries

The Trustee, with the authorization of the Supervisory Board to the extent provided in the Wind-Down Trust Agreement, shall – using his or her business judgment – liquidate and convert to cash the assets of the Wind-Down Trust, and make distributions on Beneficial Interests as and when appropriate. Administration of the assets of the Wind-Down Trust may include prosecuting or settling Avoidance Actions and Retained Claims and Defenses.

8. Investment Powers of the Trustee

The right and power of the Wind-Down Trust Trustee to invest assets of the Trust, the proceeds thereof, and any income earned by the Trust, shall be limited to the right power that a liquidating trust is permitted to hold pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS ruling, other IRS pronouncements, or otherwise. The Wind-Down Trust Trustee may expend cash of the Wind-Down Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the assets during the liquidation process, (y) to pay the administrative expenses (including, but not limited to, any taxes imposed on the Wind-Down Trust), and (z) to satisfy other liabilities incurred by the Wind-Down Trust consistent with this Plan or the Wind-Down Trust Agreement. Funds of the Trust will, consistent with IRS guidelines, be invested only in short-term interest bearing accounts and other temporary liquid investments such as Treasury bills.

/ / /

/ / /

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 38 of
53

9.     Certain Tax Requirements

The Trustee shall make at least annual distributions of net income plus all net proceeds from the sale of assets, except that the Trust may retain amounts necessary to meet claims and contingent liabilities of the Trust (including disputed claims) and reserves necessary for the protection of the Trust assets, including at the Trustee's discretion paying down senior liens on remaining assets. Administration of the assets of the Wind-Down Trust may include prosecuting or settling Avoidance Actions and Retained Claims and Defenses. Funds of the Trust will, consistent with IRS guidelines, be invested only in short-term interest bearing accounts and other temporary liquid investments such as Treasury bills. The Wind-Down Trust will file tax returns as a grantor trust under Treas. Reg. 1.671-4(a). The Trustee may, at his election, file a tax return for the Disputed Claims Reserve treated as a separate taxable entity. The Trustee shall, in accord with applicable tax law, make this election, if at all, in the Trust's first taxable year.

10.     Registry of Beneficial Interests

The Wind-Down Trust Trustee shall maintain a registry of holders of Beneficial Interests in the Trust. Any transfer of a Beneficial Interest shall not be effective unless and until the Wind-Down Trust Trustee has received valid, written notice of such transfer satisfactory to the Trustee.

11.     Reporting to Beneficiaries

(a)     The Trustee shall prepare annual reports for the holders of Beneficial Interests. Such annual reports shall be distributed within 90 days of the end of each calendar year. Such annual reports shall be in such form, and provide such detail, as specified in the Wind-Down Trust Agreement, as the Supervisory Board shall determine.

(b)     The annual reports to beneficiaries shall include financial statements. The Trustee shall propose the form and content of such financial statements to the Supervisory Board, which shall approve the form and content prior to their issuance.

(c)        Financial statements of the Wind-Down Trust may, but are not required to be, audited.  The Supervisory Board shall have discretion to make that determination.

(d)        Additional financial and other reporting to the Supervisory Board shall be as specified in the Wind-Down Trust Agreement.

(e)        Notwithstanding any other provision of this Plan, the financial and other reporting requirements shall be conducted, and modified if and to the extent necessary, so as to maintain the grantor trust status of the Wind-Down Trust.

### 12.    Attorney-Client Privilege

Any attorney-client privilege, work-product protection, or other privilege or immunity that the estates or the Consolidated Estate are entitled to assert shall vest in the Wind-Down Trust, and the Wind-Down Trust Trustee shall be entitled to assert such privilege or immunity to the extent that the Debtors or the Committee were entitled to do so prior to the Effective Date.  After the Effective Date, the Trustee shall be entitled, in his or her sole discretion but subject to the approval of the Supervisory Board, to waive any privilege, work-product privilege, or other privilege or immunity which the estates or the Consolidated Estate are entitled to assert if the Trustee deemed such waiver appropriate.

### 13.    Right to Claims and Actions

On the Effective Date, any right, claim, or cause of action belonging to the Debtors or their estates or the Consolidated Estate against any person or entity, or provided by the Confirmation Order, or other order of the Court, shall be transferred to the Wind-Down Trust.  The Trustee, as provided herein and in the Wind-Down Trust Agreement, may pursue, settle, compromise, or release all causes of action in his or her discretion but subject to approval of the Supervisory Board as provided in the Wind-Down Trust Agreement, without hearing or approval of the Court.

