BUCHALTER NEMER
A Professional Corporation
    CRAIG C. CHIANG (SBN 209602)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
Email: cchiang@buchalter.com

Attorneys for Movant
Wells Fargo Capital Finance, Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>Debtors. | Case No. 08-32220-TEC<br>Case No. 08-30788-TEC<br>Case No. 09-30802-TEC<br><br>Substantively Consolidated<br><br>Chapter 11<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date:  August 8, 2011<br>Time:  1:00 p.m.<br>Place: 235 Pine Street, Courtroom 23<br>           San Francisco, California |

BN 9375948v4

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Case: 08-32220    Doc# 849    Filed: 07/22/11    Entered: 07/22/11 13:28:57    Page 1 of 9

# I.

# INTRODUCTION

Wells Fargo Capital Finance, Inc., formerly known as Wells Fargo Foothill, Inc. ("Wells Fargo") moves for relief from the automatic stay. There is ample cause to lift the automatic stay. The Court is well aware of the protracted history of these proceedings – from the confirmation of the Chapter 11 Plan, to the inability to secure exit funding for such Plan, to the eventual appointment of the Chapter 11 Trustee. Throughout these proceedings, Wells Fargo has remained patient, including cooperating with efforts to permit the Debtors to reorganize through the Joint Plan of Reorganization (the "Plan") proposed by the Official Committee of Equity Holders (the "Equity Committee") and CMR Mortgage Fund I ("Fund I"), CMR Mortgage Fund II ("Fund II") and CMR Mortgage Fund III ("Fund III") (collectively, the "Funds" or the "Debtors"). However, with the inability to fund the Plan, and the consequential appointment of Richard M. Kipperman as the Chapter 11 trustee to the estates of the Funds (the "Trustee"), it is now abundantly clear that no reorganization will occur and that Wells Fargo must proceed with enforcing its rights. Based on the Chapter 11 Status Conference Statement recently submitted by the Trustee (the "July 2011 Status Conference Statement"), it is evident that the Trustee similarly sees no factual basis for denying the relief sought by Wells Fargo.

Wells Fargo is owed in excess of $23 million (the "Indebtedness") under the Loan Documents (hereafter defined), which amount is secured by, among other assets, real property consisting of (1) approximately 435 acres of land in Wheatland, California (the "Wheatland Property"); and (2) approximately 1.7 acres of vacant land in Union City, California (the "4 Union Property") (collectively, the "Debtor Collateral").[1] The Plan had sought to adopt the terms of that certain Participation Agreement filed with the Court on July 29, 2010 under which Wells

---

[1] The Assessor Parcel Numbers include, without limitation, the following: (A) Property located in the City of Wheatland, Counties of Yuba and Sutter, State of California with Assessor Parcel Nos: 015-180-119; 015-180-120; 015-140-076; 015-040-077; *015-140-078*; 015-180-111; 015-180-113; 015-180-123; 015-180-122; 150-100-061; 150-100-089; 150-100-084; 015-180-117; 015-180-102; 015-660-002; 28-210-031; 015-180-102,117; 015-660-002; 028-210-031;015-100-084, 089, 061; 015-140-076,077,078; 015-180-111,113,119,120,122,123; and (B) Property located in the City of Union City, County of Alameda, State of California with Assessor Parcel Nos: 482-0027-013; 482-0027-014; 482-0027-003-03; and 482-0027-004-03

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 9375948v4

1

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Case: 08-32220  Doc# 849  Filed: 07/22/11  Entered: 07/22/11 13:28:57  Page 2 of 9

Fargo would forbear from exercising its rights and remedies from July 1, 2010 through March 31, 2011, upon the receipt of certain payments and absent the occurrence of additional events of default. Specifically, the Plan had permitted the Wind Down Trust to be formed under the Plan (the "Wind Down Trust") to purchase a participation interest in the Indebtedness for a purchase price of $2,000,000 by June 30, 2010, followed by an additional purchase of Wells Fargo's remaining interest in the Indebtedness for an additional payment of $10,500,000 on or before March 31, 2011. Under the Plan, Wells Fargo would have been paid $12,500,000 by March 31, 2011. However, as all parties are aware, in the six month period from the entry of the Order Approving Confirmation of the Plan on October 5, 2010 to the Order Vacating Plan on April 5, 2011, the Equity Committee was unable to secure adequate funding for the Plan. Consequently, Wells Fargo did not receive either the $2,000,000 payment nor the $10,500,000 payment that was due to follow, and the $23 million obligation due to Wells Fargo was not resolved as had been contemplated under the Plan.

