# EXHIBIT A-3

# FIRST AMENDMENT TO
# LOAN AND SECURITY AGREEMENT

THIS FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT (this "Amendment"), is dated as of May 26, 2006, by and among WELLS FARGO FOOTHILL, INC., a California corporation ("Lender"), CMR INCOME FUND, LLC, a Nevada limited liability company ("Borrower"), and CALIFORNIA MORTGAGE AND REALTY, INC., a Delaware corporation ("Servicer").

## WITNESSETH:

WHEREAS, Borrower, Servicer and Lender entered into that certain Loan and Security Agreement, dated as of August 11, 2005 (as amended, restated, supplemented or otherwise modified through the date hereof, the "Loan Agreement"), whereunder Lender agreed to make extensions of credit from time to time to or for the account of Borrower; and

WHEREAS, the parties hereto desire to make certain amendments to the Loan Agreement, subject to the terms hereof;

NOW THEREFORE, in consideration of the premises and of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1. Defined Terms. Unless otherwise defined herein, all capitalized terms used herein have the meanings assigned to such terms in the Loan Agreement, as amended hereby.

SECTION 2. Amendments. Upon the First Amendment Effective Date (as hereinafter defined), the Loan Agreement shall be amended as follows:

(a)     The following definitions in Section 1.1 of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"'Obligations' means (a) all loans, Advances, Term Loan, debts, principal, interest (including any interest that, but for the commencement of an Insolvency Proceeding, would have accrued), premiums, liabilities (including all amounts charged to Borrower's Loan Account pursuant hereto), obligations (including indemnification obligations), fees (including the fees provided for in the Fee Letter), charges, costs, Lender Expenses (including any fees or expenses that, but for the commencement of an Insolvency Proceeding, would have accrued), lease payments, guaranties, covenants, and duties of any kind and description owing by Borrower to Lender pursuant to or evidenced by the Loan Documents and irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and including all interest not paid when due and all Lender Expenses that Borrower is required to pay or reimburse by the Loan Documents, by law, or otherwise, and (b) all Bank Product Obligations. Any reference in this Agreement or in the Loan Documents to the Obligations shall include all extensions, modifications, renewals, supplements, restatements or alterations thereof, both prior and subsequent to any Insolvency Proceeding.

009056.00101:970901.05

(b)     The following definitions are hereby added to <u>Section 1.1</u> of the Loan Agreement to be placed in a manner that maintains alphabetical order:

"'<u>First Amendment Effective Date</u>' means the effective date of the First Amendment to Loan and Security Agreement, dated as of May 26, 2006, between Borrower and Lender.

"'<u>Term Loan</u>' has the meaning set forth in <u>Section 17(a)</u>."

(c)     A new <u>Section 17</u> is hereby added to the Loan Agreement to read as follows:

"**17.     TERM LOAN.**

(a)     <u>Term Loan</u>.  In addition to the Advances made in accordance with <u>Section 2</u> of this Agreement, subject to the terms and conditions of this Agreement, on the First Amendment Effective Date, Lender agrees to make an advance in immediately available funds in the principal amount of Twenty-Five Million Dollars (the "<u>Term Loan</u>") for the account of Borrower to enable Borrower to fund that certain Promissory Note, to be dated as of May 25, 2006, in the original principal amount of $25,000,000, executed by CMR Mortgage Fund II, LLC ("<u>CMR II</u>"), payable to the order of Borrower (the "CMR II Note"), the proceeds of which CMR II Note, together with other funds provided by CMR II, will fund that certain Promissory Note, to be dated as of May 25, 2006, in the original principal amount of $48,000,000, executed by each of Eagle Meadow of Wheatland 115 LLC, a California limited liability company ("<u>EMW-115</u>"), Eagle Meadows of Wheatland 130, LLC, a California limited liability company ("<u>EMW-130</u>") Eagle Meadows of Wheatland 187, LLC, a California limited liability company ("<u>EMW-187</u>" and, together with EMW-115 and EMW-130, the "<u>EMW Entities</u>"), payable to the order of CMR II (the "<u>EMW Note</u>"), which EMW Note is secured by a first lien in certain unimproved real property located in Yuba County and Sutter County, California (the "<u>EMW Property</u>"), a second lien in certain real property located in San Mateo County, California (the "<u>Brisbane Property</u>"), and certain real property located in Pinal County, Arizona (the "<u>Casa Grande Property</u>").

(b)     <u>Collateral for Term Loan</u>.  To secure payment of the Term Loan only, Borrower hereby grants to Lender a security interest in and to all right, title and interest of Borrower in and to the CMR II Note and all collateral therefor, including the EMW Note and all collateral for the EMW Note, including all liens against the EMW Property, Brisbane Property and Casa Grande Property now or hereafter held by CMR II.  The CMR II Note and all collateral therefor shall be part of the Collateral hereunder for all purposes, except that proceeds thereof shall be applied only to payment of the Term Loan.

(c)     <u>Interest on Term Loan</u>.  The unpaid principal amount of the Term Loan shall bear interest at a per annum rate equal to the LIBOR Rate plus six and one-half percent (6.5%) and shall be due and payable, in arrears, on the first day of each month, commencing July 1, 2006, and on the Term Loan Maturity Date.  All unpaid principal of the Term Loan shall be due and payable on May 31, 2007 (the "<u>Term Loan Maturity Date</u>").  The principal of the Term Loan may be prepaid at any time or from time to time, without premium or penalty.  Amounts paid on the Term Loan may not be reborrowed.

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 3 of 41

(d)    Default Interest on the Term Loan.  Upon the occurrence and during the continuation of an Event of Default (and at the election of Lender), the outstanding principal balance of the Term Loan shall bear interest at a per annum rate equal to four (4) percent above the per annum rate of interest otherwise applicable hereunder.

(e)    Definitions for Section 17.  For purposes of this Section 17, the following terms shall have the following meanings:

"Base LIBOR Rate" means the rate per annum, determined by Lender in accordance with its customary procedures, and utilizing such electronic or other quotation sources as it considers appropriate (rounded upwards, if necessary, to the next 1/16%), to be the rate at which Dollar deposits (for delivery on the first day of an Interest Period) in the amount of $1,000,000 are offered to major banks in the London interbank market on or about 11:00 a.m. (California time) two (2) Business Days prior to the commencement of such Interest Period, for a term comparable to such Interest Period, which determination shall be conclusive in the absence of manifest error.

"Interest Period" means a period commencing on the first day of a calendar month and ending on the last day of such calendar month.

"LIBOR Rate" means, for each Interest Period, the rate per annum determined by Lender (rounded upwards, if necessary, to the next 1/16%) by dividing (a) the Base LIBOR Rate for such Interest Period, by (b) 100% minus the Reserve Percentage.  The LIBOR Rate shall be adjusted on and as of the effective day of any change in the Reserve Percentage.

"Reserve Percentage" means, on any day, the maximum percentage prescribed by the Board of Governors of the Federal Reserve System (or any successor governmental authority) for determining the reserve requirements (including any basic, supplemental, marginal, or emergency reserves) that are in effect on such date with respect to eurocurrency funding (currently referred to as "eurocurrency liabilities") of Lender, but so long as Lender is not required or directed under applicable regulations to maintain such reserves, the Reserve Percentage shall be zero.

(f)    Special Provisions Applicable to LIBOR Rate.  In the event that any change in market conditions or any law, regulation, treaty, or directive, or any change therein or in the interpretation of application thereof, shall at any time after the date hereof, in the reasonable opinion of Lender, make it unlawful or impractical for Lender to fund or maintain the Term Loan based on the LIBOR Rate or to continue such funding or maintaining, or to determine or charge interest rates at the LIBOR Rate, (x) Lender shall give notice of such changed circumstances to Borrower, (y) the date specified in such notice shall be deemed to be the last day of the Interest Period of the Term Loan, and interest upon the Term Loan thereafter shall accrue at the Base Rate plus three percent (3%), until Lender determines that it would no longer be unlawful or impractical to do so.

(g)    No Requirement of Matched Funding.  Anything to the contrary contained herein notwithstanding, Lender is not required actually to acquire eurodollar deposits to fund or otherwise match fund the Term Loan.

(h)    EMW Note not Eligible Note Receivable.  For purposes of this Agreement, the EMW Note shall not be considered an Eligible Note Receivable and the EMW Note and all collateral therefor shall secure the Term Loan and interest accrued thereon and expenses relating to the collection thereof, but shall not secure other

009056.00101:970901.05

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 4 of 41

Obligations under this Agreement. The Term Loan shall also be secured by all other Collateral.

(i)  Refinancing of Debt Secured by Brisbane Property and Casa Grande Property. Borrower and Lender acknowledge and agree that upon the refinancing by CMR II of the existing debt secured by liens prior to CMR II's liens against the Brisbane Property and Casa Grande Property, and extension of additional credit to EMW and the owners of the Brisbane Property and the Casa Grande Property, the liens against the Brisbane Property and the Casa Grande Property securing the EMW Note will be subordinated to such refinancing and additional debt, not in excess of $38,000,000, in the aggregate."

(d)  The period at the end of Section 8.16 is replaced with a semicolon and the following sections are hereby added to Article 8 of the Loan Agreement to read as follows:

"8.17  If there is a payment default with respect to the CMR II Note or the EMW Note or an amendment to the CMR II Note or EMW Note or agreements securing either, without the prior written consent of Lender; or

"8.18  At any time that any of the following occurs with respect to CMR II: (a) CMR II creates, incurs, assumes, suffers to exist, guarantees, or otherwise becomes or remains, directly or indirectly, liable with respect to Indebtedness in excess of $5,000,000, in the aggregate; (b) as at the end of any calendar month in any year, CMR II fails to have positive net income (as determined in accordance with GAAP) for the period from January 1 of such year to such date, (c) CMR II distributes (other than payments for withdrawals of capital accounts from CMR II) at any time in any year, in the aggregate, more than the net income (as determined in accordance with GAAP) earned during the period from January 1 of such year to the date of distribution, or (d) CMR II redeems, liquidates or otherwise returns any portion of a capital account to any member in CMR II which, when added to all other redemptions, liquidations or returns of capital during the immediately preceding twelve months exceeds ten percent (10%) of CMR II's aggregate outstanding capital accounts on the first day of such twelve-month period."

