David M. Bertenthal (CA Bar No. 167624)
Maxim B. Litvak (CA Bar No. 215852)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: dbertenthal@pszjlaw.com
       mlitvak@pszjlaw.com
       mmaning@pszjlaw.com

Counsel for Richard M Kipperman,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>      Debtors | Case No.: 08-32220-TEC<br>     09-30788-TEC<br>     09-30802-TEC<br><br>Substantively Consolidated<br><br>Chapter 11<br><br>[SSD-4]<br><br>**CHAPTER 11 TRUSTEE'S OBJECTION TO MOTION OF DYER LOAN, LLC FOR RELIEF FROM THE AUTOMATIC STAY (DYER MOUNTAIN PROPERTY)**<br><br>**Hearing Date:**<br><br>Date: January 7, 2013<br>Time: 1:00 p.m.<br>Place: Courtroom 23<br>    U.S. Bankruptcy Court<br>    235 Pine Street<br>    San Francisco, CA<br>Judge: Honorable Thomas E. Carlson |

    Richard M Kipperman, the duly appointed Chapter 11 Trustee in the above-captioned bankruptcy cases (the "Trustee"), hereby submits this objection to the motion for relief from the automatic stay (the "Motion") filed by DYER LOAN, LLC ("Movant") seeking to enforce its rights

under Loan Number 05-061A (the "Senior Loan"), in the original amount of $10,000,000 secured by a first lien against 7,139 acres of undeveloped real property located in Lassen and Plumas Counties, California commonly referred to as the "Dyer Mountain Property." The Dyer Mountain Property is currently owned by a special purpose entity that is itself owned in part by the Debtors.

**OBJECTION TO STAY RELIEF**

The Trustee objects on both procedural and substantive grounds to Movant's attempt to exercise its rights under the Senior Loan.

**A.     The Motion is Procedurally Deficient**

As a procedural matter, Movant alleges that it holds seventy percent (70%) of the Senior Loan. According to Movant, the remaining thirty percent (30%) is held by Brodke & Noe Profit Sharing Plan FBO Stephen H. Abel and First Street Mortgage Fund, LLC, who are joining in the Motion. However, there has been no evidence provided that such minority holders of the Senior Loan in fact support the Motion or have authorized Movant to represent that they join in the Motion.

Moreover, there has been no evidence submitted that the Movant itself has authorized the filing of the Motion. Although there is a declaration from Walter Clarke, the President of Oxford Investment Partners, LLC ("Oxford"), filed in support of the Motion, along with certain appraisal evidence, there are no declarations from any representatives or authorized signatories of Movant itself. Mr. Clarke states that certain clients of Oxford have acquired 70% of the interests in the Senior Loan, but there is no evidence substantiating that Movant, which purports to hold 70% of the Loan, has authorized the filing of the Motion.

Movant's use of judicial notice also is not the proper method for introducing facts into evidence in this case where the facts cannot be said to be "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. RULE OF EVID. 201. Other than prior orders of the Court, which are properly subject to judicial notice, it appears that Movant seeks to impermissibly introduce whole documents (such as the various deeds of trust and assignments) into evidence through its Request for Judicial Notice. Movant should be required to submit properly

authenticated affidavits containing whatever factual support it intends to rely upon in support of its Motion.

### B. The Motion Seeks to Extinguish the Debtors' Equity in the Dyer Mountain Property

Even assuming *arguendo* that the foregoing procedural deficiencies can be addressed, stay relief should be denied because the Debtors potentially have a positive equity interest in the Dyer Mountain Property. Specifically, in connection with the second lien mortgage loan (the "Second Loan") in the original amount of $10,000,000 on the Dyer Mountain Property, CMR Mortgage Fund, LLC ("Fund I") is owed at least $390,000 (3.9%), CMR Mortgage Fund II, LLC ("Fund II") is owed at least $957,000 (9.5%), and CMR Mortgage Fund III, LLC ("Fund III") is owed at least $4,149,749 (41.5%).[1]

According to Movant's own appraisal, the Dyer Mountain Property is worth $22,100,000. The original principal amount of the Senior Loan was only $10,000,000. Movant layers on an additional $8,152,475 in asserted interest charges and fees to the Senior Loan, but provides no accounting or evidence to support these asserted claims. For instance, how is the interest calculated and over what time period? Does Movant seek to charge a default rate? If so, has Movant satisfied the applicable standard under California law for charging a default rate? What other fees and charges are included in Movant's asserted claims and are these charged properly assessed under the Senior Loan? This information is critical here given that Movant's own assessment of the value of the Dyer Mountain Property places it squarely within the reach of the Debtors' interests in the Second Loan (*i.e.*, the Debtors appear to be "in the money").

Movant also conveniently backs out 6% in closing costs to get to a net value for the property of $20,774,000, which is just enough to cover $18,152,475 in asserted obligations (inclusive of interest and fees) on the Senior Loan, plus alleged unpaid property taxes of $2,630,301. However, closing costs should total in the range of 3% to 5% for a sale of this size, which would result in a net value for the property of $21,437,000 to $20,995,000 and potentially nearly $1 million in equity value for the Second Loan even if Movant was entitled to all of its purported claims under the Senior

---

[1] These percentage ownership interests in the Senior Loan are set forth in Schedule A to the Standstill Agreement (as defined below) and may be subject to adjustment.

Loan. The Motion seeks to extinguish any such equity of the Debtors in the Dyer Mountain Property.

Movant may argue that any excess value in the Dyer Mountain Property beyond the Senior Loan is subject to the provisions of the *Amended and Restated Standstill Agreement* dated January 22, 2010 (the "Standstill Agreement"), which purportedly requires certain transfer payments to be made in the event of a sale or refinance of the Dyer Mountain Property.[2] The Standstill Agreement is attached as Exhibit 8 to the Declaration of Walter Clarke in support of the Motion. However, Fund I is not a party to the Standstill Agreement. Fund I has a 3.9% direct interest in any proceeds of the Dyer Mountain Property in excess of the Senior Loan.

As to the interests of Fund II and Fund III, the Standstill Agreement provides that any transfer payments would be "for the purchase of Subordinated Interests in the respective Transfer Assets" (as described in the Standstill Agreement). Now that nearly three years have passed since the Standstill Agreement was signed, such Subordinated Interests may no longer exist. Yet, Fund II and Fund III are clearly entitled to consideration in the context of any transfer payments made to the Oxford investors pursuant to the Standstill Agreement. To the extent there will be a failure of consideration now that the Subordinated Interests have no value, the provisions of the Standstill Agreement are unenforceable against Fund II and Fund III.

## **CONCLUSION**

For the foregoing reasons, the Trustee objects to Movant's request for relief from the automatic stay as to the Senior Loan on the Dyer Mountain Property, and requests that the Court deny the Motion.

Dated: January 3, 2013     PACHULSKI STANG ZIEHL & JONES LLP

By     */s/ Maxim B. Litvak*
       Maxim B. Litvak
       Attorneys for Richard M Kipperman,
       Chapter 11 Trustee

---

[2] The Trustee challenges the enforceability of the Standstill Agreement as a matter of contract law based on the statements of Oxford's counsel on the record that the agreement would not be binding if a trustee was appointed in this matter.