# EXHIBIT A

# PROMISSORY NOTE
### (Commercial)

$600,000.00                                        November 25, 2009

**Loan # 09-005**

      **FOR VALUE RECEIVED**, the undersigned,

21 Mira Mesa, LLC, a California limited liability company (collectively "**Maker**"),

whose address for purposes of this Promissory Note (this "**Note**") is

62 1st Street, 4th Floor, San Francisco, California 94105 (the State of California is referred to as the "**State**"),

PROMISES TO PAY to the order of

Frontier Ridge Global Fund, LP, a Delaware limited partnership as to an undivided 145,103/600,000ths beneficial interest

Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990 as to an undivided 116,082/600,000ths beneficial interest

Garry M. Samuels, Trustee of the Garry M. Samuels 1998 Trust as to an undivided 87,062/600,000ths beneficial interest

Bruce J. Rice, M.D. Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. as to an undivided 68,924/600,000ths beneficial interest

Minoo Sultan, Trustee of the Sultan Trust dated April 15, 1994 as to an undivided 59,492/600,000ths beneficial interest

Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship as to an undivided 50,786/600,000ths beneficial interest

Ted W. Dang, Trustee, TD CM Profit Sharing Plan as to an undivided 36,276/600,000ths beneficial interest

Ronald Rubenstein and Gail Rubenstein, husband and wife as community property as to an undivided 21,765/600,000ths beneficial interest

Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account as to an undivided 14,510/600,000ths beneficial interest

(collectively "**Holder**"),

COMMERCIAL NOTE
Version 6/1/02
Copyright, Doss & Page, Lawyers

at 62 1st Street, Fourth Floor, San Francisco California 94105, or such other place as the Holder may specify, the principal sum of Six Hundred Thousand Dollars and Zero Cents ($600,000.00), together with interest thereon from the Date of Disbursement (as defined below) at the rate of **Fifteen and Zero Hundredth** Percent (15.00%) per annum (the "**Contract Rate**"), to be paid in lawful money of the United States of America as follows:

a. Interest from the Date of Disbursement through the end of the month shall be due and payable on the Date of Disbursement; and,

b. The payments on this Note shall be as follows:

| Number of Payments | Amount of Payment | Date Series Commences "Date of Commencement" |
|---|---|---|
| 23 | $7,500.00 | January 01, 2010 |
| 1 | $607,500.00 | December 01, 2011 |

The day of the month on which payments are due is called the "**Installment Payment Date.**" The last day in the last series above is called the "**Date of Maturity.**" Each installment payment shall be applied first to accrued interest and then to principal. However, Borrower shall have the option of not paying to Holder the monthly interest payments and allow such payments to accrue to the total outstanding balance under this Note and Borrower's exercise of this option shall not be a default under the terms of this Note.

1. The "**Date of Disbursement**" for purposes of this Note shall mean the day upon which a closing agent disburses the majority of the principal amount of this Note.

2. A "**Loan Month**" for purposes of this Note shall mean each successive calendar month of the term of this Note, beginning with the month in which the Date of Commencement falls.

3. If any installment of principal and/or interest not be paid within **Ten (10)** Days after the due date ("**Grace Period Expiration Date**", Maker shall also pay to Holder a late charge of 10%) of such installment. THE LATE CHARGE SHALL BE PAID WITHOUT PREJUDICE TO THE RIGHT OF THE HOLDER TO COLLECT ANY OTHER AMOUNTS PROVIDED TO BE PAID OR TO DECLARE A DEFAULT UNDER THIS NOTE OR THE DEED OF TRUST (AS DEFINED BELOW). THE LATE CHARGE SHALL BE PAYABLE NOT LATER THAN THE DUE DATE OF THE NEXT PAYMENT AND SHALL BE SECURED BY THE DEED OF TRUST AND OTHER SECURITY DOCUMENTS (AS DEFINED BELOW). MAKER RECOGNIZES THAT ITS DEFAULT IN MAKING ANY PAYMENT AS AGREED TO BE PAID WHEN DUE, OR THE OCCURRENCE OF ANY OTHER EVENT OF DEFAULT UNDER THE DEED OF TRUST OR ANY OTHER SECURITY DOCUMENT, WILL REQUIRE HOLDER TO INCUR ADDITIONAL EXPENSE IN SERVICING AND ADMINISTERING THE LOAN, IN LOSS TO HOLDER OF THE USE OF THE MONEY DUE AND IN FRUSTRATION TO HOLDER IN MEETING ITS OTHER FINANCIAL AND LOAN COMMITMENTS AND THAT THE DAMAGES CAUSED THEREBY WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN. MAKER AGREES (A) THAT AN AMOUNT EQUAL TO THE LATE CHARGE PLUS THE ACCRUAL OF INTEREST AT THE DEFAULT RATE IS A REASONABLE ESTIMATE OF THE DAMAGE TO HOLDER CAUSED BY A LATE PAYMENT, AND (B) THAT THE ACCRUAL OF INTEREST AT THE DEFAULT RATE FOLLOWING ANY OTHER EVENT OF DEFAULT IS A REASONABLE ESTIMATE OF THE DAMAGE TO HOLDER CAUSED BY ANOTHER EVENT OF DEFAULT, REGARDLESS OF WHETHER THERE HAS BEEN AN ACCELERATION OF THE DEBT. NOTHING IN THIS NOTE SHALL BE CONSTRUED AS AN OBLIGATION ON THE PART OF HOLDER TO ACCEPT, AT ANY TIME, LESS THAN THE FULL AMOUNT THEN DUE, OR AS A WAIVER OR LIMITATION OF HOLDER'S RIGHT TO COMPEL PROMPT PERFORMANCE.

COMMERCIAL NOTE
Version 6/1/02
Copyright, Doss & Page, Lawyers

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 3 of 33

4.     [NO] If the box preceding this sentence contains the word "yes," Holder has no obligation to accept tendered full or partial prepayments of any portion of the principal balance outstanding hereunder until 0 after the Date of Disbursement (the "**Lock Period**").

[NO] If the box preceding this sentence contains the word "yes," in the event of a Prepayment after the Lock Period, Maker shall, as a condition to the Holder's acceptance of the Prepayment, pay to Holder a prepayment premium (the "**Prepayment Premium**") equal to (0) months' interest on that portion of the unpaid balance of this Note prepaid.

Maker shall have no right to prepay, and the Holder shall have no obligation to accept tendered full or partial prepayments of any portion of the principal balance outstanding hereunder (a "**Prepayment**") unless and until prepayment is made on an Installment Payment Date, with not less than thirty (30) days' prior written notice to Holder, and pays any Prepayment Premium called for in the previous paragraph. Any amounts to be prepaid as specified in said notice shall become due and payable at the time provided in said notice, and said notice shall not relieve the Maker from making any payment due prior to or, in the event of a partial Prepayment, after, the time specified in said notice. Prepayments shall be credited to installments of principal in the inverse order of their maturity.

5.     If an Event of Default occurs and the Holder accelerates payment of the indebtedness, the Holder shall suffer damages and opportunity costs which are now difficult or impossible to ascertain. Therefore, if that occurs, Maker shall pay to the Holder, as liquidated damages and not as a penalty, and in addition to the entire balance of principal and accrued interest and all other sums then due under this Note, the Deed of Trust and the Other Security Documents, an amount equal to the Prepayment Premium computed as if the entire unpaid balance of this Note were prepaid on the date of default.

The Maker waives all rights under California Civil Code Section 2954.10 which provides, in part, as follows:

AN OBLIGEE WHICH ACCELERATES THE MATURITY DATE OF THE PRINCIPAL AND ACCRUED INTEREST, PURSUANT TO CONTRACT, ON ANY LOAN SECURED BY A MORTGAGE OR DEED OF TRUST ON REAL PROPERTY UPON THE CONVEYANCE OF ANY RIGHT, TITLE, OR INTEREST IN THAT PROPERTY, MAY NOT CLAIM, EXACT, OR COLLECT ANY CHARGE, FEE, OR PENALTY FOR ANY PREPAYMENT RESULTING FROM THAT ACCELERATION.

The Maker understands and acknowledges that the Holder bargained for this waiver as part of the consideration that induced the Holder to enter into this transaction. The Maker initials this paragraph for the purpose of evidencing its understanding of Civil Code Section 2954.10 recited in part above and the Maker's agreement to the waiver of its terms.

6.     This Note is secured, without limitation, by that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the "**Deed of Trust**") of the same date given by Maker to California Mortgage and Realty, Inc., as Trustee, for the benefit of Holder, on certain real estate and personal property (the "**Trust Property**") and the Other Security Documents (as defined in the Deed of Trust, referred to as the "**Other**

**Security Documents").** This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Deed of Trust and the Other Security Documents. Among the provisions of the Deed of Trust is the following paragraph 12:

12. <u>Transfer or Encumbrances of the Trust Property</u>. Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "**Partnership**"), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

7.      Maker shall be in default under this Note (referred to as an "**Event of Default**") and the whole sum of principal and interest shall become due and payable at the option of the Holder without notice or demand, upon: (i) the nonpayment, by the Grace Period Expiration Date of any installment of principal and/or interest, or any other monetary obligation under this Note, the Deed of Trust or the Other Security Documents; or (ii) any other Event of Default under the Deed of Trust or the Other Security Documents.

8.      If an Event of Default occurs, this Note shall thereafter bear interest at the rate of the lesser of (i) the Maximum Rate (as hereinafter defined) or (ii) **18** percent % per annum (which lesser rate is referred to as the "**Default Rate**") from the date of the Event of Default until cured. In the event Maker fails to pay, in full, all outstanding principal, interest and other sums due under the terms of this Note, on or before the maturity date as set forth herein, Borrower shall

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 5
of 33

pay to Holder as liquidated damages the additional sum of 10% of the total outstanding balance due as of such maturity date.

