# EXHIBIT C

# FORBEARANCE AND MODIFICATION AGREEMENT

**THIS FORBEARANCE AND MODIFICATION AGREEMENT** (this "**Agreement**") is made effective as of November __, 2009, by and among the Lenders identified on the signature page (collectively, the "**Lenders**"), 21 MIRA MESA, LLC, a California limited liability company, successor in interest to Original Borrower ("**Borrower**"), and CALIFORNIA MORTGAGE AND REALTY, INC., a Delaware corporation and licensed California finance lender, having an office at 62 1st Street, Fourth Floor, San Francisco, California 94105 ("**Manager**").

## RECITALS

A.    CMR Mortgage Fund, LLC, a Delaware limited liability company ("**Fund I**") extended a loan to John Franklin Hein, as Trustee (the "**Original Borrower**") in the amount of $6,000,000 (the "**Senior Loan**"), which Loan is evidenced by that certain Promissory Note (Commercial), dated January 26, 2004, in the original principal amount of Six Million Dollars ($6,000,000.00), in favor of Fund I (the "**Senior Note**").

B.    The Senior Note is secured by, among other things, that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated as of January 26, 2004, recorded in the Official Records of San Diego County, California on January 30, 2004, as Instrument No. 2004-0072699 (the "**Mira Mesa Deed of Trust**") encumbering the Property described therein (the "**Mira Mesa Property**") The Senior Note, the Mira Mesa Deed of Trust, any environmental indemnity in connection with the Senior Loan and all other documents evidencing or securing Borrower's obligations under the Senior Note are hereinafter collectively referred to as the "**Senior Loan Documents**".

C.    After the funding of the Senior Loan, Fund I for consideration, retained a portion of the Senior Loan in the amount in the amount of $275,000.00 and the remainder of its interest as a Lender in the Senior Loan and the Senior Loan Documents to the following parties: CMR Mortgage Fund III, LLC, Frontier Ridge Global Fund, LP, Patricia A. Rice, Trustee or Craig E. Rice, Trustee of the Rice Family Trust dated April 4, 1990, Garry M. Samuels Trustee of the Garry M. Samuels 1998 Trust, Bruce J. Rice, M.D., Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., Albert Sultan and Minoo Sultan Trustee of the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship, Ted W. Dang Trustee, TD CM Profit Sharing Plan, Ronald Rubenstein and Gail Rubenstein, husband and wife as community property, Ronald Rubenstein M.D. Trustee for Ronald Rubenstein M.D. Corp. Employee Pension and Profit Sharing Trust Account in the percentages listed on **Exhibit A**.

D.    After the Senior Loan was made, CMR Mortgage Fund II, LLC ("**Fund II**") extended a junior loan in the amount of $1,500,000.00 to Original Borrower, which loan was also secured by a second priority deed of trust against the Property (the "**Subordinate Loan**"). On June 27, 2007, Fund II foreclosed on its second deed of trust. Fund II owns 100% of the membership interest in Borrower, which is the entity that owns the Property as of the date hereof and acquired fee title to the Property through the foreclosure sale and subject to the first priority

lien of the Mira Mesa Deed of Trust in favor of Lenders and the obligations to repay all amounts due under the Senior Note and the other Senior Loan Documents.

E.    Simultaneously with the execution of this Agreement, certain Lenders are extending a loan to Borrower in the amount of $600,000.00 (the "New Money Loan"), which New Money Loan shall be evidenced by that certain Promissory Note (Commercial) dated as of November __, 2009, in the principal amount of $600,000.00.

F.    Borrower defaulted on the Senior Loan on or about July 1, 2008 when it failed to make the payments due the Senior Note. In accordance with the terms of the Senior Note, Lenders elected to accelerate the Senior Loan and intend to commence non-judicial foreclosure proceedings on the Property.

G.    Borrower has requested that Lenders enter into this Agreement to postpone the foreclosure sale on the Property under the Mira Mesa Deed of Trust in order to give Borrower the time to dispose of the Property or refinance the Senior Loan secured by the Property and to use the proceeds of such disposition or refinance to repay the Indebtedness (defined hereafter). The principal, accrued interest, late fees, default rate interest, advances, attorneys' fees and costs, and all fees, costs, and interest which continue to accrue during the term of this Agreement are hereinafter in the aggregate referred to as the "**Indebtedness**".

H.    Although Lenders are under no obligation to do so, Lenders are willing to postpone the foreclosure sales under the Deed of Trust as described herein for the period set forth below on the terms and conditions set forth in this Agreement, if and only if, Borrower complies with the terms and conditions set forth in this Agreement, in a timely and punctual manner.

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable considerations, the receipt and adequacy of which are hereby mutually acknowledged, the parties hereto do hereby agree as follows:

1.    <u>Affirmation of Recitals</u>. The recitals set forth above are true and correct and are incorporated herein by this reference.

2.    <u>Forbearance From Conducting Sale</u>.

Lenders hereby agree to forebear and not to conduct any foreclosure sale on the Property until after November 1, 2011 (the "**Termination Date**") provided that Borrower complies with the terms and conditions set forth in this Agreement.

3.    <u>Acknowledgement of Indebtedness and Default</u>.

(a)    Borrower acknowledges that, in addition to other material non-monetary defaults, a material default has occurred in the payment of the amounts due to Lenders pursuant to the terms and conditions of the Senior Loan Documents, and, with respect thereto, as of November 1, 2009, the outstanding balance of the Senior Loan (including all unpaid interest and fees) is $7,099,086.88 as listed on **Exhibit B** attached hereto.

2

(b)     Borrower and Lenders have agreed that the principal and advances payable pursuant to the Senior Note is $5,929,480.42. The principal and advances due on the Senior Note, shall earn interest from November 1, 2009 through and until November 1, 2011 at a rate of 12.5% per annum, notwithstanding the fact that an Event of Default has occurred under the Senior Loan Documents. If the Senior Loan is not paid in full on or before November 1, 2011 amounts owing on the Senior Loan shall thereafter earn interest at a rate of 18% per annum which is the Default Rate as set forth in the Senior Note.

4.      Reaffirmation of Loan Documents.

(a)     This Agreement is, in part, a reaffirmation of the obligations of Borrower and is not to be construed as a release or modification of any of the terms, conditions, warranties, waivers or other rights set forth in the Senior Loan Documents, except as expressly provided for herein. Borrower reaffirm its obligations under the Senior Loan Documents and reaffirms each and every term, condition and provision of the Senior Loan Documents and ratifies all security interests granted by Borrower pursuant to the Senior Loan Documents. Borrower further represents and warrants that it have no defenses or claims against any Lender or any other holder of the Senior Loan that would affect the enforceability of the Senior Loan Documents and that the Senior Loan Documents remain in full force and effect.

(b)     Borrower specifically acknowledge that assuming Original Borrowers obligations under the Senior Loan Documents is duly authorized by Borrower, has been consented it by Borrower's managers and the Senior Loan Documents are fully enforceable against Borrower, notwithstanding the fact that the Mira Mesa Deed of Trust was originally executed by power of attorney on behalf of Original Borrower. Borrower acknowledges and agrees that the copies of the Senior Note, the Mira Mesa Deed of Trust, and the Environmental Certificate and Indemnity Agreement, each dated January 26, 2004, copies of which are attached hereto as **Exhibit C**, are true and correct copies of the Senior Loan Documents and by executing this Agreement confirms its obligations as obligor under the Senior Loan Documents. Borrower agrees to execute any other documents requested by Lenders to confirm the authorization, execution, delivery and enforceability of the Senior Loan Documents.

(c)     Borrower agrees and acknowledges that the Senior Note is a registered obligation for United States withholding tax purposes. Manager, on behalf of Lenders, shall be the registrar for the Senior Note (the "**Registrar**") with full power of substitution. In the event the Registrar becomes unable or unwilling to act as registrar under the Senior Note, Lenders shall reasonably designate a successor Registrar. Any party which acquires a beneficial interest in the Senior Loan who is a foreign person, by its acceptance of the Senior Note shall provide Borrower with a completed Internal Revenue Service Form W-8 (Certificate of Foreign Status) or a substantially similar form for Lenders, participants or other affiliates who are holders of beneficial interests in the Senior Note. Notwithstanding any contrary provision contained herein or any of the other Senior Loan Documents, neither the Senior Note nor any interests therein may be sold, transferred, hypothecated, participated or assigned to any person except upon satisfaction of the conditions specified in this section. Lender and each successor holder of the Senior Note, by its acceptance of the Senior Note, agrees to be bound by the provisions of this section and to indemnify and hold harmless the Registrar against any and all loss or liability

3

arising from the disposition by such holder of the Senior Note or any interest therein in violation of this section. The Registrar shall keep at its principal executive office (or an office or agency designated by it by notice to the last registered holder) a ledger, in which, subject to such reasonable regulations as it may prescribe, but at its expense (except as specified below), it shall provide for the registration and transfer of the Senior Note. No sale, transfer, hypothecation, participation or assignment of the Senior Note or the interest therein shall be effective for any purpose until it shall be registered on the books of the Registrar to be maintained for such purpose. In the event of a sale, transfer, hypothecation, participation or assignment of the Senior Note or any interest herein, each holder, prior to such sale, transfer, hypothecation, participation or assignment of the Senior Note or any interest therein shall provide the Registrar with notice of such transaction at the time of such transaction. The Registrar shall record the transfer of the Senior Note on the books maintained for this purpose upon receipt by the Registrar at the office or agency designated by the Registrar of (i) a written assignment of the Senior Note being assigned (or the applicable interest therein), (ii) funds sufficient to pay any transfer taxes payable upon the making of such transfer as well as the cost of reviewing the documents presented to the Registrar, and (iii) such evidence of due execution as the Registrar shall reasonably require. The Registrar shall record the transfer of the Senior Note on the books maintained for such purpose at the cost and expense of the assignee.

