fifteen (15) days after written notice from Beneficiary to Trustor provided, however, that if the default is of a kind that it cannot be cured within 15 days, then Trustor shall not be in default if Trustor commences curing the default within a reasonable time and diligently completes the cure within a reasonable time, but not more than 60 days after the date of the original written notice; or

(f) If Trustor does not cause an MAI appraisal satisfactory to Lender, reflecting a fair market value of Borrower's interest in the land and improvements, to be submitted to Lender prior to closing or not later than 60 days after the closing and if such default is not cured within 30 days after written notice thereof from Lender to Trustor; or

(g) If Trustor or any Guarantor makes an assignment for the benefit of creditors; or

(h) If a receiver, liquidator or trustee of Trustor or of any Guarantor shall be appointed or if Trustor or any Guarantor is adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, is filed by or against Trustor or any Guarantor, or if any proceeding for the dissolution or liquidation of Trustor or of any Guarantor is instituted and, if such appointment, adjudication, petition or proceeding was involuntary, if it is not discharged, stayed or dismissed within thirty (30) days or if Trustor is generally not paying its debts as they become due; or

(i) If Trustor defaults under any other mortgage, deed of trust or security agreement covering any part of the Trust Property whether it be superior or inferior to the lien of this Deed of Trust, and if such default is not cured within any applicable cure or grace period; or

(j) If the Trust Property is subjected (i) to any lien which is superior to the lien of this Deed of Trust, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Deed of Trust and such lien remains undischarged for thirty (30) days.

If one or more of the Events of Default occurs, the Debt shall include interest on the Debt at the Default Rate as defined in the Note upon any unpaid portion of the Debt and the entire Debt shall become immediately due and payable at the option of the Beneficiary, without further notice or demand; and, in addition, whether or not Beneficiary exercises its option, it may exercise all rights and remedies available to it under the law, including the following:

(k) Beneficiary may enter upon, take immediate possession of, manage, and operate the Trust Property or any part thereof, make repairs and alterations and do any acts that Beneficiary deems reasonable to protect the security of the Deed of Trust, including remedies contained in any of the Other Security Documents; and either with or without taking possession, in its own name, collect the rents, issues and profits, including those past due and unpaid, and apply the rents, less costs and expenses of operation and collection, including reasonable attorneys' fees and the Beneficiary's costs, upon the Debt and in such order as Beneficiary determines. If Beneficiary requests, Trustor shall assemble and make available to Beneficiary at the Premises any of the Trust Property that has been removed. None of the foregoing actions shall cure or waive any Event of Default and Beneficiary shall be entitled to exercise every remedy allowed in this Deed of Trust or by law after an Event of Default.

(l) Beneficiary shall be entitled to the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Trust Property and to operate it and collect the rents, issues and profits from it.

(m) Beneficiary may bring sue to foreclose this Deed of Trust or to enforce any of its provisions.

(n) Trustee may, and upon Beneficiary's request, elect to sell the Trust Property or its parts as follows:

(i) Trustee may proceed as if all of the Trust Property were real property in accordance with subparagraph (iv) below, or Trustee may elect to treat any of the Trust Property which consists of a right in action or which is property that can be severed from the Premises without causing structural damage thereto as if the same were personal property and dispose of the same in accordance with subparagraph (iii) below, separate from the sale of real property, the remainder of the Trust Property being treated as real property.

(ii) Trustee may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, provided in this Deed of Trust or the Note, or Trustee may delay any such sale or other disposition as Trustee deems to be in its best interest. If Trustee conducts more than one sale, Trustee may, at its option, cause the sales to be conducted simultaneously, or successively on the same day, or at different days or times and in such order as Trustee may deem to be in its best interest.

(iii) If Trustee elects to dispose of personal property as permitted in subparagraph (i) above, it or Beneficiary may dispose of any part thereof in any manner permitted by Article 9 of the California Commercial Code. Both Trustor and Beneficiary shall be eligible to purchase any part of such property at any sale. Any such disposition

may be either public or private, as Trustee or Beneficiary may so elect, subject to the provisions of the California Commercial Code. Trustee or Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property, and if such notice is sent to Trustor at the address above, it shall constitute reasonable notice to Trustor.

(iv) If Trustee elects to sell the Trust Property which is real property or which it has elected to treat as real property, upon such election, Trustee shall give such Notice of Default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such Notice of Sale as may then be required by law, Trustee, at the time and place specified by the Notice of Sale, shall sell such Trust Property, or any portion thereof specified by Trustee, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement at the time and place noticed for the sale. If the Trust Property consists of several lots or parcels, Trustee may designate the order in which such lots or parcels are offered for sale or sold. Any person, including Trustor, Trustee, or Beneficiary may purchase at the sale. At the sale the Trustee shall execute and deliver to the purchaser, a deed conveying the property so sold, but without any covenant or warranty, express or implied, after which the purchaser shall be entitled to immediate possession.

(v) This instrument shall be effective as a mortgage as well as a deed of trust and if an Event of Default occurs, may be foreclosed as to any of Trust Property in any manner permitted by the laws of the State, and any foreclosure suit may be brought by the Trustee or by the Beneficiary. In a foreclosure is commenced by the then Trustee, the Beneficiary may at any time before the sale of the Trust Property direct the Trustee to abandon the sale, and may then institute or complete a suit for the collection of the Note and the other Debt, and for judicial foreclosure of this Deed of Trust. It is agreed that if the Beneficiary institute a suit for the collection of the Note or any other Debt and for the judicial foreclosure of this Deed of Trust, the Beneficiary may at any time before the entry of a final judgment in said suit dismiss it, and require the Trustee to sell the Trust Property under the provisions of this Deed of Trust.

(vi) The recital of facts, such as default, the giving of Notice of Default, and Notice of Sale, terms of sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition in a trustee's deed or other conveyance, shall be conclusive proof of the truth of those facts and conclusive against all persons.

(vii) The proceeds of any sale or disposition, together with any other sums which then may be held by Trustee or Beneficiary, shall be applied as follows: FIRST, to the expenses of such sale or disposition together with Trustee's fees and reasonable attorneys' fees and expenses, Beneficiary's costs and the actual cost of publishing, recording, mailing and posting notice; SECOND, to the cost of any search or other policy of title procured in connection with the sale, if applicable, and recordation and transfer taxes and other charges, if any, on any release or deed of reconveyance; THIRD, to the payment of all amounts secured by this Deed of Trust, the Note and the Other Security Documents, and all other sums due Beneficiary from Trustor; FOURTH, to all other sums secured hereby; and the remainder, if any, to the person or persons legally entitled thereto in the order of their priority.

Without limiting the generality of the foregoing, Trustee is expressly authorized to conduct a "unified sale" under Section 9501(4) of the California Commercial Code.

Any payment of the principal amount of Debt subsequent to the entire amount of the Debt becoming immediately due and payable under the terms of this Paragraph shall be deemed a prepayment of such principal amount subject to liquidated damages as specified under the terms of the Note.

The Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or by any receiver or public officer, and Beneficiary shall have the right to credit upon the amount of the bid made, to the extent necessary to satisfy such bid, the Debt owing to Beneficiary, or if Beneficiary holds less than all of such indebtedness the pro rata part owing to Beneficiary, accounting to all other beneficiaries or noteholders not joining in such bid in cash for the portion of such bid or bids apportionable to such nonbidding beneficiary or noteholder.

The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Beneficiary, or if there is more than one Beneficiary, by a writing executed by a majority in ownership of the Beneficiaries. In case of the death, resignation, removal or disqualification of the Trustee or if for any reason the Beneficiary shall deem it desirable to appoint a substitute or successor trustee to act instead of the herein named Trustee or any substitute or successor trustee, then the Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee, without other formality than appointment and designation in writing

executed by the Beneficiary and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Debt finally has been paid in full or until the Trust Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

20.    Right to Cure Defaults. If an Event of Default occurs, Beneficiary may, but is not required to, and without notice to or demand on Trustor and without releasing Trustor from any obligation, make or do the same in such manner and to such extent as Beneficiary may deem necessary or advisable to protect the security hereof. Beneficiary is authorized to enter upon the Trust Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Trust Property or to foreclose this Deed of Trust or collect the Debt, and the cost and expense thereof (including attorneys' fees and expenses) with interest as provided in this Paragraph, shall be due upon demand from Beneficiary to Trustor. All such costs and expenses incurred by Beneficiary in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall be paid at the Default Rate as stated and defined in the Note and secured by this Deed of Trust.

21.    Non-Waiver. Beneficiary's failure to insist upon strict performance of a term of this Deed of Trust shall not be a waiver of any term of this Deed of Trust. Trustor shall not be relieved of its obligations because (i) Beneficiary fails to comply with any request of Trustor or any Guarantor to take any action to foreclose this Deed of Trust or otherwise enforce any of its provisions or of the Note or Other Security Documents, (ii) any part of the Trust Property is released or substituted, or (iii) Trustor or Beneficiary extend the time of payment or otherwise modify or supplement the terms  of the Note, this Deed of Trust or the Other Security Documents. Beneficiary may resort to any other security held by Beneficiary in such order and manner as Beneficiary, in its discretion, may elect. The rights of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Beneficiary shall be construed as an election to proceed under any one provision to the exclusion of other provisions.

22.    Liability. If Trustor consists of more than one person as individuals or as partners, the obligations and liabilities of each such person hereunder shall be joint and several.