### 14.    Limitation of Liability; Indemnification

(a) None of the Trustee, the Supervisory Board, their respective members, agents, or Professionals, or the employees of any of them, shall be liable for any act or omission taken or omitted to be taken in or in connection with the implementation of the Plan or the Wind-Down Trust, other than acts or omissions resulting from such person's willful misconduct, gross negligence, or fraud.

(b) The Wind-Down Trust shall indemnify and hold harmless the Trustee (and his successors) and the Supervisory Board, and their respective members, designees, and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorney's fees and costs arising out of or due to their actions or omissions, or consequences of their actions or omissions with respect to the Trust or the implementation or administration of the Trust; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence or fraud.

15. <u>Request Approval of Bankruptcy Court</u>

The Wind-Down Trust is authorized and permitted, in the discretion of the Trustee and the Supervisory Board, to seek approval or instruction from the Bankruptcy Court for any matter concerning the administration, implementation, or activities of the Wind-Down Trust. Such approval or instruction may be sought by motion, on the procedures provided in the Bankruptcy Local Rules of the Bankruptcy Court, provided, however, that notice need be given only to those parties as provided for post-Effective Date limited notice in Sec. VII.G below.

16. <u>Purpose of the Wind-Down Trust</u>

The Wind-Down Trust shall be established for the primary purpose of liquidating and distributing its assets in accord with Treasury Regulation 301.7701-4(d), and shall engage only in

activities that are part of, and activities that are all reasonably necessary to, and consistent with, the accomplishment of that purpose.

17. <u>Termination of the Wind-Down Trust</u>

The Wind-Down Trust shall terminate after liquidation, administration, and distribution of its assets in accord with this Plan and the Wind-Down Trust Agreement. Termination of the Wind-Down Trust shall occur no later than the fifth (5th) anniversary of the Effective Date, provided, however, that the Bankruptcy Court may, upon motion by the Trustee, extend the term of the Wind-Down Trust, if it is appropriate in order to facilitate or complete the liquidation and administration of the Wind-Down Trust assets and appropriate trust tax determinations have been considered and made.

**C.       Formation and Agreement with CMRAM**

The Wind-Down Trust shall initially employ CMRAM to perform managerial and administrative services for the Trustee. The terms of CMRAM's retention shall be set forth in a retention agreement agreed upon between the Trust and CMRAM.

**D.       Settlement Negotiations Regarding Claims By And Against Manager**

This Plan contemplates the negotiation of a settlement of claims by and against CMRI, its president, director, and owner David Choo, and current and former officers of CMRI. The Wind-Down Trust Trustee shall have the power to conduct such negotiations on behalf of the Trust. Settlement of all such claims is subject to approval by the Bankruptcy Court and insurers providing coverage for such claims.

Under the authority provided by Section 1123(b)(3)(A) of the Bankruptcy Code, the terms of any settlement that may be reached will be treated as provided for under the Plan and enforceable as part of the Plan. Any such settlement shall be subject to definitive documentation and approval by the Bankruptcy Court and by insurers prior to or as part of confirmation of the Plan, and provide for releases and/or other protections against further litigation in favor of CMRI, CMRAM, Choo and any past or current officers of CMRAM and CMRI.

By engaging in such negotiations the Committee hopes to avoid extensive litigation of the

claims against CMRI and Choo. However, the Committee and its members are prepared to, and will, file all appropriate actions pursuant to the Committee's authority under the February 1, 2010 Order of the Bankruptcy Court providing such authority, this Plan, and applicable law if, and when, the Committee deems such actions appropriate to achieve the maximum benefit for the Funds and their members.

**E.      United States Trustee Quarterly Reports.**

The Wind-Down Trust Trustee shall file and serve on the Post-Effective Date Limited Notice List the Quarterly Post-Confirmation Reports required by Section 7.2 of the Guidelines of the Office of the United States Trustee. The fees payable, and the reports required, under this section of the Plan shall, pursuant to the Consolidation Order, be paid on account of the single, Consolidated Estate.

**F.      Status of Committee Post Confirmation.**

On the Effective Date of the Plan, so long as the Wind-Down Trust has been formed and the Wind-Down Trustee appointed, the Committee shall be dissolved, except for the purpose of its Professionals presenting final fee applications.

**G.      Post-Effective Date Limited Notice List.**

1.      There shall be established after the Effective Date a Limited Notice List. Persons on such Limited Notice List will be given notice of matters that come before the Bankruptcy Court post-Confirmation, and an opportunity – if such party is otherwise a party in interest with respect to the matter – to object and be heard on the matter, whether or not the matter is otherwise one that would be noticed to all creditors and/or equity interest holders. A person desiring to be added subsequently to the Limited Notice List shall so notify the Trustee in writing, and shall be entitled to notice only after the Trustee's receipt of such notice.