During those months, Wells Fargo did not seek relief from the automatic stay, although it could have done so at any time. Wells Fargo now submits this Motion for Relief from the Automatic Stay (the "Motion") pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) for authority to exercise any and all of its rights and remedies under its loan documents and applicable law in connection with the Debtor Collateral.

## II.

## FACTUAL BACKGROUND

### A. THE LOAN DOCUMENTS

Wells Fargo is a party under that certain Loan and Security Agreement, dated as of August 11, 2005 (as amended, the "Loan Agreement") with CMR Income Fund, LLC, a Nevada limited liability company ("CMR Income"), Airport Hotels, LLC, a Nevada limited liability company ("Airport Hotels," together with CMR Income and any guarantors, pledgors and other persons or entities obligated under the Loan Documents referred to below, collectively, "Borrower"), and California Mortgage and Realty, Inc., a Delaware corporation ("CMRI" or

"Servicer"). A true and correct copy of the Loan Agreement is attached to the Declaration of Ajay Jagsi ("Jagsi Decl.") as Exhibit A.

As described in the Plan, Fund II sought a loan from CMR Income to fund a loan to a third party borrower (the "Wheatland Borrower"). Pursuant to the Loan Agreement, Wells Fargo increased its loan facility to CMR Income by $25,000,000 (the "WFCF Term Loan"), in order to facilitate a loan by CMR Income to Fund II. In May 2006, CMR Income drew on the WFCF Term Loan and advanced those funds to Fund II, which Fund II utilized to make a loan to the Wheatland Borrower. The security interests and rights granted to Wells Fargo in support of the WFCF Term Loan are set forth in that certain Pledge and Security Agreement, dated as of May 26, 2006, among Fund II, as pledgor, and Wells Fargo and CMR Income, as secured parties. The Pledge and Security Agreement (with the Loan Agreement and all other documents executed in connection therewith, collectively, the "Loan Documents") included the following pledge:

> **Grant of Security Interest.** As collateral security for the prompt and complete payment and performance of the Obligations when due, Pledgor hereby (i) pledges, transfers, hypothecates and assigns to Secured Party, and (ii) grants to Secured Party, a continuing first priority lien on and security interest in, all of Pledgor's right, title, and interest in and to the following, whether or hereafter existing or acquired (the "Collateral"):
>
> (a) Promissory Note, dated as of May 25, 2006, in the original principal amount of Forty Eight Million Dollars ($48,000,000), executed by Eagle Meadows of Wheatland 187, LLC, Eagle Meadows of Wheatland 130, LLC and Eagle Meadows of Wheatland 115, LLC payable to the order of Pledgor (the "EMW Note"), the Deeds of Trust (as defined in the EMW Note), the Other Security Documents (as defined in the EMW Note) and any and all other documents evidencing or securing the EMW Note (collectively, the "Loan Documents"); and
>
> (b) all Proceeds of any of the foregoing.

A true and correct copy of the Pledge and Security Agreement is attached to the Jagsi Declaration as Exhibit B. CMR Income's obligations to Wells Fargo, including the WFCF Term Loan, are secured by a first priority lien on all assets of CMR Income, including without limitation, Fund II's and CMR Income's respective interests in the EMW Note, which Note is secured by the Wheatland Property.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 9375948v4

3

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 08-32220   Doc# 849   Filed: 07/22/11   Entered: 07/22/11 13:28:57   Page 4 of 9

The Wheatland Borrower defaulted on its obligations, and the third priority lienholder foreclosed in October 2008. Thereafter, the Wheatland Property has been owned by Wheatland Holdings, LLC ("Wheatland Holdings"), an REO entity controlled by the Funds, and now the Trustee.