SECTION 3. Representations, Warranties and Covenants of Borrower.  Borrower represents and warrants to Lender, and agrees that:

(a)  the representations and warranties contained in the Loan Agreement (as amended hereby) and the other outstanding Loan Documents are true and correct in all material respects at and as of the date hereof as though made on and as of the date hereof, except (i) to the extent specifically made with regard to a particular date and (ii) for such changes as are a result of any act or omission specifically permitted under the Loan Agreement (or under any Loan Document), or as otherwise specifically permitted by Lender;

(b)  on the First Amendment Effective Date, after giving effect to this Amendment, no Default or Event of Default will have occurred and be continuing;

(c)  the execution, delivery and performance of this Amendment have been duly authorized by all necessary action on the part of, and duly executed and delivered by, Borrower, and this Amendment is a legal, valid and binding obligation of Borrower enforceable against Borrower in accordance with its terms, except as the enforcement thereof may be subject to the

009056.00101:970901.05

effect of any applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law); and

(d)     the execution, delivery and performance of this Amendment do not conflict with or result in a breach by Borrower of any term of any material contract, loan agreement, indenture or other agreement or instrument to which Borrower is a party or is subject.

(e)     the EMW Note bears interest at 13% per annum, payable monthly, with all principal and unpaid accrued interest due and payable thirty-six months after the date thereof; the EMW Note will be, on the date of funding, secured by a first lien on the EMW Property, as evidenced by a Lender's title insurance policy in favor of CMR II; the EMW Note is guaranteed by Kent Hoggan, a resident of California; and the CMR II Note shall bear interest at a rate not less than the rate of interest applicable to the Term Loan, payable at least monthly, secured by a first lien on the EMW Note, and all payments received by CMR II on the EMW Note shall be applied to the CMR II Note, and all payments received by Borrower on the CMR II Note or realized on any collateral therefor shall be delivered to Lender for application to the Term Loan or interest thereon or fees owing in connection therewith.

(f)     as soon as available, but in any event within 30 days after the end of each month during each year, an unaudited balance sheet, income statement and statement of cash flow covering CMR II's operations during such period.

SECTION 4.   Conditions Precedent to Effectiveness of Amendment. This Amendment shall become effective (the "First Amendment Effective Date") upon satisfaction of each of the following conditions:

(a)     Borrower and Lender shall have executed and delivered to Lender this Amendment and such other documents as Lender may reasonably request;

(b)     Borrower shall have delivered to Lender (i) the CMR II Note (which shall include a pledge by CMR II to Borrower of the EMW Note and all collateral therefor and an agreement to make all payments to the Cash Management Account), duly endorsed by Borrower to the Lender, (ii) the EMW Note (which shall provide that all payments are to be made to the Cash Management Account), duly endorsed by CMR II to Borrower and by Borrower to the Lender, (iii) a closing protection letter issued by a nationally recognized title insurance company with respect to the settlement agent for the acquisition of the EMW Property by the EMW Entities, and (iv) proposed closing instructions to be submitted by or on behalf of CMR II to such settlement agent prior to funding the EMW Note;

(c)     Borrower shall have caused to be recorded a Collateral Assignment of Deed of Trust from CMR II to Borrower and a Collateral Assignment of Deed of Trust from Borrower to Lender for each Deed of Trust securing payment of the EMW Note;

(d)     Borrower shall have provided evidence to Lender that the EMW Note is secured by a first lien on the EMW Property, a second lien on the Brisbane Property, and second or third liens on the Casa Grande Property, in the manner represented by CMR II and Borrower herein and in the documents provided to Lender on or before the date hereof;

(e)     Borrower shall have provided to Lender a current appraisal of the EMW Property showing its value to be not less than $96,000,000;

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 6 of 41

(f)    Borrower shall provide to Lender (i) a certificate from an Authorized Person attesting to resolutions of Borrower's Board of Directors authorizing its execution of this Amendment and authorizing specific officers of Borrower to execute this Amendment and all related documents, (ii) a certificate from an officer of the manager of CMR II, attesting to resolutions of the board of directors of such manager authorizing CMR II's execution of the CMR II Note and pledge of the EMW Note to secure the Term Loan, and (iii) evidence of the authorization from the board of directors, manager or other governing body for EMW's execution and delivery of the EMW Note and the assignment of the collateral therefor;

(g)    Each of the Guarantors shall have executed a Reaffirmation of Guaranty and Pledge Agreements in the form attached to this Amendment.

(h)    Lender shall have received an opinion of counsel to Borrower, Servicer and CMR II, in form and substance satisfactory to Lender; and

(i)    All legal matters incident to the transactions contemplated hereby shall be reasonably satisfactory to counsel for Lender.

SECTION 5.  <u>Closing Fee</u>.  On the date hereof, Lender shall have earned a fee in an amount equal to $375,000 [one and one-half percent (1.50%) times the principal amount of the Term Loan], which shall be due and payable on the date hereof.  Lender hereby is expressly authorized by Borrower to (i) charge such amount due and owing to the Loan Account, and (ii) designate such amount as an Advance under the Loan Agreement.

SECTION 6.  <u>Execution in Counterparts</u>.  This Amendment may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

SECTION 7.  <u>Costs and Expenses</u>.  Borrower hereby affirms its obligation under the Loan Agreement to reimburse Lender for all reasonable costs, internal charges and out-of-pocket expenses paid or incurred by Lender in connection with the preparation, negotiation, execution and delivery of this Amendment, including but not limited to the attorneys' fees and time charges of attorneys for Lender with respect thereto.

SECTION 8.  **GOVERNING  LAW.    THIS  AMENDMENT  SHALL  BE GOVERNED BY, AND CONSTRUCTED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE INTERNAL CONFLICTS OF LAWS PROVISIONS THEREOF.**

SECTION 9.  <u>Effect of Amendment; Reaffirmation of Loan Documents</u>.  The parties hereto agree and acknowledge that (i) nothing contained in this Amendment in any manner or respect limits or terminates any of the provisions of the Loan Agreement or the other outstanding Loan Documents other than as expressly set forth herein and (ii) the Loan Agreement (as amended hereby) and each of the other outstanding Loan Documents remain and continue in full force and effect and are hereby ratified and reaffirmed in all respects. Upon the effectiveness of this Amendment, each reference in the Loan Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of similar import shall mean and be a reference to the Loan Agreement as amended hereby.

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 7 of 41

SECTION 10. Headings: Section headings in this Amendment are included herein for convenience of any reference only and shall not constitute a part of this Amendment for any other purposes.

SECTION 11. Release. **EACH OF BORROWER AND SERVICER HEREBY ACKNOWLEDGES THAT AS OF THE DATE HEREOF IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE OBLIGATIONS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM LENDER, ITS AFFILIATES AND PARTICIPANTS, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS, EMPLOYEES OR ATTORNEYS. EACH OF BORROWER AND SERVICER HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES LENDER, ITS AFFILIATES AND PARTICIPANTS, AND THEIR RESPECTIVE PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AMENDMENT IS EXECUTED, WHICH BORROWER OR SERVICER MAY NOW OR HEREAFTER HAVE AGAINST LENDER AND ITS PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISING FROM THE LIABILITIES, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE LOAN AGREEMENT OR OTHER LOAN DOCUMENTS, AND NEGOTIATION FOR AND EXECUTION OF THIS AMENDMENT. EACH OF BORROWER AND SERVICER HEREBY COVENANTS AND AGREES NEVER TO INSTITUTE ANY ACTION OR SUIT AT LAW OR IN EQUITY, NOR INSTITUTE, PROSECUTE, OR IN ANY WAY AID IN THE INSTITUTION OR PROSECUTION OF ANY CLAIM, ACTION OR CAUSE OF ACTION, RIGHTS TO RECOVER DEBTS OR DEMANDS OF ANY NATURE AGAINST LENDER, ITS AFFILIATES AND PARTICIPANTS, OR THEIR RESPECTIVE SUCCESSORS, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS, EMPLOYEES, AND PERSONAL AND LEGAL REPRESENTATIVES ARISING ON OR BEFORE THE DATE HEREOF OUT OF OR RELATED TO LENDER'S ACTIONS, OMISSIONS, STATEMENTS, REQUESTS OR DEMANDS IN ADMINISTERING, ENFORCING, MONITORING, COLLECTING OR ATTEMPTING TO COLLECT THE OBLIGATIONS OF BORROWER TO LENDER, WHICH OBLIGATIONS WERE EVIDENCED BY THE LOAN AGREEMENT AND OTHER LOAN DOCUMENTS.**

009056.00101:970901.05

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 8 of 41

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered as of the date first above written.

**CMR INCOME FUND, LLC,**
a Nevada limited liability company, as Borrower

By: _____

Name: Henry Park

Title: Manager

**CALIFORNIA MORTGAGE AND REALTY,**
**INC.,** a Delaware corporation, as Servicer

By: _____

Name: Scott Power

Title: Vice President

**WELLS FARGO FOOTHILL, INC.,**
a California corporation, as Lender

By: _____

Name: _____

Title: Vice President

# SECOND AMENDMENT TO
# LOAN AND SECURITY AGREEMENT

THIS SECOND AMENDMENT TO LOAN AND SECURITY AGREEMENT (this "Amendment"), is dated as of May 31, 2007, by and among WELLS FARGO FOOTHILL, INC., a California corporation ("Lender"), AIRPORT HOTELS, LLC, a Nevada limited liability company ("Airport Hotels"), CMR INCOME FUND, LLC, a Nevada limited liability company ("CMR Income" and, together with Airport Hotels, the "Borrower" or "Borrowers"), and CALIFORNIA MORTGAGE AND REALTY, INC., a Delaware corporation ("Servicer").

## WITNESSETH:

WHEREAS, Borrowers, Servicer and Lender are parties to that certain Loan and Security Agreement, dated as of August 11, 2005, as amended as of May 26, 2006, and modified by Joinder Agreement, dated as of May 29, 2006, and Temporary Advance Agreement, dated as of December 28, 2006 (as further amended, restated, supplemented or otherwise modified through the date hereof, the "Loan Agreement"), whereunder Lender agreed to make extensions of credit from time to time to or for the account of Borrowers; and

WHEREAS, the parties hereto desire to make certain amendments to the Loan Agreement, subject to the terms hereof;

NOW THEREFORE, in consideration of the premises and of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1. Defined Terms. Unless otherwise defined herein, all capitalized terms used herein have the meanings assigned to such terms in the Loan Agreement, as amended hereby.

SECTION 2. Amendments. Upon the Second Amendment Effective Date (as hereinafter defined), the Loan Agreement shall be amended as follows:

(a) The following definitions in Section 1.1 of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"'Airport Hotels' means Airport Hotels, LLC, a Nevada limited liability company and wholly-owned subsidiary of CMR Income.