9. Additional Advances: The Holder shall be entitled to advance such further sums as necessary, in the Holder's sole discretion, to cure any default(s) on any senior lien(s) including property tax liens. Any sum or sums so advanced shall be considered additional advances under this Note and the Deed of Trust by which this Note is secured and shall bear interest at the Default Rate set forth above from the date of the advance(s) until paid by the Borrower. Further, Maker shall pay to Holder as liquidated damages an additional fee equal to ten percent (10.00%) of any sum(s) advanced hereon for services rendered in connection with such advance(s).

10. Liquidated Damages: Maker agrees that the actual damages to Holder, in the event of a default by Maker and/or failure by Maker to pay upon maturity, would be extremely difficult or impracticable to determine because they involve such factors, among others, as the need of Holder to make decisions, undertake risks, and take action; and the impact on business relations between Holder and its members and/or investors. Therefore, by signing below, Maker acknowledges that the above charges have been agreed upon as a reasonable estimate of such damages.

INITIAL:

11. Acceptance by Holder of any payment for less than what is due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due before the Grace Period Expiration Date, shall be and continue to be an Event of Default under this Note. The rights or remedies of the Holder, as provided in this Note, the Deed of Trust or any of the Other Security Documents, or as provided at law or in equity shall be cumulative and concurrent, and may be pursued singly, jointly or successively against the Trust Property, Leases, Rents (as defined in the Deed of Trust) or any other funds, property or security held by Holder for the payment or performance thereof, or against the Maker or otherwise, at the sole discretion of the Holder. The failure to exercise any such right or remedy shall not be construed as a waiver or release of any rights or remedies or of the right to exercise them at any later time.

12. Maker and all endorsers, guarantors, sureties, accommodation parties hereof, and all other persons liable or to become liable for all or any part of the indebtedness under this Note, the Deed of Trust, and the Other Security Documents, waive all applicable exemption rights, whether under the laws of the State, homestead laws, or otherwise, and also waive valuation and appraisement, diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor, of acceleration, of intention to accelerate and of maturity. All endorsers, guarantors, sureties, and accommodation parties hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment. Any such renewals, extensions or modifications may be made without notice to any of said parties.

13. Maker and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness agree to pay all costs of collection, including reasonable attorneys' fees and all costs of suit, if this Note is not paid when due, or if it is necessary to protect the security for this Note or to commence foreclosure proceedings under the Deed of Trust or any of the Other Security Documents, or if Holder is made a party to any litigation because of this Note, the Deed of Trust or any of the Other Security Documents, whether or not suit is filed, and whether through courts of original jurisdiction, as well as in courts of appellate juris-diction, or through a bankruptcy court or other legal proceedings. Such costs of collection shall include attorneys fees and costs in all aspects of bankruptcy proceedings affecting the security for this Note or performance hereunder, including plan objection proceedings, objections to discharge, claim objection proceedings, preference actions, relief from stay litigation, motions to dismiss, convert or appoint a trustee, case monitoring and serving on a creditor's committee.

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 6
of 33

14. This Note shall not be amended, modified or changed, nor shall any waiver of any of its provision be effective unless accomplished by an instrument in writing signed by the party against whom enforcement of any amendment, modification, change or waiver is sought.

15. Maker acknowledges that this Note and the loan it evidences was made by a licensed California Finance Lender or licensed California Real Estate Broker or it was arranged by a licensed California Real Estate Broker and that the broker's participation was a material factor in the consummation of this transaction. However, none of the terms and provisions contained in this Note, the Deed of Trust, or any of the Other Security Documents, shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate. The Maker or other party now or later liable for the payment of this Note shall never be required to pay interest on this Note at a rate in excess of the Maximum Rate, and the provisions of this paragraph shall control over all other provisions and of any other instrument executed in connection herewith this loan transaction. If Holder collects monies which are deemed to be interest in excess of the Maximum Rate, all excess sums shall be applied against the unpaid principal balance and not to the payment of interest; and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to the Maker in cash and the Maker hereby agrees to accept such refund. As used in this Note, the term **"Maximum Rate"** means the maximum rate (or, if the context so permits or requires, an amount calculated at such rate) of interest which, at the time in question would not cause the interest charged on the indebtedness evidenced by this Note, the Deed of Trust, or any of the Other Security Documents at such time to exceed the maximum amount which Holder would be allowed to contract for, charge, take, reserve or receive under the laws of the State or any other applicable law after taking into account, to the extent required by the laws of the State or any other applicable law, all relevant payments or charges under this Note, the Deed of Trust, and the Other Security Documents.

16. Whenever used herein, the words "Maker" and "Holder" shall be deemed to include their respective successors and assigns. In the event Maker is comprised of more than one individual or entity, each such individual or entity shall be jointly and severally liable under this Note.

17. Time is of the essence of this Note.

18. Any notice, demand, statement, request, or consent made under this Note shall be in writing and shall be deemed given when hand-delivered or within Three (3) Days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Maker or Holder, as the case may be, shall in like manner designated in writing.

19. The singular number shall include the plural, and the plural the singular, and any gender shall be substituted for any other gender, where appropriate.

20. This Note is to be governed by and construed in accordance with the laws of the State, without giving effect to the conflicts of law provisions thereof. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note. Maker consents to the jurisdiction of the state and federal courts in the State for any actions involving the enforcement or interpretation of this Note, Deed of Trust and the transaction they evidence.

COMMERCIAL NOTE
Version 6/1/02
Copyright, Doss & Page, Lawyers

MAKER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT INVOLVING THE HOLDER OR ANY ARRANGER OF THIS LOAN AS WELL AS ANY CLAIM FOR PUNITIVE DAMAGES.

21. THIS NOTE, THE DEED OF TRUST, THE ENVIRONMENTAL INDEMNITY, ANY GUARANTY AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES.

**This document is subject to approval of the U.S. Bankruptcy Court after notice and opportunity for hearing and not effective until entry of an order by the Court has been executed.**

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Note effective as of the date first above written.

**21 Mira Mesa, LLC**
**a California limited liability company**

By: California Mortgage and Realty, Inc.
    A Delaware corporation

By: _____
    Richard Johnson
Its: Vice President

*Please complete this information.*

RECORDING REQUESTED BY:
CHICAGO SUBDIVISION DEPT
AND WHEN RECORDED MAIL TO:

California Mortgage and Realty, Inc
62 1st Street Fourth Floor
San Francisco, CA 94105

FII
25P
4W

DOC # 2010-0066138

FEB 09, 2010    8:00 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:         111.00    WAYS:        4
                              DA:          1

**PAGES:        25**

3710

Space above this line reserved for Recorder's Use Only
Govt. Code 27361.6

DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF
LEASES AND RENTS AND FIXTURE FINANCING STATEMENT

(Please fill in document title(s) on this line)
Govt. Code 27324

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
Govt. Code 27361.6
(Additional recording fee applies)

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY
SUBDIVISION DEPT.

**3711**

WHEN RECORDED, RETURN TO:

California Mortgage and Realty, Inc.
62 1st Street, Fourth Floor
San Francisco, California   94105
Loan # 09-005

930016084-US0

*Above Space for Recorder's Use*

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH SECTION 9402 OF THE CALIFORNIA COMMERCIAL CODE (THE "**California Commercial Code**")

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT ("**Deed of Trust**"), made effective as of November 25, 2009,

by 21 Mira Mesa, LLC, a California limited liability company ("**Trustor**"),
whose address for purposes of this Deed of Trust is 62 1st Street, 4th Floor, San Francisco, California 94105 (the State of California is hereinafter sometimes referred to as the "**State**");

TO AND IN FAVOR OF California Mortgage and Realty, Inc. ("**Trustee**");

FOR THE BENEFIT OF :

Frontier Ridge Global Fund, LP, a Delaware limited partnership as to an undivided 145,103/600,000ths beneficial interest

Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990 as to an undivided 116,082/600,000ths beneficial interest

Garry M. Samuels, Trustee of the Garry M. Samuels 1998 Trust as to an undivided 87,062/600,000ths beneficial interest

Bruce J. Rice, M.D. Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. as to an undivided 68,924/600,000ths beneficial interest

Minoo Sultan, Trustee of the Sultan Trust dated April 15, 1994 as to an undivided 59,492/600,000ths beneficial interest

Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship as to an undivided 50,786/600,000ths beneficial interest

Ted W. Dang, Trustee, TD CM Profit Sharing Plan as to an undivided 36,276/600,000ths beneficial interest

Ronald Rubenstein and Gail Rubenstein, husband and wife as community property as to an undivided 21,765/600,000ths beneficial interest

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 10 of 33

Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account as to an undivided 14,510/600,000ths beneficial interest

(collectively, the **"Beneficiary"**),

whose address is 62 1st Street, Fourth Floor, San Francisco California  94105.