5. <u>Modifications to Senior Note</u>. In consideration for Lenders' agreement to forbear as set forth in this Agreement, in addition to Borrower's obligations under the Senior Note, Borrower agrees to pay to Lenders the Additional Interest (as defined below) in the amount and the times set forth below. Borrower agrees and acknowledges that the Additional Interest (as defined below) has been earned by Lenders upon execution of this Agreement. Moreover, Borrower acknowledges that the payment of the Additional Interest is in addition to the payment of interest and principal under the Senior Note.

(a) Upon the first to occur of a Capital Event (as defined below) or the Termination Date, Borrower agrees to pay to Lenders an amount (the "**Additional Interest**") that shall be determined by multiplying the Deemed Percentage Interest (as defined below) by the Project Profit (as defined below) as of the date of such determination. At least thirty (30) days prior to the closing of any Capital Event, Borrower shall provide Lenders with true and complete copies of any relevant documentation that Lenders may require in order to determine the Project Profit and the amount of the Additional Interest payable from such Capital Event.

(b) For purposes of this Agreement, the following terms shall have the following meanings:

(i) "Capital Event" shall mean any one of the following: (i) the closing of a bona fide sale of the Property in an arm's-length transaction to an independent third party that is not affiliated with Borrower or any of Borrower's members or their affiliates or (ii) a refinance of the Senior Note by an unaffiliated third-party lender.

(ii) "Deemed Percentage Interest" shall mean (1) as of the date hereof, twenty-five percent (25%) and (2) commencing as of December 1, 2010 and continuing thereafter automatically on the first (1st) day of each calendar month until the earlier of (a) the occurrence

4

of a Capital Event and (b) 100% of the interests in the Project Revenues have been transferred to Lenders, Lenders shall be automatically entitled to an additional 1.5% of the interests in the Project Revenues in accordance with **Exhibit D** attached hereto.

(iii) "Project Costs" means the actual closing costs incurred by Borrower in connection with a Capital Event, repayment in full of the Senior Note including without limitation all the amounts described in Sections 3(a) and 3(b) of this Agreement and further detailed on **Exhibit B** attached hereto, repayment in full of the New Money Loan by Borrower and payment to Borrower of an amount equal to $160,000. Notwithstanding the foregoing, Project Costs shall specifically exclude the following: (x) any preferred return on equity capital paid or payable to equity investors (other than as set forth herein), (y) any fee, payment, reimbursement or compensation of any kind that is paid or payable to Borrower or any of its affiliates and (z) any costs that is not accounted for as a project cost or expense for purposes of calculating the share of the profits from the Property distributable or payable to Borrower's equity investors.

(iv) "Project Profit" means the excess of Project Revenues less Project Costs.

(v) "Project Revenues" means either (i) the total sales price (whether in the form of cash, promissory notes or other form) paid by a purchaser of the Property or (ii) the total amount of the loan that is made to refinance the existing debt encumbering the Property.

6. No Defenses, Waivers. As of the date of this Agreement, the Indebtedness is due and payable in full and Borrower acknowledges that it has no defenses, offsets, or counterclaims to any of the obligations under the Senior Loan Documents, including any defense related to the execution, authorization or delivery of the Senior Loan Documents. To the extent that any such defenses, claims, or offsets exist as of the date hereof, they are waived and released in consideration of each Lender's execution of this Agreement. Borrower has duly authorized, executed and delivered this Agreement and acknowledges that the Senior Loan Documents are valid and enforceable in accordance with their terms.

7. Release. As additional consideration for Lenders entering into this Agreement, Borrower hereby fully and unconditionally releases and forever discharges each Lender, its respective agents, servants, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, successors and assigns and all holders of the Senior Loan from time to time and all persons, firms, corporations, and organizations acting in their behalf (each a "**Released Party**") of and from all damage, loss, claims, demands, liabilities, obligations, actions and causes of action whatsoever which each may now have or claim to have against such Released Party as of the date of this Agreement, whether presently known or unknown, and of every nature and extent whatsoever on account of or in any way affecting, concerning, arising out of or founded upon the Senior Loan Documents, including, but not limited to, all such loss or damage of any kind heretofore sustained, or that may arise as a consequence of the dealings between the parties up to and including the date of this Agreement. Borrower acknowledges that it has been informed of the provisions of Section 1542 of the California Civil Code and does hereby expressly waive and relinquish all rights and benefits it has or may have had under the said section, which reads as follows:

5

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

Borrower understands and acknowledges the significance and the consequence of such specific waiver of Section 1542, and hereby assumes full responsibility for any injuries, damages or losses that they may incur as a result of the execution of this Agreement.

8.    Termination of Forbearance.  Upon the occurrence of a Default and in any event at any time after November 1, 2011, Lenders' obligation to forbear in conducting the foreclosure sale on the Property, as contained in Section 2 above, shall terminate automatically and without notice to or action by any party.

9.    Defaults. The occurrence of any one or more of the following shall constitute a default under this Agreement (each a "**Default**"):

(a)    the material untruth of any representation or warranty contained in this Agreement that is not cured within five (5) days written notice from Lenders;

(b)    the material breach or violation of any non-monetary term or covenant of this Agreement that is not cured within five (5) days written notice from Lenders;

(c)    Borrower's failure to pay the Additional Interest;

(d)    the transfer, conveyance or encumbrance by Borrower in violation of Section 12 of the Mira Mesa Deed of Trust prior to the repayment in full of the Indebtedness;

(e)    any other material default (other than nonpayment of principal and interest) under any of the Senior Loan Documents that is not cured within five (5) days written notice from Lenders;

(f)    Borrower (1) makes an assignment for the benefit of its creditors other than as provided herein, (2) files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or (3) seeks or consents to or acquiesces in the appointment of any trustee or receiver or of all or any substantial part or the Property; or all or a substantial part of the assets of Borrower are attached, seized, subjected to a writ or distress warrant or are levied upon unless the same is released or located within thirty (30) days; or

(g)    the commencement of any involuntary petition in bankruptcy against Borrower or the institution against Borrower of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or, other than in connection with a CMR Related Loan, the

6

appointment of a receiver, trustee or similar officer for all or any substantial part of the property of Borrower, which shall remain undismissed or undischarged for a period of sixty (60) days.

10. <u>Remedies</u>. Upon the occurrence of a Default, Lenders agreement to forbear pursuant to Section 2 above shall automatically terminate and be of no further force and effect and Lenders shall be entitled to exercise all of its rights and remedies as set forth in the Senior Loan Documents.

11. <u>No Further Condition to Lend</u>. Borrower agrees and acknowledges that Lenders will not and have no obligation to advance, provide or loan any further or additional monies or extend credit to Borrower and Lenders will not and have no obligation to further extend the time for payment of any obligations owing to or arising in favor of Lenders by Borrower.

12. <u>Representations and Warranties</u>. To induce Lenders to enter into this Agreement, Borrower hereby represent and warrant to Lenders as follows:

(a) The execution, delivery and performance of this Agreement and any other documents or instruments to be executed and delivered by Borrower pursuant to this Agreement will not: (i) violate any provisions of law or any applicable regulation, order, writ, injunction or decree of any court or governmental authority, or (ii) conflict with, be inconsistent with, or result in any breach or default of any of the terms, covenants, conditions or provisions of any indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind to which Borrower is a party or by which it may be bound;

(b) This Agreement, the Senior Note, the Senior Loan Documents and any other documents and instruments required to be executed and delivered by Borrower in connection with the Senior Loan, constitutes the duly authorized, valid and legally binding obligations of Borrower and will be enforceable strictly in accordance with their respective terms (except to the extent that enforceability may be affected or limited by applicable bankruptcy, insolvency and other similar debtor relief laws affecting the enforcement of creditors' rights generally); no basis presently exists for any claim against any Lender under this Agreement, under the Senior Loan Documents or with respect to the Senior Loan; enforcement of this Agreement and the Senior Loan Documents is subject to no defenses of any kind; and

(c) Borrower is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of California. Each of Borrower and Manager has full power and authority to enter into this Agreement and to perform all of its duties and obligations under this Agreement and under the Senior Loan Documents; such execution and performance have been duly authorized by all necessary corporate, shareholder, partnership or limited liability company approval.

13. <u>Final Agreement</u>. This Agreement is intended to be final and binding upon all parties hereto, their heirs, administrators, executors, trustees, successor and assigns. Each Lender has agreed to this Agreement based on the agreement by Borrower that it will not later contest, in a bankruptcy case or otherwise, the amount, enforceability and validity of or defaults under the Senior Loan Documents as acknowledged and confirmed by Borrower in this Agreement. Borrower acknowledges the possibility that general as well as its personal financial and

Case: 08-32220    Doc# 1209-5    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 8 of 41

economic circumstances might change and possibly worsen but agree that this Agreement is intended to be and shall constitute the sole and final agreement with Lenders, and Borrower waives any rights and remedies which it has, or may have, now or in the future, to contest the amount, enforceability, validity or defaults of the Senior Loan Documents as acknowledged hereunder based upon any changed circumstances. Without this explicit agreement by Borrower, Lenders would refuse to accept this Agreement; Lenders would not grant any of the accommodations provided in this Agreement; and Lenders would proceed immediately and vigorously to enforce their rights in foreclosure proceedings and in receivership proceedings with respect to the Property. Because of the importance to Lenders and to this Agreement of the foregoing assurances and agreements, Borrower agrees and acknowledges that the foregoing agreements are legally binding and specifically enforceable. This Section 13 is not intended to limit any right that Borrower may have pursuant to the bankruptcy laws of the United States to enjoin or delay the enforcement of Lenders' rights under the Senior Loan Documents or to seek to modify those rights in connection with a plan of reorganization (provided Borrower does not contest the amount, enforceability or validity of or defaults under the Senior Loan Documents as acknowledged hereunder); nor is this Section 13 intended to limit any right of Lenders to contest any such efforts by Borrower.