23.    Security Agreement. This Deed of Trust is both a real property Deed of Trust and a "security agreement" within the meaning of the California Commercial Code. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property. TRUSTOR HEREBY GRANTS TO BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN THE TRUST PROPERTY TO THE FULL EXTENT THAT THE TRUST PROPERTY MAY BE SUBJECT TO THE CALIFORNIA COMMERCIAL CODE OR THE UNIFORM COMMERCIAL CODE OF ANY OTHER STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property so subject to a Commercial Code being called in this Paragraph the "Collateral"). If an Event of Default occurs, Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the California Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Trustor shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary as to the Collateral sent to Trustor at least ten (10) days prior to such action, shall constitute reasonable notice to Trustor. The proceeds of any disposition of the Collateral may be applied by Beneficiary to the payment of the Debt in the priority and proportions as Beneficiary in its discretion shall deem proper.

24.    Fixture Filing. From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing with a to all goods constituting part of the Trust Property which are or become fixtures related to the real estate described in this Deed of Trust. For this purpose, the following information is set forth:

(a)    Name and address of Debtor:
        John Franklin Hein, Trustee
        FBO The Papillion Retirement Trust
        28455 Highway 18,
        Parma, Idaho  83660

(b)    Name and Address of Secured Party:
        CMR Mortgage Fund, LLC
        1539 Webster Street,

COMMERCIAL DEED OF TRUST          11

Version 6/1/02
Copyright, Doss & Page, Lawyers

1044

Oakland California 94612
(c)   This document covers goods that are or are to become fixtures.
(d)   Description of Real Estate: See Exhibit "A".
(e)   Owner of Record of Real Estate: Debtor.
(f)   This Financing Statement covers Proceeds.
(g)   Products of the Collateral are also covered.

25.   <u>Authority</u>. Trustor has full power, authority and legal right to execute this Deed of Trust, and to create the security interest in the Trust Property contained in this Deed of Trust and to keep and observe all of the terms of this Deed of Trust.

26.   <u>Actions and Proceedings</u>. Trustee and Beneficiary have the right to appear in and defend any action or proceeding affecting the Trust Property and to bring any action or proceeding, in the name of Trustor, which Trustee and Beneficiary, in their discretion, decide should be brought to protect their interests in the Trust Property. Trustee and Beneficiary shall, at their option, be subrogated to the lien of any mortgage, deed of trust, or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

27.   <u>Inapplicable Provisions</u>. Whenever possible, each provision of this Deed of Trust shall be interpreted as effective and valid under applicable law, but if any provision of this Deed of Trust is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

28.   <u>Duplicate Originals</u>. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

29.   <u>Certain Definitions</u>. Words used in this Deed of Trust in singular or plural form shall include the other, and the word **"Trustor"** shall mean "each Trustor or any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word **"Trustee"** shall mean "Trustee and any successor trustee appointed by Beneficiary according to law," the word **"Beneficiary"** shall mean "Beneficiary or any subsequent holder of the Note or any part thereof or any of the Debt," and the word **"Note"** shall mean "the Note or any other evidence of indebtedness secured by this Deed of Trust," the word **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, the words **"Trust Property"** shall include any portion of the Trust Property or interest in it, and the word **"Debt"** shall mean the principal balance of the Note with interest as provided in the Note and this Deed of Trust and all other indebtedness, obligations, and liabilities due pursuant to the Note, this Deed of Trust, or the Other Security Documents; whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

30.   <u>No Oral Change</u>. This Deed of Trust may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

31.   <u>WAIVERS</u>. TO THE EXTENT PERMITTED BY LAW, TRUSTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY AGAINST THE OTHER ARISING OUT OF OR CONNECTED WITH THIS DEED OF TRUST OR THE DEBT.

32.   <u>Further Acts, Etc.</u> Trustor will, at its cost, do, execute, acknowledge and deliver all other acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall require for to facilitate the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust and, on demand, will execute and deliver any financing statement, chattel mortgages or comparable security instruments, to evidence more effectively the lien upon the Trust Property.

33.   <u>Headings, Etc.</u> The headings and captions of various paragraphs of this Deed of Trust are for convenience of reference only and are not to be considered as affecting the contents of the paragraphs.

34.   <u>Filings of Deed of Trust. Etc.</u> Trustor shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Deed of Trust, and the Other Security Documents.

35.   <u>Usury Laws</u>. No terms of this Deed of Trust, the Note, or any of the Other Security Documents, shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate (as such term is defined in the Note). The Trustor shall never be required to pay interest at

COMMERCIAL DEED OF TRUST       12
Version 6/1/02
Copyright, Doss & Page, Lawyers

a rate in excess of the Maximum Rate. The provisions of this Paragraph shall control over all other provisions of any other instrument executed in connection herewith or executed to secure the Debt that is in apparent conflict with this Paragraph. If Beneficiary collects monies that are deemed to be interest that would increase the effective interest rate on the Note to a rate in excess of the Maximum Rate, all such excessive sums shall be applied to the reduction of the unpaid principal balance and not to the payment of interest, and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to Trustor in cash and Trustor hereby agrees to accept such refund.

36.  INDEMNIFICATION. TRUSTOR SHALL PROTECT, INDEMNIFY AND SAVE HARMLESS TRUSTEE AND BENEFICIARY FROM ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY BECAUSE OF (A) FRAUD OR MATERIAL MISREPRESENTATION BY OR ON BEHALF OF THE TRUSTOR; (B) ANY FAILURE ON THE PART OF TRUSTOR TO PERFORM OR COMPLY WITH ANY OF THE TERMS OF THIS DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS; (C) OWNERSHIP OF THE TRUST PROPERTY OR ANY INTEREST IN IT OR THE RECEIPT OF ANY RENTS; (D) ANY ACCIDENT, INJURY TO OR DEATH OF PERSONS OR LOSS OF OR DAMAGE TO PROPERTY OCCURRING IN, ON OR ABOUT THE TRUST PROPERTY; (E) ANY USE, NONUSE OR CONDITION IN, ON OR ABOUT THE TRUST PROPERTY OR ANY PART THEREOF; OR (F) PERFORMANCE OF ANY LABOR OR SERVICES OR THE FURNISHING OF ANY MATERIALS OR OTHER PROPERTY TO THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF BENEFICIARY. HOWEVER, SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR AS TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. ANY AMOUNT PAYABLE TO TRUSTEE OR BENEFICIARY BECAUSE OF THE APPLICATION OF THIS PARAGRAPH SHALL BECOME IMMEDIATELY DUE AND PAYABLE UPON DEMAND BY BENEFICIARY, AND SHALL BEAR INTEREST AT THE DEFAULT RATE, AS STATED AND DEFINED IN THE NOTE, FROM THE DATE OF SUCH DEMAND. THE OBLIGATIONS OF TRUSTOR UNDER THIS PARAGRAPH SHALL SURVIVE ANY TERMINATION OR SATISFACTION OF THIS DEED OF TRUST.

37.  Reconveyance of Trust Property. Upon payment of all sums secured by this Deed of Trust, the Trustee shall reconvey all of the Trust Property to the person or persons entitled to such reconveyance.

38.  Governing Law. This Deed of Trust shall be governed and construed under California law.

39.  Duties and Obligations of Trustee. Trustor agrees that: (a) the duties and obligations of Trustee shall be determined solely by the express provisions of this Deed of Trust and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Deed of Trust, and no implied covenants or obligations shall be imposed upon Trustee; (b) no provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it; (c) Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice; (d) Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Deed of Trust.

Trustee shall have the right, at its sole option and from time to time, to substitute one or more trustees for the Trustee named above, without notice to Trustor. In the event there shall be more than one trustee, either trustee may act hereunder.

40.  Request for Notice of Default and Notice of Sale. Trustor hereby requests that a copy of any notice of default and of any notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

Case: 08-32220  Doc# 1209-6  Filed: 03/08/13  Entered: 03/08/13 12:57:02  Page 5 of 28