2.      Any person desiring to be included in the Limited Notice List must (1) file a request to be included on the Limited Notice List and include thereon its name, contact person, mailing address, telephone number, facsimile number (if any), and email address, within 30 days after the Effective Date, and (2) concurrently serve a copy of its request to be included on the

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 43 of 53

Limited Notice List on the Trustee.  On or before 60 days after the Effective Date, the Trustee shall compile a list of all persons on the Limited Notice List and file such list with the Bankruptcy Court.

## Article VIII

### Compensation and Reimbursement of Professional persons

**A.      Pre-Effective Date Compensation.**

All Professional persons requesting compensation or reimbursement of expenses under Sections 327, 328, 330, 331, 503(b)(2), 1103 and/or 1107(b) of the Bankruptcy Code for services rendered before the Effective Date, and for costs and expenses incurred after the Effective Date in preparing and presenting such requests for compensation and reimbursement of expenses shall file and serve on Debtors' Counsel, the Trustee, counsel for the Committee, the Debtors, and the United States Trustee an Application for Final Allowance of Compensation and Expenses (collectively, the "Final Fee Applications") no later than thirty (30) days after the Effective Date of the Plan.  Counsel for the Trustee shall prepare a notice of the Final Fee Applications and obtain from the Bankruptcy Court a hearing date for the Final Fee Applications and a date by which all objections to Final Fee Applications must be filed and served.  Notice of Final Fee Applications, the hearing date on the Final Fee Applications and the last date to object to Final Fee Applications will be filed and served on the United States Trustee, persons on the Limited Notice List, and all Professional persons who file Final Fee Applications.

**B.      Post-Effective Date Compensation.**

The Wind-Down Trust Trustee and Professionals retained by the Wind-Down Trust Trustee and the professionals retained, with the Wind-Down Trust Trustee's permission, by CMRI or CMRAM in its role as manager of assets for the Trustee shall be entitled to payment of their post-Effective Date fees and reimbursement of expenses in the ordinary course of business.  The Trustee may, but is not required to, bring the payment of fees and costs of such Professionals before the Bankruptcy Court for review and approval, not more often than semi-annually.

## Article IX

## Retained Jurisdiction

The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases for the following purposes:

    (a)    To determine any and all objections to the validity, priority, amount or allowance of Claims and Equity Interests, and to determine any motion, action or adversary proceeding concerning the classification or subordination of Claims and Equity Interests;

    (b)    To determine the validity, priority, and amount of all Administrative Expenses, and any and all applications for allowance of compensation or reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

    (c)    To determine any and all applications, motions, adversary proceedings, and contested or litigated matters arising in or related to the Chapter 11 Cases, whether pending before the Bankruptcy Court on the Confirmation Date or instituted after the Effective Date, including, without limitation, avoidance actions under the Bankruptcy Code and other applicable law and the Retained Claims and Defenses;

    (d)    To estimate the amount of any Claim;

    (e)    To determine the extent, validity, priority or amount of any lien asserted against property of the Consolidated Estate;

    (f)    To determine matters related to the collection, liquidation, realization upon and enforcement of rights regarding property of the Consolidated Estate;

    (g)    To resolve any motion of the Wind-Down Trust Trustee seeking instruction or approval of any matter affecting the administration of the Wind-Down Trust;

(h)    To enforce, interpret, and modify the Plan, any agreement made under the Plan, or the Confirmation Order to remedy any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

(i)    To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, implementation, consummation, or administration of the Plan and the Confirmation Order;

(j)    To enter final decrees closing the Chapter 11 Cases;

(k)    To determine such other matters as may arise in connection with the Plan or the Confirmation Order;

(l)    To issue orders regarding, and in furtherance of, execution and consummation of the Plan, the Wind-Down Trust, and the Confirmation Order;

(m)    To determine, as is necessary or appropriate under Section 505 of the Bankruptcy Code or otherwise, matters relating to tax returns filed or to be filed on behalf of the Wind-Down Trust or an Estate or the Consolidated Estate for all periods through the end of the fiscal year in which the Chapter 11 Cases are closed;

(n)    To hear and determine any disputes regarding assets of the Consolidated Estate or the Wind-Down Trust, wherever located;

(o)    To hear and determine any disputes regarding the Wind-Down Trust Trustee or the Wind-Down Trust, and to authorize the Wind-Down Trust Trustee to take actions consistent with the Plan and the Confirmation Order;