The Loan Agreement is also secured by, among other things, a Promissory Note (Commercial) from Veasy & Horner Development, LLC, a California limited liability company, as maker, in favor of CMR Income (as successor-in-interest to CMR Mortgage Fund, LLC), dated as of March 6, 2002, in the amount of $2,200,000.00 (the "4 Union Note"). The 4 Union Note is secured by a lien on the 4 Union Property pursuant to that certain Deed of Trust (the "4 Union Deed of Trust"), dated as of March 6, 2002, and recorded on March 18, 2002 as document number 2002-120153 in the official records of the Alameda County. As security for its obligations under the Loan Agreement, CMR Income, the present beneficiary under the 4 Union Deed of Trust collaterally assigned the 4 Union Note and its interest in the 4 Union Deed of Trust to Wells Fargo. The third priority lienholder on the 4 Union Property foreclosed in 2008. Thereafter, the 4 Union Property has been owned by 4 Union, LLC, an REO entity controlled by the Funds, and now the Trustee.

**B.    THE CHAPTER 11 PLAN**

The Equity Committee's and Debtors' Joint Plan of Reorganization dated June 24, 2010, which the Court confirmed on or about October 2010, sought "needed forbearance from possible foreclosure that would result in the loss of the Wheatland Property" and "the possibility of a significantly discounted payoff of the obligations otherwise owed to the WFCF Secured Claim." [Plan, pg. 23-24].

The Plan acknowledged that Wells Fargo's cooperation provided the Equity Committee and the Funds with a chance to keep the Wheatland Property — "The obligation owed to WCFC has matured, and absent satisfactory treatment of its claim in the Plan, WFCF would likely seek to foreclose on the first and second priority liens, which action would cause the Funds to lose their interest in the underlying Wheatland Property." [Plan, pg. 22].

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

Wells Fargo did not receive either the $2,000,000 payment or the $10,500,000 payment that was due to follow, and the Indebtedness owed to Wells Fargo was not resolved through the $12.5 million in payments set forth in the Plan. Consequently, Wells Fargo seeks relief from the automatic stay to enforce its remedies following the failure of any party to address the matured obligations owing to Wells Fargo. In the six month period from the entry of the Order Approving Confirmation of the Plan on October 5, 2010 to the Order Vacating Plan on April 5, 2011, the Funds and the Equity Committee were unable to secure adequate funding for the Plan.

**C. DEFAULT**

Events of default have occurred under the terms of the Loan Documents by, among other things, the failure to pay Wells Fargo amounts due and owing under the Loan Documents. As of June 30, 2011, Wells Fargo is owed at least $23,274,745.66 (in addition to fees and expenses incurred in connection therewith), which matured on December 31, 2009.

# III.

# DISCUSSION

**A. Cause Exists To Grant Relief Under Section 362(d)(1) To Allow Wells Fargo To Exercise All Of Its Rights And Remedies With Respect To The Debtor Collateral.**

By enacting section 362(d) of the Bankruptcy Code,[2] Congress recognized that the protections of the automatic stay should not be used to unduly bind a secured creditor when cause exists and its interest in its collateral is not adequately protected. In addition, a secured creditor should not be prevented from exercising its rights and remedies with respect to property where a debtor has no prospects and is in a state of financial decline. The Debtors have no prospect for a successful reorganization, and there is no basis to deny Wells Fargo the ability to recover the Debtor Collateral.

Upon the request of a party in interest, a court shall grant relief from the automatic stay "for cause," which includes the lack of adequate protection of the party's interest in property. 11 U.S.C. § 362(d)(1). The debtor carries the burden of proof to establish adequate protection. 11 U.S.C. § 362(g). In addition to lack of adequate protection, cause can be established by virtue

---

[2] Statutory references herein are to the Bankruptcy Code unless otherwise noted.

BN 9375948v4  5

MOTION FOR RELIEF FROM THE AUTOMATIC STAY
Case: 08-32220   Doc# 849   Filed: 07/22/11   Entered: 07/22/11 13:28:57   Page 6 of 9

of other factors and is to be determined on a case-by-case basis. *In re Tucson Estate, Inc.*, 912 F.2d 1162 (9th Cir. 1990); *In re Trident Associates Ltd. Partnership*, 52 F.3d 127 (6th Cir. 1995). ). As discussed below, cause exists for numerous reasons, including the lack of adequate protection.