"'Borrower' means each of Airport Hotels and CMR Income or both.

"'CMR Income' means CMR Income Fund, LLC, a Nevada limited liability company.

"'EBITDA' means, with respect to any fiscal period, CMR Income's net earnings (or loss), *minus* extraordinary gains *minus* interest income (other than from Notes Receivable), *plus* Interest Expense (other than interest accrued on the Term Loan), *plus*

009056.00101:1034960.04

income taxes, *plus* depreciation and amortization for such period, *minus* income (or *plus* loss) on investment in Subsidiary; in each case not otherwise defined, as determined in accordance with GAAP, on a non-consolidated basis.

"'<u>Debt-to-Worth Ratio</u>' means, as of any date of determination, a ratio of (a) (i) the outstanding amount of all Indebtedness of CMR Income as of such date, *minus* (ii) the outstanding amount of CMR Income's Subordinated Debt as of such date, *minus* (iii) the outstanding principal amount of the Term Loan to (b) the sum of (i) CMR Income's Tangible Net Worth as of such date, *plus* (ii) the outstanding amount of CMR Income's Subordinated Debt as of such date, in each case as determined in accordance with GAAP, on a non-consolidated basis.

"'<u>Interest Expense</u>' means, for any period, the aggregate of the interest expense and fees paid by CMR Income for such period as determined in accordance with GAAP, on a non-consolidated basis."

(b)     The following definition is hereby added to <u>Section 1.1</u> of the Loan Agreement to be placed in a manner that maintains alphabetical order:

"'<u>Second Amendment Effective Date</u>' means the effective date of the Second Amendment to Loan and Security Agreement, dated as of May 31, 2007, between Borrower and Lender."

(c)     <u>Section 7.18(b)</u> of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"(b)     **Interest Coverage Ratio.**  The ratio of CMR Income's EBITDA for each calendar quarter to CMR Income's Interest Expense (after deducting interest accrued on the Term Loan) for such calendar quarter of at least 1.5 to 1."

(d)     <u>Section 17(c)</u> and <u>(f)</u> of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"(c)     <u>Interest on Term Loan; Maturity of Term Loan</u>.  The unpaid principal amount of the Term Loan shall bear interest at a per annum rate equal to (i) from the date of advance to the Second Amendment Effective Date, the LIBOR Rate plus six and one-half percent (6.5%) and (ii) from and after the Second Amendment Effective Date, the LIBOR Rate plus five and one-fourth percent (5.25%), and such interest shall be due and payable, in arrears, on the first day of each month, commencing July 1, 2006, and on the Term Loan Maturity Date.  All unpaid principal of the Term Loan shall be due and payable on August 31, 2007 (the "<u>Term Loan Maturity Date</u>").  The principal of the Term Loan may be prepaid at any time or from time to time, without premium or penalty. Amounts paid on the Term Loan may not be reborrowed.

"(f)     <u>Special Provisions Applicable to LIBOR Rate</u>.  In the event that any change in market conditions or any law, regulation, treaty, or directive, or any change therein or in the interpretation of application thereof, shall at any time after the date hereof, in the reasonable opinion of Lender, make it unlawful or impractical for Lender to

009056.00101:1034960.04

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 11 of 41

fund or maintain the Term Loan based on the LIBOR Rate or to continue such funding or maintaining, or to determine or charge interest rates at the LIBOR Rate, (x) Lender shall give notice of such changed circumstances to Borrower, (y) the date specified in such notice shall be deemed to be the last day of the Interest Period of the Term Loan, and interest upon the Term Loan thereafter shall accrue at the Base Rate plus one-fourth of one percent (0.25%), until Lender determines that it would no longer be unlawful or impractical to do so."

(e)     The period at the end of Section 8.18 is replaced with a semicolon and the following section is hereby added to Article 8 of the Loan Agreement to read as follows:

"**8.19**   At any time that the net worth of CMR II shall be less than $50,000,000."

(f)     In Section 12 of the Loan Agreement, the second address shown for the Lender is hereby deleted and replaced in its entirety by the following:

"and            **Wells Fargo Foothill, Inc.**
                14241 Dallas Parkway, Suite 1300
                Dallas, Texas  75254
                Attn:  Loan Portfolio Manager—CMR Income Fund, LLC
                Fax No.:  972-387-5775"

(g)     Schedule 3 to Exhibit C-1 is hereby replaced with Revised Schedule 3 attached hereto and made a part hereof.

(h)     Section 3(e) of the First Amendment to Loan and Security Agreement, dated as of May 26, 2006, between Borrower and Lender is hereby deleted in its entirety and replaced with the following:

"(e)     (i) the EMW Note bears interest at 13% per annum, payable monthly, with all principal and unpaid accrued interest due and payable thirty-six months after the date thereof; the EMW Note is secured by a first lien on the EMW Property, as evidenced by a Lender's title insurance policy in favor of CMR II; the EMW Note is guaranteed by Kent Hoggan, a resident of California; (ii) the CMR II Note bears interest at a rate not less than the rate of interest applicable to the Term Loan, from time to time, payable at least monthly, secured by a first lien on the EMW Note; (iii) all principal payments received by CMR II on the EMW Note shall be applied to principal of the CMR II Note; interest payments received by CMR II on the EMW Note in an amount not less than the rate of interest applicable to the Term Loan, from time to time, shall be applied to interest on the CMR II Note; and (iv) all principal payments and interest payments (to the extent equal to an amount calculated at a rate equal to the rate of interest applicable to the Term Loan, from time to time) received by Borrower on the CMR II Note or realized on any collateral therefor shall be delivered to Lender for application to the Term Loan or interest thereon or fees owing in connection therewith."

009056.00101:1034960.04

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 12 of 41

SECTION 3.  Waivers.  On the Second Amendment Effective Date, and in accordance with Section 15.1 of the Loan Agreement, Lender hereby waives Borrower's noncompliance with Section 7.18 for the period of June 30, 2006, to, but excluding May 31, 2007.

SECTION 4.  Representations, Warranties and Covenants of Borrowers.  Each of the Borrowers represents and warrants to Lender, and agrees that:

(a)    the representations and warranties contained in the Loan Agreement (as amended hereby) and the other outstanding Loan Documents are true and correct in all material respects at and as of the date hereof as though made on and as of the date hereof, except (i) to the extent specifically made with regard to a particular date and (ii) for such changes as are a result of any act or omission specifically permitted under the Loan Agreement (or under any Loan Document), or as otherwise specifically permitted by Lender;

(b)    after giving effect to this Amendment, no Default or Event of Default will have occurred and be continuing;

(c)    the execution, delivery and performance of this Amendment have been duly authorized by all necessary action on the part of, and duly executed and delivered by, each Borrower, and this Amendment is a legal, valid and binding obligation of each Borrower enforceable against each Borrower in accordance with its terms, except as the enforcement thereof may be subject to the effect of any applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law); and

(d)    the execution, delivery and performance of this Amendment do not conflict with or result in a breach by either Borrower of any term of any material contract, loan agreement, indenture or other agreement or instrument to which such Borrower is a party or is subject.

(e)    the CMR II Note is not in default and remains in full force and effect, secured by a first priority security interest in the EMW Note, which in turn is not in default and remains secured by a first lien in the EMW Property, a second lien in the Casa Grande Property (subject only to debt in the principal amount of $17,000,000 secured by a prior lien), and a third lien in the Brisbane Property (subject only to debt in the aggregate principal amount of $32,000,000, secured by prior liens).

(f)    the unpaid principal balance of the Term Loan as of May 31, 2007, is $21,786,091.84.

SECTION 5.  Conditions Precedent to Effectiveness of Amendment.  This Amendment shall become effective (the "Second Amendment Effective Date") upon satisfaction of each of the following conditions:

(a)    Borrowers, Servicer and Lender shall have executed and delivered to Lender this Amendment and such other documents as Lender may reasonably request;

009056.00101:1034960.04

(b)     Borrowers shall have provided evidence to Lender that the maturity of the CMR II Note has been extended to a date not earlier than August 15, 2007, and not later than May 31, 2008, to which extension Lender hereby consents;

(c)     Each of the Guarantors shall have executed a Reaffirmation of Guaranty and Pledge Agreements in the form attached to this Amendment;

(d)     CMR Mortgage Fund, LLC, as subordinated lender, and CMR II, Borrower and Lender, as senior lenders, shall have entered into an Intercreditor Agreement, assented to by the EMW Entities, in form and substance acceptable to Lender; and

(e)     All legal matters incident to the transactions contemplated hereby shall be reasonably satisfactory to counsel for Lender.

SECTION 6.   Amendment Fee.   On the date hereof, Lender shall have earned a fee in an aggregate amount equal to $28,000, comprising (a) $3,000 for the waiver and amendment of certain financial covenants, and (b) $25,000.00, for the extension of the Term Loan Maturity Date, which aggregate fee shall be due and payable on the date hereof.  Lender hereby is expressly authorized by Borrower to (i) charge such amount due and owing to the Loan Account, and (ii) designate such amount as an Advance under the Loan Agreement.

SECTION 7.   Execution in Counterparts.   This Amendment may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

SECTION 8.   Costs and Expenses.   Each of the Borrowers hereby affirms its obligation under the Loan Agreement to reimburse Lender for all reasonable costs, internal charges and out-of-pocket expenses paid or incurred by Lender in connection with the preparation, negotiation, execution and delivery of this Amendment, including but not limited to the attorneys' fees and time charges of attorneys for Lender with respect thereto.

SECTION 9.   **GOVERNING LAW.    THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUCTED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE INTERNAL CONFLICTS OF LAWS PROVISIONS THEREOF.**

SECTION 10.   Effect of Amendment; Reaffirmation of Loan Documents.  (a)  The parties hereto agree and acknowledge that (i) nothing contained in this Amendment in any manner or respect limits or terminates any of the provisions of the Loan Agreement or the other outstanding Loan Documents other than as expressly set forth herein and (ii) the Loan Agreement (as amended hereby) and each of the other outstanding Loan Documents remain and continue in full force and effect and are hereby ratified and reaffirmed in all respects.  Upon the effectiveness of this Amendment, each reference in the Loan Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of similar import shall mean and be a reference to the Loan Agreement as amended hereby.