**W I T N E S S E T H :**

To secure the payment of a debt described below (the "Debt"), Trustor hereby grants, bargains, conveys, transfers, and assigns to Trustee, in trust, WITH POWER OF SALE, all of the real property commonly known as Vacant Land on Mira Mesa Boulevard, San Diego, California (San Diego County APN:341-010-04-00; 341-352-21-00) as more fully described in **Exhibit "A"** attached hereto (collectively, and, where the context so indicates, individually the **"Premises"**) and the buildings, structures, trees, vines, plants, additions, enlargements, lot line adjustment additions, extensions, modifications, repairs and improvements now or hereafter located thereon (the **"Improvements"**);

TOGETHER WITH:  All right, title, interest and estate of Trustor now owned or hereafter acquired in the following property, rights, interests, and estates (collectively with the Premises and Improvements, called the **"Trust Property"**):

(a) All easements, rights-of-way, strips of land, streets, alleys, passages, sewer rights, oil, gas and other mineral rights, water rights and powers, and all estates, rights, titles, interests, privileges, tenements, hereditaments and appurtenances of any nature, in any way belonging, relating or pertaining to the Premises and the reversion and reversions, remainder and remainders, and all land laying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand, both in law and in equity, of Trustor in the Premises and every part thereof and all appurtenances thereto;

(b) All goods, machinery, furniture, equipment, fixtures, material, appliances and other articles of personal property of every kind owned by Trustor, or in which Trustor has an interest, located upon the Premises, and appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the exclusion of vermin or insects, or for removal of dust, refuse or garbage, any farm, vineyard, winery, irrigation, landscaping, well, crop protection, drainage, frost protection and warehouse equipment of any nature, and such machinery, furniture, equipment, fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and Improvements (and all other personal property, either similar or dissimilar to the foregoing usable in the operation of the Premises and Improvements and located in and on it), together with all replacements and substitutions therefor, now owned or hereafter acquired by Trustor and located in or on said Premises and Improvements, together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements (hereinafter collectively called the **"Equipment"**), together with all condemnation awards and rights under insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter located thereon;

(c) All awards or payments, including interest, which may be made as to the Trust Property, whether from the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value of the Trust Property (collectively, **"Awards"**);

(d) All leases and other agreements affecting the use, enjoyment or occupancy of the Trust Property, (the **"Leases"**), if any, and all rents and security deposits payable under the Leases, and other deposits, issues and profits from the Trust Property (the **"Rents"**);

(e) All Policies (as defined herein) and their proceeds thereof and any unearned premiums on any insurance policies covering the Trust Property, including, the right to receive and apply the proceeds of any insurance, judgments,

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 11 of 33

or settlements made in lieu thereof, for damage to the Trust Property, whether such insurance is or is not required by this Deed of Trust;

(f) All utility deposits made to obtain or maintain utility services to the Premises or the Improvements;

(g) Any amounts in any escrow fund for the purposes of payment of taxes, insurance premiums or other Impositions as to the Trust Property;

(h) The right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding brought as to the Trust Property and to commence any action or proceeding to protect the interest of Trustee and Beneficiary in the Trust Property; and

(i) Any inventory located on or related to the Premises or the Improvements;

(j) All grapes, grape crush, grape juice and other crops or farm products located on or related to the Premises in all their respective forms, whether growing or dead, mature or immature, severed or unsevered, including crops produced on trees, vines or bushes, and including such trees, vines and bushes, all supplies used or produced in farming or vineyard operations or products of the foregoing in their unmanufactured state;

(k) All accounts, contract rights, grape sale contracts, chattel papers, instruments, general intangibles, deposit accounts, documents, investment property, letter-of-credit rights, letters of credit, or money related to the Premises or the Improvements

(l) The products and proceeds of the property described in the above (a) through (k) inclusive.

**TO HAVE AND TO HOLD** the Trust Property upon and subject to the trusts and agreements set forth in this Deed of Trust.

1. Secured Indebtedness. This Deed of Trust is given to secure the payment and performance of the following obligations, indebtedness, and liabilities (the "**Obligations**"): (a) all Obligations of Trustor under the Promissory Note of this date payable to Beneficiary, in the principal amount of Six Hundred Thousand  Dollars and Zero Cents Dollars ($600,000.00), as well as any other substituted note and all modifications, renewals, or extension of the note (the "**Note**," and the payee and all subsequent holders of the Note are collectively the "**Beneficiary**" and the transaction creating the Note is the "**Loan**"); (b) all Obligations under this Deed of Trust or any other agreement executed or granting additional security interests in connection with the Loan (collectively, "**Other Security Documents**"), as such documents may be amended from time to time, (c) all present and future loans, advances, or other extensions of credit obtained by Trustor from Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Trustor's Obligations under any present or future loan or credit agreement executed by Trustor, and all liabilities that Trustor may now or in the future owe to Beneficiary to the extent such note, loan or credit agreement recites or indicates that such loan, advance or extension of credit is to be secured. Collectively the Obligations referred to above are called the "**Debt**".

Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the Obligations of Trustor or any Guarantor arising exclusively under (i) any guaranty of the same date (the "**Guaranty**") or (ii) any Environmental Certificate and Indemnity Agreement of the same date, given by Trustor or any other person to Beneficiary (the "**Environmental Indemnity**"). The definition of "Other Security Documents" shall not include the Guaranty or the Environmental Indemnity.

2. Representations, Warranties and Covenants.

(a) Warranty of Title. Trustor warrants that Trustor has good title to the Trust Property and has the unrestricted right to grant the security interests given in this Deed of Trust and that Trustor presently possesses an unencumbered fee simple estate in the Premises and the Improvements except for those shown in the title report for this transaction (the "**Permitted Encumbrances**"), and that this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Trust Property, subject only to the Permitted Encumbrances. Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

(b) Representations and Covenants Concerning Loan. Trustor represents, warrants and covenants as follows:

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 12 of 33

(i) All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as currently operated (collectively, the **"Licenses"**), have been obtained and are in good standing (including, without limitation, any applicable liquor license). The Trustor shall keep and maintain all Licenses. The Trust Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Trust Property.

(ii) All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Trust Property except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the lien of this Deed of Trust. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(iii) The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust. No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are good standing.

(iv) The Trust Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Trust Property.

(v) There has not been committed by Trustor or, to Trustor's knowledge, any other person in occupancy of or involved with the operation or use of the Trust Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Trustor's obligations under this Deed of Trust or any of the Other Security Documents. Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

(vi) Neither the execution and delivery of the Note, this Deed of Trust, or the Other Security Documents, nor the Trustor's performance thereunder, nor the recordation of this Deed of Trust, nor the exercise of any remedies by Beneficiary, will adversely affect Trustor's rights under any of the Licenses.

(c) <u>Survival</u>. The warranties of this Paragraph will survive foreclosure or enforcement of this Deed of Trust and shall run with the Premises.

3. <u>Insurance</u>.

(a) <u>Risks to be Insured and Policy Provisions</u>. Subject to the provisions of <u>Paragraph 5</u> hereof, Trustor, at its sole cost and expense, will maintain or cause to be maintained the following:

(i) Commercial general liability (including contractual liability) insurance (**"CGL Insurance"**) covering any and all liability of the insured arising out of the ownership, maintenance, use or operation of the Trust Property, and all operations incidental thereto said insurance to have limits of not less than Five Million Dollars ($5,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(ii) Insurance (**"Building Insurance"**) on all buildings, fixtures and improvements located on the Trust Property against "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (x) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Beneficiary; or (y) unless prohibited by law, the unpaid principal amount of the Debt. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Beneficiary;

(iii) Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" (**"Personal Property Insurance"**) in amounts at least equal to the replacement value thereof;

(iv) Rental value or business interruption insurance (or a combination thereof as Beneficiary may require) (**"Rental Value or Business Interruption Insurance"**) on all buildings, fixtures, improvements, and other

constructions located on and forming a part of the Trust Property as above described (including parking and common areas) against loss by the perils covered by the Building Insurance in amounts of not less than the amount of Trustor's annual gross income from the Trust Property or Trustor's debt service on the Trust Property (including required payments to the Escrow Fund), for twelve (12) months, whichever is greater. Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

(v)  If and whenever Trustor shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $100,000/$500,000/$100,000;

(vi)  If the Trust Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the "**Act**"), Trustor shall keep the Trust Property covered by flood insurance ("**Flood Insurance**") up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Debt; and

(vii)  Such other insurance with respect to the Trust Property in such amounts and against such insurable hazards as Beneficiary from time to time may reasonably require ("**Additionally Required Insurance**").

All insurance required hereunder, including the CGL Insurance (the "**Policies**"), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Beneficiary; be issued by insurance companies which are qualified to do business in the State, which have at least an A.M. Best Co. Rating of A, VIII and which are satisfactory to Beneficiary in all other ways.

The CGL Insurance shall name Beneficiary as an additional insured; apply severally as to Trustor and Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance shall name Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(b)  _Delivery of Policy._  Trustor will deliver to Beneficiary original binders or evidence of all required insurance to Beneficiary and Trustor shall promptly furnish to Beneficiary copies of all renewal notices and all receipts of paid premiums received by it.  At least ten (10) days prior to the expiration date of a required policy, Trustor shall deliver to Beneficiary a renewal binder or evidence of insurance in a form satisfactory to Beneficiary.

(c)  _Assignment of Policy._  If the Trust Property is sold at a foreclosure sale or if Beneficiary shall acquire title to the Trust Property, Beneficiary shall have all of the rights of Trustor to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Trust Property prior to such sale or acquisition.

(d)  _Notice of Damage or Destruction; Adjusting Loss._  If any part of the Trust Property is damaged or destroyed by fire or other casualty, Trustor will promptly give written notice thereof to the insurance carrier and Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Beneficiary joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an Event of Default exists at the end of such four-month period or at any time thereafter, Beneficiary may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies.  In connection therewith, Trustor does hereby irrevocably authorize, empower and appoint Beneficiary as attorney-in-fact for Trustor (which appointment is coupled with an interest) to do any of the above in the name of Trustor.

(e)  _Application of Insurance Proceeds._  All sums in excess of $10,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, Flood Insurance or Additionally Required Insurance (collectively the "**Proceeds**"), shall be paid to Beneficiary which may, at its option (but subject to the provisions of this Paragraph), apply them, after first deducting Beneficiary's expenses incurred in the collection thereof, to the payment of the Debt, whether or not due and in such order of application as

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 14 of 33

Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine. However, Beneficiary shall make all Proceeds (after first deducting therefrom Beneficiary's reasonable expenses incurred in collecting them) available to Trustor to reimburse Trustor for Trustor's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Beneficiary (and shall not be applied toward the payment of the Debt until after restoration and repair of the Improvements and Equipment) provided:

(i) There is no Event of Default;

(ii) Trustor has notified Beneficiary of Trustor's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

(iii) Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

(iv) If, in the reasonable judgment of Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Trustor shall demonstrate to Beneficiary the availability of funds which, together with the Proceeds, are sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and

(v) There will, in the reasonable judgment of Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Trustor for its costs of restoring the Improvements and Equipment, at Beneficiary's option, may be applied to partial prepayment of the Debt. Any such application of the Proceeds to the payment of the Debt shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Debt shall be paid to Trustor.