      14.    Miscellaneous.

      (a)    Expenses, Attorneys' Fees. Lenders are hereby entitled to reimbursement for all amounts incurred by or on behalf of Lenders for attorneys' fees, recording expenses, title insurance fees, UCC searches, foreclosure expenses, trustee's fees, premiums for a trustee's sale guarantee, cost of any audits performed and all other reasonable expenses incurred by or on behalf of Lenders by reason of the matters specified herein and for the preparation of this Agreement and all other documents necessary and required to effectuate the provisions hereof, including, without limitation, all costs and expenses with respect to Borrower's compliance with the terms and conditions hereof and Lenders' enforcement thereof. In the event of (i) any Default by Borrower hereunder; (ii) any dispute concerning the subject matter of this Agreement; or (iii) any bankruptcy filing by Borrower, Lenders also shall be entitled to recover from Borrower its reasonable attorneys' fees and costs incurred in connection therewith, including, without limitation, those incurred at all trial, appellate and bankruptcy proceedings. The rights and remedies of Lenders contained in this Paragraph shall be in addition to, and not in lieu of, the rights and remedies contained in the Senior Loan Documents and as otherwise provided by law.

      (b)    Governing Law, Jurisdiction. This Agreement shall be construed in accordance with the laws of the State of California, without regard to its conflict of laws principles. Borrower hereby submits to personal jurisdiction in the State of California for the enforcement by Lenders of its obligations hereunder, and waive any personal rights under the law of any other State to object to jurisdiction in California. In the event litigation is commenced, Borrower agrees that service of process may be made and personal jurisdiction over them obtained by service of a copy of the summons and complaint upon their respective agents for Service of Process, and that such litigation may be pursued, at Lender's election, in San Francisco County, California. Borrower hereby designate as it agent for Service of Process the following:

8

For Borrower:       21 Mira Mesa, LLC
c/o California Mortgae and Realty, Inc.
62 1st Street, Fourth Floor,
San Francisco, California 94105

      (c)    <u>No Waiver</u>. Lenders expressly reserves any and all rights and remedies available to them under this Agreement, the Senior Loan Documents, or otherwise available to Lenders at law or in equity (including without limitation, the right to make advances and incur fees), except as expressly affected by the terms of this Agreement. No failure to exercise, or delay by Lenders in exercising, any right, power or privilege hereunder shall preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. The rights and remedies provided in this Agreement and the Senior Loan Documents are cumulative and not exclusive of each other or of any right or remedy provided by law or in equity. Except as otherwise expressly provided herein or in the Senior Loan Documents, no notice to or demand upon Borrower in any instance shall, in itself, entitle Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Lenders to any other or further action in any circumstance without notice or demand. Borrower acknowledges and agrees that the Senior Loan remains in default and that Lenders have only agreed to forbear from exercising their rights and remedies subject to and as specifically set forth in this Agreement regarding the foreclosure sales.

      (d)    <u>Construction</u>. This Agreement shall not be construed more strictly against Lenders merely by virtue of the fact that the same has been prepared by Lenders or their counsel, it being recognized that Borrower and Lenders have contributed substantially and materially to the preparation of this Agreement, and Borrower and each Lender acknowledges and waives any claim contesting the existence and the adequacy of the consideration given by any of the other parties hereto in entering into this Agreement.

      (e)    <u>Consent to Agreement</u>. The parties hereto acknowledge that they have thoroughly read and reviewed the terms and provisions of this Agreement and are familiar with same, that the terms and provisions contained herein are clearly understood by them and have been fully and unconditionally consented to by them, and that they have had full benefit and advice of counsel of their own selection, or the opportunity to obtain the benefit and advice of counsel of their own selection, in regard to understanding the terms, meaning and effect of this Agreement and that this Agreement has been entered into by them freely, voluntarily, with full knowledge, and without duress, and that in executing this Agreement, the parties are relying on no other representations either written or oral, express or implied, made to them by any other party hereto, and that the consideration received by them has been actual and adequate.

      (f)    <u>Counterparts</u>. It is understood and agreed that this Agreement may be executed in several counterparts, each of which shall, for all purposes, be deemed an original and all of such counterparts, taken together, shall constitute one and the same Agreement, even though all of the parties hereto may not have executed the same counterpart of this Agreement.

(g)    Notices. Notices to parties hereunder may be given to the parties in writing (a) in person; (b) by telecopier, telefax, or other facsimile communication and certified mail, return receipt requested; or (c) by overnight courier, postage prepaid, addressed as follows:

To Lenders:              c/o California Mortgage and Realty, Inc.
                         62 1st Street, Fourth Floor
                         San Francisco, California 94105
                         Attention:  Richard Johnson

With  a copy to:         Frontier Ridge Capital LP
                         152 West 57th Street, 7th Floor
                         New York, New York 10019
                         Attention:  Michael Choo

                              and

                         Katten Muchin Rosenman
                         575 Madison Avenue
                         New York, New York 10022
                         Attention:  Victoria Shusterman, Esq.

To Borrower:

                         21 Mira Mesa, LLC
                         c/o California Mortgae and Realty, Inc.
                         62 1st Street, Fourth Floor,
                         San Francisco, California 94105

(h)    Time; Severability.  Time shall be of the essence in the performance of each and every one of Borrower's obligations hereunder. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall remain in effect without impairment.

[signatures on following pages]

Case: 08-32220   Doc# 1209-5   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 11 of 41

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

**BORROWER:**   **21 MIRA MESA, LLC**, a California limited liability company
By California Mortgage + Realty, Inc
Its Manager
By: _Richard Johnson_
Vice President

**MANAGER:**   **CALIFORNIA MORTGAGE AND REALTY, INC.**, a Delaware corporation

By: _Richard Johnson_
Vice President

**LENDERS:**   **CMR MORTGAGE FUND III, LLC**, a California limited liability company

By: _____

**FRONTIER RIDGE GLOBAL FUND, LP**, a Delaware limited partnership

By: _____

**PATRICIA A. RICE**, Trustee or **CRAIG E. RICE**, Trustee of the Rice Family Trust dated April 4, 1990

By: _____

By: _____

**GARRY M. SAMUELS**, Trustee of the Garry M. Samuels 1998 Trust

By: _____

**BRUCE J. RICE, M.D.**, Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc.

By: _____

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

BORROWER:                              **21 MIRA MESA, LLC,** a California limited
                                       liability company

                                       By: _____

MANAGER:                               **CALIFORNIA MORTGAGE AND
                                       REALTY, INC.,** a Delaware corporation


                                       By: _____

LENDERS:                               **CMR MORTGAGE FUND III, LLC,** a
                                       California limited liability company

                                       By: _____

                                       **FRONTIER RIDGE GLOBAL FUND, LP,**
                                       a Delaware limited partnership

                                       By: _____

                                       **PATRICIA A. RICE,** Trustee or **CRAIG E.
                                       RICE,** Trustee of the Rice Family Trust dated
                                       April 4, 1990

                                       By: _____

                                       By: _____

                                       **GARRY M. SAMUELS,** Trustee of the Garry
                                       M. Samuels 1998 Trust

                                       By: _____

                                       **BRUCE J. RICE, M.D.,** Trustee of the East
                                       Bay Head and Neck Surgery Medical Group
                                       Pension and Profit Sharing Fund, Inc.

                                       By: _____

Case: 08-32220    Doc# 1209-5    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 13
of 41

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

BORROWER:                           **21 MIRA MESA, LLC**, a California limited
                                    liability company

                                    By: _____

MANAGER:                            **CALIFORNIA MORTGAGE AND
                                    REALTY, INC.**, a Delaware corporation

                                    By: _____

LENDERS:                            **CMR MORTGAGE FUND III, LLC**, a
                                    California limited liability company

                                    By: _____

                                    **FRONTIER RIDGE GLOBAL FUND, LP**,
                                    a Delaware limited partnership

                                    By: _____
                                         AUTHORIZED   SIGNATORY
                                    **PATRICIA A. RICE**, Trustee or **CRAIG E.
                                    RICE**, Trustee of the Rice Family Trust dated
                                    April 4, 1990

                                    By: _____

                                    By: _____

                                    **GARRY M. SAMUELS**, Trustee of the Garry
                                    M. Samuels 1998 Trust

                                    By: _____

                                    **BRUCE J. RICE, M.D.**, Trustee of the East
                                    Bay Head and Neck Surgery Medical Group
                                    Pension and Profit Sharing Fund, Inc.