41. ENVIRONMENTAL INDEMNIFICATION. TRUSTOR HEREBY AGREES, AT ITS SOLE COST AND EXPENSE, TO UNCONDITIONALLY INDEMNIFY, DEFEND, AND HOLD TRUSTEE AND BENEFICIARY AND ITS DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGE (WHETHER DIRECT OR CONSEQUENTIAL), EXPENSES, CLAIMS, PENALTIES, FINES, INJUNCTIONS, SUITS, PROCEEDINGS, DISBURSEMENTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' AND EXPERTS' FEES AND DISBURSEMENTS AND COURT COSTS) (COLLECTIVELY, THE "LIABILITIES") (A) AS A RESULT OF THE INCORRECTNESS OF ANY REPRESENTATION OR WARRANTY OF TRUSTOR OR ANY OTHER PARTY CONTAINED IN ANY ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT DATED OF THE SAME DATE, GIVEN BY TRUSTOR (AND, PERHAPS OTHER INDIVIDUALS OR ENTITIES) TO BENEFICIARY (THE "ENVIRONMENTAL INDEMNITY"); (B) ARISING UNDER ANY HAZARDOUS SUBSTANCE LAW; OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY DIRECTLY OR INDIRECTLY RESULTING FROM THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE TRUSTEE AND BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE TRUSTEE OR BENEFICIARY; PROVIDED, HOWEVER, THAT SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR WITH RESPECT TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO THE TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THIS DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. FOR PURPOSES OF THIS AGREEMENT, THE FOLLOWING TERMS SHALL MEAN AS FOLLOWS: (A) "ENVIRONMENT" MEANS ANY SURFACE OR SUBSURFACE WATER, WATER VAPOR, SURFACE OR SUBSURFACE LAND, AIR, FISH, WILDLIFE, MICROORGANISMS AND ALL OTHER NATURAL RESOURCES; (B) "GOVERNMENTAL AUTHORITY" MEANS THE FEDERAL GOVERNMENT, OR ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, OR ANY AGENCY, COURT OR BODY OF THE FEDERAL GOVERNMENT, ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, EXERCISING EXECUTIVE, LEGISLATIVE, JUDICIAL, REGULATORY OR ADMINISTRATIVE FUNCTIONS; (C) "HAZARDOUS SUBSTANCE" MEANS AND INCLUDES ASBESTOS OR ANY SUBSTANCE CONTAINING ASBESTOS, POLYCHLORINATED BIPHENYLS, ANY EXPLOSIVES, RADIOACTIVE MATERIALS, CHEMICALS KNOWN OR SUSPECTED TO CAUSE CANCER OR REPRODUCTIVE TOXICITY, POLLUTANTS, EFFLUENTS, CONTAMINANTS, EMISSIONS, INFECTIOUS WASTES, ANY PETROLEUM OR PETROLEUM-DERIVED WASTE OR PRODUCT OR RELATED MATERIALS AND ANY ITEMS DEFINED AS HAZARDOUS, SPECIAL OR TOXIC MATERIALS, SUBSTANCES OR WASTE UNDER ANY HAZARDOUS SUBSTANCE LAW, OR ANY MATERIAL WHICH SHALL BE REMOVED FROM THE TRUST PROPERTY PURSUANT TO ANY ADMINISTRATIVE ORDER OR ENFORCEMENT PROCEEDING OR IN ORDER TO PLACE THE TRUST PROPERTY IN A CONDITION THAT IS SUITABLE FOR ORDINARY USE; (D) "HAZARDOUS SUBSTANCE LAWS" COLLECTIVELY MEANS AND INCLUDES ANY PRESENT AND FUTURE LOCAL, STATE, FEDERAL OR INTERNATIONAL LAW OR TREATY RELATING TO PUBLIC HEALTH, SAFETY OR THE ENVIRONMENT INCLUDING WITHOUT LIMITATION, THE RESOURCE CONSERVATION AND RECOVERY ACT, AS AMENDED ("RCRA"), 42 U.S.C. § 6901 ET SEQ., THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. § 9601 ET SEQ., AS AMENDED BY THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986 ("SARA"), THE HAZARDOUS MATERIALS TRANSPORTATION ACT, 49 U.S.C. § 1801 ET SEQ., THE CLEAN WATER ACT, 33 U.S.C. § 1251 ET SEQ., THE CLEAN AIR ACT, AS AMENDED 42 U.S.C. § 7401 ET SEQ., THE TOXIC SUBSTANCES CONTROL ACT, 15 U.S.C. § 2601 ET SEQ., THE SAFE DRINKING WATER ACT, 42 U.S.C. § 300F ET SEQ., THE URANIUM MILL TAILINGS RADIATION CONTROL ACT, 42 U.S.C. § 7901 ET SEQ., THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 655 ET SEQ., THE FEDERAL INSECTICIDE, FUNGICIDE AND RODENTICIDE ACT, 7 U.S.C. § 136 ET SEQ., THE NATIONAL ENVIRONMENTAL POLICY ACT, 42 U.S.C. § 4321 ET SEQ., THE NOISE CONTROL ACT, 42 U.S.C. § 4901 ET SEQ., AND THE EMERGENCY PLANNING

Case: 08-32220    Doc# 1209-6    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 6 of 28

AND COMMUNITY RIGHT-TO-KNOW ACT, 42 U.S.C. § 11001 ET SEQ., AND THE AMENDMENTS, REGULATIONS, ORDERS, DECREES, PERMITS, LICENSES OR DEED RESTRICTIONS NOW OR LATER PROMULGATED UNDER SUCH LAW; AND (E) "**RELEASE**" MEANS ANY DISCHARGING, DISPOSING, EMITTING, LEAKING, PUMPING, POURING, EMPTYING, INJECTING, ESCAPING, LEACHING, DUMPING OR SPILLING INTO THE ENVIRONMENT (INCLUDING THE ABANDONMENT OR DISCARDING OF BARRELS, CONTAINERS AND OTHER CLOSED RECEPTACLES). The provisions of this Paragraph are sometimes referred to as the "**Environmental Indemnity Provisions.**"

The indemnity in this Paragraph is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of this Deed of Trust, whether by payment of the Debt or any deed-in-lieu of foreclosure of the Trust Property. In addition, this Paragraph is intended to be cumulative of any rights of the Beneficiary under California Code of Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Trustor hereby waives any restrictions or limitations that such statutes may impose on Trustor's liability or Beneficiary's rights or remedies under this Paragraph.

Trustor agrees that: (a) this Paragraph is intended as Beneficiary's written request for information (and Trustor's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (b) each provision in this Paragraph (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Trust Property is intended by Trustor, Beneficiary and any Guarantor to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

In the event that any portion of the Trust Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Beneficiary's or Trustee's rights and remedies under this Deed of Trust, Beneficiary may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Trust Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. For purposes of determining Beneficiary's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Trust Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

42. _Special Terms and Provisions._ The following provisions shall be effective irrespective of any contrary provision in the Deed of Trust, the Note or the Other Security Documents; provided, however, that the rights granted to Trustor in this Paragraph shall be personal to Trustor and shall not be exercisable by any subsequent owner of the Trust Property.

(a) [NO] _Transfer of Trust Property._ If the box preceding this sentence contains the word "yes," then the provisions of _Paragraph 12_ of this Deed of Trust (generally known as a "due-on-sale" clause) shall not include a one-time transfer or conveyance of Trustor's fee simple interest in the Trust Property subject to the loan so long as:

(i) There is no Event of Default under this Deed of Trust or the Other Security Documents;

(ii) The transferee has been previously approved by Beneficiary in writing (which shall not be unreasonably withheld, conditioned or delayed), which approval may be based upon, without limitation, financial and operating statements of the transferee certified by transferee and the resume and description of business background of the transferee;

(iii) If the Other Security Documents include any guaranty of any portion of the Debt, any and all parties to be substituted for such Guarantors have been previously approved by Beneficiary in writing, which approval shall not be unreasonably withheld, conditioned or delayed, and may be based upon, without limitation, the same criteria specified above as to the consideration of the transferee of the Trust Property;

Case: 08-32220    Doc# 1209-6    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 7 of 28

(iv) Beneficiary receives an endorsement to any policy of title insurance issued to Beneficiary, updating the effective date of such policy to the date and time of the recording of the deed effecting such transfer and the assumption of Trustor's obligations, as described below, and confirming that, upon such transfer, Beneficiary's lien priority upon the Trust Property will remain unaffected;

(v) Beneficiary receives executed copies of all legal documents affecting such transfer;

(vi) Beneficiary's servicing agent underwriting the transfer request receives payment of a cash transfer fee equal to Two Percent (2%) of the then outstanding principal balance of the Note (the **"Cash Transfer Fee"**); and

(vii) Beneficiary receives legal opinions of transferee's independent counsel satisfactory to Beneficiary, as to the issues specified by Beneficiary; and

(viii) The transferee executes an agreement in which the transferee unconditionally assumes all of Trustor's obligations under the Note, this Deed of Trust, and any and all of the Other Security Documents, and, if the Other Security Documents include any guaranty of any portion of the Debt, the parties to be substituted for the Guarantors under such Guaranty executes a substitute Guaranty which shall, except as otherwise approved by Beneficiary, be in form and substance identical to such existing Guaranty.

$5,000.00 (the **"Expense Deposit"**) shall be deposited with Beneficiary (or its servicing agent who will underwrite the proposed transfer) prior to Beneficiary's consideration of any proposed transfer. Whether or not a proposed transfer under the terms of this Paragraph is actually consummated (and whether or not any failure to consummate such transfer is due to Beneficiary's failure or refusal to approve of the transferee, or due to any other factor), Trustor shall reimburse Beneficiary on demand for all of Beneficiary's reasonable out-of-pocket costs and expenses reasonably incurred in connection with any proposed transfer. Trustor's obligation to pay such costs and expenses shall be secured by this Deed of Trust; and any failure by Trustor to pay Beneficiary shall be an Event of Default. The amount of the Expense Deposit remaining after deduction of Beneficiary's out of pocket costs and expenses in connection with the proposed transfer, shall be refunded to Trustor promptly after the completion of the proposed transfer or Beneficiary's disapproval of the proposed transfer, as the case may be.

In the event of a transfer under this Paragraph, or any other consent by Beneficiary to a sale, transfer or conveyance of the Trust Property and the assumption of this Deed of Trust as provided above, any and all limitations on sale, transfer or conveyance in Paragraph 12 (without amendment by this Paragraph) shall likewise apply to the purchaser, transferee or conveyee under any sale, transfer or conveyance permitted under this Paragraph.

(b) [NO] Management of Trust Property. If the box preceding this sentence contains the word "no," Trustor hereby (a) represents and warrants that it manages the Trust Property, and that Trustor does not engage any third party in connection with the overall operation or management of the Trust Property; and (b) agrees that Trustor shall not enter into any agreement for the overall management of the Trust Property without the written approval of Beneficiary, which may be conditioned, without limitation, upon the execution by Trustor and the proposed property manager, of a form of subordination of property management acceptable to Beneficiary.