(p)    To authorize and approve, or disapprove, any settlements or compromises of Claims, causes of action, defenses, or controversies asserted by or against the Consolidated Estate, and the sale, lease or other disposition of property of the Consolidated Estate or the Wind-Down Trust;

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:01:18    Page 46 of 53

(q)    To enter orders confirming the appointment of a successor or replacement Wind-Down Trust Trustee or to appoint a successor or replacement Wind-Down Trust Trustee if the Wind-Down Trust Supervisory Board is unable to do so;

(r)    To enter such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, rescinded or vacated;

(s)    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom; and

(t)    To issue and enforce injunctions, make determinations of declaratory relief, or take such other legal or equitable actions or issue such other orders as may be necessary or appropriate to restrain interference with this Plan, the Confirmation Order, any settlement provided under this Plan, the Consolidated Estate, the Wind-Down Trust, Professional persons, or the Wind-Down Trust Trustee.

## Article X

## Wind-Down Trust Successor to Debtors

The Wind-Down Trust shall be the successor to each of the Funds for all purposes under the Bankruptcy Code, including without limitation Sections 1123, 1129, and 1145 of the Bankruptcy Code.

## Article XI

## Transfers Under Plan Not Subject To Tax

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including, without limitation, any transfers to or by the Wind-Down Trust Trustee of the property of any of the Debtors in implementation of or as contemplated by this Plan (including, without limitation, any subsequent

Case: 08-32220    Doc# 554    Filed: 05/24/10    Entered: 05/24/10 23:00:18    Page 47 of 53

transfers to or by the Wind-Down Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

## Article XII

## Retention of Rights, Claims and Causes of Action

The Estate shall retain all Retained Claims and Defenses; and the Wind-Down Trust Trustee shall investigate and, if appropriate, pursue such Retained Claims and Defenses. Also expressly retained are all of the claims, causes of action, defenses, counterclaims, causes of action for equitable or contractual subordination, offset and recoupment rights of the Estate or the Debtor, against any person whether or not particularly disclosed in the Disclosure Statement, it being the intent expressly provided in this Plan, that all such claims and causes of action are retained and shall not be barred or waived.

## Article XIII

## Amendment and Interpretation of the Plan

**A.     Amendment.**

This Plan may be altered, amended, or modified by the Committee, or the Debtors and Committee if the Committee affirmatively consents, before or after the Confirmation Date in the manner provided by Section 1127 of the Bankruptcy Code. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**B.     Severability.**

Should any term or provision of the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other

Case: 08-32220     Doc# 554     Filed: 05/24/10     Entered: 05/24/10 23:00:18     Page 48 of 53

1 term or provision of the Plan.

2 **C.     Conditions Precedent.**

3      This Plan shall be of no force and effect until the Confirmation Order shall have been

4 entered by the Bankruptcy Court.

5 **D.     Notice.**

6      All notices required or permitted to be made in accordance with the Plan shall be in writing

7 and shall be delivered personally, by an email with receipt confirmed, or by first class mail, as

8 follows:

| | |
|---|---|
| If to the Wind-Down Trustee: | F. Wayne Elggren<br>LECG, LLP<br>201 Mission Street<br>Suite 800<br>San Francisco, CA 94105 |
| If to a holder of an Allowed Claim: | At the address set forth in its proof of Claim filed at the Bankruptcy Court, or if none, at the address set forth in the Schedules. |
| If to holder of an Allowed Equity Interest | At the address found in the relevant Fund list of holders of Membership Interests |

20      Notice shall be deemed given upon the earlier of:  (1) if notice is given by overnight

21 delivery service, the first business day after deposit with the delivery service, or (2) if notice is

22 given by email, the business day on which receipt of the email is confirmed by the recipient if

23 confirmation occurs during normal business hours at the recipient's location or the first business

24 day after the day on which receipt of the email is confirmed by the recipient if confirmation occurs

25 later than close of business on the day of transmission during normal business hours at the

26 recipient's location, or (3) if notice is given by mail, the third calendar day after deposit in the

27 United States Mail, first class postage prepaid.  Any person may change the address at which such

28

person is to receive notices under the Plan by sending written notice, pursuant to the provisions of this Section, to the person to be charged with knowledge of such change, to the Trustee, and, if appropriate, by filing such notice with the Bankruptcy Court.