A secured creditor is entitled to reasonable assurances that its interest in property of a debtor is and will continue to be adequately protected. The Bankruptcy Code does not define adequate protection, but illustrates what may constitute such protection. Section 361 provides a non-exclusive list of examples, as follows:

(a) requiring cash payments to the secured creditor to the extent the continuation of the stay results in a decrease in value of the collateral;

(b) providing the secured creditor with an additional or replacement lien on property to the extent that the continuation of the stay results in a decrease in value of the collateral; or

(c) granting such relief to the secured creditor as will result in the creditor's realization of the "indubitable equivalent" of its interest in the collateral.

In this case, cause exists to grant Wells Fargo relief from the automatic stay under section 362(d)(1) because Wells Fargo's interest in the Debtor Collateral is not adequately protected. There is clearly no equity cushion and no payments are being made to Wells Fargo to protect against the diminution in value of the Debtor Collateral. In addition, although Wells Fargo had received promises of payment for some time, including through the confirmed Plan, the payment obligations remain in default.

A comparison of the value of the Debtor Collateral against the Indebtedness reveals that Wells Fargo is not protected by any equity cushion. Wells Fargo is owed in excess of $23 million. The failure to secure exit financing that would have allowed the satisfaction of the Indebtedness for $12.5 million clearly speaks to the current value of the Debtor Collateral and the lack of any equity thereof. The factual underpinnings supporting relief from the automatic stay are compelling. Wells Fargo is entitled to relief from the automatic stay under 11 U.S.C. §362(d) because Wells Fargo's interest in the Debtor Collateral is not adequately protected. There is no equity cushion.

**B.  Relief Must Be Granted Under § 362(d)(2) Because the Debtor Has No Equity In the Debtor Collateral, and the Debtor Collateral is Not Necessary For An Effective Reorganization.**

Upon the request of a party in interest, a court must grant relief from the automatic stay regarding an act against property of the estate if the debtor lacks equity in the property and if the property is not necessary for an effective reorganization which can be accomplished within a reasonable time. 11 U.S.C. § 362(d)(2). In the instant case, both elements of section 362(d)(2) exist and relief must be granted.

**1.  The Estate Lacks Equity In The Debtor Collateral.**

Equity has been defined as "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of unsecured creditors." *Mellor*, 734 F.2d at 1400, n.2; *see also Stewart v. Gurley,* 745 F.2d 1194, 1195 (9th Cir. 1984). A comparison of the sum of the liens against the Debtor Collateral to its value conclusively demonstrates that the estates have no equity in the Debtor Collateral. As set forth above, the Indebtedness exceeds $23 million. The failure to secure exit financing that would have allowed the Wind Down Trust to acquire the Debtor Collateral for $12.5 million clearly speaks to the current value of the Debtor Collateral and the lack of equity thereof. Thus, no equity exists in the Debtor Collateral for purposes of section 362(d)(2).

**2.  The Debtor Collateral Is Not Necessary For An Effective Reorganization.**

After establishing that a debtor lacks equity in the property in question, it is the debtor's burden to prove that the property involved is necessary to an effective reorganization. 11 U.S.C. § 362(g). However, neither the Trustee nor the Funds will be able to meet this burden. Given the lack of equity in the Debtor Collateral and the current real estate market in California, it is highly unlikely that the Trustee can obtain the necessary post-petition financing to implement a plan of reorganization. Finally, in the six month period from the entry of the Order Approving Confirmation of the Plan on October 5, 2010 to the Order Vacating Plan on April 5, 2011, the Funds and the Equity Committee were unable to secure adequate funding to implement the Plan. Indeed, the Trustee's recent July 2011 Status Conference Statement states that: (a) with regard to

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 9375948v4

7

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 08-32220   Doc# 849   Filed: 07/22/11   Entered: 07/22/11 13:28:57   Page 8 of 9

the Wheatland Property, the Trustee "does not presently expect to realize any equity for the estate", and (b) with regard to the 4 Union Property, the Trustee expects that he will "seek to abandon this interest."

## IV.

## CONCLUSION

Based on the foregoing, Wells Fargo requests that the Court grant the Motion authorizing Wells Fargo to exercise its rights and remedies under applicable law and the Loan Documents with respect to the Debtor Collateral and all related assets.

DATED: July 22, 2011

BUCHALTER NEMER
A Professional Corporation

By: /s/ Craig C. Chiang
Craig C. Chiang
Attorneys for Movant
Wells Fargo Capital Finance, Inc.