(b)     The waivers agreed to herein (i) are strictly limited to the provisions expressly referenced and, except as expressly set forth herein, all the other terms, provisions and conditions

009056.00101:1034960.04

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 14 of 41

of the Loan Agreement shall remain in full force and effect, (ii) shall not extend nor be deemed to extend to any other Event of Default or Default that may now exist or hereafter arise under the Loan Agreement or any of the other Loan Documents, whether similar or dissimilar to the matters waived herein, (iii) shall not impair, restrict or limit any right or remedy of the Lender with respect to any other Default or Event of Default that may now exist or hereafter arise under the Loan Agreement or any of the other Loan Documents, and (iv) shall not constitute any course of dealing or other basis for altering any obligation of the Borrower or any right, privilege or remedy of the Lender under the Loan Agreement or any of the other Loan Documents.

SECTION 11. Headings. Section headings in this Amendment are included herein for convenience of any reference only and shall not constitute a part of this Amendment for any other purposes.

SECTION 12. Release. **EACH OF THE BORROWERS AND SERVICER HEREBY ACKNOWLEDGES THAT AS OF THE DATE HEREOF IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE OBLIGATIONS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM LENDER, ITS AFFILIATES AND PARTICIPANTS, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS, EMPLOYEES OR ATTORNEYS. EACH OF THE BORROWERS AND SERVICER HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES LENDER, ITS AFFILIATES AND PARTICIPANTS, AND THEIR RESPECTIVE PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AMENDMENT IS EXECUTED, WHICH BORROWERS OR SERVICER MAY NOW OR HEREAFTER HAVE AGAINST LENDER AND ITS PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISING FROM THE LIABILITIES, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE LOAN AGREEMENT OR OTHER LOAN DOCUMENTS, AND NEGOTIATION FOR AND EXECUTION OF THIS AMENDMENT. EACH OF THE BORROWERS AND SERVICER HEREBY COVENANTS AND AGREES NEVER TO INSTITUTE ANY ACTION OR SUIT AT LAW OR IN EQUITY, NOR INSTITUTE, PROSECUTE, OR IN ANY WAY AID IN THE INSTITUTION OR PROSECUTION OF ANY CLAIM, ACTION OR CAUSE OF ACTION, RIGHTS TO RECOVER DEBTS OR DEMANDS OF ANY NATURE AGAINST LENDER, ITS AFFILIATES AND PARTICIPANTS, OR THEIR RESPECTIVE SUCCESSORS, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS, EMPLOYEES, AND PERSONAL AND LEGAL REPRESENTATIVES ARISING ON OR BEFORE THE DATE HEREOF OUT OF OR RELATED TO LENDER'S ACTIONS, OMISSIONS, STATEMENTS, REQUESTS OR**

009056.00101:1034960.04

**DEMANDS IN ADMINISTERING, ENFORCING, MONITORING, COLLECTING OR ATTEMPTING TO COLLECT THE OBLIGATIONS OF BORROWER TO LENDER, WHICH OBLIGATIONS WERE EVIDENCED BY THE LOAN AGREEMENT AND OTHER LOAN DOCUMENTS.**

009056.00101:1034960.04

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered as of the date first above written.

**BORROWERS:**

**AIRPORT HOTELS, LLC**

By:  **CALIFORNIA MORTGAGE AND REALTY,** *a Delaware Corp.*
**INC., its Manager**

By: *James Gala*
Name: *James Gala*
Title: *CEO*

**CMR INCOME FUND, LLC**
By: *California Mortgage and Realty, Inc., a Delaware Corp. its Manager*
By: *James Gala*
Name: *James Gala*
Title: *CEO*

**SERVICER:**

**CALIFORNIA MORTGAGE AND REALTY, INC.**

By: *James Gala*
Name: *James Gala*
Title: *CEO*

**LENDER:**

**WELLS FARGO FOOTHILL, INC.**

By: _____
Name: _____
Title: _____

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 17 of 41

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered as of the date first above written.

**BORROWERS:**

**AIRPORT HOTELS, LLC**

By: **CALIFORNIA MORTGAGE AND REALTY, INC.**, its Manager

By: _____
Name: _____
Title: _____

**CMR INCOME FUND, LLC**

By: _____
Name: _____
Title: _____

**SERVICER:**

**CALIFORNIA MORTGAGE AND REALTY, INC.**

By: _____
Name: _____
Title: _____

**LENDER:**

**WELLS FARGO FOOTHILL, INC.**

By: _____
Name: _____
Title: _Vice President_

009056.00101:1034960.04

**REVISED SCHEDULE 3**

FINANCIAL COVENANTS

1.  **Maximum Debt to Tangible Net Worth Ratio for CMR Income.**

    (a)  (i)  CMR Income's outstanding Indebtedness on the
             ___ day of _____, ____ is:                         $_____

         (ii)  CMR Income's Subordinated Debt on such day is:          $_____

         (iii) Outstanding Term Loan on such day is:                   $_____

         (iv)  CMR Income's Tangible Net Worth on such day is:         $_____

         (v)   The difference of Item (a)(i) minus Item (a)(ii)
               minus Item (a)(iii) is:                                 $_____

         (vi)  The sum of Item (a)(ii) and Item (a)(iv) is:            $_____

         (vi)  Item (a)(v) divided by Item (a)(vi) (=Debt to
               Worth Ratio) is:                                        _____

    (b)  The Debt to Worth Ratio set forth above **[is/is not]** less than or equal to 4.0 to 1.0.

2.  **Interest Coverage Ratio for CMR Income.**

    (a)  (i)  CMR Income's EBITDA for the
             three-month period ending _____, ____ is $_____.

         (ii)  CMR Income's Interest Expense
               for such period is                                      $_____.

         (iii) CMR Income's Interest Expense
               for such period for the Term Loan is                    $_____.

    (b)  The ratio of Item (a)(i) to [Item (a)(ii) minus Item (a)(iii)] is $_____

    The ratio of Borrower's EBITDA to Interest Expense, measured for the three-month
    period ending _____, ____ is ___:1.0, which **[is/is not]** greater than or equal to 1.5 to
    1.0.

3.  **Minimum Tangible Net Worth and Subordinated Debt of Borrower.**

    (a)  (i)  Borrower's Tangible Net Worth on
             the ___ day of _____, ____ is:                     $_____

009056.00101:1034960.04

      (ii)     Borrower's Subordinated Debt on such day is:     $_____

      (iii)    The sum of Item (a)(i) and Item (a)(ii) is:    $_____

    (b)     The sum of Borrower's Tangible Net Worth and Subordinated Debt [**is/is not**] greater than or equal to the applicable amount set forth in Section 7.18(c) of the Loan Agreement for such day.

4.    **Limitation on Delinquent Notes Receivable of Borrower**.

    (a)    (i)     the aggregate unpaid balance of Borrower's Delinquent Notes Receivable on the \_\_\_\_ day of _____, \_\_\_\_\_ is:    $_____

      (ii)    the aggregate unpaid balance of Borrower's Net Eligible Notes Receivable on such day is:    $_____

      (iii)    Item (a)(i) divided by Item (a)(ii) (=Ratio of Delinquent Notes Receivable) is:    _____

    (b)     The Ratio of Delinquent Notes Receivable [**is/is not**] equal to or less than 0.10.

5.    **Limitation on Defaulted Notes Receivable of Borrower**.

    (a)    (i)     the aggregate unpaid balance of Borrower's Defaulted Notes Receivable on the \_\_\_\_ day of _____, \_\_\_\_\_ is:    $_____

      (ii)    the aggregate unpaid balance of Borrower's Net Eligible Notes Receivable on such day is:    $_____

      (iii)    Item (a)(i) divided by Item (a)(ii) (=Ratio of Defaulted Notes Receivable) is:    _____

    (b)     The Ratio of Delinquent Notes Receivable [**is/is not**] equal to or less than 0.05.

009056.00101:1034960.04

## Reaffirmation of Guaranty and Pledge Agreements

Each of the undersigned (collectively, the "Guarantors"), on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, hereby (i) consents and agrees to the terms and provisions of the foregoing Amendment and each of the transactions contemplated thereby and confirms and agrees that all references in the Loan Documents to the "Loan Agreement" shall mean the Loan Agreement as amended by the foregoing Amendment, (ii) agrees that the Limited Continuing Guaranty executed by each Guarantor for the benefit of Lender (the "Guaranty"), remains in full force and effect and continues to be the legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms, and (iii) agrees that the Security and Pledge Agreement executed by such Guarantor, on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, for the benefit of Lender (each, a "Pledge Agreement" and, collectively, the "Pledge Agreements"), remains in full force and effect and continues to be the legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms.

Furthermore, each Guarantor hereby agrees and acknowledges, on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, that (a) the Guaranty is not subject to any claims, defenses or offsets, (b) nothing contained in the Amendment shall adversely affect any right or remedy of Lender under the Guaranty or any agreement executed by such Guarantor in connection therewith, (c) the execution and delivery of the Amendment or any agreement entered into by Lender in connection therewith shall in no way reduce, impair or discharge any obligations of such Guarantor pursuant to the Guaranty and shall not constitute a waiver by Lender of any of Lender's rights against such Guarantor under the Guaranty, (d) each Pledge Agreement is not subject to any claims, defenses or offsets, (e) nothing contained in the Amendment shall adversely affect any right or remedy of Lender under the Pledge Agreements or any agreement executed by such Guarantor in connection therewith, (f) the execution and delivery of the Amendment or any agreement entered into by Lender in connection therewith shall in no way reduce, impair or discharge any obligations of such Guarantor pursuant to the Pledge Agreements and shall not constitute a waiver by Lender of any of Lender's rights under the Pledge Agreements, (g) the consent of such Guarantor is not required to the effectiveness of the Amendment and (h) no consent by such Guarantor is required for the effectiveness of any future amendment, modification, forbearance or other action with respect to the Loan Agreement or any present or future Loan Document (other than the Guaranty or Pledge Agreement executed by such Guarantor).

_____
H. David Choo

_____
Hyesung Choo

009056.00101:1034960.04

## THIRD AMENDMENT TO LOAN AND SECURITY AGREEMENT

THIS THIRD AMENDMENT TO LOAN AND SECURITY AGREEMENT (this "Amendment") is dated as of July 1, 2008, among **AIRPORT HOTELS, LLC**, a Nevada limited liability company ("Airport Hotels"), **CMR INCOME FUND, LLC**, a Nevada limited liability company ("CMR Income" and, together with Airport Hotels, the "Borrowers" or "Borrower"), **CALIFORNIA MORTGAGE AND REALTY, INC.**, a Delaware corporation (the "Servicer"), and **WELLS FARGO FOOTHILL, INC.**, a California corporation (the "Lender").