    4.    <u>Payment of Impositions</u>. Subject to the payments in the manner provided in <u>Paragraph 5</u> hereof and to <u>Paragraph 8</u> relating to contests, Trustor shall pay when due all taxes (both real and personal), assessments, water charges, sewer charges, ground rents, maintenance charges and all other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Trust Property (the "**Impositions**"). Trustor will deliver to Beneficiary, upon request, evidence satisfactory to Beneficiary that the Impositions are not delinquent. Trustor shall not permit and shall promptly cause to be discharged any lien or charge which becomes a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

    5.    <u>Escrow Fund</u>. At the option of the Beneficiary, Beneficiary may require Trustor to establish an Escrow Fund (defined below) sufficient to pay all Impositions and all insurance premiums for all Policies (the "**Insurance Premiums**") pursuant to this Deed of Trust. Initial deposits of Impositions and Insurance Premiums shall be made by Trustor to Beneficiary in amounts determined by Beneficiary in its discretion on the date hereof to be held by Beneficiary or its agent, in escrow. Additionally, Trustor shall pay to Beneficiary on the first day of each calendar month one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the "**Escrow Fund**"). Trustor agrees to notify Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority. The Escrow Fund and the payments of interest or principal or both under the Note shall be added and paid together. Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Escrow Fund. If the Escrow Fund is insufficient to pay the items set forth above, Trustor shall pay, upon demand, to Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Escrow Fund shall be payable to Trustor.

    6.    <u>Liens</u>. Subject to <u>Paragraph 8</u> hereof relating to contests, the Trustor shall not create or permit any lien, encumbrance or charge on the Trust Property inferior to the lien of this Deed of Trust. Trustor shall pay, when due, the claims of: (i) all persons supplying labor or materials to or in connection with the Trust Property; and (ii) registered or

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 15 of 33

certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Trust Property.

      7.    <u>Compliance with Laws</u>. Subject to <u>Paragraph 8</u> relating to contests, Trustor shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Trust Property, any part thereof or the use thereof and shall comply with all covenants, conditions and restrictions applicable to the Trustor which are contained in any documents constituting a Permitted Encumbrance.

      8.    <u>Permitted Contests</u>. The Trustor shall not be required to (i) pay any tax, assessment or other charge referred to in <u>Paragraph 4</u>, (ii) discharge or remove any lien, encumbrance or charge referred to in <u>Paragraph 6</u>, or (iii) comply with any statute, law, rule, regulation or ordinance referred to in <u>Paragraph 7</u>, if Trustor (a) contests, in good faith, the existence, the amount or the validity of the item, and (b) shall give such security to Beneficiary as may be reasonably demanded by Beneficiary to ensure compliance with the foregoing provisions of this Paragraph. Trustor shall give prompt written notice to Beneficiary of the commencement of any contest referred to in this Paragraph.

      9.    <u>Condemnation</u>.

      (a) Immediately upon receipt by Trustor of notice of the institution of any proceeding or negotiations for condemnation or other eminent domain proceeding (called **"Taking"**), Trustor shall give notice thereof to Trustee and Beneficiary. Trustee and Beneficiary may appear in any such proceedings and participate in any such negotiations and may be represented by counsel. Trustor, notwithstanding that Trustee and Beneficiary may not be a party to any such proceeding, will promptly give to Trustee and Beneficiary copies of all notices, pleadings, judgments, determinations and other papers received by Trustor therein. Trustor will not enter into any agreement permitting or consenting to the taking of the Trust Property, or any part thereof, or providing for the conveyance thereof in lieu of condemnation, unless Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed. All Taking awards shall be adjusted jointly by Trustor and Beneficiary. All awards payable as a result of a Taking (**"Awards"**) which exceed $10,000 shall be paid to Beneficiary. Beneficiary may, at its option, apply the proceeds, after first deducting its expenses incurred in the collection of them, to the payment of the Debt, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine; <u>provided</u>, <u>however</u>, that any such application of any Award payable as a result of a Taking, to the payment of the Debt, shall be without prepayment premium or penalty.

      (b) Beneficiary shall make all Awards (after first deducting Beneficiary's expenses to collecting the Award) available to Trustor to reimburse Trustor for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements; <u>subject, however</u> to conditions substantially similar to the conditions imposed under the terms of <u>Paragraph 3(e)</u> above, relating to the use of Proceeds. Any excess portion of any Award shall applied to partial prepayment of the Debt, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

      (c) TRUSTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER UNDER SECTION 1265.225(A) OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR ANY SUCCESSOR STATUTE PROVIDING FOR THE ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIEN HOLDER.

      10.    <u>Leases and Rents</u>. Trustor agrees that Beneficiary has the right to enter the Trust Property for the purpose of enforcing its interest in the Leases and the Rents. Nevertheless, subject to the terms of this Paragraph, Beneficiary grants Trustor a limited license to collect the Rents. Trustor shall hold the Rents, or that portion thereof sufficient to discharge all current sums due and unpaid by Trustor under the terms of the Note, whichever is less, in trust for use in the payment of the Debt.

      Upon the occurrence of an Event of Default, Trustor's limited license to collect Rents shall automatically terminate, and any rents previously collected and in Trustor's possession shall thereafter be held in trust for payment of the Debt. Beneficiary may enter upon the Trust Property, collect and retain the Rents and apply the Rents toward payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper. All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Beneficiary. Upon request, Trustor shall furnish Beneficiary with executed copies of all Leases. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 16 of 33

free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length transactions. All Leases shall provide that they are subordinate to this Deed of Trust, and that the lessee attorns to Beneficiary. Trustor shall not, without the consent of Beneficiary, cancel any Major Tenant Lease or accept prepayments of installments of Rent under a Major Tenant Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents. Trustor shall perform each provision of every Lease. All security and other deposits received by Trustor under any Lease shall be maintained in a separate account at a bank, and shall not be commingled with Trustor's other funds. If an Event of Default occurs, Beneficiary, at its option, may require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Trust Property possessed by Trustor and may require Trustor to surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Trustor may be evicted by summary proceedings or otherwise. For purposes of this Paragraph, a **"Major Tenant Lease"** shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which otherwise represents at least 25% of the sum total of the Rent under all Leases of the Trust Property.

      11.    <u>Preservation and Maintenance of Trust Property</u>.  Trustor (i) shall keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted; (ii) shall, upon damage or destruction of the Trust Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Trust Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Debt, Trustor shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Debt without payment of a premium or penalty; (iii) shall constantly maintain the parking and landscaped areas of the Trust Property; (iv) shall not commit waste or permit impairment or deterioration of the Trust Property; (v) shall not construct additions to existing buildings or additional buildings on the Premises without the prior written consent of the Beneficiary, which consent shall not be unreasonably withheld or delayed; (vi) shall not remove from the Premises any of the fixtures and personal property included in the Trust Property unless the same is immediately replaced with property of at least equal value and utility, and this Deed of Trust becomes a valid first lien on such property; and (vii) shall maintain the roofs of the Improvements in safe, sound and good repair and condition.

      12.    <u>Transfer or Encumbrances of the Trust Property</u>.  Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a **"Partnership"**), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 17 of 33

right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

13.     Estoppel Certificates. After request by Beneficiary, Trustor, within ten (10) days and at its expense, will furnish the Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Debt, if any, and that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

14.     Notices. Any notice, demand, statement, request, or consent made under this Deed of Trust shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Trustor, Trustee or Beneficiary, as the case may be, shall in like manner designate in writing.

Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

15.     Sale of Trust Property. If this Deed of Trust is foreclosed, the Trust Property, or any interest therein, may at the discretion of Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

16.     Right of Entry. Beneficiary and its agents shall have the right to enter and inspect the Trust Property at all reasonable times upon notice to Trustor.

17.     Books and Records. Trustor shall keep adequate books and records of account and furnish Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Beneficiary, and other information concerning the affairs of Trustor as Beneficiary may reasonably request, in form and detail reasonably satis-factory to Beneficiary, including, annual statements of income and expense related to the operation of the Trust Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Trustor's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Beneficiary. All such financial statements, and other information shall be certified to be true and accurate by an individual responsible for the financial affairs of Trustor, in such individual's individual capacity. In the event that such financial statements and other information are not furnished to Beneficiary by Trustor, or, if furnished, are not in a form reasonably acceptable to Beneficiary, Beneficiary may, in addition to any other remedies which Beneficiary has under this Deed of Trust, the Note, or any of the Other Security Documents, audit the books and records of Trustor, and any expense of the audit shall be added to the Debt. Immediately upon the appointment of a receiver of the Trust Property by a court of competent jurisdiction, Trustor shall deliver all books and records or other documents required to be maintained under the terms of this section to such receiver.

18.     Performance of Other Agreements. Trustor shall observe and perform each and every term to be observed or performed by Trustor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Trust Property.