                                    By: _____

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

**BORROWER:**  **21 MIRA MESA, LLC,** a California limited liability company

By: _____

**MANAGER:**  **CALIFORNIA MORTGAGE AND REALTY, INC.,** a Delaware corporation

By: _____

**LENDERS:**  **CMR MORTGAGE FUND III, LLC,** a California limited liability company

By: _____

**FRONTIER RIDGE GLOBAL FUND, LP,** a Delaware limited partnership

By: _____

**PATRICIA A. RICE,** Trustee or **CRAIG E. RICE,** Trustee of the Rice Family Trust dated April 4, 1990

By: _~~Patricia~~ _A. Rice_, Trustee

By: _____

**GARRY M. SAMUELS,** Trustee of the Garry M. Samuels 1998 Trust

By: _____

**BRUCE J. RICE, M.D.,** Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc.

By: _____

Case: 08-32220  Doc# 1209-5  Filed: 03/08/13  Entered: 03/08/13 12:57:02  Page 15 of 41

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

**BORROWER:**   **21 MIRA MESA, LLC,** a California limited liability company

By: _____

**MANAGER:**   **CALIFORNIA MORTGAGE AND REALTY, INC.,** a Delaware corporation

By: _____

**LENDERS:**   **CMR MORTGAGE FUND III, LLC,** a California limited liability company

By: _____

**FRONTIER RIDGE GLOBAL FUND, LP,** a Delaware limited partnership

By: _____

**PATRICIA A. RICE,** Trustee or **CRAIG E. RICE,** Trustee of the Rice Family Trust dated April 4, 1990

By: _____

By: _____

**GARRY M. SAMUELS,** Trustee of the Garry M. Samuels 1998 Trust

By: _____

**BRUCE J. RICE, M.D.,** Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc.

By: _____

Signature Page
Forbearance Agreement

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

**BORROWER:**

**21 MIRA MESA, LLC,** a California limited liability company

By: _____

**MANAGER:**

**CALIFORNIA MORTGAGE AND REALTY, INC.,** a Delaware corporation

By: _____

**LENDERS:**

**CMR MORTGAGE FUND III, LLC,** a California limited liability company

By: _____

**FRONTIER RIDGE GLOBAL FUND, LP,** a Delaware limited partnership

By: _____

**PATRICIA A. RICE,** Trustee or **CRAIG E. RICE,** Trustee of the Rice Family Trust dated April 4, 1990

By: _____

By: _____

**GARRY M. SAMUELS,** Trustee of the Garry M. Samuels 1998 Trust

By: _____

**BRUCE J. RICE, M.D.,** Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc.

By: _____

**MINOO SULTAN**, Trustee of the Sultan
Trust dated April 15, 1994

By: _____

**JASON HAMMERMAN** and **JULIE
HAMMERMAN**, as joint tenants with rights
of survivorship

By: _____

By: _____

**CMR MORTGAGE FUND, LLC**, a
California limited liability company

By: _____

**TED W. DANG**, Trustee, TD CM Profit
Sharing Plan

By: _____

**RONALD RUBENSTEIN** and **GAIL
RUBENSTEIN**, husband and wife as
community property

By: _____

By: _____

**RONALD RUBENSTEIN, M.D.**, Trustee for
Ronald Rubenstein, M.D. Corp. Employee
Pension & Profit Sharing Trust Account

By: _____

Signature Page
Forbearance Agreement

**MINOO SULTAN**, Trustee of the Sultan
Trust dated April 15, 1994

By: _____


**JASON HAMMERMAN** and **JULIE
HAMMERMAN**, as joint tenants with rights
of survivorship

By: _____

By: _____

**CMR MORTGAGE FUND, LLC**, a
California limited liability company

By: _____

**TED W. DANG**, Trustee, TD CM Profit
Sharing Plan

By: _____

**RONALD RUBENSTEIN** and **GAIL
RUBENSTEIN**, husband and wife as
community property

By: _____

By: _____

**RONALD RUBENSTEIN, M.D.**, Trustee for
Ronald Rubenstein, M.D. Corp. Employee
Pension & Profit Sharing Trust Account

By: _____

Signature Page
Forbearance Agreement

**MINOO SULTAN,** Trustee of the Sultan
Trust dated April 15, 1994

By: _____


**JASON HAMMERMAN** and **JULIE
HAMMERMAN,** as joint tenants with rights
of survivorship

By: _____

By: _____

**CMR MORTGAGE FUND, LLC,** a
California limited liability company

By: _____

**TED W. DANG,** Trustee, TD CM Profit
Sharing Plan

By: _____


**RONALD RUBENSTEIN** and **GAIL
RUBENSTEIN,** husband and wife as
community property

By: _____

By: _____


**RONALD RUBENSTEIN, M.D.,** Trustee for
Ronald Rubenstein, M.D. Corp. Employee
Pension & Profit Sharing Trust Account

By: _____

**MINOO SULTAN**, Trustee of the Sultan
Trust dated April 15, 1994

By: _____

**JASON HAMMERMAN** and **JULIE
HAMMERMAN**, as joint tenants with rights
of survivorship

By: _____

By: _____

**CMR MORTGAGE FUND, LLC**, a
California limited liability company

By: _____

**TED W. DANG**, Trustee, TD CM Profit
Sharing Plan

By: _____*OWCANP*_____

**RONALD RUBENSTEIN** and **GAIL
RUBENSTEIN**, husband and wife as
community property

By: _____

By: _____

**RONALD RUBENSTEIN, M.D.**, Trustee for
Ronald Rubenstein, M.D. Corp. Employee
Pension & Profit Sharing Trust Account

By: _____

Signature Page
Forbearance Agreement

**MINOO SULTAN**, Trustee of the Sultan
Trust dated April 15, 1994

By: _____

**JASON HAMMERMAN** and **JULIE
HAMMERMAN**, as joint tenants with rights
of survivorship

By: _____

By: _____

**CMR MORTGAGE FUND, LLC**, a
California limited liability company

By: _____

**TED W. DANG**, Trustee, TD CM Profit
Sharing Plan

By: _____

**RONALD RUBENSTEIN** and **GAIL
RUBENSTEIN**, husband and wife as
community property

By: _____

By: _____

**RONALD RUBENSTEIN, M.D.**, Trustee for
Ronald Rubenstein, M.D. Corp. Employee
Pension & Profit Sharing Trust Account

By: _____

Case: 08-32220    Doc# 1209-5    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 22
of 41

# EXHIBIT A

## SCHEDULE OF LENDERS

|  | Original Investment | Share | Restated Investment* |
|---|---|---|---|
| CMR MORTGAGE FUND III, LLC, a California limited liability company | $1,590,000 | 26.50% | $ 1,563,500 |
| FRONTIER RIDGE GLOBAL FUND, LP, a Delaware limited partnership | $1,000,000 | 16.67% | $ 983,333 |
| PATRICIA A. RICE, Trustee or CRAIG E. RICE, Trustee of the Rice Family Trust dated April 4, 1990 | $ 800,000 | 13.33% | $ 786,667 |
| GARRY M. SAMUELS, Trustee of the Garry M. Samuels 1998 Trust | $ 600,000 | 10.00% | $ 590,000 |
| BRUCE J. RICE, M.D., Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. | $ 475,000 | 7.92% | $ 467,083 |
| ALBERT SULTAN and MINOO SULTAN, Trustee of the Sultan Trust dated April 15, 1994 | $ 410,000 | 6.83% | $ 403,167 |
| JASON HAMMERMAN and JULIE HAMMERMAN, as joint tenants with rights of survivorship | $ 350,000 | 5.83% | $ 344,167 |
| CMR MORTGAGE FUND, LLC, a California limited liability company | $ 275,000 | 4.58% | $ 270,417 |
| TED W. DANG, Trustee, TD CM Profit Sharing Plan | $ 250,000 | 4.17% | $ 245,833 |
| RONALD RUBENSTEIN and GAIL RUBENSTEIN, husband and wife as community property | $ 150,000 | 2.50% | $ 147,500 |
| RONALD RUBENSTEIN, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account | $ 100,000 | 1.67% | $ 98,333 |
| **TOTALS** | $6,000,000 | 100.00% | $ 5,900,000 |

*After $100,000.00 pay-down of principal on October 20, 2008

Exhibit A-1

# EXHIBIT B

| | | |
|---|---|---|
| Payoff Calculation as of: | 11/1/2009 | |
| Principal Amount of Loan | $ 5,900,000.00 | |

| | Contract Rate | Default Rate |
|---|---|---|
| Interest Rate (360day) | 12.50% | 18.00% |
| Monthly Interest | $ 61,458.33 | $ 88,500.00 |
| Daily Interest | $ 2,048.61 | $ 2,950.00 |
| Advances Interest Rate (360 day) | 18.00% | |

## Principal Loan Amt

$ 5,900,000.00

## Interest & Late Charges

| Description | Date | Amount | Late Fee 10% | Default Interest | SubTotal |
|---|---|---|---|---|---|
| Monthly Interest & Late Fee | 7/1/2008 | $ 62,500.00 | $ 6,250.00 | | $ 68,750.00 |
| Monthly Interest & Late Fee | 8/1/2008 | $ 62,500.00 | $ 6,250.00 | | $ 68,750.00 |
| Monthly Interest & Late Fee | 9/1/2008 | $ 62,500.00 | $ 6,250.00 | | $ 68,750.00 |
| Monthly Interest & Late Fee | 10/1/2008 | $ 62,500.00 | $ 6,250.00 | | $ 68,750.00 |
| Monthly Interest & Late Fee | 11/1/2008 | $ 62,117.98 | $ 6,211.80 | | $ 68,329.78 |
| Monthly Interest & Late Fee | 12/1/2008 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 1/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 2/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 3/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 4/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 5/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 6/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 7/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 8/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 9/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 10/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| Monthly Interest & Late Fee | 11/1/2009 | $ 61,458.33 | $ 6,145.83 | | $ 67,604.16 |
| **Sub-Total** | | **$ 1,049,617.94** | **$ 104,961.79** | **$ -** | **$ 1,154,579.73** |