THE NOTE, THIS DEED OF TRUST, ANY GUARANTY, ANY ENVIRONMENTAL INDEMNITY, AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Case: 08-32220   Doc# 1209-6   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 8 of 28

1049

IN WITNESS WHEREOF, the undersigned has executed and delivered this Deed of Trust, effective as of the date first above written.

**Trustor:**   John Franklin Hein, Trustee FBO The Papillion Retirement Trust

BY: _____          BY: _____

John Franklin Hein, Trustee

STATE OF ~~CALIFORNIA~~ Idaho )
                           ) ss.
COUNTY OF Canyon )

On this the _27_ day of _January_ 20 _04_, before me, a Notary Public for the State of ~~California~~ Idaho, personally appeared _John Franklin Hein_
☐ personally known to me   - OR - ☒ proved to me on satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_Angel M. Francis_

MY COMMISSION EXPIRES: 12|10|08      Notary Public

STATE OF ~~CALIFORNIA~~ )
                           ) ss.
COUNTY OF _____ )

On this the _____ day of _____ 20_____, before me, a Notary Public for the State of California, personally appeared _____
☐ personally known to me   - OR - ☐ proved to me on satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

STATE OF CALIFORNIA )
                          ) ss.
COUNTY OF _____ )

On this the _____ day of _____ 20_____, before me, a Notary Public for the State of California, personally appeared _____
☐ personally known to me   - OR - ☐ proved to me on satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

18

COMMERCIAL DEED OF TRUST
Version 6/1/02
Copyright, Doss & Page, Lawyers

1051

## NOTARY SEAL CERTIFICATION

(Government Code 27361.7)

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

Name of the Notary: _____ ANGEL M, FRANCIS _____

Commission Number: _____ N/A _____ Date Commission Expires: _____ N/A _____

County Where Bond is Filed: _____ CANYON _____

Manufacturer or Vendor Number: _____ N/A _____
(Located on both sides of the notary seal border)

Signature: _____
Firm Name (if applicable)

Place of Execution: _____ **San Diego** _____ Date: _____ 1, 30, 04 _____

Rec. Form #R10.1 (Rev. 8/11/03)

# Exhibit "A"

All that certain real property situated in the County of San Diego, State of California, described as follows:

Parcel A:

Lot 6 in Section 5, Township 15 South, Range 3 West, San Bernardino Meridian, in the City of San Diego, County of San Diego, State of California, according to Official Plat thereof.

Excepting therefrom that portion described in the Final Order of Condemnation to the City of San Diego, recorded May 19, 1986 as File/Page No. 86-197221 of Official Records, and being described as follows:

Beginning at the Southeast corner of said Lot 6 of Section 5 as shown on Parcel Map No. 7870, filed in the Office of the County Recorder of San Diego County; thence North 02°40'19" East along the Westerly boundary of said Parcel Map a distance of 74.74 feet to the True Point of Beginning; thence leaving said Westerly boundary South 49°22'03" West a distance of 37.88 feet to an angle point in that certain parcel of land deed to the City of San Diego by Deed recorded November 29, 1972 as File/Page No. 318551 of Official Records; thence North 26°14'41" West (record North 26°14'49" West) a distance of 125.96 feet to an angle point; thence North 49°22'04" East, a distance of 88.75 feet to the beginning of a tangent 1263.00 foot radius curve, concave Southerly; thence Easterly along the arc of said curve, through a central angle of 01°28'17" a distance of 32.43 feet to an intersection with the above mentioned Westerly line of Parcel Map No. 7870; thence Southerly along said Westerly line South 02°40'19" West a distance of 167.07 feet to the True Point of Beginning.

Also excepting therefrom those portions described in the Final Order of Condemnation, as Parcel "A" and Parcel "G" below, to the City of San Diego, recorded November 16, 1993 as File/Page No. 1993-0768380 of Official Records and more particularly described as follows:

Parcel "A":

Beginning at the Northerly corner of that tract of land described as Parcel 2 of Final Order of Condemnation to said City of San Diego, recorded October 19, 1984 as File/Page No. 84-395687 of Official Records of said County; thence along the Southwesterly line of said Lot 6, North 26°14'41" West 16.52 feet; thence departing said Southwesterly line North 49°22'03" East 84.64 feet to a tangent 1279.00 foot radius curve, concave Southeasterly; thence Northeasterly along the arc of said curve, through a central angle of 2°06'35" 47.10 feet to a non-tangent line; thence along said non-tangent line South 02°40'19" West 21.37 feet to the Northerly corner of tract of land described as Parcel 1 of Final Order of Condemnation recorded May 19, 1986 as File/Page No. 86-197221 of Official

CLTA Preliminary Report Form (Rev 1/1/95)

Records of said County of San Diego, said corner being a point on a non-tangent 1263.00 foot radius curve, concave Southeasterly, a radial line to said point bears North 39°09'40" West; thence Southwesterly along the Northwesterly line of said Parcel 1, along the arc of said curve, through a central angle of 01°28'17" 32.43 feet; thence continuing along the Northwesterly line of said Parcel 1 South 49°22'03" West 88.75 feet to the Point of Beginning.

Parcel "G":

Beginning at the Southwest corner of that tract of land described in Parcel 1 of Deed recorded May 19, 1986 as File/Page No. 86-197221 of Official Records, in the Office of the County Recorder of said County; thence along the Southerly line of said Parcel No. 1 North 49°22'03" East 37.88 feet to the Easterly line of said Lot 6; thence along said Easterly line South 02°40'19" West 74.74 feet to the Westerly line of said Lot 6; thence along said Westerly line North 26°14'41" West, 55.73 feet to the Point of Beginning.

Parcel B:

Parcel 5 of Parcel Map No. 17051, in the City of San Diego, County of San Diego, State of California, filed in the Office of the County Recorder of San Diego County, on February 3, 1993, as File/Page No. 1993-0068704 of Official Records.

Assessor's Parcel Number:        **341-010-04-00; 341-352-21-00**

## ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT

**THIS ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT** (this "**Agreement**") is made effective as of January 26, 2004, by John Franklin Hein, Trustee FBO The Papillion Retirement Trust ("**Borrower**"), whose address for purposes of this Agreement is 28455 Highway 18, Parma, Idaho 83660 (the State of California is hereinafter sometimes referred to as the "**State**") and by the following persons in his or her individual capacities, whose addresses for purposes of this Agreement are:

| Guarantor Name | Guarantor Address |
| --- | --- |
| John Franklin Hein | 28455 Highway 18, Parma, Idaho   83660 |

Borrower and the above-named persons are individually and collectively referred to as the "**Indemnitor**") who execute this Agreement TO AND IN FAVOR OF CMR Mortgage Fund, LLC, as to undivided 100% interest (the "**Lender**"), whose address for purposes of this Agreement is 1539 Webster Street, Oakland California 94612.

### RECITALS

A.      Borrower is the present owner of that certain property (the "**Premises**") located at or about Vacant Land on Mira Mesa Boulevard, San Diego, California (San Diego County APN:341-010-04-00; 341-352-21-00), and more particularly described in the Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement of even date herewith (the "**Deed of Trust**");

B.      Borrower has executed and delivered to Lender a Promissory Note of even date herewith (the "**Note**"), in the principal sum of $6,000,000.00, secured by the Deed of Trust on the Premises to and in favor of California Mortgage & Realty, Inc., as Trustee, for the benefit of Lender. Indemnitor will benefit from the disbursement of the loan (the "**Loan**") evidenced by the Note and secured by the Deed of Trust and Premises;

C.      Indemnitor has agreed to make this Agreement as a condition precedent to funding the Loan;

D.      Indemnitor expressly acknowledges that (1) the effectiveness of this Agreement shall not be affected by the extinguishment of the indebtedness evidencing the Loan, (2) this Agreement is not secured by the Deed of Trust or any Other Security Document (as defined in the Deed of Trust), and (c) this Agreement is being given solely to allocate, as between Indemnitor and Lender, the risk of expenses which may become necessary because of environmental problems with respect to the Premises. The indemnities and covenants contained in this Agreement shall survive the termination of the Deed of Trust, whether through full payment of the Loan, foreclosure, deed in lieu of foreclosure or otherwise; and

E.      In the event of any conflict between the provisions of this Agreement and the provisions of any other document executed in connection with the Loan, the provisions of this Agreement shall govern and control.

## AGREEMENTS

**NOW THEREFORE**, in order to induce Lender to accept the Premises as security for the Loan and to enter into the Loan and to disburse the proceeds of the Loan, and in consideration of the matters described in the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Indemnitor hereby certifies and agrees as follows:

1.  <u>Recitals</u>. The Recitals are incorporated herein by this reference.