## Article XIV

### Effect of Confirmation and Injunction

**A.     Binding Effect of Plan.**

The provisions of this Plan shall bind the Debtors, the Wind-Down Trust, and any successor or assign including a Chapter 7 or Chapter 11 trustee; and shall bind any person asserting a Claim or Interest against any of the Debtors, whether or not the Claim or Interest is impaired under the Plan, and whether or not such person has accepted the Plan.  Except as provided for in the Plan, all property of the Consolidated Estate vests in the Trust, and is free and clear of all Claims and Equity Interests.  The Wind-Down Trust shall not have any liability to any creditors or interest holders of the Funds other than to make the distributions expressly provided for under the Plan, and the Wind-Down Trust.

**B.     Injunction.**

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all persons who have held, currently hold or may hold a Claim or Interest treated or provided for pursuant to the Plan are permanently enjoined from taking any of the following actions on account of such Claim or Interest:  (i) commencing or continuing, in any manner and in any place, any action or proceeding against the Estate(s), the Debtor, Professional persons, or parties released under any settlement entered into under this Plan without leave of the Bankruptcy Court; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or other order against the Estate(s), the Debtor, Professional persons, or parties released under any settlement entered into under this Plan without leave of the Bankruptcy Court; (iii) creating, perfecting or enforcing any lien against property of the Estate(s) without leave of the Bankruptcy Court; (iv) taking any action to obtain possession of property of the Estate(s) or to obtain possession of property from the Estate(s) or to exercise control over the Estate(s) or

Case: 08-32220     Doc# 554     Filed: 05/24/10     Entered: 05/24/10 23:00:18     Page 50 of 53

property of the Estate(s); and (v) commencing or continuing any action or proceeding, against parties released under any settlement entered into under this Plan, or any other person or entity in any manner and in any place, that does not comply with or is inconsistent with the provisions of the Plan.  Any person injured by any willful violation of such injunction shall be entitled to recover actual damages, including costs and professional fees and, in appropriate circumstances, punitive damages from the willful violator.

**C.      Discharge**

Because the Plan is a liquidating plan, and pursuant to Bankruptcy Code Section 1141(d)(3), entry of the Confirmation Order shall not act as a discharge of any debt of Debtors that arose prior to Confirmation.  Neither the Wind-Down Trust, the Wind-Down Trustee, nor any employee, agent or other representative of them shall have any liability to any creditors or interest holders of Fund I, Fund II, or Fund III other than to make the distributions expressly provided for under the Plan.

## Article XV

### Effect of Acceptance or Rejection of Plan

**A.      Voting Rights of Classes.**

Each impaired class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

**B.      Reservation of Section 1129(b) Rights to seek Non-Consensual Confirmation.**

In the event that any impaired class of Claims or Interests shall fail to accept the Plan by the requisite number or amount in accordance with Section 1126(c) or (d) of the Bankruptcy Code, the Committee requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

/ / /

/ / /

| | |
|---|---|
| Dated: May 24, 2010 | OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS |

By: <u>  */s/ William Bergman*  </u>
        William Bergman
        Chairman

Dated: May 24, 2010        Respectfully submitted,

McNUTT LAW GROUP LLP

By: <u>  */s/ Michael A. Sweet*  </u>
       Michael A. Sweet
Attorneys for Official Committee
of Equity Security Holders

Dated: May 24, 2010        CMR MORTGAGE FUND, LLC

By: <u>  */s/ Graham Seel*  </u>
       Graham Seel
Responsible Individual for CMR Mortgage Fund, LLC

Dated: May 24, 2010        WENDEL, ROSEN, BLACK & DEAN

By: <u>  */s/ Elizabeth Berke-Dreyfuss*  </u>
       Elizabeth Berke-Dreyfuss
Attorneys for CMR Mortgage Fund, LLC

Dated: May 24, 2010        CMR MORTGAGE FUND II, LLC

By: <u>  */s/ Graham Seel*  </u>
       Graham Seel
Responsible Individual for CMR Mortgage Fund II, LLC

JOINT PLAN OF REORGANIZATION

| | |
|---|---|
| Dated: May 24, 2010 | BINDER & MALTER |
| | |
| | By: /s/ Robert G. Harris |
| | Robert G. Harris |
| | Attorneys for CMR Mortgage Fund II, LLC |
| | |
| Dated: May 24, 2010 | CMR MORTGAGE FUND III, LLC |
| | |
| | By: /s/ Graham Seel |
| | Graham Seel |
| | Responsible Individual for CMR Mortgage Fund, III |
| | |
| Dated: May 24, 2010 | MACDONALD & ASSOCIATES |
| | |
| | By: /s/ Reno F. R. Fernandez, III |
| | Reno F. R. Fernandez, III |
| | Attorneys for CMR Mortgage Fund III, LLC |