### WITNESSETH:

WHEREAS, Borrowers, Servicer and Lender are parties to that certain Loan and Security Agreement, dated as of August 11, 2005, as amended as of May 26, 2006, and May 31, 2007, and modified by Joinder Agreement, dated as of May 29, 2006, Temporary Advance Agreement, dated as of December 28, 2006, as amended, and Forbearance Agreement, dated as of August 31, 2007, as amended (as further amended, restated, supplemented or otherwise modified through the date hereof, the "Loan Agreement"), whereunder Lender agreed to make extensions of credit from time to time to or for the account of Borrowers; and

WHEREAS, the parties hereto desire to make certain amendments to the Loan Agreement, subject to the terms hereof;

NOW THEREFORE, in consideration of the premises and of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1. <u>Defined Terms</u>. Unless otherwise defined herein, all capitalized terms used herein have the meanings assigned to such terms in the Loan Agreement, as amended hereby.

SECTION 2. <u>Amendments</u>. Upon the Third Amendment Effective Date (as hereinafter defined), the Loan Agreement shall be amended as follows:

(a)     The following definition in <u>Section 1.1</u> of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"'<u>Maximum Revolver Amount</u>' means $5,000,000.

(b)     The following definition is hereby added to <u>Section 1.1</u> of the Loan Agreement to be placed in a manner that maintains alphabetical order:

"'<u>Third Amendment Effective Date</u>' means the effective date of the Third Amendment to Loan and Security Agreement, dated as of July 1, 2008, between Borrowers and Lender."

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 22 of 41

(c)     The following definitions in Section 1.1 of the Loan Agreement are hereby deleted and not replaced: "Applicable Prepayment Premium," "Extension Period," "First Extended Maturity Date," "Minimum Charge Period" and "Second Extended Maturity Date."

(d)     Section 2.1(a) of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"(a)     Subject to the terms and conditions of this Agreement, and during the term of this Agreement, Lender may, at its sole option, from time to time, make advances in immediately available funds (each an "Advance," and collectively, the "Advances") to Borrowers in an amount at any one time outstanding not to exceed an amount equal to the lesser of (i) the Maximum Revolver Amount or (ii) the Borrowing Base.  Borrowers acknowledge and agree that Lender has no obligation at any time on or after the Third Amendment Effective Date to make any Advance hereunder."

(e)     Sections 2.10(b) and (d) of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"(b)     **Intentionally Blank.**

"(d)     **Intentionally Blank.**"

(f)     Section 3.4 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"3.4     **Term.**  This Agreement shall continue in full force and effect for a term ending on the Term Loan Maturity Date (the "Maturity Date").  The foregoing notwithstanding, Lender shall have the right to terminate its obligations under this Agreement immediately and without notice upon the occurrence and during the continuation of an Event of Default."

(g)     Section 3.5 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"3.5     **[Intentionally Blank].**

(h)     Section 3.7 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 23 of 41

"3.7 **Early Termination by Borrower.** Borrower has the option, at any time upon 20 days' prior written notice to Lender, to terminate this Agreement by paying to Lender, in cash, the Obligations (including providing cash collateral (in an amount determined by Lender as sufficient to satisfy the reasonably estimated credit exposure) to be held by Lender for the benefit of the Bank Product Providers with respect to the Bank Product Obligations), in full.

(i) Section 7.10 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"7.10 **Restricted Payments.** Make any Restricted Payment.

(j) Sections 8.17 and 8.18 of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"**8.17** If there is a payment default with respect to the CMR II Note or an amendment to the CMR II Note or EMW Note or agreements securing either, without the prior written consent of Lender; or

"**8.18** At any time that any of the following occurs with respect to CMR II: (a) CMR II creates, incurs, assumes, suffers to exist, guarantees, or otherwise becomes or remains, directly or indirectly, liable with respect to Indebtedness (other than the Obligations) in excess of $15,000,000, in the aggregate; (b) CMR II makes any distributions, without the prior written consent of Lender or (c) CMR II redeems, liquidates or otherwise returns any portion of a capital account to any member in CMR II, without the prior written consent of Lender;"

(k) Sections 17(b) and (c) of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"(b) Collateral for Term Loan; Application of Payments on EMW Note. To secure payment of the Term Loan only, Borrowers hereby grant to Lender a security interest in and to all right, title and interest of Borrowers in and to the CMR II Note and all collateral therefor, including the EMW Note and all collateral for the EMW Note, including all liens against the EMW Property and Casa Grande Property now or hereafter held by CMR II. The CMR II Note and all collateral therefor shall be part of the Collateral hereunder for all purposes, except that proceeds thereof shall be applied only to payment of the Term Loan, as follows (notwithstanding the terms of the Second Amendment to Loan and Security Agreement, dated as of May 31, 2007, between Borrower and Lender): (A) the EMW Note bears interest at 13% per annum, payable monthly, with all principal and unpaid accrued interest due and payable thirty-six months after the date thereof; (B) the CMR II Note bears interest at a rate not less than the rate of interest applicable to the Term Loan, from time to time, payable at least monthly in cash, secured by a first lien on the EMW Note; (C) Borrowers shall cause all payments received by CMR II on the EMW Note, whether interest or principal, or realized on any collateral therefor, to be applied to the CMR II Note, first to accrued interest, and thereafter to unpaid principal, (D) whether or not CMR II receives any payments on the

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 24 of 41

EMW Note, Borrowers shall cause CMR II to pay all interest accruing on the CMR II Note at least monthly in cash and all payments received by Borrower on the CMR II Note or realized on any collateral therefor shall be delivered to Lender for application to the Term Loan or interest thereon or fees owing in connection therewith.

"(c)    Interest on Term Loan; Maturity of Term Loan.  The unpaid principal amount of the Term Loan shall bear interest at a per annum rate equal to the LIBOR Rate plus six and one-half percent (6.5%) and such interest shall be due and payable, in arrears, in cash, on the first day of each month, commencing August 1, 2008, and on the Term Loan Maturity Date.  All unpaid principal of the Term Loan shall be due and payable on December 31, 2008 (the "Term Loan Maturity Date").  The principal of the Term Loan may be prepaid at any time or from time to time, without premium or penalty. Amounts paid on the Term Loan may not be reborrowed."

SECTION 3.  Waivers.  On the Third Amendment Effective Date, and in accordance with Section 15.1 of the Loan Agreement, Lender hereby waives Borrowers' noncompliance with Sections 7.18, 7.19 and 7.20 for the period of March 31, 2007, to, and including July 1, 2008.  Lender and Borrowers hereby agree that Sections 7.18, 7.19 and 7.20 shall not be applicable on and after July 1, 2008, to, and including, December 31, 2008.

SECTION 4.  Representations and Warranties of the Borrowers.  Each of the Borrowers hereby represents and warrants to and with the Lender as follows:

(a)    the representations and warranties contained in the Loan Agreement (as amended hereby) and the other outstanding Loan Documents are true and correct in all material respects at and as of the date hereof as though made on and as of the date hereof, except (i) to the extent specifically made with regard to a particular date and (ii) for such changes as are a result of any act or omission specifically permitted under the Loan Agreement (or under any Loan Document), or as otherwise specifically permitted by Lender;

(b)    after giving effect to this Amendment, no Default or Event of Default will have occurred and be continuing;

(c)    the execution, delivery and performance of this Amendment have been duly authorized by all necessary action on the part of, and duly executed and delivered by, each Borrower, and this Amendment is a legal, valid and binding obligation of each Borrower, enforceable against each Borrower in accordance with its terms, except as the enforcement thereof may be subject to the effect of any applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law);

(d)    the execution, delivery and performance of this Amendment do not conflict with or result in a breach by either Borrower of any term of any material contract, loan agreement, indenture or other agreement or instrument to which such Borrower is a party or is subject;

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 25 of 41

(e)     All approvals and authorizations of, all filings with and all actions by any Governmental Authority necessary for the validity or enforceability of the obligations of such Borrower under this Amendment and all agreements contemplated hereby have been obtained;

(f)     The CMR II Note is not in default and remains in full force and effect, secured by a first priority security interest in the EMW Note, which in turn remains secured by a first lien in the EMW Property and a second lien in the Casa Grande Property (subject only to debt in the principal amount of $17,000,000 secured by a prior lien); and

(g)     The unpaid principal balance of the Term Loan as of July 1, 2008, is $20,199,951.13, and the unpaid principal balance of the Advances as of July 1, 2008, is $3,439,489.67.

SECTION 5.   Conditions Precedent to Effectiveness of Amendment.   This Amendment shall become effective as of July 1, 2008 (the "Third Amendment Effective Date") upon satisfaction of each of the following conditions:

(a)     Borrowers, Servicer and Lender shall have executed and delivered to Lender this Amendment and such other documents as Lender may reasonably request;

(b)     Borrowers shall have provided evidence to Lender that the maturity of the CMR II Note has been extended to a date not earlier than December 31, 2008, to which extension Lender hereby consents;

(c)     Each of the Guarantors shall have executed a Reaffirmation of Guaranty and Pledge Agreements in the form attached to this Amendment; and

(d)     All legal matters incident to the transactions contemplated hereby shall be reasonably satisfactory to counsel for Lender.

SECTION 6.   Agreement Regarding Release of Collateral and Establishment of an Interest Reserve Account.   Upon payment or disposition of any Note Receivable or realization of any collateral therefor, in accordance with the terms of the Loan Agreement, in lieu of applying all proceeds thereof to the payment of unpaid Obligations, as currently provided by the Loan Agreement, at the option of the Lender, a portion of such proceeds shall be deposited in a Deposit Account subject to a Control Agreement in favor of Lender, to be used as an interest reserve account, from which withdrawals may be made only by Lender, at any time or from time to time, for application to accrued interest on the Advances or Term Loan as such interest becomes due and payable or, at the option of Lender, for application to any unpaid Obligations, or, following payment in full of all Obligations and termination of the Loan Agreement, for disbursement to the Borrower of any sums remaining.

SECTION 7.   Amendment Fee.   On the date hereof, Lender shall have fully earned a fee in an aggregate amount equal to $35,000, for the waiver and amendment of certain financial covenants, and for the extension of the Term Loan Maturity Date, which aggregate fee shall be due and payable on the earlier of December 31, 2008, or the Maturity Date.  Lender hereby is expressly authorized by Borrowers to (i) charge such amount to the Loan Account when due and payable, and (ii) designate such amount as an Advance under the Loan Agreement when so paid.