19.     Events of Default. Any one or more of the following events shall be an event of default (an "**Event of Default**") under this Deed of Trust:

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 18 of 33

(a) If any payment under the Note is not paid within any grace period in the Note, or if any other monetary or non-monetary obligation of Trustor under the Note, or under or secured by this Deed of Trust or any of the Other Security Documents is not paid or performed within the due date and any specified grace period; or

(b) If any of the Impositions is not paid before it becomes delinquent; or

(c) If the Policies are not kept in good standing; or

(d) If Trustor does not comply with the provisions of <u>Paragraph 12</u> of this Deed of Trust; or

(e) If any representation or warranty of Trustor, or of any person guaranteeing or otherwise liable for payment of the Debt (a **"Guarantor"**) or in any such Guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Deed of Trust, or any such Guaranty, shall be false or misleading in any material respect and the inaccuracy is not cured to the reasonable satisfaction of Beneficiary, within fifteen (15) days after written notice from Beneficiary to Trustor provided, however, that if the default is of a kind that it cannot be cured within 15 days, then Trustor shall not be in default if Trustor commences curing the default within a reasonable time and diligently completes the cure within a reasonable time, but not more than 60 days after the date of the original written notice; or

(f) If Trustor does not cause an MAI appraisal satisfactory to Lender, reflecting a fair market value of Trustor's interest in the land and improvements, to be submitted to Lender prior to closing or not later than 60 days after the closing and if such default is not cured within 30 days after written notice thereof from Lender to Trustor; or

(g) If Trustor or any Guarantor makes an assignment for the benefit of creditors; or

(h) If a receiver, liquidator or trustee of Trustor or of any Guarantor shall be appointed or if Trustor or any Guarantor is adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, is filed by or against Trustor or any Guarantor, or if any proceeding for the dissolution or liquidation of Trustor or of any Guarantor is instituted and, if such appointment, adjudication, petition or proceeding was involuntary, if it is not discharged, stayed or dismissed within thirty (30) days or if Trustor is generally not paying its debts as they become due; or

(i) If Trustor defaults under any other mortgage, deed of trust or security agreement covering any part of the Trust Property whether it be superior or inferior to the lien of this Deed of Trust, and if such default is not cured within any applicable cure or grace period; or

(j) If the Trust Property is subjected (i) to any lien which is superior to the lien of this Deed of Trust, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Deed of Trust and such lien remains undischarged for thirty (30) days.

If one or more of the Events of Default occurs, the Debt shall include interest on the Debt at the Default Rate as defined in the Note upon any unpaid portion of the Debt and the entire Debt shall become immediately due and payable at the option of the Beneficiary, without further notice or demand; and, in addition, whether or not Beneficiary exercises its option, it may exercise all rights and remedies available to it under the law, including the following:

(aa) Beneficiary may enter upon, take immediate possession of, manage, and operate the Trust Property or any part thereof, make repairs and alterations and do any acts that Beneficiary deems reasonable to protect the security of the Deed of Trust, including remedies contained in any of the Other Security Documents; and either with or without taking possession, in its own name, collect the rents, issues and profits, including those past due and unpaid, and apply the rents, less costs and expenses of operation and collection, including reasonable attorneys' fees and the Beneficiary's costs, upon the Debt and in such order as Beneficiary determines. If Beneficiary requests, Trustor shall assemble and make available to Beneficiary at the Premises any of the Trust Property that has been removed. None of the foregoing actions shall cure or waive any Event of Default and Beneficiary shall be entitled to exercise every remedy allowed in this Deed of Trust or by law after an Event of Default.

(bb) Beneficiary shall be entitled to the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Trust Property and to operate it and collect the rents, issues and profits from it.

(cc) Beneficiary may bring sue to foreclose this Deed of Trust or to enforce any of its provisions.

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 19 of 33

(dd) Trustee may, and upon Beneficiary's request, elect to sell the Trust Property or its parts as follows:

(i) Trustee may proceed as if all of the Trust Property were real property in accordance with subparagraph (iv) below, or Trustee may elect to treat any of the Trust Property which consists of a right in action or which is property that can be severed from the Premises without causing structural damage thereto as if the same were personal property and dispose of the same in accordance with subparagraph (iii) below, separate from the sale of real property, the remainder of the Trust Property being treated as real property.

(ii) Trustee may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, provided in this Deed of Trust or the Note, or Trustee may delay any such sale or other disposition as Trustee deems to be in its best interest. If Trustee conducts more than one sale, Trustee may, at its option, cause the sales to be conducted simultaneously, or successively on the same day, or at different days or times and in such order as Trustee may deem to be in its best interest.

(iii) If Trustee elects to dispose of personal property as permitted in subparagraph (i) above, it or Beneficiary may dispose of any part thereof in any manner permitted by Article 9 of the California Commercial Code. Both Trustor and Beneficiary shall be eligible to purchase any part of such property at any sale. Any such disposition may be either public or private, as Trustee or Beneficiary may so elect, subject to the provisions of the California Commercial Code. Trustee or Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property, and if such notice is sent to Trustor at the address above, it shall constitute reasonable notice to Trustor.

(iv) If Trustee elects to sell the Trust Property which is real property or which it has elected to treat as real property, upon such election, Trustee shall give such Notice of Default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such Notice of Sale as may then be required by law, Trustee, at the time and place specified by the Notice of Sale, shall sell such Trust Property, or any portion thereof specified by Trustee, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement at the time and place noticed for the sale. If the Trust Property consists of several lots or parcels, Trustee may designate the order in which such lots or parcels are offered for sale or sold. Any person, including Trustor, Trustee, or Beneficiary may purchase at the sale. At the sale the Trustee shall execute and deliver to the purchaser, a deed conveying the property so sold, but without any covenant or warranty, express or implied, after which the purchaser shall be entitled to immediate possession.

(v) This instrument shall be effective as a mortgage as well as a deed of trust and if an Event of Default occurs, may be foreclosed as to any of Trust Property in any manner permitted by the laws of the State, and any foreclosure suit may be brought by the Trustee or by the Beneficiary. In a foreclosure is commenced by the then Trustee, the Beneficiary may at any time before the sale of the Trust Property direct the Trustee to abandon the sale, and may then institute or complete a suit for the collection of the Note and the other Debt, and for judicial foreclosure of this Deed of Trust. It is agreed that if the Beneficiary institutes a suit for the collection of the Note or any other Debt and for the judicial foreclosure of this Deed of Trust, the Beneficiary may at any time before the entry of a final judgment in said suit dismiss it, and require the Trustee to sell the Trust Property under the provisions of this Deed of Trust.

(vi) The recital of facts, such as default, the giving of Notice of Default, and Notice of Sale, terms of sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition in a trustee's deed or other conveyance, shall be conclusive proof of the truth of those facts and conclusive against all persons.

(vii) The proceeds of any sale or disposition, together with any other sums which then may be held by Trustee or Beneficiary, shall be applied as follows: FIRST, to the expenses of such sale or disposition together with Trustee's fees and reasonable attorneys' fees and expenses, Beneficiary's costs and the actual cost of publishing, recording, mailing and posting notice; SECOND, to the cost of any search or other policy of title procured in connection with the sale, if applicable, and recordation and transfer taxes and other charges, if any, on any release or deed of reconveyance; THIRD, to the payment of all amounts owed under the Note or secured by this Deed of Trust, and the Other Security Documents, and all other sums due Beneficiary from Trustor; FOURTH, to all other sums secured hereby; and the remainder, if any, to the person or persons legally entitled thereto in the order of their priority.

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 20
of 33

Without limiting the generality of the foregoing, Trustee is expressly authorized to conduct a "unified sale" under the California Commercial Code.

Any payment of the principal amount of Debt subsequent to the entire amount of the Debt becoming immediately due and payable under the terms of this Paragraph shall be deemed a prepayment of such principal amount subject to liquidated damages as specified under the terms of the Note.

The Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or by any receiver or public officer, and Beneficiary shall have the right to credit upon the amount of the bid made, to the extent necessary to satisfy such bid, the Debt owing to Beneficiary, or if Beneficiary holds less than all of such indebtedness the pro rata part owing to Beneficiary, accounting to all other beneficiaries or noteholders not joining in such bid in cash for the portion of such bid or bids apportionable to such nonbidding beneficiary or noteholder.

The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Beneficiary, or if there is more than one Beneficiary, by a writing executed by a majority in ownership of the Beneficiaries. In case of the death, resignation, removal or disqualification of the Trustee or if for any reason the Beneficiary shall deem it desirable to appoint a substitute or successor trustee to act instead of the herein named Trustee or any substitute or successor trustee, then the Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee, without other formality than appointment and designation in writing executed by the Beneficiary and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Debt finally has been paid in full or until the Trust Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

20.    Right to Cure Defaults. If an Event of Default occurs, Beneficiary may, but is not required to, and without notice to or demand on Trustor and without releasing Trustor from any obligation, make or do the same in such manner and to such extent as Beneficiary may deem necessary or advisable to protect the security hereof. Beneficiary is authorized to enter upon the Trust Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Trust Property or to foreclose this Deed of Trust or collect the Debt, and the cost and expense thereof (including attorneys' fees and expenses) with interest as provided in this Paragraph, shall be due upon demand from Beneficiary to Trustor. All such costs and expenses incurred by Beneficiary in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall be paid at the Default Rate as stated and defined in the Note and secured by this Deed of Trust.

21.    Non-Waiver. Beneficiary's failure to insist upon strict performance of a term of this Deed of Trust shall not be a waiver of any term of this Deed of Trust. Trustor shall not be relieved of its obligations because (i) Beneficiary fails to comply with any request of Trustor or any Guarantor to take any action to foreclose this Deed of Trust or otherwise enforce any of its provisions or of the Note or Other Security Documents, (ii) any part of the Trust Property is released or substituted, or (iii) Trustor or Beneficiary extend the time of payment or otherwise modify or supplement the terms of the Note, this Deed of Trust or the Other Security Documents. Beneficiary may resort to any other security held by Beneficiary in such order and manner as Beneficiary, in its discretion, may elect. The rights of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Beneficiary shall be construed as an election to proceed under any one provision to the exclusion of other provisions.