## Advances - Misc

| Description | Date | Principal Amt | Advance Fee 10% | Interest thru 11/01/2009 @ 18.00% Daily Interest | # of Days | Interest | SubTotal |
|---|---|---|---|---|---|---|---|
| **CMR Mortgage Fund LLC** | | | | | | | |
| San Diego County Recorder | 12/29/2008 | $ 8.40 | $0.84 | $0.0042000 | 303 | $1.27 | $ 10.51 |
| American Express | 12/31/2008 | $ 59.32 | $5.93 | $0.0296600 | 302 | $8.96 | $ 74.21 |
| **CMR Mortgage Fund III LLC** | | | | | | | |
| Jeffer, Mangels | 7/2/2007 | $ 12,446.08 | $1,244.61 | $6.2230400 | 840 | $5,227.35 | $ 18,918.04 |
| Jeffer, Mangels | 9/13/2007 | $ 1,100.61 | $110.06 | $0.5503050 | 769 | $423.18 | $ 1,633.86 |
| Jeffer, Mangels | 10/10/2007 | $ 521.50 | $52.15 | $0.2607500 | 742 | $193.48 | $ 767.13 |
| Jeffer, Mangels | 10/10/2007 | $ 42.64 | $4.26 | $0.0213200 | 742 | $15.82 | $ 62.72 |
| Jeffer, Mangels | 11/29/2007 | $ 856.50 | $85.65 | $0.4282500 | 693 | $296.78 | $ 1,238.93 |
| Jeffer, Mangels | 1/24/2008 | $ 4,108.99 | $410.90 | $2.0544950 | 638 | $1,310.77 | $ 5,830.66 |
| Jeffer, Mangels | 3/30/2008 | $ 4,188.71 | $418.87 | $2.0943550 | 572 | $1,197.97 | $ 5,805.55 |
| Jeffer, Mangels | 4/28/2008 | $ 6,910.12 | $691.01 | $3.4550600 | 544 | $1,879.55 | $ 9,480.68 |
| Amount held in Trust A | 10/20/2008 | $ (1,154.00) | | | | | |
| San Diego County Recorder | 12/29/2008 | $ 48.60 | $4.86 | $0.0243000 | 303 | $7.36 | $ 60.82 |
| American Express | 12/31/2008 | $ 342.95 | $34.30 | $0.1714700 | 302 | $51.79 | $ 429.03 |
| **Sub-Total** | | **$ 29,480.42** | **$3,063.44** | | | **$10,614.28** | **$ 44,312.14** |

## Misc. Fees

| Description | Date | Amount | | SubTotal |
|---|---|---|---|---|
| Foreclosure Fees | | $ - | | $ - |
| UCC3 Release Fees | | $ - | | $ - |
| Returned Check Fee | | $ - | | $ - |
| Demand Fee | | $ 150.00 | | $ 150.00 |
| Reconveyance Fees | | $ 45.00 | | $ 45.00 |
| **Sub-Total** | | **$ 195.00** | | **$ 195.00** |

| | | |
|---|---|---|
| **TOTAL AMOUNT FOR PAYOFF THRU** | 11/1/2009 | **$ 7,099,086.88** |

Exhibit B-1

## EXHIBIT C
## [ATTACHED]

# PROMISSORY NOTE
(Commercial)

$6,000,000.00                                                    January 26, 2004

Loan # **04-005**

     **FOR VALUE RECEIVED,** the undersigned,

John Franklin Hein, Trustee FBO The Papillion Retirement Trust (collectively **"Maker"**),

whose address for purposes of this Promissory Note (this **"Note"**) is

28455 Highway 18, Parma, Idaho   83660 (the State of California is referred to as the **"State"**),

PROMISES TO PAY to the order of

CMR Mortgage Fund, LLC, as to undivided 100% interest (collectively **"Holder"**),

at 1539 Webster Street, Oakland California  94612, or such other place as the Holder may specify, the principal sum of Six Million  Dollars and Zero Cents ($6,000,000.00), together with interest thereon from the Date of Disbursement (as defined below) at the rate of Twelve  and Fifty Hundredth Percent (12.50%) per annum (the **"Contract Rate"**), to be paid in lawful money of the United States of America as follows:

    a.    Interest from the Date of Disbursement through the end of the month shall be due and payable on the Date of Disbursement; and,

    b.    The payments on this Note shall be as follows:

| Number of Payments | Amount of Payment | Date Series Commences "Date of Commencement" |
|---|---|---|
| 23 | $62,500.00 | March 01, 2004 |
| 1 | $6,062,500.00 | February 01, 2006 |

    The day of the month on which payments are due is called the **"Installment Payment Date."**  The last day in the last series above is called the **"Date of Maturity."**  Each installment payment shall be applied first to accrued interest and then to principal.

    1.    The **"Date of Disbursement"** for purposes of this Note shall mean the day upon which a closing agent disburses the majority of the principal amount of this Note.

    2.    A **"Loan Month"** for purposes of this Note shall mean each successive calendar month of the term of this Note, beginning with the month in which the Date of Commencement falls.

1

Case: 08-32220    Doc# 1209-5    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 26 of 41

3. If any installment of principal and/or interest not be paid within Ten (10) Days after the due date ("**Grace Period Expiration Date**", Maker shall also pay to Holder a late charge of 10%) of such installment. THE LATE CHARGE SHALL BE PAID WITHOUT PREJUDICE TO THE RIGHT OF THE HOLDER TO COLLECT ANY OTHER AMOUNTS PROVIDED TO BE PAID OR TO DECLARE A DEFAULT UNDER THIS NOTE OR THE DEED OF TRUST (AS DEFINED BELOW). THE LATE CHARGE SHALL BE PAYABLE NOT LATER THAN THE DUE DATE OF THE NEXT PAYMENT AND SHALL BE SECURED BY THE DEED OF TRUST AND OTHER SECURITY DOCUMENTS (AS DEFINED BELOW). MAKER RECOGNIZES THAT ITS DEFAULT IN MAKING ANY PAYMENT AS AGREED TO BE PAID WHEN DUE, OR THE OCCURRENCE OF ANY OTHER EVENT OF DEFAULT UNDER THE DEED OF TRUST OR ANY OTHER SECURITY DOCUMENT, WILL REQUIRE HOLDER TO INCUR ADDITIONAL EXPENSE IN SERVICING AND ADMINISTERING THE LOAN, IN LOSS TO HOLDER OF THE USE OF THE MONEY DUE AND IN FRUSTRATION TO HOLDER IN MEETING ITS OTHER FINANCIAL AND LOAN COMMITMENTS AND THAT THE DAMAGES CAUSED THEREBY WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN. MAKER AGREES (A) THAT AN AMOUNT EQUAL TO THE LATE CHARGE PLUS THE ACCRUAL OF INTEREST AT THE DEFAULT RATE IS A REASONABLE ESTIMATE OF THE DAMAGE TO HOLDER CAUSED BY A LATE PAYMENT, AND (B) THAT THE ACCRUAL OF INTEREST AT THE DEFAULT RATE FOLLOWING ANY OTHER EVENT OF DEFAULT IS A REASONABLE ESTIMATE OF THE DAMAGE TO HOLDER CAUSED BY ANOTHER EVENT OF DEFAULT, REGARDLESS OF WHETHER THERE HAS BEEN AN ACCELERATION OF THE DEBT. NOTHING IN THIS NOTE SHALL BE CONSTRUED AS AN OBLIGATION ON THE PART OF HOLDER TO ACCEPT, AT ANY TIME, LESS THAN THE FULL AMOUNT THEN DUE, OR AS A WAIVER OR LIMITATION OF HOLDER'S RIGHT TO COMPEL PROMPT PERFORMANCE.

INITIAL

4. [NO] If the box preceding this sentence contains the word "yes," Holder has no obligation to accept tendered full or partial prepayments of any portion of the principal balance outstanding hereunder until 0 after the Date of Disbursement (the "**Lock Period**").

[NO] If the box preceding this sentence contains the word "yes," in the event of a Prepayment after the Lock Period, Maker shall, as a condition to the Holder's acceptance of the Prepayment, pay to Holder a prepayment premium (the "**Prepayment Premium**") equal to (0) months' interest on that portion of the unpaid balance of this Note prepaid.

Maker shall have no right to prepay, and the Holder shall have no obligation to accept tendered full or partial prepayments of any portion of the principal balance outstanding hereunder (a "**Prepayment**") unless and until prepayment is made on an Installment Payment Date, with not less than thirty (30) days' prior written notice to Holder, and pays any Prepayment Premium called for in the previous paragraph. Any amounts to be prepaid as specified in said notice shall become due and payable at the time provided in said notice, and said notice shall not relieve the Maker from making any payment due prior to or, in the event of a partial Prepayment, after, the time specified in said notice. Prepayments shall be credited to installments of principal in the inverse order of their maturity.

COMMERCIAL NOTE
Version 6/1/02
Copyright, Doss & Page, Lawyers

Case: 08-32220   Doc# 1209-5   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 27
of 41

5.    If an Event of Default occurs and the Holder accelerates payment of the indebtedness, the Holder shall suffer damages and opportunity costs which are now difficult or impossible to ascertain. Therefore, if that occurs, Maker shall pay to the Holder, as liquidated damages and not as a penalty, and in addition to the entire balance of principal and accrued interest and all other sums then due under this Note, the Deed of Trust and the Other Security Documents, an amount equal to the Prepayment Premium computed as if the entire unpaid balance of this Note were prepaid on the date of default.

The Maker waives all rights under California Civil Code Section 2954.10 which provides, in part, as follows:

AN OBLIGEE WHICH ACCELERATES THE MATURITY DATE OF THE PRINCIPAL AND ACCRUED INTEREST, PURSUANT TO CONTRACT, ON ANY LOAN SECURED BY A MORTGAGE OR DEED OF TRUST ON REAL PROPERTY UPON THE CONVEYANCE OF ANY RIGHT, TITLE, OR INTEREST IN THAT PROPERTY, MAY NOT CLAIM, EXACT, OR COLLECT ANY CHARGE, FEE, OR PENALTY FOR ANY PREPAYMENT RESULTING FROM THAT ACCELERATION.