2.  <u>Definitions</u>: For purposes of this Agreement, the following terms shall mean as follows:

    (a)  **"Environment"** means any surface or subsurface water, water vapor, surface or subsurface land, air, fish, wildlife, microorganisms and all other natural resources;

    (b)  **"Environmental Site Assessment"** means that certain site environmental assessment report pertaining to the Premises, and presented to Lender in conjunction with the Loan;

    (c)  **"Governmental Authority"** means the Federal government, or any state or other political subdivision thereof, or any agency, court or body of the Federal government, any state or other political subdivision thereof, exercising executive, legislative, judicial, regulatory or administrative functions;

    (d)  **"Hazardous Substance"** means and includes asbestos or any substance containing asbestos, polychlorinated biphenyls, any explosives, radioactive materials, chemicals known or suspected to cause cancer or reproductive toxicity, pollutants, effluents, contaminants, emissions, infectious wastes, any petroleum or petroleum-derived waste or product or related materials and any items defined as hazardous, special or toxic materials, substances or waste under any Hazardous Substance Law, or any such material which shall be removed from the Premises pursuant to any administrative order or enforcement proceeding or in order to place the Premises in a condition that is suitable for ordinary use; including, without limitation, any chemical, material or substance defined as or included in the definition of "hazardous substances" "Hazardous wastes", "hazardous materials", "extremely hazardous wastes", "restricted hazardous wasters", or "toxic substances" or words of similar import under Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316 and 25501 of the California Health and Safety Code, and Article 9 or Article 11 of Title 22 of the Administrative Code, Division 4, Chapter 20;

    (e)  **"Hazardous Substance Laws"** collectively means and includes any present and future local, state, federal or international law or treaty relating to public health, safety or the environment including without limitation, the Resource Conservation and Recovery Act, as amended ("RCRA"), 42 U.S.C. § 6901 <u>et seq.</u>, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 <u>et seq.</u>, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 <u>et seq.</u>, the Clean Water Act, 33 U.S.C. § 1251 <u>et seq.</u>, the Clean Air Act, as amended 42 U.S.C. § 7401 <u>et seq.</u>, the Toxic Substances Control Act, 15 U.S.C. § 2601 <u>et seq.</u>, the Safe Drinking Water Act, 42 U.S.C. § 300f <u>et seq.</u>, the Uranium Mill Tailings Radiation Control Act, 42 U.S.C. § 7901 <u>et seq.</u>, the Occupational Safety and Health Act, 29 U.S.C. § 655 <u>et seq.</u>, the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 <u>et</u>

COMMERCIAL ENVIRONMENTAL CERT. AND INDEMNITY
Version 6/1/02
Copyright Pos & Partners

seq., the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., the Noise Control Act, 42 U.S.C. § 4901 et seq., and the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 et seq., the Carpenter-Presley-Tanner Hazardous Substance Account Act and the California Health and Safety Code, Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316, and 25501 of the California Health and Safety Code, Section 2782.6(d) of the California Civil Code and Title 22 of the California Code of Regulations and the amendments, regulations, orders, decrees, permits, licenses or deed restrictions now or hereafter promulgated thereunder, and any similar law, regulation, order, decree, permit, license or deed restriction of the State;

(f)     **"Premises"** means all of the real and personal property described in Recital "A" above, including the entire subsurface of soil, sand, gravel, stone and rock, all surface water and subsurface water, whether flowing or stagnant, the ambient air, and all structures, fixtures, buildings and other constructions located, situated or erected thereon, and all machinery and equipment located at or in connection with any such structure; and

(g)     **"Release"** means any discharging, disposing, emitting, leaking, pumping, pouring, emptying, injecting, escaping, leaching, dumping or spilling into the Environment (including the abandonment or discarding of barrels, containers and other closed receptacles).

Terms not otherwise defined herein shall have the meaning ascribed to them in the Note, the Deed of Trust and the Other Security Documents.

3.     <u>Representations and Warranties of Indemnitor</u>. Indemnitor hereby covenants, or represents and warrants, as applicable, to Lender that:

(a)     To the best of Indemnitor's knowledge, after diligent inquiry: (i) no Hazardous Substance is currently located at, on, in, under or about the Premises in a manner which violates any Hazardous Substance Laws; (ii) no Hazardous Substance has been or is currently located at, in, on, under or about the Premises in a manner which violates any Hazardous Substance Law, or which requires cleanup or corrective action of any kind under any Hazardous Substance Law; (iii) no Release of any Hazardous Substance from the Premises onto or into any other property or from any other property onto or into the Premises has occurred or is occurring in violation of any Hazardous Substance Law; and (iv) no notice of violation, lien, complaint, suit, order or other notice with respect to the environmental condition of the Premises is outstanding, nor has any such notice been issued which has not been fully satisfied and complied with in a timely fashion so as to bring the Premises into full compliance with all Hazardous Substance Laws.

(b)     Indemnitor shall comply, and shall require all tenants or other occupants of the Premises to comply, in all respects with all Hazardous Substance Laws, and will not generate, store, handle, process, dispose of or otherwise use, and will not permit any tenant or other occupant of the Premises to generate, store, handle, process, dispose of or otherwise use, Hazardous Substances at, in, on, under or about the Premises in a manner which would violate any Hazardous Substance Law or otherwise lead to the imposition on Indemnitor, Lender or the Premises of any liability or lien of any nature whatsoever under any Hazardous Substance Law.

(c)     To the best of Indemnitor's knowledge, after diligent inquiry, no asbestos exists on the Premises in any form, condition or quantity, except as set forth in the Environmental Site Assessment (provided that Hazardous Substance Laws as may exist from time to time do not

prohibit the existence of the asbestos in such form, condition or quantity). The Indemnitor and all tenants of the Premises shall at all times be in compliance with the terms of any asbestos monitoring plan, if any, in effect with respect to the Premises. Pre-existing non-friable asbestos may not be exposed to conditions under which there is a reasonable likelihood that the asbestos or its covering will become damaged, deteriorated, delaminated or any other conditions under which the asbestos could become friable.

        (d)     Indemnitor shall notify Lender promptly in the event of any Release of any Hazardous Substance at, in, on, under or about the Premises which is required to be reported to a Governmental Authority under any Hazardous Substance Law, will promptly forward to Lender copies of any notices received by Indemnitor relating to alleged violations of any Hazardous Substance Law and will promptly pay when due any fine or assessment against Lender or the Premises relating to any Hazardous Substance Law.

        (e)     If at any time it is determined that the operation or use of the Premises violates any applicable Hazardous Substance Law or that there are Hazardous Substances located at, in, on, under or about the Premises which, under any Hazardous Substance Law, require special handling in collection, storage, treatment or disposal, or any other form of cleanup or corrective action, Indemnitor shall, within thirty (30) days after receipt of notice thereof from any Governmental Authority or from Lender, take, at its sole cost and expense, such actions as may be necessary to fully comply in all respects with all Hazardous Substance Laws, provided, however, that if such compliance is of a nature which may be completed, and Indemnitor shall have commenced completion thereof within a reasonable time, not to exceed such 30 days, and shall be diligently prosecuting completion of the same, then such 30 days shall be extended to the time reasonably necessary for completion. If Indemnitor fails to timely take, or to diligently and expeditiously proceed to complete in a timely fashion, any such action, Lender may, in its sole and absolute discretion, make advances or payments towards the performance or satisfaction of the same, but shall in no event be under any obligation to do so. All sums so advanced or paid by Lender (including, without limitation, attorneys' and consultants' fees and expenses, investigation and laboratory fees and expenses, and fines or other penalty payments) and all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, will, within 30 days of demand, become due and payable from Indemnitor and shall bear interest thereafter at the Default Rate (as defined in the Note).

        (f)     If a lien is filed against the Premises by any Governmental Authority resulting from the need to expend or the actual expending of monies arising from an action or omission, whether intentional or unintentional, of Indemnitor or for which Indemnitor is responsible resulting in the releasing, spilling, leaking, leaching, pumping, emitting, pouring, emptying or dumping of any Hazardous Substance into the waters or onto land located within or without the state where the Premises is located, then Indemnitor will, within thirty (30) days from the date that Indemnitor is first given notice that such lien has been placed against the Premises (or within such shorter period of time as may be specified by Lender if such Governmental Authority has commenced steps to cause the Premises to be sold pursuant to such lien) either (i) pay the claim and remove the lien, or (ii) furnish a cash deposit, bond or such other security with respect thereto as is satisfactory in all respects to Lender and is sufficient to effect a complete discharge of such lien on the Premises.

        (g)     The Premises has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance

therewith, and there has been no occurrence or condition on any real property adjoining the Premises that is reasonably likely to cause the Premises or any part thereof to be designated as Border Zone Property.

4.    INDEMNIFICATION.  INDEMNITOR HEREBY AGREES, AT ITS SOLE COST AND EXPENSE, TO UNCONDITIONALLY INDEMNIFY, DEFEND, AND HOLD LENDER AND ITS DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGE (WHETHER DIRECT OR CONSEQUENTIAL), EXPENSES, CLAIMS, PENALTIES, FINES, INJUNCTIONS, SUITS, PROCEEDINGS, DISBURSEMENTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' AND EXPERTS' FEES AND DISBURSEMENTS AND COURT COSTS) (COLLECTIVELY, THE "LIABILITIES") (A) ARISING AS A RESULT OF ANY INCORRECTNESS IN ANY REPRESENTATIONS OR WARRANTIES OF INDEMNITOR CONTAINED IN THIS AGREEMENT; (B) ARISING UNDER ANY HAZARDOUS SUBSTANCE LAW; OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR ASSERTED AGAINST LENDER DIRECTLY OR INDIRECTLY RESULTING FROM THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE PREMISES, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE LENDER OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE LENDER; PROVIDED, HOWEVER, THAT SUCH INDEMNITY SHALL NOT APPLY WITH RESPECT TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT OF THE LENDER OR ITS EMPLOYEES, AGENTS OR CONTRACTORS, OR WITH RESPECT TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT LENDER BECOMES THE OWNER OF THE PREMISES BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE.