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 26 of 41

SECTION 8. Execution in Counterparts. This Amendment may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

SECTION 9. Costs and Expenses. Each of the Borrowers hereby affirms its obligation under the Loan Agreement to reimburse Lender for all reasonable costs, internal charges and out-of-pocket expenses paid or incurred by Lender in connection with the preparation, negotiation, execution and delivery of this Amendment, including but not limited to the attorneys' fees and time charges of attorneys for Lender with respect thereto.

SECTION 10. **GOVERNING LAW. THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUCTED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE INTERNAL CONFLICTS OF LAWS PROVISIONS THEREOF.**

SECTION 11. Effect of Amendment; Reaffirmation of Loan Documents. (a) The parties hereto agree and acknowledge that (i) nothing contained in this Amendment in any manner or respect limits or terminates any of the provisions of the Loan Agreement or the other outstanding Loan Documents other than as expressly set forth herein and (ii) the Loan Agreement (as amended hereby) and each of the other outstanding Loan Documents remain and continue in full force and effect and are hereby ratified and reaffirmed in all respects. Upon the effectiveness of this Amendment, each reference in the Loan Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of similar import shall mean and be a reference to the Loan Agreement as amended hereby.

(b) The waivers agreed to herein (i) are strictly limited to the provisions expressly referenced and, except as expressly set forth herein, all the other terms, provisions and conditions of the Loan Agreement shall remain in full force and effect, (ii) shall not extend nor be deemed to extend to any other Event of Default or Default that may now exist or hereafter arise under the Loan Agreement or any of the other Loan Documents, whether similar or dissimilar to the matters waived herein, (iii) shall not impair, restrict or limit any right or remedy of the Lender with respect to any other Default or Event of Default that may now exist or hereafter arise under the Loan Agreement or any of the other Loan Documents, and (iv) shall not constitute any course of dealing or other basis for altering any obligation of the Borrower or any right, privilege or remedy of the Lender under the Loan Agreement or any of the other Loan Documents.

SECTION 12. Headings. Section headings in this Amendment are included herein for convenience of any reference only and shall not constitute a part of this Amendment for any other purposes.

SECTION 13. Release. **EACH OF THE BORROWERS AND SERVICER HEREBY ACKNOWLEDGES THAT AS OF THE DATE HEREOF IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE OBLIGATIONS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM LENDER, ITS AFFILIATES AND PARTICIPANTS, OR ANY OF**

THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS, EMPLOYEES OR ATTORNEYS. EACH OF THE BORROWERS AND SERVICER HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES LENDER, ITS AFFILIATES AND PARTICIPANTS, AND THEIR RESPECTIVE PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AMENDMENT IS EXECUTED, WHICH BORROWERS OR SERVICER MAY NOW OR HEREAFTER HAVE AGAINST LENDER AND ITS PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISING FROM THE LIABILITIES, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE LOAN AGREEMENT OR OTHER LOAN DOCUMENTS, AND NEGOTIATION FOR AND EXECUTION OF THIS AMENDMENT. EACH OF THE BORROWERS AND SERVICER HEREBY COVENANTS AND AGREES NEVER TO INSTITUTE ANY ACTION OR SUIT AT LAW OR IN EQUITY, NOR INSTITUTE, PROSECUTE, OR IN ANY WAY AID IN THE INSTITUTION OR PROSECUTION OF ANY CLAIM, ACTION OR CAUSE OF ACTION, RIGHTS TO RECOVER DEBTS OR DEMANDS OF ANY NATURE AGAINST LENDER, ITS AFFILIATES AND PARTICIPANTS, OR THEIR RESPECTIVE SUCCESSORS, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS, EMPLOYEES, AND PERSONAL AND LEGAL REPRESENTATIVES ARISING ON OR BEFORE THE DATE HEREOF OUT OF OR RELATED TO LENDER'S ACTIONS, OMISSIONS, STATEMENTS, REQUESTS OR DEMANDS IN ADMINISTERING, ENFORCING, MONITORING, COLLECTING OR ATTEMPTING TO COLLECT THE OBLIGATIONS OF BORROWER TO LENDER, WHICH OBLIGATIONS WERE EVIDENCED BY THE LOAN AGREEMENT AND OTHER LOAN DOCUMENTS.

*The Next Page is the Signature Page*

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 28 of 41

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be duly executed as a sealed instrument by their duly authorized representatives, all as of the day and year first above written.

**BORROWERS:**

**CMR INCOME FUND, LLC**
By: *California Mortgage and Realty, Inc., a Delaware corp., Manager*

By: _____
Name: *James Gala*
Title: *CEO*


**AIRPORT HOTELS, LLC**

By: **CALIFORNIA MORTGAGE AND REALTY, INC.**, its Manager

By: _____
Name: *James Gala*
Title: *CEO*


**SERVICER:**

**CALIFORNIA MORTGAGE AND REALTY, INC.**

By: _____
Name: *James Gala*
Title: *CEO*


**LENDER:**

**WELLS FARGO FOOTHILL, INC.**

By: _____
Name: _____
Title: _____

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be duly executed as a sealed instrument by their duly authorized representatives, all as of the day and year first above written.

**BORROWERS:**

**CMR INCOME FUND, LLC**

By: _____
Name: _____
Title: _____

**AIRPORT HOTELS, LLC**

By: **CALIFORNIA MORTGAGE AND REALTY, INC.**, its Manager

By: _____
Name: _____
Title: _____

**SERVICER:**

**CALIFORNIA MORTGAGE AND REALTY, INC.**

By: _____
Name: _____
Title: _____

**LENDER:**

**WELLS FARGO FOOTHILL, INC.**

By: _Virginia H. Brown_
Name: VIRGINIA H. BROWN
Title: SVP

## Reaffirmation of Guaranty and Pledge Agreements

Each of the undersigned (collectively, the "Guarantors"), on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, hereby (i) consents and agrees to the terms and provisions of the foregoing Amendment and each of the transactions contemplated thereby and confirms and agrees that all references in the Loan Documents to the "Loan Agreement" shall mean the Loan Agreement as amended by the foregoing Amendment, (ii) agrees that the Limited Continuing Guaranty executed by each Guarantor for the benefit of Lender (the "Guaranty"), remains in full force and effect and continues to be the legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms, and (iii) agrees that the Security and Pledge Agreement executed by such Guarantor, on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, for the benefit of Lender (each, a "Pledge Agreement" and, collectively, the "Pledge Agreements"), remains in full force and effect and continues to be the legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms.

Furthermore, each Guarantor hereby agrees and acknowledges, on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, that (a) the Guaranty is not subject to any claims, defenses or offsets, (b) nothing contained in the Amendment shall adversely affect any right or remedy of Lender under the Guaranty or any agreement executed by such Guarantor in connection therewith, (c) the execution and delivery of the Amendment or any agreement entered into by Lender in connection therewith in no way reduce, impair or discharge any obligations of such Guarantor pursuant to the Guaranty and shall not constitute a waiver by Lender of any of Lender's rights against such Guarantor under the Guaranty, (d) each Pledge Agreement is not subject to any claims, defenses or offsets, (e) nothing contained in the Amendment shall adversely affect any right or remedy of Lender under the Pledge Agreements or any agreement executed by such Guarantor in connection therewith, (f) the execution and delivery of the Amendment or any agreement entered into by Lender in connection therewith shall in no way reduce, impair or discharge any obligations of such Guarantor pursuant to the Pledge Agreements and shall not constitute a waiver by Lender of any of Lender's rights under the Pledge Agreements, (g) the consent of such Guarantor is not required to the effectiveness of the Amendment and (h) no consent by such Guarantor is required for the effectiveness of any future amendment, modification, forbearance or other action with respect to the Loan Agreement or any present or future Loan Document (other than the Guaranty or Pledge Agreement executed by such Guarantor).


_____
H. David Choo


_____
Hyesung Choo

# FOURTH AMENDMENT TO LOAN AND SECURITY AGREEMENT

THIS FOURTH AMENDMENT TO LOAN AND SECURITY AGREEMENT (this "Amendment") is dated as of May 1, 2009, among **AIRPORT HOTELS, LLC,** a Nevada limited liability company ("Airport Hotels"), **CMR INCOME FUND, LLC,** a Nevada limited liability company ("CMR Income" and, together with Airport Hotels, the "Borrowers" or "Borrower"), **CALIFORNIA MORTGAGE AND REALTY, INC.,** a Delaware corporation (the "Servicer"), and **WELLS FARGO FOOTHILL, INC.,** a California corporation (the "Lender").

## WITNESSETH:

WHEREAS, Borrowers, Servicer and Lender are parties to that certain Loan and Security Agreement, dated as of August 11, 2005, as amended as of May 26, 2006, May 31, 2007, and July 1, 2008, as modified by Joinder Agreement, dated as of May 29, 2006, Temporary Advance Agreement, dated as of December 28, 2006, as amended, and Forbearance Agreement, dated as of August 31, 2007, as amended (as further amended, restated, supplemented or otherwise modified through the date hereof, the "Loan Agreement"), whereunder Lender agreed to make extensions of credit from time to time to or for the account of Borrowers; and

WHEREAS, the parties hereto desire to make certain amendments to the Loan Agreement, subject to the terms hereof;

NOW THEREFORE, in consideration of the premises and of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1.  Defined Terms.  Unless otherwise defined herein, all capitalized terms used herein have the meanings assigned to such terms in the Loan Agreement, as amended hereby.

SECTION 2.  Amendments.  Upon the Fourth Amendment Effective Date (as hereinafter defined), the Loan Agreement shall be amended as follows:

(a)     The following definitions in Section 1.1 of the Loan Agreement are hereby deleted in their entirety and replaced with the following:

"'Base Rate' means the greatest of (i) the rate of interest announced, from time to time, within Wells Fargo at its principal office in San Francisco as its "prime rate," with the understanding that the "prime rate" is one of Wells Fargo's base rates (not necessarily the lowest of such rates) and serves as the basis upon which effective rates of interest are calculated for those loans making reference thereto and is evidenced by the recording thereof after its announcement in such internal publications as Wells Fargo may designate, (ii) the sum of (A) the Federal Funds Rate plus (B) one-half of one percent (0.5%), or (iii) the LIBOR Rate.