22.    Liability. If Trustor consists of more than one person as individuals or as partners, the obligations and liabilities of each such person hereunder shall be joint and several.

23.    Security Agreement. This Deed of Trust is both a real property Deed of Trust and a "security agreement" within the meaning of the California Commercial Code. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property. TRUSTOR HEREBY GRANTS TO BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN THE TRUST PROPERTY TO THE FULL EXTENT THAT THE TRUST PROPERTY MAY BE SUBJECT TO THE CALIFORNIA COMMERCIAL CODE OR THE UNIFORM COMMERCIAL CODE OF ANY OTHER STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property so subject to a Commercial Code being called in this Paragraph the **"Collateral"**). If an Event of Default occurs, Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the California

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 21 of 33

Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Trustor shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary as to the Collateral sent to Trustor at least ten (10) days prior to such action, shall constitute reasonable notice to Trustor. The proceeds of any disposition of the Collateral may be applied by Beneficiary to the payment of the Debt in the priority and proportions as Beneficiary in its discretion shall deem proper. Terms used herein which are defined in the California Commercial Code and not otherwise defined herein shall have the meanings set forth in the California Commercial Code.

24.     Fixture Filing. From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all goods constituting part of the Trust Property which are or become fixtures related to the real estate described in this Deed of Trust. For this purpose, the following information is set forth:

(a)     Name and address of Debtor:

21 Mira Mesa, LLC, a California limited liability company
62 1st Street, 4th Floor, San Francisco, California 94105

(b)     Name and Address of Secured Party:

Frontier Ridge Global Fund, LP, a Delaware limited partnership

Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990

Garry M. Samuels, Trustee of the Garry M. Samuels 1998 Trust

Bruce J. Rice, M.D. Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc.

Minoo Sultan, Trustee of the Sultan Trust dated April 15, 1994

Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship

Ted W. Dang, Trustee, TD CM Profit Sharing Plan

Ronald Rubenstein and Gail Rubenstein, husband and wife as community property

Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account

c/o California Mortgage & Realty, Inc.
62 1st Street, Fourth Floor, San Francisco California 94105

(c)     This document covers goods that are or are to become fixtures.
(d)     Description of Real Estate: See Exhibit "A".
(e)     Owner of Record of Real Estate: Debtor.
(f)     This Financing Statement covers Proceeds.
(g)     Products of the Collateral are also covered.

25.     Authority. Trustor has full power, authority and legal right to execute this Deed of Trust, and to create the security interest in the Trust Property contained in this Deed of Trust and to keep and observe all of the terms of this Deed of Trust.

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 22 of 33

26.     Actions and Proceedings. Trustee and Beneficiary have the right to appear in and defend any action or proceeding affecting the Trust Property and to bring any action or proceeding, in the name of Trustor, which Trustee and Beneficiary, in their discretion, decide should be brought to protect their interests in the Trust Property. Trustee and Beneficiary shall, at their option, be subrogated to the lien of any mortgage, deed of trust, or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

27.     Inapplicable Provisions. Whenever possible, each provision of this Deed of Trust shall be interpreted as effective and valid under applicable law, but if any provision of this Deed of Trust is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

28.     Duplicate Originals. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

29.     Certain Definitions. Words used in this Deed of Trust in singular or plural form shall include the other, and the word **"Trustor"** shall mean "each Trustor or any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word **"Trustee"** shall mean "Trustee and any successor trustee appointed by Beneficiary according to law," the word **"Beneficiary"** shall mean "Beneficiary or any subsequent holder of the Note or any part thereof or any of the Debt," and the word **"Note"** shall mean "the Note or any other evidence of indebtedness secured by this Deed of Trust," the word **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, the words **"Trust Property"** shall include any portion of the Trust Property or interest in it, and the word **"Debt"** shall mean the principal balance of the Note with interest as provided in the Note and this Deed of Trust and all other indebtedness, obligations, and liabilities due pursuant to the Note, this Deed of Trust, or the Other Security Documents; whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

30.     No Oral Change. This Deed of Trust may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

31.     WAIVERS. TO THE EXTENT PERMITTED BY LAW, TRUSTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY AGAINST THE OTHER ARISING OUT OF OR CONNECTED WITH THIS DEED OF TRUST OR THE DEBT.

32.     Further Acts, Etc. Trustor will, at its cost, do, execute, acknowledge and deliver all other acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall require for to facilitate the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust and, on demand, will execute and deliver any financing statement, chattel mortgages or comparable security instruments, to evidence more effectively the lien upon the Trust Property.

33.     Headings, Etc. The headings and captions of various paragraphs of this Deed of Trust are for convenience of reference only and are not to be considered as affecting the contents of the paragraphs.

34.     Filings of Deed of Trust, Etc. Trustor shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Deed of Trust, and the Other Security Documents.

35.     Usury Laws. No terms of this Deed of Trust, the Note, or any of the Other Security Documents, shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate (as such term is defined in the Note). The Trustor shall never be required to pay interest at a rate in excess of the Maximum Rate. The provisions of this Paragraph shall control over all other provisions of any other instrument executed in connection herewith or executed to secure the Debt that is in apparent conflict with this Paragraph. If Beneficiary collects monies that are deemed to be interest that would increase the effective interest rate on the Note to a rate in excess of the Maximum Rate, all such excessive sums shall be applied to the reduction of the unpaid principal balance and not to the payment of interest, and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to Trustor in cash and Trustor hereby agrees to accept such refund.

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 23
of 33

36.     INDEMNIFICATION.  TRUSTOR SHALL PROTECT, INDEMNIFY AND SAVE HARMLESS TRUSTEE AND BENEFICIARY FROM ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY BECAUSE OF (A) FRAUD OR MATERIAL MISREPRESENTATION BY OR ON BEHALF OF THE TRUSTOR; (B) ANY FAILURE ON THE PART OF TRUSTOR TO PERFORM OR COMPLY WITH ANY OF THE TERMS OF THIS DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS; (C) OWNERSHIP OF THE TRUST PROPERTY OR ANY INTEREST IN IT OR THE RECEIPT OF ANY RENTS; (D) ANY ACCIDENT, INJURY TO OR DEATH OF PERSONS OR LOSS OF OR DAMAGE TO PROPERTY OCCURRING IN, ON OR ABOUT THE TRUST PROPERTY; (E) ANY USE, NONUSE OR CONDITION IN, ON OR ABOUT THE TRUST PROPERTY OR ANY PART THEREOF; OR (F) PERFORMANCE OF ANY LABOR OR SERVICES OR THE FURNISHING OF ANY MATERIALS OR OTHER PROPERTY TO THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF BENEFICIARY.  HOWEVER, SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR AS TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE.  ANY AMOUNT PAYABLE TO TRUSTEE OR BENEFICIARY BECAUSE OF THE APPLICATION OF THIS PARAGRAPH SHALL BECOME IMMEDIATELY DUE AND PAYABLE UPON DEMAND BY BENEFICIARY, AND SHALL BEAR INTEREST AT THE DEFAULT RATE, AS STATED AND DEFINED IN THE NOTE, FROM THE DATE OF SUCH DEMAND.  THE OBLIGATIONS OF TRUSTOR UNDER THIS PARAGRAPH SHALL SURVIVE ANY TERMINATION OR SATISFACTION OF THIS DEED OF TRUST.

37.     Reconveyance of Trust Property.  Upon payment of all sums secured by this Deed of Trust, the Trustee shall reconvey all of the Trust Property to the person or persons entitled to such reconveyance.

38.     Governing Law.  This Deed of Trust shall be governed and construed under California law.

39.     Duties and Obligations of Trustee.  Trustor agrees that: (a) the duties and obligations of Trustee shall be determined solely by the express provisions of this Deed of Trust and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Deed of Trust, and no implied covenants or obligations shall be imposed upon Trustee; (b) no provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it; (c) Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice; (d) Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Deed of Trust.

Trustee shall have the right, at its sole option and from time to time, to substitute one or more trustees for the Trustee named above, without notice to Trustor.  In the event there shall be more than one trustee, either trustee may act hereunder.

40.     Request for Notice of Default and Notice of Sale.  Trustor hereby requests that a copy of any notice of default and of any notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

41.     ENVIRONMENTAL INDEMNIFICATION.  TRUSTOR HEREBY AGREES, AT ITS SOLE COST AND EXPENSE, TO UNCONDITIONALLY INDEMNIFY, DEFEND, AND HOLD TRUSTEE AND BENEFICIARY AND ITS DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGE (WHETHER DIRECT OR CONSEQUENTIAL), EXPENSES, CLAIMS, PENALTIES, FINES,