The Maker understands and acknowledges that the Holder bargained for this waiver as part of the consideration that induced the Holder to enter into this transaction. The Maker initials this paragraph for the purpose of evidencing its understanding of Civil Code Section 2954.10 recited in part above and the Maker's agreement to the waiver of its terms.

INITIAL

6.    This Note is secured, without limitation, by that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the "**Deed of Trust**") of the same date given by Maker to California Mortgage & Realty, Inc., as Trustee, for the benefit of Holder, on certain real estate and personal property (the "**Trust Property**") and the Other Security Documents (as defined in the Deed of Trust, referred to as the "**Other Security Documents**"). This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Deed of Trust and the Other Security Documents. Among the provisions of the Deed of Trust is the following paragraph 12:

12.    Transfer or Encumbrances of the Trust Property. Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or

3

other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "**Partnership**"), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

7. Maker shall be in default under this Note (referred to as an "**Event of Default**") and the whole sum of principal and interest shall become due and payable at the option of the Holder without notice or demand, upon: (i) the nonpayment, by the Grace Period Expiration Date of any installment of principal and/or interest, or any other monetary obligation under this Note, the Deed of Trust or the Other Security Documents; or (ii) any other Event of Default under the Deed of Trust or the Other Security Documents.

8. If an Event of Default occurs, this Note shall thereafter bear interest at the rate of the lesser of (i) the Maximum Rate (as hereinafter defined) or (ii) 18 percent % per annum (which lesser rate is referred to as the "**Default Rate**") from the date of the Event of Default until cured. In the event Holder fails to pay, in full, all outstanding principal, interest and other sums due under the terms of this Note, on or before the maturity date as set forth herein, Borrower shall pay to California Mortgage & Realty, Inc., as liquidated damages the additional sum of 10% of the total outstanding balance due as of such maturity date.

9. Additional Advances: The Holder shall be entitled to advance such further sums as necessary, in the Holder's sole discretion, to cure any default(s) on any senior lien(s) including property tax liens. Any sum or sums so advanced shall be considered additional advances under this Note and the Deed of Trust by which this Note is secured and shall bear interest at the Default Rate set forth above from the date of the advance(s) until paid by the Borrower. Further, Maker shall pay to California Mortgage & Realty, Inc. as liquidated damages an additional fee equal to ten percent (10.00%) of any sum(s) advanced hereon for services rendered in connection with such advance(s).

10. Liquidated Damages: Maker agrees that the actual damages to California Mortgage & Realty, Inc., in the event of a default by Maker and/or failure by Maker to pay upon maturity, would be

4

extremely difficult or impracticable to determine because they involve such factors, among others, as the need of California Mortgage & Realty, Inc. to make decisions, undertake risks, and take action; and the impact on business relations between California Mortgage & Realty, Inc. and Beneficiary. Therefore, by signing below, Maker acknowledges that the above charges have been agreed upon as a reasonable estimate of such damages.

INITIAL: [signature]

11. Acceptance by Holder of any payment for less than what is due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due before the Grace Period Expiration Date, shall be and continue to be an Event of Default under this Note. The rights or remedies of the Holder, as provided in this Note, the Deed of Trust or any of the Other Security Documents, or as provided at law or in equity shall be cumulative and concurrent, and may be pursued singly, jointly or successively against the Trust Property, Leases, Rents (as defined in the Deed of Trust) or any other funds, property or security held by Holder for the payment or performance thereof, or against the Maker or otherwise, at the sole discretion of the Holder. The failure to exercise any such right or remedy shall not be construed as a waiver or release of any rights or remedies or of the right to exercise them at any later time.

12. Maker and all endorsers, guarantors, sureties, accommodation parties hereof, and all other persons liable or to become liable for all or any part of the indebtedness under this Note, the Deed of Trust, and the Other Security Documents, waive all applicable exemption rights, whether under the laws of the State, homestead laws, or otherwise, and also waive valuation and appraisement, diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor, of acceleration, of intention to accelerate and of maturity. All endorsers, guarantors, sureties, and accommodation parties hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment. Any such renewals, extensions or modifications may be made without notice to any of said parties.

13. Maker and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness agree to pay all costs of collection, including reasonable attorneys' fees and all costs of suit, if this Note is not paid when due, or if it is necessary to protect the security for this Note or to commence foreclosure proceedings under the Deed of Trust or any of the Other Security Documents, or if Holder is made a party to any litigation because of this Note, the Deed of Trust or any of the Other Security Documents, whether or not suit is filed, and whether through courts of original jurisdiction, as well as in courts of appellate jurisdiction, or through a bankruptcy court or other legal proceedings. Such costs of collection shall include attorneys fees and costs in all aspects of bankruptcy proceedings affecting the security for this Note or performance hereunder, including plan objection proceedings, objections to discharge, claim objection proceedings, preference actions, relief from stay litigation, motions to dismiss, convert or appoint a trustee, case monitoring and serving on a creditor's committee.

14. This Note shall not be amended, modified or changed, nor shall any waiver of any of its provision be effective unless accomplished by an instrument in writing signed by the party against whom enforcement of any amendment, modification, change or waiver is sought.

5

15. Maker acknowledges that this Note and the loan it evidences was made by a licensed California Finance Lender or licensed California Real Estate Broker or it was arranged by a licensed California Real Estate Broker and that the broker's participation was a material factor in the consummation of this transaction. However, none of the terms and provisions contained in this Note, the Deed of Trust, or any of the Other Security Documents, shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate. The Maker or other party now or later liable for the payment of this Note shall never be required to pay interest on this Note at a rate in excess of the Maximum Rate, and the provisions of this paragraph shall control over all other provisions of any other instrument executed in connection herewith this loan transaction. If Holder collects monies which are deemed to be interest in excess of the Maximum Rate, all excess sums shall be applied against the unpaid principal balance and not to the payment of interest; and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to the Maker in cash and the Maker hereby agrees to accept such refund. As used in this Note, the term **"Maximum Rate"** means the maximum rate (or, if the context so permits or requires, an amount calculated at such rate) of interest which, at the time in question would not cause the interest charged on the indebtedness evidenced by this Note, the Deed of Trust, or any of the Other Security Documents at such time to exceed the maximum amount which Holder would be allowed to contract for, charge, take, reserve or receive under the laws of the State or any other applicable law after taking into account, to the extent required by the laws of the State or any other applicable law, all relevant payments or charges under this Note, the Deed of Trust, and the Other Security Documents.

16. Whenever used herein, the words "Maker" and "Holder" shall be deemed to include their respective successors and assigns. In the event Maker is comprised of more than one individual or entity, each such individual or entity shall be jointly and severally liable under this Note.

17. Time is of the essence of this Note.

18. Any notice, demand, statement, request, or consent made under this Note shall be in writing and shall be deemed given when hand-delivered or within Three (3) Days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Maker or Holder, as the case may be, shall in like manner designated in writing.

19. The singular number shall include the plural, and the plural the singular, and any gender shall be substituted for any other gender, where appropriate.

20. This Note is to be governed by and construed in accordance with the laws of the State, without giving effect to the conflicts of law provisions thereof. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note. Maker consents to the jurisdiction of the state and federal courts in the State for any actions involving the enforcement or interpretation of this Note, Deed of Trust and the transaction they evidence.

6

MAKER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT INVOLVING THE HOLDER OR ANY ARRANGER OF THIS LOAN AS WELL AS ANY CLAIM FOR PUNITIVE DAMAGES.

21.    THIS NOTE, THE DEED OF TRUST, THE ENVIRONMENTAL INDEMNITY, ANY GUARANTY AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note effective as of the date first above written.

**John Franklin Hein, Trustee FBO The Papillion Retirement Trust**

BY:                                                              BY:

John Franklin Hein, Trustee

7

Case: 08-32220    Doc# 1209-5    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 32
of 41

15

RECORDING REQUESTED BY:
LAWYERS TITLE COMPANY

1032

DOC # 2004-0072669

JAN 30, 2004 8:00 AM

AND WHEN RECORDED MAIL TO:

California Mortgage & Realty, Inc.
1539 Webster Street
Oakland, CA 94612

Loan # 04-005

Order No. 1102914-02

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        94.00
WAY:         4

SPACE A

# DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT

Title of Document

This page is added to provide adequate space for recording information.

RECORDING REQUESTED BY LAWYERS TITLE

WHEN RECORDED, RETURN TO:

California Mortgage and Realty, Inc.
1539 Webster Street
Oakland California    94612
Loan # 04-005

*Above Space for Recorder's Use*

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH SECTION 9402 OF THE CALIFORNIA COMMERCIAL CODE (THE "**California Commercial Code**")

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT ("**Deed of Trust**"), made effective as of January 26, 2004,

by John Franklin Hein, Trustee FBO The Papillion Retirement Trust ("**Trustor**"), whose address for purposes of this Deed of Trust is 28455 Highway 18, Parma, Idaho   83660 (the State of California is hereinafter sometimes referred to as the "**State**");

TO AND IN FAVOR OF California Mortgage & Realty, Inc. ("**Trustee**");

FOR THE BENEFIT OF CMR Mortgage Fund, LLC, as to undivided 100% interest (collectively, the "**Beneficiary**"), whose address is 1539 Webster Street, Oakland California   94612.