INDEMNITOR SHALL ASSUME THE BURDEN AND EXPENSE OF DEFENDING ALL SUITS, ADMINISTRATIVE PROCEEDINGS AND DISPUTES OF ANY DESCRIPTION WITH ALL PERSONS, ENTITIES, POLITICAL SUBDIVISIONS OR GOVERNMENT AGENCIES ARISING OUT OF THE MATTERS TO BE INDEMNIFIED UNDER THIS AGREEMENT.  INDEMNITOR SHALL PAY, PROMPTLY UPON ENTRY, ANY NONAPPEALABLE ORDER, JUDGMENT OR OTHER FINAL RESOLUTION OF ANY CLAIM OR DISPUTE ARISING OUT OF THE MATTERS TO BE INDEMNIFIED UNDER THIS AGREEMENT AND SHALL PAY PROMPTLY WHEN DUE ANY FINES, PENALTIES OR AGREED SETTLEMENTS ARISING OUT OF THE MATTERS TO BE INDEMNIFIED UNDER THIS AGREEMENT. IN THE EVENT THAT SUCH PAYMENT IS NOT MADE, LENDER, AT ITS SOLE DISCRETION, MAY PROCEED TO FILE SUIT AGAINST INDEMNITOR TO COMPEL SUCH PAYMENT.

PROMPTLY FOLLOWING COMPLETION OF ANY ACTIONS IMPOSED UPON INDEMNITOR UNDER ANY HAZARDOUS SUBSTANCE LAW, INDEMNITOR SHALL OBTAIN AND DELIVER TO LENDER, AN ENVIRONMENTAL REPORT IN FORM AND SUBSTANCE ACCEPTABLE TO LENDER FROM AN ENVIRONMENTAL CONSULTANT ACCEPTABLE TO LENDER, STATING THAT ALL REQUIRED ACTION HAS BEEN TAKEN, AND THAT UPON COMPLETION OF SUCH ACTION, THE PREMISES IS, TO THE KNOWLEDGE OF SUCH PROFESSIONAL, THEN IN COMPLIANCE WITH THE APPLICABLE HAZARDOUS SUBSTANCE LAWS.

5.    Notices from Indemnitor.  Indemnitor shall promptly after obtaining knowledge thereof advise Lender in writing of (a) any governmental or regulatory actions instituted or threatened in writing under any Hazardous Substance Law affecting the Premises or any indemnification hereunder including, without limitation, any notice of inspection, abatement or noncompliance, (b) all claims made or threatened in writing by any third party against Indemnitor or the Premises relating to any Hazardous Substance or a violation of a Hazardous

Substance Law, and (c) Indemnitor's discovery of any occurrence or condition on the Premises or any real property adjoining or in the vicinity of the Premises which could subject Indemnitor or the Premises to a claim under any Hazardous Substance Law or to any restrictions on ownership, occupancy, transferability or use of the Premises under any Hazardous Substance Law. Indemnitor shall deliver to Lender any documentation or records regarding the above as Lender may reasonably request and which are susceptible of being obtained by Indemnitor without undue cost or expense and without the necessity for initiating legal proceedings to obtain the same.

6. <u>Notice and Settlement of Claims Against Lender.</u>

(a) Lender shall provide Indemnitor with written notice of any claim or demand which Lender has determined could give rise to a right of indemnification under this Agreement. Such notice shall be given within a reasonable time after Lender becomes aware of facts and shall specify, to the best of Lender's knowledge, the facts giving rise to the alleged claim, and the amount to the extent determinable, of liability for which indemnity is asserted.

(b) Lender shall not settle or otherwise compromise any action, suit or proceeding brought against Lender on a claim indemnified hereunder without the prior written consent of Indemnitor which consent shall not be unreasonably withheld. The Indemnitor also agrees that it will not settle or compromise such action, suit or proceeding without Lender's prior written consent, which consent shall not be unreasonably withheld.

7. <u>Payment of Lender's Expenses.</u> In any pending or threatened litigation, contest, dispute, suit or proceeding (whether instituted by Lender, Indemnitor, or any other party, including any governmental agency charged with enforcement of any Hazardous Substance Law) in any way relating to this Agreement and the indemnification described herein, or to enforce the indemnification hereunder or, if the Lender has a reasonable basis to believe that a violation of the Hazardous Substance Laws exists in regard to the Premises, Lender shall have the right to retain counsel and environmental sciences consultants of its own choice for advice or other representation without affecting or otherwise impairing the indemnification hereunder and all Liabilities arising from such services shall be payable by Indemnitor within 30 days of demand.

8. <u>Environmental Audits.</u> Lender may, at its option, if Lender reasonably believes that a Hazardous Substance or other environmental condition violates or threatens to violate any Hazardous Substance Law, cause an environmental audit of the Premises or portions thereof to be conducted to confirm Indemnitor's compliance with the provisions of this Agreement, and Indemnitor shall cooperate in all reasonable ways with Lender in connection with any such audit and shall pay all costs and expenses incurred in connection therewith.

9. <u>Events of Default.</u> Any one or more of the following events shall be an event of default (hereinafter referred to as an **"Event of Default"**) hereunder:

(a) If any representation or warranty of Indemnitor made herein or in any certificate or report furnished in connection with the making of this Agreement shall be false or misleading in any material respect and the same has not been cured to the reasonable satisfaction of Lender, within thirty (30) days of written notice thereof from Lender to Indemnitor; or

(b) If Indemnitor shall be in default under any other term, covenant or condition of this Agreement for a period of thirty (30) days after written notice thereof from Lender to Indemnitor.

Notwithstanding any provision to the contrary in subsections 9(a) or 9(b), above, if such default is of a nature which may be cured and Indemnitor shall have commenced curing of said default within a reasonable time, not to exceed such 30 days after notice of the same from Lender, and shall be diligently prosecuting completion of the same, then such 30 days shall be extended to the time reasonably necessary to complete said cure. Upon such Event of Default the Lender shall have the right, at its option, to declare the entire Debt (as defined in the Note and the Deed of Trust, hereinafter the **"Debt"**) due and payable.

10.     Obligations Absolute and Waivers.

(a)     The obligations of Indemnitor hereunder shall remain in full force and shall not be impaired by:  (i) any express or implied modification, renewal, extension or acceleration of the Note, the Deed of Trust, any other loan documents executed by Indemnitor or any other party in connection with the Loan and all environmental indemnity agreements executed by Indemnitor or any other party including without limitation this Agreement (collectively the **"Documents"**); (ii) any exercise or non-exercise by Lender of any right or privilege under any of the Documents; (iii) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Indemnitor, or any affiliate of Indemnitor or any guarantor, or any action taken with respect to this Agreement by any trustee or receiver or by any court in any such proceeding, whether or not Indemnitor shall have had notice or knowledge of any of the foregoing; (iv) any release, waiver or discharge of the Indemnitor or any endorser or guarantor from liability under any of the Documents or Indemnitor's grant to Lender of a security interest, lien or encumbrance in any of the Indemnitor's property; (v) any subordination, compromise, settlement, release (by operation of law or otherwise), discharge, compound, collection, or liquidation of any of the Documents or any collateral described in any of the Documents or otherwise, or any substitution with respect thereto except as specifically required by this Agreement; (vi) any assignment or other transfer of any of the Documents, in whole or in part; (vii) any acceptance of partial performance of any of the obligations of Indemnitor under the Documents; (viii) any consent to the transfer of any collateral described in the Documents or otherwise; and (ix) any bid or purchase at any sale of the collateral described in the Documents or otherwise.

(b)     Indemnitor unconditionally waives the following defenses to enforcement of this Agreement:  (i) all presentments, demands, demands for performance, notices of nonperformance, protests, notices of protest, dishonor, nonpayment, partial payment, default and protest, notices of acceptance of this Agreement and all other notices and formalities to which the Indemnitor may be entitled (except for notices which are specifically required by this Agreement); (ii) any right to require Lender to proceed against any Indemnitor, any individual Indemnitor or any guarantor or to proceed against or exhaust any collateral described in the Documents; (iii) any defense arising by reason of any invalidity or unenforceability of any of the Documents or any disability of Indemnitor or any guarantor; (iv) any defense arising by reason of the manner in which Lender has exercised its remedies under the Documents; (v) any defense based upon an election of remedies by Lender; (vi) any duty of Lender to advise Indemnitor of any information known to Lender regarding the financial condition of Indemnitor and all other circumstances affecting Indemnitor's ability to perform its obligations to Lender, it being agreed that Indemnitor assumes the responsibility for being and keeping informed regarding such condition or any such circumstances; (vii) any right of subrogation and any rights to enforce any remedy which Lender now has or may hereafter have against Indemnitor and any benefit of, and any right to participate in, any security now or hereafter held by Lender; and (viii) to the extent permitted by law, any right to assert

Copyright Dos OEP & Powers

against Lender any legal or equitable defense, counterclaim, set off, crossclaim or right of contribution which Indemnitor may now or at any time or times hereafter have.

11.     Survival of Agreement. The obligations and liabilities of Indemnitor under this Agreement shall survive and continue in full force and effect and shall not be terminated, discharged or released, in whole or in part, irrespective of whether the Debt has been paid in full and irrespective of any foreclosure of the Deed of Trust or acceptance by Lender, its nominee or wholly owned subsidiary of a deed or assignment in lieu of foreclosure and irrespective of any other fact or circumstance of any nature whatsoever. Notwithstanding the above, this Agreement shall not be construed to impose liability on the Indemnitor for Hazardous Substances Released through no fault of Indemnitor or its respective agents, employees or contractors after the date of (a) foreclosure, (b) trustee's sale, (c) the acceptance by Lender of a deed in lieu of foreclosure, or (d) the taking of actual possession and physical control of the Premises by Lender.