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 32 of 41

(b)     The following definitions are hereby added to <u>Section 1.1</u> of the Loan Agreement, in their appropriate alphabetical order:

"'<u>Applicable Margin</u>' means three percent (3.0%) per annum.

"'<u>Base LIBOR Rate</u>" means the rate per annum, determined by Lender in accordance with its customary procedures, and utilizing such electronic or other quotation sources as it considers appropriate (rounded upwards, if necessary, to the next 1/16%), to be the rate at which Dollar deposits (for delivery on the first day of an Interest Period) in the amount of $1,000,000 are offered to major banks in the London interbank market on or about 11:00 a.m. (California time) two (2) Business Days prior to the commencement of such Interest Period, for a term of three (3) months, which determination shall be conclusive in the absence of manifest error.

"'<u>Federal Funds Rate</u>' means, for any period, a fluctuating interest rate per annum equal to, for each day during such period, the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers, as published on the next succeeding Business Day by the Federal Reserve Bank of New York, or, if such rate is not so published for any day which is a Business Day, the average of the quotations for such day on such transactions received by Lender from three Federal Funds brokers of recognized standing selected by Lender."

"<u>Interest Period</u>" means a period commencing on the first day of a calendar month and ending on the last day of such calendar month.

"<u>LIBOR Rate</u>" means, for each Interest Period, the rate per annum determined by Lender (rounded upwards, if necessary, to the next 1/16%) by dividing (i) the Base LIBOR Rate for such Interest Period, by (ii) 100% *minus* the Reserve Percentage. The LIBOR Rate shall be adjusted on and as of the effective day of any change in the Reserve Percentage.

"<u>Reserve Percentage</u>" means, on any day, the maximum percentage prescribed by the Board of Governors of the Federal Reserve System (or any successor governmental authority) for determining the reserve requirements (including any basic, supplemental, marginal, or emergency reserves) that are in effect on such date with respect to eurocurrency funding (currently referred to as "eurocurrency liabilities") of Lender, but so long as Lender is not required or directed under applicable regulations to maintain such reserves, the Reserve Percentage shall be zero.

(c)     The following definition set forth in <u>Section 1.1</u> of the Loan Agreement is hereby deleted in its entirety and not replaced: "Base Rate Margin."

(d)     <u>Section 2.5(a)</u> of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"(a)     **Interest Rates**. Except as provided in clause (b) below and <u>Sections 2.12(b)</u> and <u>17(d)</u> hereof, all monetary Obligations (except for Bank Product Obligations) that have been charged to the Loan Account pursuant to the terms hereof shall bear

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 33
of 41

interest on the Daily Balance thereof at a per annum rate equal to the LIBOR Rate *plus* the Applicable Margin.

(e)     The following new <u>Section 2.12</u> is hereby added to the Loan Agreement:

"<u>Section 2.12</u>   **LIBOR Rate Provisions**.

(a)     **Interest and Interest Payment Dates**.   Except as otherwise provided in <u>Sections 2.5(b)</u>, <u>2.12(b)</u> and <u>17(d)</u> hereof, interest on the Advances shall be charged at a rate of interest equal to the LIBOR Rate *plus* the Applicable Margin.

(b)     **Special Provisions Applicable to LIBOR Rate**.

(i)     The LIBOR Rate may be adjusted by Lender on a prospective basis to take into account any additional or increased costs to Lender of maintaining or obtaining any eurodollar deposits or increased costs, in each case, due to changes in Applicable Law occurring subsequent to the commencement of the then applicable Interest Period, including changes in tax laws (except changes of general applicability in business income tax laws) and changes in the reserve requirements imposed by the Board of Governors of the Federal Reserve System (or any successor), excluding the Reserve Percentage, which additional or increased costs would increase the cost of funding loans bearing interest at the LIBOR Rate.  In any such event, Lender shall give Borrower notice of such a determination and adjustment.

(ii)     In the event that any change in market conditions or any law, regulation, treaty, or directive, or any change therein or in the interpretation of application thereof, shall at any time after the date hereof, in the reasonable opinion of Lender, make it unlawful or impractical for Lender to fund or maintain LIBOR Rate Loans or to continue such funding or maintaining, or to determine or charge interest rates based on the LIBOR Rate, (i) Lender shall give notice of such changed circumstances to Borrower, (ii) in the case of any LIBOR Rate Loans that are outstanding, the date specified in Lender's notice shall be deemed to be the last day of the Interest Period of such LIBOR Rate Loans, and interest upon the LIBOR Rate Loans thereafter shall accrue interest at a rate equal to the Base Rate *plus* the Applicable Margin, and (iii) interest shall continue to accrue at such rate with respect to Obligations until Lender determines that it would no longer be unlawful or impractical to charge interest rates based on the LIBOR Rate, whereupon, following notice from Lender to Borrower, all Obligations shall bear interest at the LIBOR Rate *plus* the Applicable Margin.

(c)     **No Requirement of Matched Funding**.   Anything to the contrary contained herein notwithstanding, Lender is not required actually to acquire

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 34 of 41

eurodollar deposits to fund or otherwise match fund any Obligation as to which interest accrues based on the LIBOR Rate."

(d)     Section 17 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"**17.    TERM LOAN.**

(a)     Term Loan.  In addition to the Advances made in accordance with Section 2 of this Agreement, on the First Amendment Effective Date, Lender make an advance in immediately available funds in the principal amount of Twenty-Five Million Dollars (the "Term Loan") for the account of Borrower to enable Borrower to fund that certain Promissory Note, dated as of May 25, 2006, in the original principal amount of $25,000,000, executed by CMR Mortgage Fund II, LLC ("CMR II"), payable to the order of Borrower (the "CMR II Note"), the proceeds of which CMR II Note, together with other funds provided by CMR II, funded that certain Promissory Note, dated as of May 25, 2006, in the original principal amount of $48,000,000, executed by each of Eagle Meadow of Wheatland 115 LLC, a California limited liability company ("EMW-115"), Eagle Meadows of Wheatland 130, LLC, a California limited liability company ("EMW-130") Eagle Meadows of Wheatland 187, LLC, a California limited liability company ("EMW-187" and, together with EMW-115 and EMW-130, the "EMW Entities"), payable to the order of CMR II (the "EMW Note"), which EMW Note is secured by a first lien in certain unimproved real property located in Yuba County and Sutter County, California (the "EMW Property"), and the CMR II Note is also secured by a subordinate lien in certain real property located in Pinal County, Arizona (the "Casa Grande Property").

(b)     Collateral for Term Loan; Application of Payments on EMW Note.  To secure payment of the Term Loan only, Borrowers hereby grant to Lender a security interest in and to all right, title and interest of Borrowers in and to the CMR II Note and all collateral therefor, including (x) the EMW Note and all collateral for the EMW Note, including all liens against the EMW Property and (y) all liens against the Casa Grande Property, now or hereafter held by CMR II.  The CMR II Note and all collateral therefor shall be part of the Collateral hereunder for all purposes, except that proceeds thereof shall be applied only to payment of the Term Loan, as follows (notwithstanding the terms of the Second Amendment to Loan and Security Agreement, dated as of May 31, 2007, between Borrower and Lender):  (A) the EMW Note bears interest at 13% per annum, payable monthly, with all principal and unpaid accrued interest due and payable thirty-six months after the date thereof; (B) the CMR II Note bears interest at a rate not less than the rate of interest applicable to the Term Loan, from time to time, payable at least monthly in cash, secured by a first lien on the EMW Note; (C) Borrowers shall cause all payments received by CMR II on the EMW Note, whether interest or principal, or realized on any collateral therefor, to be applied to the CMR II Note, first to accrued interest, and thereafter to unpaid principal, (D) whether or not CMR II receives any payments on the EMW Note, Borrowers shall cause CMR II to pay all interest accruing on the CMR II Note at least monthly in cash and all payments received by Borrower on

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 35 of 41

the CMR II Note or realized on any collateral therefor shall be delivered to Lender for application to the Term Loan or interest thereon or fees owing in connection therewith.

(c) <u>Interest on Term Loan; Maturity of Term Loan</u>. Except as otherwise provided in <u>Sections 2.12(b)</u> and <u>17(d)</u> hereof, the unpaid principal amount of the Term Loan shall bear interest at a per annum rate equal to the LIBOR Rate *plus* the Applicable Margin, and such interest shall be due and payable, in arrears, in cash, on the first day of each month, commencing August 1, 2008, and on the Term Loan Maturity Date. All unpaid principal of the Term Loan shall be due and payable on December 31, 2009 (the "<u>Term Loan Maturity Date</u>"). The principal of the Term Loan may be prepaid at any time or from time to time, without premium or penalty. Amounts paid on the Term Loan may not be reborrowed.

(d) <u>Default Interest on the Term Loan</u>. Upon the occurrence and during the continuation of an Event of Default (and at the election of Lender), the outstanding principal balance of the Term Loan shall bear interest at a per annum rate equal to four (4) percent above the per annum rate of interest otherwise applicable hereunder.

(e) <u>EMW Note not Eligible Note Receivable</u>. For purposes of this Agreement, the EMW Note shall not be considered an Eligible Note Receivable and the EMW Note and all collateral therefor shall secure the Term Loan and interest accrued thereon and expenses relating to the collection thereof, but shall not secure other Obligations under this Agreement. The Term Loan shall also be secured by all other Collateral.

(f) <u>Refinancing of Debt Secured by Casa Grande Property</u>. Borrower and Lender acknowledge and agree that the liens against the Casa Grande Property securing the CMR II Note are subordinated to other debt, not in excess of $38,000,000, in the aggregate."

SECTION 3. <u>Waivers</u>. On the Fourth Amendment Effective Date, and in accordance with <u>Section 15.1</u> of the Loan Agreement, Lender and Borrowers hereby agree that <u>Sections 7.18, 7.19, 7.20</u> and <u>8.19</u> shall not be applicable after December 31, 2008, to, and including, December 31, 2009.