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 24
of 33

INJUNCTIONS, SUITS, PROCEEDINGS, DISBURSEMENTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' AND EXPERTS' FEES AND DISBURSEMENTS AND COURT COSTS) (COLLECTIVELY, THE "**LIABILITIES**") (A) AS A RESULT OF THE INCORRECTNESS OF ANY REPRESENTATION OR WARRANTY OF TRUSTOR OR ANY OTHER PARTY CONTAINED IN ANY ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT DATED OF THE SAME DATE, GIVEN BY TRUSTOR (AND, PERHAPS OTHER INDIVIDUALS OR ENTITIES) TO BENEFICIARY (THE "**ENVIRONMENTAL INDEMNITY**"); (B) ARISING UNDER ANY HAZARDOUS SUBSTANCE LAW; OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY DIRECTLY OR INDIRECTLY RESULTING FROM THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE TRUSTEE AND BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE TRUSTEE OR BENEFICIARY; PROVIDED, HOWEVER, THAT SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR WITH RESPECT TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO THE TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THIS DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. FOR PURPOSES OF THIS AGREEMENT, THE FOLLOWING TERMS SHALL MEAN AS FOLLOWS: (A) "**ENVIRONMENT**" MEANS ANY SURFACE OR SUBSURFACE WATER, WATER VAPOR, SURFACE OR SUBSURFACE LAND, AIR, FISH, WILDLIFE, MICROORGANISMS AND ALL OTHER NATURAL RESOURCES; (B) "**GOVERNMENTAL AUTHORITY**" MEANS THE FEDERAL GOVERNMENT, OR ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, OR ANY AGENCY, COURT OR BODY OF THE FEDERAL GOVERNMENT, ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, EXERCISING EXECUTIVE, LEGISLATIVE, JUDICIAL, REGULATORY OR ADMINISTRATIVE FUNCTIONS; (C) "**HAZARDOUS SUBSTANCE**" MEANS AND INCLUDES ASBESTOS OR ANY SUBSTANCE CONTAINING ASBESTOS, POLYCHLORINATED BIPHENYLS, ANY EXPLOSIVES, RADIOACTIVE MATERIALS, CHEMICALS KNOWN OR SUSPECTED TO CAUSE CANCER OR REPRODUCTIVE TOXICITY, POLLUTANTS, EFFLUENTS, CONTAMINANTS, EMISSIONS, INFECTIOUS WASTES, ANY PETROLEUM OR PETROLEUM-DERIVED WASTE OR PRODUCT OR RELATED MATERIALS AND ANY ITEMS DEFINED AS HAZARDOUS, SPECIAL OR TOXIC MATERIALS, SUBSTANCES OR WASTE UNDER ANY HAZARDOUS SUBSTANCE LAW, OR ANY MATERIAL WHICH SHALL BE REMOVED FROM THE TRUST PROPERTY PURSUANT TO ANY ADMINISTRATIVE ORDER OR ENFORCEMENT PROCEEDING OR IN ORDER TO PLACE THE TRUST PROPERTY IN A CONDITION THAT IS SUITABLE FOR ORDINARY USE; (D) "**HAZARDOUS SUBSTANCE LAWS**" COLLECTIVELY MEANS AND INCLUDES ANY PRESENT AND FUTURE LOCAL, STATE, FEDERAL OR INTERNATIONAL LAW OR TREATY RELATING TO PUBLIC HEALTH, SAFETY OR THE ENVIRONMENT INCLUDING WITHOUT LIMITATION, THE RESOURCE CONSERVATION AND RECOVERY ACT, AS AMENDED ("RCRA"), 42 U.S.C. § 6901 ET SEQ., THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. § 9601 ET SEQ., AS AMENDED BY THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986 ("SARA"), THE HAZARDOUS MATERIALS TRANSPORTATION ACT, 49 U.S.C. § 1801 ET SEQ., THE CLEAN WATER ACT, 33 U.S.C. § 1251 ET SEQ., THE CLEAN AIR ACT, AS AMENDED 42 U.S.C. § 7401 ET SEQ., THE TOXIC SUBSTANCES CONTROL ACT, 15 U.S.C. § 2601 ET SEQ., THE SAFE DRINKING WATER ACT, 42 U.S.C. § 300F ET SEQ., THE URANIUM MILL TAILINGS RADIATION CONTROL ACT, 42 U.S.C. § 7901 ET SEQ., THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 655 ET SEQ., THE FEDERAL INSECTICIDE, FUNGICIDE AND RODENTICIDE ACT, 7 U.S.C. § 136 ET SEQ., THE NATIONAL ENVIRONMENTAL POLICY ACT, 42 U.S.C. § 4321 ET SEQ., THE NOISE CONTROL ACT, 42 U.S.C. § 4901 ET SEQ., AND THE EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW ACT, 42 U.S.C. § 11001 ET SEQ., AND THE AMENDMENTS, REGULATIONS, ORDERS, DECREES, PERMITS, LICENSES OR DEED RESTRICTIONS NOW OR LATER

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 25 of 33

PROMULGATED UNDER SUCH LAW; AND (E) **"RELEASE"** MEANS ANY DISCHARGING, DISPOSING, EMITTING, LEAKING, PUMPING, POURING, EMPTYING, INJECTING, ESCAPING, LEACHING, DUMPING OR SPILLING INTO THE ENVIRONMENT (INCLUDING THE ABANDONMENT OR DISCARDING OF BARRELS, CONTAINERS AND OTHER CLOSED RECEPTACLES). The provisions of this Paragraph are sometimes referred to as the **"Environmental Indemnity Provisions."**

The indemnity in this Paragraph is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of this Deed of Trust, whether by payment of the Debt or any deed-in-lieu of foreclosure of the Trust Property. In addition, this Paragraph is intended to be cumulative of any rights of the Beneficiary under California Code of Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Trustor hereby waives any restrictions or limitations that such statutes may impose on Trustor's liability or Beneficiary's rights or remedies under this Paragraph.

Trustor agrees that: (a) this Paragraph is intended as Beneficiary's written request for information (and Trustor's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (b) each provision in this Paragraph (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Trust Property is intended by Trustor, Beneficiary and any Guarantor to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

In the event that any portion of the Trust Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Beneficiary's or Trustee's rights and remedies under this Deed of Trust, Beneficiary may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Trust Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. For purposes of determining Beneficiary's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Trust Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

42.    Special Terms and Provisions.  The following provisions shall be effective irrespective of any contrary provision in the Deed of Trust, the Note or the Other Security Documents; provided, however, that the rights granted to Trustor in this Paragraph shall be personal to Trustor and shall not be exercisable by any subsequent owner of the Trust Property.

(a)  [NO]  Transfer of Trust Property.  If the box preceding this sentence contains the word "yes," then the provisions of Paragraph 12 of this Deed of Trust (generally known as a "due-on-sale" clause), will not preclude a one-time transfer or conveyance of Trustor's fee simple interest in the Trust Property subject to the loan so long as:

(i) There is no Event of Default under this Deed of Trust or the Other Security Documents;

(ii) The transferee has been previously approved by Beneficiary in writing (which shall not be unreasonably withheld, conditioned or delayed), which approval may be based upon, without limitation, financial and operating statements of the transferee certified by transferee and the resume and description of business background of the transferee;

(iii) If the Other Security Documents include any guaranty of any portion of the Debt, any and all parties to be substituted for such Guarantors have been previously approved by Beneficiary in writing, which approval shall not be unreasonably withheld, conditioned or delayed, and may be based upon, without limitation, the same criteria specified above as to the consideration of the transferee of the Trust Property;

COMMERCIAL DEED OF TRUST
Version 6/1/02
Copyright, Doss & Page, Lawyers

17

(iv) Beneficiary receives an endorsement to any policy of title insurance issued to Beneficiary, updating the effective date of such policy to the date and time of the recording of the deed effecting such transfer and the assumption of Trustor's obligations, as described below, and confirming that, upon such transfer, Beneficiary's lien priority upon the Trust Property will remain unaffected;

(v) Beneficiary receives executed copies of all legal documents affecting such transfer;

(vi) Beneficiary's servicing agent underwriting the transfer request receives payment of a cash transfer fee equal to Two Percent (2%) of the then outstanding principal balance of the Note (the **"Cash Transfer Fee"**); and

(vii) Beneficiary receives legal opinions of transferee's independent counsel satisfactory to Beneficiary, as to the issues specified by Beneficiary; and

(viii) The transferee executes an agreement in which the transferee unconditionally assumes all of Trustor's obligations under the Note, this Deed of Trust, and any and all of the Other Security Documents, and, if the Other Security Documents include any guaranty of any portion of the Debt, the parties to be substituted for the Guarantors under such Guaranty executes a substitute Guaranty which shall, except as otherwise approved by Beneficiary, be in form and substance identical to such existing Guaranty.

$5,000.00 (the **"Expense Deposit**) shall be deposited with Beneficiary (or its servicing agent who will underwrite the proposed transfer) prior to Beneficiary's consideration of any proposed transfer. Whether or not a proposed transfer under the terms of this Paragraph is actually consummated (and whether or not any failure to consummate such transfer is due to Beneficiary's failure or refusal to approve of the transferee, or due to any other factor), Trustor shall reimburse Beneficiary on demand for all of Beneficiary's reasonable out-of-pocket costs and expenses reasonably incurred in connection with any proposed transfer. Trustor's obligation to pay such costs and expenses shall be secured by this Deed of Trust; and any failure by Trustor to pay Beneficiary shall be an Event of Default. The amount of the Expense Deposit remaining after deduction of Beneficiary's out of pocket costs and expenses in connection with the proposed transfer, shall be refunded to Trustor promptly after the completion of the proposed transfer or Beneficiary's disapproval of the proposed transfer, as the case may be.

In the event of a transfer under this Paragraph, or any other consent by Beneficiary to a sale, transfer or conveyance of the Trust Property and the assumption of this Deed of Trust as provided above, any and all limitations on sale, transfer or conveyance in Paragraph 12 (without amendment by this Paragraph) shall likewise apply to the purchaser, transferee or conveyee under any sale, transfer or conveyance permitted under this Paragraph.

(b) [NO] Management of Trust Property. If the box preceding this sentence contains the word "no," Trustor hereby (a) represents and warrants that it manages the Trust Property, and that Trustor does not engage any third party in connection with the overall operation or management of the Trust Property; and (b) agrees that Trustor shall not enter into any agreement for the overall management of the Trust Property without the written approval of Beneficiary, which may be conditioned, without limitation, upon the execution by Trustor and the proposed property manager, of a form of subordination of property management acceptable to Beneficiary.

43. Beneficiary's Right to Re-Appraise. Beneficiary has the right to request an updated MAI appraisal on an annual basis at Trustor's sole expense.