### W I T N E S S E T H :

To secure the payment of a debt described below (the "Debt"), Trustor hereby grants, bargains, conveys, transfers, and assigns to Trustee, in trust, WITH POWER OF SALE, all of the real property commonly known as Vacant Land on Mira Mesa Boulevard, San Diego, California (San Diego County APN:341-010-04-00; 341-352-21-00) as more fully described in **Exhibit "A"** attached hereto (the "**Premises**") and the buildings, structures, additions, enlargements, lot line adjustment additions, extensions, modifications, repairs and improvements now or hereafter located thereon (the "**Improvements**");

TOGETHER WITH: All right, title, interest and estate of Trustor now owned or hereafter acquired in the following property, rights, interests, and estates (collectively called the "**Trust Property**"):

(a) All easements, rights-of-way, strips of land, streets, alleys, passages, sewer rights, mineral rights, water rights and powers, and all estates, rights, titles, interests, privileges, tenements, hereditaments and appurtenances of any nature, in any way belonging, relating or pertaining to the Premises and the reversion and reversions, remainder and remainders, and all land laying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand, both in law and in equity, of Trustor in the Premises and every part thereof and all appurtenances thereto;

(b) All machinery, furniture, equipment, fixtures, material, appliances and other articles of personal property of every kind owned by Trustor, or in which Trustor has an interest, located upon the Premises, and appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the exclusion of vermin or insects, or for removal of dust, refuse or garbage, and such machinery, furniture, equipment, fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and Improvements (and all other personal property, either similar or

COMMERCIAL DEED OF TRUST                                    1

Version 6/1/02
Copyright, Doss & Page, Lawyers

dissimilar to the foregoing usable in the operation of the Premises and Improvements and located in and on it), together with all replacements and substitutions therefor, now owned or hereafter acquired by Trustor and located in or on said Premises and Improvements, together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements (hereinafter collectively called the **"Equipment"**), together with all condemnation awards and rights under insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter located thereon;

(c) All awards or payments, including interest, which may be made as to the Trust Property, whether from the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value of the Trust Property (collectively, **"Awards"**);

(d) All leases and other agreements affecting the use, enjoyment or occupancy of the Trust Property, (the **"Leases"**), if any, and all rents and security deposits payable under the Leases, and other deposits, issues and profits from the Trust Property (the **"Rents"**);

(e) All Policies (as defined herein) and their proceeds thereof and any unearned premiums on any insurance policies covering the Trust Property, including, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property, whether such insurance is or is not required by this Deed of Trust;

(f) All utility deposits made to obtain or maintain utility services to the Premises or the Improvements;

(g) Any amounts in any escrow fund for the purposes of payment of taxes, insurance premiums or other Impositions as to the Trust Property;

(h) The right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding brought as to the Trust Property and to commence any action or proceeding to protect the interest of Trustee and Beneficiary in the Trust Property; and

(i) The products and proceeds of the property described in the above (a) through (h) inclusive.

**TO HAVE AND TO HOLD** the Trust Property upon and subject to the trusts and agreements set forth in this Deed of Trust.

1.  Secured Indebtedness. This Deed of Trust is given to secure the payment and performance of the following obligations, indebtedness, and liabilities (the **"Obligations"**): (a) all Obligations of Trustor under the Promissory Note of this date payable to Beneficiary, in the principal amount of Six Million Dollars and Zero Cents Dollars ($6,000,000.00), as well as any other substituted note and all modifications, renewals, or extension of the note (the **"Note,"** and the payee and all subsequent holders of the Note are collectively the **"Beneficiary"** and the transaction creating the Note is the **"Loan"**); (b) all Obligations under this Deed of Trust as it may be amended from time to time, (c) all present and future loans, advances, or other extensions of credit obtained by Trustor from Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Trustor's Obligations under any present or future loan or credit agreement executed by Trustor, including the Assignment of Lessor's Interest in Leases and Rents of the same date (the **"Assignment"**), including any other agreement granting additional security interests (collectively, **"Other Security Documents"**), and all liabilities that Trustor may now or in the future owe to Beneficiary. Collectively the Obligations referred to above are called the **"Debt."**

Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the Obligations of Trustor or any Guarantor arising exclusively under (i) any guaranty of the same date (the **"Guaranty"**) or (ii) any Environmental Certificate and Indemnity Agreement of the same date, given by Trustor or any other person to Beneficiary (the **"Environmental Indemnity"**). The definition of "Other Security Documents" shall not include the Guaranty or the Environmental Indemnity.

2.  Representations, Warranties and Covenants.

(a) Warranty of Title. Trustor warrants that Trustor has good title to the Trust Property and has the unrestricted right to grant the security interests given in this Deed of Trust and that Trustor presently possesses an unencumbered fee simple estate in the Premises and the Improvements except for those shown in the title report for this transaction (the **"Permitted Encumbrances"**), and that this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Trust Property, subject only to the Permitted Encumbrances. Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

(b) <u>Representations and Covenants Concerning Loan</u>. Trustor represents, warrants and covenants as follows:

(i) All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as currently operated (collectively, the **"Licenses"**), have been obtained and are in good standing (including, without limitation, any applicable liquor license). The Trustor shall keep and maintain all Licenses. The Trust Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Trust Property.

(ii) All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Trust Property except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the lien of this Deed of Trust. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(iii) The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust. No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are good standing.

(iv) The Trust Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Trust Property.

(v) There has not been committed by Trustor or, to Trustor's knowledge, any other person in occupancy of or involved with the operation or use of the Trust Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Trustor's obligations under this Deed of Trust or any of the Other Security Documents. Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

(vi) Neither the execution and delivery of the Note, this Deed of Trust, or the Other Security Documents, nor the Trustor's performance thereunder, nor the recordation of this Deed of Trust, nor the exercise of any remedies by Beneficiary, will adversely affect Trustor's rights under any of the Licenses.

(c) <u>Survival</u>. The warranties of this Paragraph will survive foreclosure or enforcement of this Deed of Trust and shall run with the Premises.

3.    <u>Insurance</u>.

(a) <u>Risks to be Insured and Policy Provisions</u>. Subject to the provisions of <u>Paragraph 5</u> hereof, Trustor, at its sole cost and expense, will maintain or cause to be maintained the following:

(i) Commercial general liability (including contractual liability) insurance (**"CGL Insurance"**) covering any and all liability of the insured arising out of the ownership, maintenance, use or occupancy of the Trust Property, and all operations incidental thereto said insurance to have limits of not less than Five Million Dollars ($5,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(ii) Insurance (**"Building Insurance"**) on all buildings, fixtures and improvements located on the Trust Property against "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (x) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Beneficiary; or (y) unless prohibited by law, the unpaid principal amount of the Debt. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Beneficiary;

(iii) Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" (**"Personal Property Insurance"**) in amounts at least equal to the replacement value thereof;

(iv) Rental value or business interruption insurance (or a combination thereof as Beneficiary may require) (**"Rental Value or Business Interruption Insurance"**) on all buildings, fixtures, improvements, and other

constructions located on and forming a part of the Trust Property as above described (including parking and common areas) against loss by the perils covered by the Building Insurance in amounts of not less than the amount of Trustor's annual gross income from the Trust Property or Trustor's debt service on the Trust Property (including required payments to the Escrow Fund), for twelve (12) months, whichever is greater. Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

(v) If and whenever Trustor shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $100,000/$500,000/$100,000;

(vi) If the Trust Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the **"Act"**), Trustor shall keep the Trust Property covered by flood insurance (**"Flood Insurance"**) up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Debt; and

(vii) Such other insurance with respect to the Trust Property in such amounts and against such insurable hazards as Beneficiary from time to time may reasonably require (**"Additionally Required Insurance"**).

All insurance required hereunder, including the CGL Insurance (the **"Policies"**), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Beneficiary; be issued by insurance companies which are qualified to do business in the State, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII; and which are satisfactory to Beneficiary in all other ways.

The CGL Insurance shall name Beneficiary as an additional insured; apply severally as to Trustor and Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance shall name Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(b) Delivery of Policy. Trustor will deliver to Beneficiary original binders or evidence of all required insurance to Beneficiary and Trustor shall promptly furnish to Beneficiary copies of all renewal notices and all receipts of paid premiums received by it. At least ten (10) days prior to the expiration date of a required policy, Trustor shall deliver to Beneficiary a renewal binder or evidence of insurance in a form satisfactory to Beneficiary.

(c) Assignment of Policy. If the Trust Property is sold at a foreclosure sale or if Beneficiary shall acquire title to the Trust Property, Beneficiary shall have all of the rights of Trustor to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Trust Property prior to such sale or acquisition.

(d) Notice of Damage or Destruction; Adjusting Loss. If any part of the Trust Property is damaged or destroyed by fire or other casualty, Trustor will promptly give written notice thereof to the insurance carrier and Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Beneficiary joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an Event of Default exists at the end of such four-month period or at any time thereafter, Beneficiary may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies. In connection therewith, Trustor does hereby irrevocably authorize, empower and appoint Beneficiary as attorney-in-fact for Trustor (which appointment is coupled with an interest) to do any of the above in the name of Trustor.

(e) Application of Insurance Proceeds. All sums in excess of $10,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, Flood Insurance or Additionally Required Insurance (collectively the **"Proceeds"**), shall be paid to Beneficiary which may, at its option (but subject to the provisions of this Paragraph), apply them, after first deducting Beneficiary's expenses incurred in the collection thereof, to the payment of the Debt, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine. However, Beneficiary shall make all Proceeds (after first deducting therefrom

Beneficiary's reasonable expenses incurred in collecting them) available to Trustor to reimburse Trustor for Trustor's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Beneficiary (and shall not be applied toward the payment of the Debt until after restoration and repair of the Improvements and Equipment) provided:

      (i) There is no Event of Default;

      (ii) Trustor has notified Beneficiary of Trustor's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

      (iii) Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

      (iv) If, in the reasonable judgment of Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Trustor shall demonstrate to Beneficiary the availability of funds which, together with the Proceeds, are sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and

      (v) There will, in the reasonable judgment of Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

    Any Proceeds remaining after reimbursement of Trustor for its costs of restoring the Improvements and Equipment, at Beneficiary's option, may be applied to partial prepayment of the Debt. Any such application of the Proceeds to the payment of the Debt shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Debt shall be paid to Trustor.