12.     No Waiver. Indemnitor's obligations hereunder shall in no way be impaired, reduced or released by reason of Lender's omission or delay to exercise any right described herein or in connection with any notice (except for notices required of Lender pursuant to this Agreement), demand, warning or claim regarding violations of any Hazardous Substance Laws governing the Premises.

13.     Joint and Several Liability. The indebtedness, liabilities, and obligations of Indemnitor under this Agreement or any other indemnitor who may have indemnified or who later indemnifies the Lender with respect to the subject matter of this Agreement, shall be joint and several. Lender may release or settle with one or more individuals or entities comprising any guarantor or indemnitor at any time without affecting the continuing liability of the Indemnitor.

14.     Successors and Assigns. Subject to the provisions of paragraph 4, this Agreement and the indemnification contained in this Agreement shall be continuing, irrevocable and binding on Indemnitor and Indemnitor's successors and assigns, and this Agreement shall be binding upon and shall inure to the benefit of Lender and Lender's successors and assigns.

15.     Notices. Any notice, demand, statement, request, or consent made hereunder shall be in writing and shall be deemed given when hand delivered, within three (3) days of the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Indemnitor or Lender, as the case may be, shall in like manner designate in writing.

16.     Entire Agreement. This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter contained in this Agreement.

17.     Amendment and Waiver. This Agreement may not be amended except by a writing signed by both parties nor shall observance of any term of this Agreement be waived except with the written consent of the Lender.

18.     Governing Law. This Agreement shall be governed and construed as to interpretation, enforcement, validity, construction, effect and in all other respects by the laws, statutes and decisions of the State without giving effect to the conflicts of laws provisions thereof. TO THE EXTENT PERMITTED BY LAW, INDEMNITOR HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY LENDER, AND WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER OR IN ANY

COUNTERCLAIM ASSERTED BY LENDER AGAINST INDEMNITOR, OR IN ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

19. _Counterparts_. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same agreement.

20. _Severability_. All provisions contained in this Agreement are severable and the invalidity or unenforceability of any provision shall not affect or impair the validity or enforceability of the remaining provisions of this Agreement.

21. _Headings_. The descriptive headings of the paragraphs of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

22. _Not Secured By Deed of Trust_. Notwithstanding any provision of the Deed of Trust to the contrary, in no event shall the Deed of Trust be deemed to secure this Agreement or any of the obligations or liabilities of Indemnitor arising hereunder.

**23. The indemnity contained in this Agreement is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of the Deed of Trust, whether by payment of the Debt (as defined in the Deed of Trust) or any deed-in-lieu of foreclosure of the Premises. In addition, this Agreement is intended to be cumulative of any rights of Lender under the Deed of Trust under California Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Indemnitor hereby waives any restrictions or limitations that such statutes may impose on Indemnitor's liability or Lender's rights or remedies under this Agreement.**

Trustor agrees that: (a) this Agreement is intended as Lender's written request for information (and Borrower's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (b) each provision in this Agreement (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Premises is intended by Lender and Indemnitor to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

In the event that any portion of the Premises is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's rights and remedies under the Deed of Trust, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Premises, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment and any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Borrower shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Premises and Borrower knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

24. THE NOTE, DEED OF TRUST, OTHER SECURITY DOCUMENTS (AS DEFINED IN THE DEED OF TRUST) AND THIS AGREEMENT COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,

CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, this Agreement has been executed effective as of the date first above written.

John Franklin Hein, Trustee FBO The Papillion Retirement Trust

BY: _____
John Franklin Hein, Trustee

**EXHIBIT D**

**[ATTACHED]**

# EXHIBIT D
## DEEMED PERCENTAGE INTERESTS

| | 11/1/09 | 12/1/10 | 1/1/11 | 2/1/11 | 3/1/11 | 4/1/11 | 5/1/11 | 6/1/11 | 7/1/11 | 8/1/11 | 9/1/11 | 10/1/11 | 11/1/11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CMR Mortgage Fund III, LLC, a California limited liability company | 6.6250% | 7.0225% | 7.4200% | 7.8175% | 8.2150% | 8.6125% | 9.0100% | 9.4075% | 9.8050% | 10.2025% | 10.6000% | 10.9975% | 11.3950% |
| Frontier Ridge Global Fund, LP, a Delaware limited partnership | 4.1670% | 4.4170% | 4.6670% | 4.9170% | 5.1670% | 5.4170% | 5.6670% | 5.9170% | 6.1670% | 6.4170% | 6.6670% | 6.9170% | 7.1670% |
| Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990 | 3.3330% | 3.5330% | 3.7330% | 3.9330% | 4.1330% | 4.3330% | 4.5330% | 4.7330% | 4.9330% | 5.1330% | 5.3330% | 5.5330% | 5.7330% |
| Garry M. Samuels, Trustee of the Garry M. Samuels 1998 Trust | 2.5000% | 2.6500% | 2.8000% | 2.9500% | 3.1000% | 3.2500% | 3.4000% | 3.5500% | 3.7000% | 3.8500% | 4.0000% | 4.1500% | 4.3000% |
| Bruce J. Rice, M.D. Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. | 1.9790% | 2.0978% | 2.2165% | 2.3353% | 2.4540% | 2.5728% | 2.6915% | 2.8103% | 2.9290% | 3.0478% | 3.1665% | 3.2853% | 3.4040% |
| Mirico Sultan, Trustee of the Sultan Trust dated April 15, 1994 | 1.7080% | 1.8105% | 1.9130% | 2.0155% | 2.1180% | 2.2205% | 2.3230% | 2.4255% | 2.5280% | 2.6305% | 2.7330% | 2.8355% | 2.9380% |
| Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship | 1.4580% | 1.5455% | 1.6330% | 1.7205% | 1.8080% | 1.8955% | 1.9830% | 2.0705% | 2.1580% | 2.2455% | 2.3330% | 2.4205% | 2.5080% |
| CMR Mortgage Fund, LLC, a California limited liability company | 1.1460% | 1.2148% | 1.2835% | 1.3523% | 1.4210% | 1.4898% | 1.5585% | 1.6273% | 1.6960% | 1.7648% | 1.8335% | 1.9023% | 1.9710% |
| Ted W. Dang, Trustee, TD CM Profit Sharing Plan | 1.0420% | 1.1045% | 1.1670% | 1.2295% | 1.2920% | 1.3545% | 1.4170% | 1.4795% | 1.5420% | 1.6045% | 1.6670% | 1.7295% | 1.7920% |
| Ronald Rubenstein and Gail Rubenstein, husband and wife as community property | 0.6250% | 0.6625% | 0.7000% | 0.7375% | 0.7750% | 0.8125% | 0.8500% | 0.8875% | 0.9250% | 0.9625% | 1.0000% | 1.0375% | 1.0750% |
| Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account | 0.4170% | 0.4420% | 0.4670% | 0.4920% | 0.5170% | 0.5420% | 0.5670% | 0.5920% | 0.6170% | 0.6420% | 0.6670% | 0.6920% | 0.7170% |
| CMR Mortgage Fund II, LLC, a California limited liability company | 75.0000% | 73.5000% | 72.0000% | 70.5000% | 69.0000% | 67.5000% | 66.0000% | 64.5000% | 63.0000% | 61.5000% | 60.0000% | 58.5000% | 57.0000% |
| TOTAL | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% |