SECTION 4. <u>Representations and Warranties of the Borrowers</u>. Each of the Borrowers hereby represents and warrants to and with the Lender as follows:

(a) the representations and warranties contained in the Loan Agreement (as amended hereby) and the other outstanding Loan Documents are true and correct in all material respects at and as of the date hereof as though made on and as of the date hereof, except (i) to the extent specifically made with regard to a particular date and (ii) for such changes as are a result of any act or omission specifically permitted under the Loan Agreement (or under any Loan Document), or as otherwise specifically permitted by Lender;

(b) after giving effect to this Amendment, no Default or Event of Default will have occurred and be continuing;

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 36 of 41

(c)     the execution, delivery and performance of this Amendment have been duly authorized by all necessary action on the part of, and duly executed and delivered by, each Borrower, and this Amendment is a legal, valid and binding obligation of each Borrower, enforceable against each Borrower in accordance with its terms, except as the enforcement thereof may be subject to the effect of any applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting creditors' rights generally and general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law);

(d)     the execution, delivery and performance of this Amendment do not conflict with or result in a breach by either Borrower of any term of any material contract, loan agreement, indenture or other agreement or instrument to which such Borrower is a party or is subject;

(e)     All approvals and authorizations of, all filings with and all actions by any Governmental Authority necessary for the validity or enforceability of the obligations of such Borrower under this Amendment and all agreements contemplated hereby have been obtained;

(f)     The CMR II Note remains in full force and effect, secured by (i) a first priority security interest in the EMW Note, which in turn remains secured by a first lien in the EMW Property and (ii) a subordinate lien in the Casa Grande Property (subject only to debt in the principal amount of $38,000,000 secured by a prior lien); and

(g)     The unpaid principal balance of the Term Loan as of April 30, 2009, was $20,199,951.13, and the unpaid principal balance of the Advances as of April 30, 2009, was $3,042,936.30.

SECTION 5.  Conditions Precedent to Effectiveness of Amendment.  This Amendment shall become effective as of May 1, 2009 (the "Fourth Amendment Effective Date") upon satisfaction of each of the following conditions:

(a)     Borrowers, Servicer and Lender shall have executed and delivered to Lender this Amendment and such other documents as Lender may reasonably request;

(b)     Each of the Guarantors shall have executed a Reaffirmation of Guaranty and Pledge Agreements in the form attached to this Amendment; and

(c)     All legal matters incident to the transactions contemplated hereby shall be reasonably satisfactory to counsel for Lender.

SECTION 6.  Agreement Regarding Release of Collateral and Establishment of an Interest Reserve Account.  Upon payment or disposition of any Note Receivable or realization of any collateral therefor, in accordance with the terms of the Loan Agreement, in lieu of applying all proceeds thereof to the payment of unpaid Obligations, as currently provided by the Loan Agreement, at the option of the Lender, a portion of such proceeds shall be deposited in a Deposit Account subject to a Control Agreement in favor of Lender, to be used as an interest reserve account, from which withdrawals may be made only by Lender, at any time or from time to time, for application to accrued interest on the Advances or Term Loan as such interest becomes due and payable or, at the option of Lender, for application to any unpaid Obligations,

Case: 08-32220     Doc# 850-3     Filed: 07/22/11     Entered: 07/22/11 13:38:30     Page 37 of 41

or, following payment in full of all Obligations and termination of the Loan Agreement, for disbursement to the Borrower of any sums remaining.

SECTION 7. Execution in Counterparts.   This Amendment may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

SECTION 8. Costs and Expenses.  Each of the Borrowers hereby affirms its obligation under the Loan Agreement to reimburse Lender for all reasonable costs, internal charges and out-of-pocket expenses paid or incurred by Lender in connection with the preparation, negotiation, execution and delivery of this Amendment, including but not limited to the attorneys' fees and time charges of attorneys for Lender with respect thereto.

SECTION 9. **GOVERNING LAW.**   THIS  AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUCTED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE INTERNAL CONFLICTS OF LAWS PROVISIONS THEREOF.

SECTION 10. Effect of Amendment; Reaffirmation of Loan Documents. (a) The parties hereto agree and acknowledge that (i) nothing contained in this Amendment in any manner or respect limits or terminates any of the provisions of the Loan Agreement or the other outstanding Loan Documents other than as expressly set forth herein and (ii) the Loan Agreement (as amended hereby) and each of the other outstanding Loan Documents remain and continue in full force and effect and are hereby ratified and reaffirmed in all respects. Upon the effectiveness of this Amendment, each reference in the Loan Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of similar import shall mean and be a reference to the Loan Agreement as amended hereby.

(b)   The waivers agreed to herein (i) are strictly limited to the provisions expressly referenced and, except as expressly set forth herein, all the other terms, provisions and conditions of the Loan Agreement shall remain in full force and effect, (ii) shall not extend nor be deemed to extend to any other Event of Default or Default that may now exist or hereafter arise under the Loan Agreement or any of the other Loan Documents, whether similar or dissimilar to the matters waived herein, (iii) shall not impair, restrict or limit any right or remedy of the Lender with respect to any other Default or Event of Default that may now exist or hereafter arise under the Loan Agreement or any of the other Loan Documents, and (iv) shall not constitute any course of dealing or other basis for altering any obligation of the Borrower or any right, privilege or remedy of the Lender under the Loan Agreement or any of the other Loan Documents.

SECTION 11. Headings.  Section headings in this Amendment are included herein for convenience of any reference only and shall not constitute a part of this Amendment for any other purposes.

SECTION 12. Release. **EACH OF THE BORROWERS AND SERVICER HEREBY ACKNOWLEDGES THAT AS OF THE DATE HEREOF IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR**

Case: 08-32220   Doc# 850-3   Filed: 07/22/11   Entered: 07/22/11 13:38:30   Page 38
of 41

ELIMINATE ALL OR ANY PART OF ITS LIABILITY 'TO REPAY THE OBLIGATIONS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM LENDER, ITS AFFILIATES AND PARTICIPANTS, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, AGENTS, EMPLOYEES OR ATTORNEYS. EACH OF THE BORROWERS AND SERVICER HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES LENDER, ITS AFFILIATES AND PARTICIPANTS, AND THEIR RESPECTIVE PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AMENDMENT IS EXECUTED, WHICH BORROWERS OR SERVICER MAY NOW OR HEREAFTER HAVE AGAINST LENDER AND ITS PREDECESSORS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND ARISING FROM THE LIABILITIES, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE LOAN AGREEMENT OR OTHER LOAN DOCUMENTS, AND NEGOTIATION FOR AND EXECUTION OF THIS AMENDMENT. EACH OF THE BORROWERS AND SERVICER HEREBY COVENANTS AND AGREES NEVER TO INSTITUTE ANY ACTION OR SUIT AT LAW OR IN EQUITY, NOR INSTITUTE, PROSECUTE, OR IN ANY WAY AID IN THE INSTITUTION OR PROSECUTION OF ANY CLAIM, ACTION OR CAUSE OF ACTION, RIGHTS TO RECOVER DEBTS OR DEMANDS OF ANY NATURE AGAINST LENDER, ITS AFFILIATES AND PARTICIPANTS, OR THEIR RESPECTIVE SUCCESSORS, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS, EMPLOYEES, AND PERSONAL AND LEGAL REPRESENTATIVES ARISING ON OR BEFORE THE DATE HEREOF OUT OF OR RELATED TO LENDER'S ACTIONS, OMISSIONS, STATEMENTS, REQUESTS OR DEMANDS IN ADMINISTERING, ENFORCING, MONITORING, COLLECTING OR ATTEMPTING TO COLLECT THE OBLIGATIONS OF BORROWER TO LENDER, WHICH OBLIGATIONS WERE EVIDENCED BY THE LOAN AGREEMENT AND OTHER LOAN DOCUMENTS.

Case: 08-32220    Doc# 850-3    Filed: 07/22/11    Entered: 07/22/11 13:38:30    Page 39 of 41

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be duly executed as a sealed instrument by their duly authorized representatives, all as of the day and year first above written.

<u>**BORROWERS:**</u>

**CMR INCOME FUND, LLC**

By: _____
Name: _____DAVID CHOO_____
Title: _____Manager_____

**AIRPORT HOTELS, LLC**

By: **CALIFORNIA MORTGAGE AND REALTY, INC.**, its Manager

By: _____
Name: ____Richard Johnson____
Title: _____Vice President_____

<u>**SERVICER:**</u>

**CALIFORNIA MORTGAGE AND REALTY, INC.**

By: _____
Name: _____Graham See_____
Title: __Chief Operating Officer__

<u>**LENDER:**</u>

**WELLS FARGO FOOTHILL, INC.**

By: _____
Name: _____Ajay Jain_____
Title: _____Vice President_____

## Reaffirmation of Guaranty and Pledge Agreements

Each of the undersigned (collectively, the "Guarantors"), on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, hereby (i) consents and agrees to the terms and provisions of the foregoing Amendment and each of the transactions contemplated thereby and confirms and agrees that all references in the Loan Documents to the "Loan Agreement" shall mean the Loan Agreement as amended by the foregoing Amendment, (ii) agrees that the Limited Continuing Guaranty executed by each Guarantor for the benefit of Lender (the "Guaranty"), remains in full force and effect and continues to be the legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms, and (iii) agrees that the Security and Pledge Agreement executed by such Guarantor, on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, for the benefit of Lender (each, a "Pledge Agreement" and, collectively, the "Pledge Agreements"), remains in full force and effect and continues to be the legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms.

Furthermore, each Guarantor hereby agrees and acknowledges, on behalf of himself or herself and each trust for which he or she is a trustee and each entity in which he or she has a controlling interest, that (a) the Guaranty is not subject to any claims, defenses or offsets, (b) nothing contained in the Amendment shall adversely affect any right or remedy of Lender under the Guaranty or any agreement executed by such Guarantor in connection therewith, (c) the execution and delivery of the Amendment or any agreement entered into by Lender in connection therewith shall in no way reduce, impair or discharge any obligations of such Guarantor pursuant to the Guaranty and shall not constitute a waiver by Lender of any of Lender's rights against such Guarantor under the Guaranty, (d) each Pledge Agreement is not subject to any claims, defenses or offsets, (e) nothing contained in the Amendment shall adversely affect any right or remedy of Lender under the Pledge Agreements or any agreement executed by such Guarantor in connection therewith, (f) the execution and delivery of the Amendment or any agreement entered into by Lender in connection therewith shall in no way reduce, impair or discharge any obligations of such Guarantor pursuant to the Pledge Agreements and shall not constitute a waiver by Lender of any of Lender's rights under the Pledge Agreements, (g) the consent of such Guarantor is not required to the effectiveness of the Amendment and (h) no consent by such Guarantor is required for the effectiveness of any future amendment, modification, forbearance or other action with respect to the Loan Agreement or any present or future Loan Document (other than the Guaranty or Pledge Agreement executed by such Guarantor).

H. David Choo

Hyesung Choo

DA-2134637 v5 1279056-00101