THE NOTE, THIS DEED OF TRUST, ANY GUARANTY, ANY ENVIRONMENTAL INDEMNITY, AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR

Case: 08-32220    Doc# 1209-3    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 27 of 33

SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**This document is subject to approval of the U.S. Bankruptcy Court after notice and opportunity for hearing and not effective until entry of an order by the Court has been executed.**

     **IN WITNESS WHEREOF**, the undersigned has executed and delivered this Deed of Trust, effective as of the date first above written.

**Trustor:**

**21 Mira Mesa, LLC**
**a California limited liability company**

By: California Mortgage and Realty, Inc.
    A Delaware corporation

By: _____
    Richard Johnson
Its: Vice President

Case: 08-32220   Doc# 1209-3   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 28
of 33

**3730**

STATE OF CALIFORNIA )
) ss.
COUNTY OF *San Francisco* )

On *January 28, 2010* before me, *Marlyn Ano, Notary Public* , personally appeared *Richard Johnson* who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> MARLYN ANO
> COMM. # 1840288
> NOTARY PUBLIC - CALIFORNIA
> SAN FRANCISCO COUNTY
> My Commission Expires March 21, 2013

_____
Notary Public

STATE OF CALIFORNIA )
) ss.
COUNTY OF _____ )

On _____ before me, _____, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

COMMERCIAL DEED OF TRUST
Version 6/1/02
Copyright, Doss & Page, Lawyers

20

## EXHIBIT "A"

(Legal Description)

END OF EXHIBIT "A"

# Exhibit "A"

PARCEL A: APN 341-010-28

LOT 6 IN SECTION 5, TOWNSHIP 15 SOUTH, RANGE 3 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION DESCRIBED IN THE FINAL ORDER OF CONDEMNATION IN THE CITY OF SAN DIEGO, RECORDED MAY 19, 1986, AS FILE NO. 86-197221 OF OFFICIAL RECORDS, AND BEING DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 6 OF SECTION 5 AS SHOWN ON PARCEL MAP NO. 7870, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY; THENCE NORTH 02°40'19" EAST ALONG THE WESTERLY BOUNDARY OF SAID PARCEL MAP A DISTANCE OF 74.74 FEET TO THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID WESTERLY BOUNDARY LINE SOUTH 49°22'03 WEST A DISTANCE OF 37.88 FEET TO AN ANGLE POINT IN THAT CERTAIN PARCEL OF LAND DEED TO THE CITY OF SAN DIEGO BY DEED RECORDED NOVEMBER 29, 1972 AS INSTRUMENT NO. 318551 OF OFFICIAL RECORDS; THENCE NORTH 26°14'41" WEST (RECORD NORTH 26°14'49" WEST) A DISTANCE OF 125.96 FEET TO AN ANGLE POINT; THENCE NORTH 49°22'04" EAST, A DISTANCE OF 88.75 FEET TO THE BEGINNING OF A TANGENT 1,263.00 FOOT RADIUS CURVE CONCAVE SOUTHERLY; THENCE EASTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 01°28'17" A DISTANCE OF 32.43 FEET TO AN INTERSECTION WITH THE ABOVE MENTIONED WESTERLY LINE OF PARCEL MAP NO. 7870; THENCE SOUTHERLY ALONG SAID WESTERLY LINE SOUTH 02°40'19" WEST A DISTANCE OF 167.07 FEET TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THOSE PORTIONS DESCRIBED IN THE FINAL ORDER OF CONDEMNATION, AS PARCEL "A" AND PARCEL "G" BELOW, TO THE CITY OF SAN DIEGO, RECORDED NOVEMBER 16, 1993 AS INSTRUMENT NO. 1993-0768380 OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

PARCEL "A":

BEGINNING AT THE NORTHERLY CORNER OF THAT TRACT OF LAND DESCRIBED AS PARCEL 2 OF FINAL ORDER OF CONDEMNATION TO SAID CITY OF SAN DIEGO, RECORDED OCTOBER 19, 1984 AS INSTRUMENT NO. 84-395687 OF OFFICIAL RECORDS OF SAID COUNTY; THENCE ALONG THE SOUTHWESTERLY OF SAID LOT 6, NORTH 26°14'41" WEST 16.52 FEET; THENCE DEPARTING SAID SOUTHWESTERLY LINE NORTH 49°22'03" EAST 84.64 FEET TO A TANGENT 1,279.00 FOOT RADIUS OF CURVE CONCAVE SOUTHEASTERLY; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 2°06'35" 47.10 FEET TO A NON-TANGENT LINE; THENCE ALONG SAID NON-TANGENT LINE SOUTH 02°40'19" WEST 21.37 FEET TO THE NORTHERLY CORNER OF TRACT OF LAND DESCRIBED AS PARCEL 1 OF FINAL ORDER OF CONDEMNATION RECORDED MAY 19, 1986 AS INSTRUMENT NO. 86-197221 OF OFFICIAL RECORDS OF SAID COUNTY OF SAN DIEGO, SAID CORNER BEING A POINT ON A NON-TANGENT 1,263.00 FOOT RADIUS OF CURVE CONCAVE SOUTHEASTERLY, A RADIAL LINE TO SAID POINT BEARS NORTH 39°09'40" WEST; THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID PARCEL 1, ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 01°28'17" 32.43 FEET; THENCE CONTINUING ALONG THE NORTHWESTERLY LINE OF SAID PARCEL 1 SOUTH 49°22'03" WEST 88.75 FEET TO THE POINT OF BEGINNING.

PARCEL "G":

BEGINNING AT THE SOUTHWEST CORNER OF THAT TRACT OF LAND DESCRIBED IN PARCEL 1 OF DEED RECORDED MAY 19, 1986 AS INSTRUMENT NO. 86-197221 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY;

THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL NO. 1 NORTH 49°22'03" EAST 37.88 FEET TO THE EASTERLY LINE OF SAID LOT 6; THENCE ALONG SAID EASTERLY LINE SOUTH 02°40'19" WEST 74.74 FEET TO THE WESTERLY LINE OF SAID LOT 6; THENCE ALONG SAID WESTERLY LINE NORTH 26°14'41" WEST, 55.73 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF DESCRIBED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION TO THE CITY OF SAN DIEGO RECORDED MARCH 27, 2006 AS INSTRUMENT NO. 2006-0210167 OF OFFICIAL RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF PARCEL MAP NO. 15572, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 15, 1989 AS INSTRUMENT NO. 89-79694 OF OFFICIAL RECORDS; THENCE ALONG THE WESTERLY LINE OF SAID PARCEL MAP NO. 15572, SOUTH 2°40'08" WEST 64.22 FEET TO AN INTERSECTION WITH A CURVE CONCAVE, SOUTHEASTERLY, HAVING A RADIUS OF 654.00 FEET, A RADIAL BEARS NORTH 7°56'49" WEST; THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE 603.49 FEET THROUGH A CENTRAL ANGLE OF 52°52'14" THE NORTHEASTERLY LINE OF PARCEL MAP NO. 18777K, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, AUGUST 21, 2001 AS INSTRUMENT NO. 2001-0595821 OF OFFICIAL RECORDS; THENCE ALONG SAID NORTHEASTERLY LINE, NORTH 26°20'36" WEST 108.53 FEET TO AN INTERSECTION  WITH A CURVE CONCAVE SOUTHEASTERLY, HAVING A RADIUS OF 746.00 FEET, A RADIAL BEARS NORTH 56°05'39" WEST; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE 509.50 FEET THROUGH A CENTRAL ANGLE OF 39°07'56" TO AN INTERSECTION WITH THE SOUTHERLY LINE OF PARCEL MAP NO. 17051, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 3, 1993 AS INSTRUMENT NO. 1993-68704 OF OFFICIAL RECORDS; THENCE ALONG SAID SOUTHERLY LINE SOUTH 89°15'46" EAST 130.21 FEET TO THE POINT OF BEGINNING.

PARCEL B: APN 341-352-28

PARCEL 5 OF PARCEL MAP NO. 17051, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, ON FEBRUARY 3, 1993 AS INSTRUMENT NO. 1993-0068704 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM THAT PORTION THEREOF DESCRIBED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION TO THE CITY OF SAN DIEGO RECORDED MARCH 27, 2006 AS INSTRUMENT NO. 2006-0210167 OF OFFICIAL RECORDS, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF PARCEL MAP NO. 15572, FILED IN THE OFFICE OF SAID COUNTY RECORDER ON FEBRUARY 15, 1989, AS FILE NO. 89-79694 OF OFFICIAL RECORDS; THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL MAP NO. 17051, NORTH 89° 15' 46" WEST 128.99 FEET TO AN INTERSECTION WITH A CURVE, CONCAVE SOUTHERLY, HAVING A RADIUS OF 746.00 FEET, A RADIAL BEARS NORTH 16° 55' 16" WEST; SAID INTERSECTION BEING THE POINT OF BEGINNING; THENCE CONTINUING NORTH 89° 15' 46" WEST 0.88 FEET TO AN INTERSECTION WITH A CURVE CONCAVE SOUTHERLY, HAVING A RADIUS OF 746.00 FEET, A RADIAL BEARS NORTH 16° 55' 49" WEST; THENCE EASTERLY ALONG THE ARC OF SAID CURVE 134.21 FEET THROUGH A CENTRAL ANGLE OF 10° 18' 28" TO AN INTERSECTION WITH THE EASTERLY LINE OF SAID PARCEL 5; THENCE ALONG SAID EASTERLY LINE SOUTH 2° 40' 08" WEST 0.14 FEET TO AN INTERSECTION WITH THE FIRST MENTIONED CURVE, A RADIAL BEARS NORTH 6° 40' 56" WEST; THENCE WESTERLY ALONG THE ARC OF SAID CURVE 133.31 FEET THROUGH A CENTRAL ANGLE OF 10° 14' 20" TO THE POINT OF BEGINNING.

END OF LEGAL DESCRIPTION