    4.    <u>Payment of Impositions</u>. Subject to the payments in the manner provided in <u>Paragraph 5</u> hereof and to <u>Paragraph 8</u> relating to contests, Trustor shall pay when due all taxes (both real and personal), assessments, water charges, sewer charges, ground rents, maintenance charges and all other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Trust Property (the **"Impositions"**). Trustor will deliver to Beneficiary, upon request, evidence satisfactory to Beneficiary that the Impositions are not delinquent. Trustor shall not permit and shall promptly cause to discharged any lien or charge which becomes a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

    5.    <u>Escrow Fund</u>. At the option of the Beneficiary, Beneficiary may require Trustor to establish an Escrow Fund (defined below) sufficient to pay all Impositions and all insurance premiums for all Policies (the **"Insurance Premiums"**) pursuant to this Deed of Trust. Initial deposits of Impositions and Insurance Premiums shall be made by Trustor to Beneficiary in amounts determined by Beneficiary in its discretion on the date hereof to be held by Beneficiary or its agent, in escrow. Additionally, Trustor shall pay to Beneficiary on the first day of each calendar month one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the **"Escrow Fund"**). Trustor agrees to notify Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority. The Escrow Fund and the payments of interest or principal or both under the Note shall be added and paid together. Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Escrow Fund. If the Escrow Fund is insufficient to pay the items set forth above, Trustor shall pay, upon demand, to Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Escrow Fund shall be payable to Trustor.

    6.    <u>Liens</u>. Subject to <u>Paragraph 8</u> hereof relating to contests, the Trustor shall not create or permit any lien, encumbrance or charge on the Trust Property inferior to the lien of this Deed of Trust. Trustor shall pay, when due, the claims of: (i) all persons supplying labor or materials to or in connection with the Trust Property; and (ii) registered or certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Trust Property.

    7.    <u>Compliance with Laws</u>. Subject to <u>Paragraph 8</u> relating to contests, Trustor shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Trust Property, any part thereof or the use

thereof and shall comply with all covenants, conditions and restrictions applicable to the Trustor which are contained in any documents constituting a Permitted Encumbrance.

8.     Permitted Contests.  The Trustor shall not be required to (i) pay any tax, assessment or other charge referred to in paragraph 4, (ii) discharge or remove any lien, encumbrance or charge referred to in Paragraph 6, or (iii) comply with any statute, law, rule, regulation or ordinance referred to in Paragraph 7, if Trustor (a) contests, in good faith, the existence, the amount or the validity of the item, and (b) shall give such security to Beneficiary as may be reasonably demanded by Beneficiary to ensure compliance with the foregoing provisions of this Paragraph.  Trustor shall give prompt written notice to Beneficiary of the commencement of any contest referred to in this Paragraph.

9.     Condemnation.

(a)  Immediately upon receipt by Trustor of notice of the institution of any proceeding or negotiations for condemnation or other eminent domain proceeding (called **"Taking"**), Trustor shall give notice thereof to Trustee and Beneficiary.  Trustee and Beneficiary may appear in any such proceedings and participate in any such negotiations and may be represented by counsel.  Trustor, notwithstanding that Trustee and Beneficiary may not be a party to any such proceeding, will promptly give to Trustee and Beneficiary copies of all notices, pleadings, judgments, determinations and other papers received by Trustor therein.  Trustor will not enter into any agreement permitting or consenting to the taking of the Trust Property, or any part thereof, or providing for the conveyance thereof in lieu of condemnation, unless Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed.  All Taking awards shall be adjusted jointly by Trustor and Beneficiary.  All awards payable as a result of a Taking which exceed $10,000 shall be paid to Beneficiary.  Beneficiary may, at its option, apply the proceeds, after first deducting its expenses incurred in the collection of them, to the payment of the Debt, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine; provided, however, that any such application of any award payable as a result of a Taking, to the payment of the Debt, shall be without prepayment premium or penalty.

(b)  All Awards that exceed $10,000 shall be paid to Beneficiary.  Beneficiary shall make all Awards (after first deducting Beneficiary's expenses to collecting the Award) available to Trustor to reimburse Trustor for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements; subject, however to conditions substantially similar to the conditions imposed under the terms of Paragraph 3(e) above, relating to the use of Proceeds.  Any excess portion of any Award shall applied to partial prepayment of the Debt, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

(c)  TRUSTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER UNDER SECTION 1265.225(A) OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR ANY SUCCESSOR STATUTE PROVIDING FOR THE ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIEN HOLDER.

10.     Leases and Rents.  Trustor agrees that Beneficiary has the right to enter the Trust Property for the purpose of enforcing its interest in the Leases and the Rents.  Nevertheless, subject to the terms of this Paragraph, Beneficiary grants Trustor a limited license to collect the Rents.  Trustor shall hold the Rents, or that portion thereof sufficient to discharge all current sums due and unpaid by Trustor under the terms of the Note, whichever is less, in trust for use in the payment of the Debt.

Upon the occurrence of an Event of Default, Trustor's limited license to collect Rents shall automatically terminate, and any rents previously collected and in Trustor's possession shall thereafter be held in trust for payment of the Debt.  Beneficiary may enter the Trust Property, collect and retain the Rents and apply the Rents toward payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper.  All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Beneficiary.  Upon request, Trustor shall furnish Beneficiary with executed copies of all Leases.  In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length trans-actions.  All Leases shall provide that they are subordinate to this Deed of Trust, and that the lessee attorns to Beneficiary.  Trustor shall not, without the consent of Beneficiary, cancel any Major Tenant Lease or accept prepayments of installments of Rent under a Major Tenant Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents.  Trustor shall perform each provision of every Lease.  All security and other deposits received by Trustor under any Lease shall be maintained in a separate account at a bank, and shall not be

commingled with Trustor's other funds. If an Event of Default occurs, Beneficiary, at its option, may require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Trust Property possessed by Trustor and may require Trustor to surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Trustor may be evicted by summary proceedings or otherwise. For purposes of this Paragraph, a "**Major Tenant Lease**" shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which otherwise represents at least 25% of the sum total of the Rent under all Leases of the Trust Property.

11.     Preservation and Maintenance of Trust Property. Trustor (i) shall keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted; (ii) shall, upon damage or destruction of the Trust Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Trust Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Debt, Trustor shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Debt without payment of a premium or penalty; (iii) shall constantly maintain the parking and landscaped areas of the Trust Property; (iv) shall not commit waste or permit impairment or deterioration of the Trust Property; (v) shall not construct additions to existing buildings or additional buildings on the Premises without the prior written consent of the Beneficiary, which consent shall not be unreasonably withheld or delayed; (vi) shall not remove from the Premises any of the fixtures and personal property included in the Trust Property unless the same is immediately replaced with property of at least equal value and utility, and this Deed of Trust becomes a valid first lien on such property; and (vii) shall maintain the roofs of the Improvements in safe, sound and good repair and condition.

12.     Transfer or Encumbrances of the Trust Property. Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "**Partnership**"), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or

whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

13. Estoppel Certificates. After request by Beneficiary, Trustor, within ten (10) days and at its expense, will furnish the Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Debt, if any, and that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

14. Notices. Any notice, demand, statement, request, or consent made under this Deed of Trust shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Trustor, Trustee or Beneficiary, as the case may be, shall in like manner designate in writing.

Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

15. Sale of Trust Property. If this Deed of Trust is foreclosed, the Trust Property, or any interest therein, may at the discretion of Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

16. Right of Entry. Beneficiary and its agents shall have the right to enter and inspect the Trust Property at all reasonable times upon notice to Trustor.

17. Books and Records. Trustor shall keep adequate books and records of account and furnish Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Beneficiary, and other information concerning the affairs of Trustor as Beneficiary may reasonably request, in form and detail reasonably satisfactory to Beneficiary, including, annual statements of income and expense related to the operation of the Trust Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Trustor's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Beneficiary. All such financial statements, and other information shall be certified to be true and accurate by an individual responsible for the financial affairs of Trustor, in such individual's individual capacity. In the event that such financial statements and other information are not furnished to Beneficiary by Trustor, or, if furnished, are not in a form reasonably acceptable to Beneficiary, Beneficiary may, in addition to any other remedies which Beneficiary has under this Deed of Trust, the Note, or any of the Other Security Documents, audit the books and records of Trustor, and any expense of the audit shall be added to the Debt. Immediately upon the appointment of a receiver of the Trust Property by a court of competent jurisdiction, Trustor shall deliver all books and records or other documents required to be maintained under the terms of this section to such receiver.

18. Performance of Other Agreements. Trustor shall observe and perform each and every term to be observed or performed by Trustor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Trust Property.

19. Events of Default. Any one or more of the following events shall be an event of default (an "**Event of Default**") under this Deed of Trust:

(a) If any payment under the Note is not paid within any grace period in the Note, or if any other monetary obligation of Trustor to Beneficiary of the Note, this Deed of Trust or any of the Other Security Documents is not paid within the due date and any specified grace period; or

(b) If any of the Impositions is not paid before it becomes delinquent; or

(c) If the Policies are not kept in good standing; or

(d) If Trustor does not comply with the provisions of Paragraph 12 of this Deed of Trust; or

(e) If any representation or warranty of Trustor, or of any person guaranteeing or otherwise liable for payment of the Debt (a "**Guarantor**") or in any such Guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Deed of Trust, or any such Guaranty, shall be false or misleading in any material respect and the inaccuracy is not cured to the reasonable satisfaction of Beneficiary, within

Case: 08-32220     Doc# 1209-5     Filed: 03/08/13     Entered: 03/08/13 12:57:02     Page 41
of 41