D-1

| | 12/1/11 | 1/1/12 | 2/1/12 | 3/1/12 | 4/1/12 | 5/1/12 | 6/1/12 | 7/1/12 | 8/1/12 | 9/1/12 | 10/1/12 | 11/1/12 | 12/1/12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CMR Mortgage Fund III, LLC, a California limited liability company | 11.7925% | 12.1900% | 12.5875% | 12.9850% | 13.3825% | 13.7800% | 14.1775% | 14.5750% | 14.9725% | 15.3700% | 15.7675% | 16.1650% | 16.5625% |
| Frontier Ridge Global Fund, LP, a Delaware limited partnership | 7.4170% | 7.6670% | 7.9170% | 8.1670% | 8.4170% | 8.6670% | 8.9170% | 9.1670% | 9.4170% | 9.6670% | 9.9170% | 10.1670% | 10.4170% |
| Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990 | 5.9330% | 6.1330% | 6.3330% | 6.5330% | 6.7330% | 6.9330% | 7.1330% | 7.3330% | 7.5330% | 7.7330% | 7.9330% | 8.1330% | 8.3330% |
| Garry M. Samuels, Trustee of the Garry M. Samuels 1998 Trust | 4.4500% | 4.6000% | 4.7500% | 4.9000% | 5.0500% | 5.2000% | 5.3500% | 5.5000% | 5.6500% | 5.8000% | 5.9500% | 6.1000% | 6.2500% |
| Bruce J. Rice, M.D, Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. | 3.5228% | 3.6415% | 3.7603% | 3.8790% | 3.9978% | 4.1165% | 4.2353% | 4.3540% | 4.4728% | 4.5915% | 4.7103% | 4.8290% | 4.9478% |
| Minoo Sultan, Trustee of the Sultan Trust dated April 15, 1994 | 3.0405% | 3.1430% | 3.2455% | 3.3480% | 3.4505% | 3.5530% | 3.6555% | 3.7580% | 3.8605% | 3.9630% | 4.0655% | 4.1680% | 4.2705% |
| Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship | 2.5955% | 2.6830% | 2.7705% | 2.8580% | 2.9455% | 3.0330% | 3.1205% | 3.2080% | 3.2955% | 3.3830% | 3.4705% | 3.5580% | 3.6455% |
| CMR Mortgage Fund, LLC, a California limited liability company | 2.0398% | 2.1085% | 2.1773% | 2.2460% | 2.3148% | 2.3835% | 2.4523% | 2.5210% | 2.5898% | 2.6585% | 2.7273% | 2.7960% | 2.8648% |
| Ted W. Dang, Trustee, TD CM Profit Sharing Plan | 1.8545% | 1.9170% | 1.9795% | 2.0420% | 2.1045% | 2.1670% | 2.2295% | 2.2920% | 2.3545% | 2.4170% | 2.4795% | 2.5420% | 2.6045% |
| Ronald Rubenstein and Gail Rubenstein, husband and wife as community property | 1.1125% | 1.1500% | 1.1875% | 1.2250% | 1.2625% | 1.3000% | 1.3375% | 1.3750% | 1.4125% | 1.4500% | 1.4875% | 1.5250% | 1.5625% |
| Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account | 0.7420% | 0.7670% | 0.7920% | 0.8170% | 0.8420% | 0.8670% | 0.8920% | 0.9170% | 0.9420% | 0.9670% | 0.9920% | 1.0170% | 1.0420% |
| CMR Mortgage Fund II, LLC, a California limited liability company | 55.5000% | 54.0000% | 52.5000% | 51.0000% | 49.5000% | 48.0000% | 46.5000% | 45.0000% | 43.5000% | 42.0000% | 40.5000% | 39.0000% | 37.5000% |
| TOTAL | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% |

**EXHIBIT D**
**DEEMED PERCENTAGE INTERESTS**

| | 1/1/13 | 2/1/13 | 3/1/13 | 4/1/13 | 5/1/13 | 6/1/13 | 7/1/13 | 8/1/13 | 9/1/13 | 10/1/13 | 11/1/13 | 12/1/13 | 1/1/14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CMR Mortgage Fund III, LLC, a California limited liability company | 16.9600% | 17.3575% | 17.7550% | 18.1525% | 18.5500% | 18.9475% | 19.3450% | 19.7425% | 20.1400% | 20.5375% | 20.9350% | 21.3325% | 21.7300% |
| Frontier Ridge Global Fund, LP, a Delaware limited partnership | 10.6670% | 10.9170% | 11.1670% | 11.4170% | 11.6670% | 11.9170% | 12.1670% | 12.4170% | 12.6670% | 12.9170% | 13.1670% | 13.4170% | 13.6670% |
| Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990 | 8.5330% | 8.7330% | 8.9330% | 9.1330% | 9.3330% | 9.5330% | 9.7330% | 9.9330% | 10.1330% | 10.3330% | 10.5330% | 10.7330% | 10.9330% |
| Garry M. Samuels, Trustee of the Garry M. Samuels 1988 Trust | 6.4000% | 6.5500% | 6.7000% | 6.8500% | 7.0000% | 7.1500% | 7.3000% | 7.4500% | 7.6000% | 7.7500% | 7.9000% | 8.0500% | 8.2000% |
| Bruce J. Rice, M.D. Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. | 5.0865% | 5.1853% | 5.3040% | 5.4228% | 5.5415% | 5.6603% | 5.7790% | 5.8978% | 6.0165% | 6.1353% | 6.2540% | 6.3728% | 6.4915% |
| Mimoo Sultan, Trustee of the Sultan Trust dated April 15, 1994 | 4.3730% | 4.4755% | 4.5780% | 4.6805% | 4.7830% | 4.8855% | 4.9880% | 5.0905% | 5.1930% | 5.2955% | 5.3980% | 5.5005% | 5.6030% |
| Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship | 3.7330% | 3.8205% | 3.9080% | 3.9955% | 4.0830% | 4.1705% | 4.2580% | 4.3455% | 4.4330% | 4.5205% | 4.6080% | 4.6955% | 4.7830% |
| CMR Mortgage Fund, LLC, a California limited liability company | 2.9335% | 3.0023% | 3.0710% | 3.1398% | 3.2085% | 3.2773% | 3.3460% | 3.4148% | 3.4835% | 3.5523% | 3.6210% | 3.6898% | 3.7585% |
| Ted W. Dang, Trustee, TD CM Profit Sharing Plan | 2.6670% | 2.7295% | 2.7920% | 2.8545% | 2.9170% | 2.9795% | 3.0420% | 3.1045% | 3.1670% | 3.2295% | 3.2920% | 3.3545% | 3.4170% |
| Ronald Rubenstein and Gail Rubenstein, husband and wife as community property | 1.6000% | 1.6375% | 1.6750% | 1.7125% | 1.7500% | 1.7875% | 1.8250% | 1.8625% | 1.9000% | 1.9375% | 1.9750% | 2.0125% | 2.0500% |
| Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account | 1.0670% | 1.0920% | 1.1170% | 1.1420% | 1.1670% | 1.1920% | 1.2170% | 1.2420% | 1.2670% | 1.2920% | 1.3170% | 1.3420% | 1.3670% |
| CMR Mortgage Fund II, LLC, a California limited liability company | 36.0000% | 34.5000% | 33.0000% | 31.5000% | 30.0000% | 28.5000% | 27.0000% | 25.5000% | 24.0000% | 22.5000% | 21.0000% | 19.5000% | 18.0000% |
| TOTAL | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% |

| | 2/1/14 | 3/1/14 | 4/1/14 | 5/1/14 | 6/1/14 | 7/1/14 | 8/1/14 | 9/1/14 | 10/1/14 | 11/1/14 | 12/1/14 | 1/1/15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CMR Mortgage Fund III, LLC, a California limited liability company | 22.1275% | 22.5250% | 22.9225% | 23.3200% | 23.7175% | 24.1150% | 24.5125% | 24.9100% | 25.3075% | 25.7050% | 26.1025% | 26.5000% |
| Frontier Ridge Global Fund, LP, a Delaware limited partnership | 13.9170% | 14.1670% | 14.4170% | 14.6670% | 14.9170% | 15.1670% | 15.4170% | 15.6670% | 15.9170% | 16.1670% | 16.4170% | 16.6670% |
| Patricia A. Rice, Trustee or Craig E. Rice Trustee of the Rice Family Trust dated April 4, 1990 | 11.1330% | 11.3330% | 11.5330% | 11.7330% | 11.9330% | 12.1330% | 12.3330% | 12.5330% | 12.7330% | 12.9330% | 13.1330% | 13.3330% |
| Garry M. Samuels, Trustee of the Garry M. Samuels 1998 Trust | 8.3500% | 8.5000% | 8.6500% | 8.8000% | 8.9500% | 9.1000% | 9.2500% | 9.4000% | 9.5500% | 9.7000% | 9.8500% | 10.0000% |
| Bruce J. Rice, M.D. Trustee of the East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc. | 6.6103% | 6.7290% | 6.8478% | 6.9665% | 7.0853% | 7.2040% | 7.3228% | 7.4415% | 7.5603% | 7.6790% | 7.7977% | 7.9165% |
| Minoo Sultan, Trustee of the Sultan Trust dated April 15, 1994 | 5.7055% | 5.8080% | 5.9105% | 6.0130% | 6.1155% | 6.2180% | 6.3205% | 6.4230% | 6.5255% | 6.6280% | 6.7305% | 6.8330% |
| Jason Hammerman and Julie Hammerman, as joint tenants with rights of survivorship | 4.8705% | 4.9580% | 5.0455% | 5.1330% | 5.2205% | 5.3080% | 5.3955% | 5.4830% | 5.5705% | 5.6580% | 5.7455% | 5.8330% |
| CMR Mortgage Fund, LLC, a California limited liability company | 3.8273% | 3.8960% | 3.9648% | 4.0335% | 4.1023% | 4.1710% | 4.2398% | 4.3085% | 4.3773% | 4.4460% | 4.5148% | 4.5835% |
| Ted W. Dang, Trustee, TD CM Profit Sharing Plan | 3.4795% | 3.5420% | 3.6045% | 3.6670% | 3.7295% | 3.7920% | 3.8545% | 3.9170% | 3.9795% | 4.0420% | 4.1045% | 4.1670% |
| Ronald Rubenstein and Gail Rubenstein, husband and wife as community property | 2.0875% | 2.1250% | 2.1625% | 2.2000% | 2.2375% | 2.2750% | 2.3125% | 2.3500% | 2.3875% | 2.4250% | 2.4625% | 2.5000% |
| Ronald Rubenstein, M.D., Trustee for Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account | 1.3920% | 1.4170% | 1.4420% | 1.4670% | 1.4920% | 1.5170% | 1.5420% | 1.5670% | 1.5920% | 1.6170% | 1.6420% | 1.6670% |
| CMR Mortgage Fund II, LLC, a California limited liability company | 16.5000% | 15.0000% | 13.5000% | 12.0000% | 10.5000% | 9.0000% | 7.5000% | 6.0000% | 4.5000% | 3.0000% | 1.5000% | 0.0000% |
| TOTAL | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% | 100.0000% |