# EXHIBIT D

Case: 08-32220    Doc# 1209-7    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 1
of 78

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    **DECLARATION OF SEAN ARMSTRONG REGARDING 21 MIRA MESA LLC.**

2    I, Sean Amstrong, declare as follows:

3      1.    <u>Declarant</u>. I am a Principal of Westport Capital Partners, LLC, the Sole Member of

4    FR GP, LLC, the general partner of **Frontier Ridge Global Fund, LP ("Frontier")** and am

5    authorized on its behalf to make the representations set forth herein.

6      2.    <u>Underlying Real Property</u>. 21 Mira Mesa, LLC ("Mira Mesa") holds title to

7    approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County,

8    California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds

9    an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

10      3.    <u>The Entitlement Loan:</u> In 2009, Mira Mesa borrowed the sum of $600,000 from

11    Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay

12    Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust

13    dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan,

14    Ronald and Gail Rubenstein, and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit

15    Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could

16    complete certain requirements of the about-to-expire entitlements with respect to the Real Property.

17    The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009,

18    bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of

19    Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated

20    November 25, 2009 and recorded in the real estate records of San Diego County, California on

21    February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First

22    Deed of Trust is a first priority lien encumbering the Real Property.

23      4.    **Frontier's Interest**. Frontier is the beneficial owner and holder of an interest in the

24    Entitlement Loan.

25      5.    <u>Current Status of Entitlement Loan</u>. The Entitlement Loan matured on December 1,

26    2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of

27    principal, interest and all fees and charges) is $900,363.96.

28

DOCS_SF:79101.12 49666/001

6.    <u>The Subordinated $6M Loan</u>: There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). Frontier owns a beneficial interest in the $6M Loan as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) is $9,538,433.12.

7.    <u>Prior Forbearance.</u> As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8.    <u>Additional Funding For Entitlements.</u> I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **Frontier**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made available to fund the completion of the entitlements. Frontier understands that the Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the Additional Funds and, to extend the maturity date of the Entitlement Loan to a date that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended Entitlement Loan will be consistent with the terms described in this declaration. The Amended Entitlement Loan will be nonrecourse. The rights of Frontier and the other Lenders under the Amended Entitlement Loan shall be enforceable only against the Real Property. The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

9. <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders, (including, without limitation, Frontier), Fund I, and Fund III, agree: to extend the November 1, 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed, projected to be July 31, 2014 and to re-subordinate the Junior Loan to all amounts to be advanced under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official Records as Document No. 2010-0066139.

10. <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration and attached Term Sheet, may be subject to approval by the United States Bankruptcy Court presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DECLARATION OF SEAN ARMSTRONG
REGARDING MIRA MESA, LLC

Case: 08-32220   Doc# 1209-7   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 4
of 78

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3

4    Executed this __29__ day of January, 2013, at LOS ANGELES, California.

5

6    _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:79101.12 49666/001

4

DECLARATION OF SEAN ARMSTRONG
REGARDING MIRA MESA, LLC

**TERM SHEET**[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

DOCS_SF:79825.16 49666/0001

Company.  As such, Fund III  has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees.  The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate.  In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2.  The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement").  For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3.  Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4.  Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5.  Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6.  Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8.  Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9.  If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

DOCS_SF:79825.16 49666/0001



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

### Schedule

| | |
|---|---|
| • Re-engage Consultant team | 30-45 days |
| • City Cycle Assessment | 57-60 days |
| • Traffic update | 60-90 days |
| • Complete Architectural drawings | 15-30 days |
| • Complete Engineering | 15-30 days |
| • Complete Planning | 15-30 days |
| • Complete Wastewater | 15-30 days |
| • Complete MSCP/Biology | 15-30 days |
| • Mapping | 15-30 days |
| • REA | 30-40 days |
| • Environmental Services | 15-20 days |
| • City Processing | 160-180 days |
|    o Cycle 5 submittal and response | 15-30 days |
|    o Cycle 6 submittal and response | 15-30 days |
|    o Cycle 7 submittal and response | 15-30 days |
|    o CEQA findings | 20-40 days |
|    o Public Notice | 28 -35 days |
|    o Response to public comments | 5-10 days |
|    o Final CEQA Doc | 10-15 days |
|    o Planning Commission schedule | 30 days |
|    o City Council schedule | 30-60 days |
| • Blackstone | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • Water Ridge | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • SDG&E Approval | |
|    o Application Process | 90-120 days |
|    o 851 decision | 60-90 days |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## DECLARATION OF TED W. DANG REGARDING 21 MIRA MESA LLC.

I, Ted W. Dang, declare as follows:

1.    <u>Declarant</u>. I am the Trustee of **TD/CM Profit Sharing Plan (the "Plan")** and am authorized on its behalf to make the representations set forth herein.

2.    <u>Underlying Real Property</u>. 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3.    <u>The Entitlement Loan</u>: In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein, the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4.    **TD/CM Profit Sharing Plan's Interest**. TD/CM Profit Sharing Plan is the beneficial owner and holder of an interest in the Entitlement Loan.

5.    <u>Current Status of Entitlement Loan</u>. The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6.    <u>The Subordinated $6M Loan</u>: There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on

January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). TD/CM Profit Sharing Plan owns a beneficial interest in the $6M Loan as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) is $9,538,433.12.

7. <u>Prior Forbearance.</u> As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lender, Fund I and Fund III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8. <u>Additional Funding For Entitlements.</u> I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **TD/CM Profit Sharing Plan**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made available to fund the completion of the entitlements. TD/CM Profit Sharing Plan understands that the Entitlement Loan and the related First Deed of Trust will be amended to reflect

DECLARATION OF TED W. DANG
REGARDING MIRA MESA, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    the loan of the Additional Funds, and to extend the maturity date of the Entitlement Loan to a date

2    that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are

3    fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the

4    Amended Entitlement Loan will be consistent with the terms described in this declaration. The

5    Amended Entitlement Loan will be nonrecourse. The rights of TD/CM Profit Sharing Plan and the

6    other Lenders under the Amended Entitlement Loan shall be enforceable only against the Real

7    Property. The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of

8    15%. The Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement

9    allowing Frontier to pursue the entitlements for the Real Property to be negotiated and put in place

10    concurrently with the execution and delivery of the documentation memorializing the Amended

11    Entitlement Loan.

12        9.    <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders (including,

13    without limitation, TD/CM Profit Sharing Plan), Fund I, and Fund III agree: to extend the November

14    1, 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that

15    is eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed,

16    projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced

17    under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and

18    that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official

19    Records as Document No. 2010-0066139.

20        10.    <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration

21    and attached Term Sheet may be subject to approval by the United States Bankruptcy Court

22    presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

23        I declare under penalty of perjury under the laws of the United States of America that the

24    foregoing is true and correct.

25        Executed this _28th_ day of January, 2013, at _____Oakland____, California.

26

27                             _____

28

DECLARATION OF TED W. DANG
REGARDING MIRA MESA, LLC

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Case: 08-32220   Doc# 1209-7   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 17 of 78

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8. Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9. If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

**Schedule**

| | |
|---|---|
| • Re-engage Consultant team | 30-45 days |
| • City Cycle Assessment | 57-60 days |
| • Traffic update | 60-90 days |
| • Complete Architectural drawings | 15-30 days |
| • Complete Engineering | 15-30 days |
| • Complete Planning | 15-30 days |
| • Complete Wastewater | 15-30 days |
| • Complete MSCP/Biology | 15-30 days |
| • Mapping | 15-30 days |
| • REA | 30-40 days |
| • Environmental Services | 15-20 days |
| • City Processing | 160-180 days |
|    o Cycle 5 submittal and response | 15-30 days |
|    o Cycle 6 submittal and response | 15-30 days |
|    o Cycle 7 submittal and response | 15-30 days |
|    o CEQA findings | 20-40 days |
|    o Public Notice | 28 -35 days |
|    o Response to public comments | 5-10 days |
|    o Final CEQA Doc | 10-15 days |
|    o Planning Commission schedule | 30 days |
|    o City Council schedule | 30-60 days |
| • Blackstone | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • Water Ridge | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • SDG&E Approval | |
|    o Application Process | 90-120 days |
|    o 851 decision | 60-90 days |

**DECLARATION OF JASON HAMMERMAN REGARDING 21 MIRA MESA LLC.**

I, Jason Hammerman, declare as follows:

1.      Declarant. I am authorized to make the representations set forth herein.

2.      Underlying Real Property. 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3.      The Entitlement Loan: In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4.      **Jason Hammerman's Interest.** Jason Hammerman is the beneficial owner and holder of an interest in the Entitlement Loan.

5.      Current Status of Entitlement Loan. The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6.      The Subordinated $6M Loan: There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on

1   Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the

2   Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen

3   (18) months from and after the date that the amendments to the Entitlement Loan are fully executed,

4   projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended

5   Entitlement Loan will be consistent with the terms described in this declaration. The Amended

6   Entitlement Loan will be nonrecourse. The rights of Jason Hammerman and the other Lenders

7   under the Amended Entitlement Loan shall be enforceable only against the Real Property. The

8   Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The

9   Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier

10   Ridge Global Fund, LP to pursue the entitlements for the Real Property to be negotiated and put in

11   place concurrently with the execution and delivery of the documentation memorializing the

12   Amended Entitlement Loan.

13       9.    Extension of Forbearance and Amendment. Additionally, the Lenders (including,

14   without limitation, Jason Hammerman), Fund I, and Fund III agree: to extend the November 1, 2011

15   "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is

16   eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed,

17   projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced

18   under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and

19   that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official

20   Records as Document No. 2010-0066139.

21       10.   Court Approval. I understand that the matters that are the subject of this Declaration

22   and attached Term Sheet may be subject to approval by the United States Bankruptcy Court

23   presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

24       I declare under penalty of perjury under the laws of the United States of America that the

25   foregoing is true and correct.

26   Executed this _28th_ day of January, 2013, at _Lafayette_, California.

27

28

DECLARATION OF JASON HAMMERMAN
REGARDING MIRA MESA, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2.  The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3.  Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

Case: 08-32220   Doc# 1209-7   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 28 of 78

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8. Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions  reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9. If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process.  The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date.  Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

DOCS_SF:79825.16 49666/0001



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

<u>Schedule</u>

- Re-engage Consultant team     30-45 days
- City Cycle Assessment     57-60 days
- Traffic update     60-90 days
- Complete Architectural drawings     15-30 days
- Complete Engineering     15-30 days
- Complete Planning     15-30 days
- Complete Wastewater     15-30 days
- Complete MSCP/Biology     15-30 days
- Mapping     15-30 days
- REA     30-40 days
- Environmental Services     15-20 days
- City Processing     160-180 days
  - Cycle 5 submittal and response     15-30 days
  - Cycle 6 submittal and response     15-30 days
  - Cycle 7 submittal and response     15-30 days
  - CEQA findings     20-40 days
  - Public Notice     28 -35 days
  - Response to public comments     5-10 days
  - Final CEQA Doc     10-15 days
  - Planning Commission schedule     30 days
  - City Council schedule     30-60 days
- Blackstone
  - Discussions     60-90 days
  - Documentation     60-90 days
- Water Ridge
  - Discussions     60-90 days
  - Documentation     60-90 days
- SDG&E Approval
  - Application Process     90-120 days
  - 851 decision     60-90 days

## DECLARATION OF JULIE HAMMERMAN REGARDING 21 MIRA MESA LLC.

I, Julie Hammerman, declare as follows:

1.     <u>Declarant</u>. I am authorized to make the representations set forth herein.

2.     <u>Underlying Real Property</u>. 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3.     <u>The Entitlement Loan:</u> In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4.     **Julie Hammerman's Interest**. Julie Hammerman is the beneficial owner and holder of an interest in the Entitlement Loan.

5.     <u>Current Status of Entitlement Loan</u>. The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6.     <u>The Subordinated $6M Loan:</u> There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). Julie Hammerman owns a beneficial interest in the $6M Loan, as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) is $9,538,433.12.

7.    <u>Prior Forbearance.</u>  As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8.    <u>Additional Funding For Entitlements.</u>  I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **Julie Hammerman**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made available to fund the completion of the entitlements. Julie Hammerman understands that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the

2  Additional Funds and, to extend the maturity date of the Entitlement Loan to a date that is eighteen

3  (18) months from and after the date that the amendments to the Entitlement Loan are fully executed,

4  projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended

5  Entitlement Loan will be consistent with the terms described in this declaration. The Amended

6  Entitlement Loan will be nonrecourse. The rights of Julie Hammerman and the other Lenders under

7  the Amended Entitlement Loan shall be enforceable only against the Real Property. The Amended

8  Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The Term Sheet

9  attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier Ridge

10  Global Fund, LP to pursue the entitlements for the Real Property to be negotiated and put in place

11  concurrently with the execution and delivery of the documentation memorializing the Amended

12  Entitlement Loan.

13    9.    Extension of Forbearance and Amendment. Additionally, the Lenders (including,

14  without limitation, Julie Hammerman), Fund I, and Fund III agree: to extend the November 1, 2011

15  "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is

16  eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed,

17  projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced

18  under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and

19  that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official

20  Records as Document No. 2010-0066139.

21    10.    Court Approval. I understand that the matters that are the subject of this Declaration

22  and attached Term Sheet may be subject to approval by the United States Bankruptcy Court

23  presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

24    I declare under penalty of perjury under the laws of the United States of America that the

25  foregoing is true and correct.

26    Executed this 28 day of January, 2013, at Lafayette, California.

27

28

DOCS_SF:79101.12 49666/001

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Company.  As such, Fund III  has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees.  The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate.  In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2.  The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement").  For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3.  Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preeeeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8.   Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions  reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9.   If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process.  The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date.  Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

DOCS_SF:79825.16 49666/0001

 Sentinel

Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed.  Note that this are estimated durations for individual tasks some of which will overlap.  These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

| | |
|---|---|
| • Re-engage Consultant team | 30-45 days |
| • City Cycle Assessment | 57-60 days |
| • Traffic update | 60-90 days |
| • Complete Architectural drawings | 15-30 days |
| • Complete Engineering | 15-30 days |
| • Complete Planning | 15-30 days |
| • Complete Wastewater | 15-30 days |
| • Complete MSCP/Biology | 15-30 days |
| • Mapping | 15-30 days |
| • REA | 30-40 days |
| • Environmental Services | 15-20 days |
| • City Processing | 160-180 days |
|    o Cycle 5 submittal and response | 15-30 days |
|    o Cycle 6 submittal and response | 15-30 days |
|    o Cycle 7 submittal and response | 15-30 days |
|    o CEQA findings | 20-40 days |
|    o Public Notice | 28 -35 days |
|    o Response to public comments | 5-10 days |
|    o Final CEQA Doc | 10-15 days |
|    o Planning Commission schedule | 30 days |
|    o City Council schedule | 30-60 days |
| • Blackstone | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • Water Ridge | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • SDG&E Approval | |
|    o Application Process | 90-120 days |
|    o 851 decision | 60-90 days |

Case: 08-32220    Doc# 1209-7    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 45 of 78

1   **DECLARATION OF BRUCE J. RICE, Trustee REGARDING 21 MIRA MESA LLC.**

2      I, Bruce J. Rice, Trustee, declare as follows:

3      1.     Declarant. I am the trustee of the **East Bay Head & Neck Surgery Medical Group**

4  **Pension and Profit Sharing Fund ("Rice Medical Group")** and am authorized on its behalf to make

5  the representations set forth herein.

6      2.     Underlying Real Property. 21 Mira Mesa, LLC ("Mira Mesa") holds title to

7  approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County,

8  California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds

9  an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

10      3.     The Entitlement Loan: In 2009, Mira Mesa borrowed the sum of $600,000 from

11  Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay

12  Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust

13  dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan,

14  Ronald and Gail Rubenstein and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit

15  Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could

16  complete certain requirements of the about-to-expire entitlements with respect to the Real Property.

17  The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009,

18  bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of

19  Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated

20  November 25, 2009 and recorded in the real estate records of San Diego County, California on

21  February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First

22  Deed of Trust is a first priority lien encumbering the Real Property.

23      4.     **Rice Medical Group's Interest.** Rice Medical Group is the beneficial owner and

24  holder of an interest in the Entitlement Loan.

25      5.     Current Status of Entitlement Loan. The Entitlement Loan matured on December 1,

26  2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of

27  principal, interest and all fees and charges) is $900,363.96.

28      6.     The Subordinated $6M Loan: There is also a second priority Deed of Trust

encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:79101.12 49666/001

DECLARATION OF BRUCE J. RICE
REGARDING MIRA MESA, LLC

of January 26, 2004 and was recorded in the real estate records of San Diego County, California on January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). Rice Medical Group owns a beneficial interest in the $6M Loan, as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) is $9,538,433.12.

7. <u>Prior Forbearance.</u> As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8. <u>Additional Funding For Entitlements.</u> I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **Rice Medical Group**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made available to fund the completion of the entitlements. Rice Medical Group understands that the

DECLARATION OF BRUCE J. RICE
REGARDING MIRA MESA, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1 | Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the
2 | Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen
3 | (18) months from and after the date that the amendments to the Entitlement Loan are fully executed,
4 | projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended
5 | Entitlement Loan will be consistent with the terms described in this declaration. The Amended
6 | Entitlement Loan will be nonrecourse. The rights of Rice Medical Group and the other Lenders
7 | under the Amended Entitlement Loan shall be enforceable only against the Real Property. The
8 | Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The
9 | Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier
10 | to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with
11 | the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

12 |      9.    <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders, (including,
13 | without limitation, Rice Medical Group), Fund I, and Fund III agree: to extend the November 1,
14 | 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is
15 | eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed,
16 | projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced
17 | under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and
18 | that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official
19 | Records as Document No. 2010-0066139.

20 |      10.    <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration
21 | and attached Term Sheet may be subject to approval by the United States Bankruptcy Court
22 | presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

24 |      I declare under penalty of perjury under the laws of the United States of America that the
25 | foregoing is true and correct.

26 |      Executed this _31_ day of January, 2013, at _Piedmont,_ California.

*[signature]*

DOCS_SF:79101.12 49666/001

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4.  Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5.  Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration.  Further, all monies expended on the Entitlements shall come from or be reimbursed from  the proceeds made available  pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements.  The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6.  Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7.  Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8. Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9. If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

DOCS_SF:79825.16 49666/0001



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

- Re-engage Consultant team ..... 30-45 days
- City Cycle Assessment ..... 57-60 days
- Traffic update ..... 60-90 days
- Complete Architectural drawings ..... 15-30 days
- Complete Engineering ..... 15-30 days
- Complete Planning ..... 15-30 days
- Complete Wastewater ..... 15-30 days
- Complete MSCP/Biology ..... 15-30 days
- Mapping ..... 15-30 days
- REA ..... 30-40 days
- Environmental Services ..... 15-20 days
- City Processing ..... 160-180 days
  - Cycle 5 submittal and response ..... 15-30 days
  - Cycle 6 submittal and response ..... 15-30 days
  - Cycle 7 submittal and response ..... 15-30 days
  - CEQA findings ..... 20-40 days
  - Public Notice ..... 28 -35 days
  - Response to public comments ..... 5-10 days
  - Final CEQA Doc ..... 10-15 days
  - Planning Commission schedule ..... 30 days
  - City Council schedule ..... 30-60 days
- Blackstone
  - Discussions ..... 60-90 days
  - Documentation ..... 60-90 days
- Water Ridge
  - Discussions ..... 60-90 days
  - Documentation ..... 60-90 days
- SDG&E Approval
  - Application Process ..... 90-120 days
  - 851 decision ..... 60-90 days

## DECLARATION OF PATRICIA A. RICE REGARDING 21 MIRA MESA LLC.

I, Patricia A. Rice, declare as follows:

1.  Declarant. I am one of two trustees of **the Rice Family Trust dtd April 4, 1990 ("the Rice Family Trust")** and am authorized on its behalf to make the representations set forth herein.

2.  Underlying Real Property. 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3.  The Entitlement Loan: In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein, and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4.  **The Rice Family Trust's Interest.** The Rice Family Trust is the beneficial owner and holder of an interest in the Entitlement Loan.

5.  Current Status of Entitlement Loan. The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6.  The Subordinated $6M Loan: There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  of January 26, 2004 and was recorded in the real estate records of San Diego County, California on

2  January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000

3  promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of

4  CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I

5  subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to

6  CMR Mortgage Fund III, LLC ("Fund III"). The Rice Family Trust owns a beneficial interest in the

7  $6M Loan as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008

8  and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all

9  principal, interest, fees and charges) is $9,538,433.12.

10       7.    Prior Forbearance. As a result of the default under the $6M Loan and because

11  additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements,

12  Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a

13  certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance

14  Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things,

15  (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the

16  amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan),

17  and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the

18  necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the

19  Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure

20  proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real

21  Property.

22       8.    Additional Funding For Entitlements. I have been advised that additional funds will

23  be required to complete the entitlement process for the Real Property. To accomplish this, some or

24  all of the Lenders, including **The Rice Family Trust**, are willing to lend Mira Mesa the additional

25  aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan

26  (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional

27  Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those

28  Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made

Case: 08-32220   Doc# 1209-7   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 58
of 78

available to fund the completion of the entitlements. The Rice Family Trust understands that the Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended Entitlement Loan will be consistent with the terms described in this declaration. The Amended Entitlement Loan will be nonrecourse. The rights of The Rice Family Trust and the other Lenders under the Amended Entitlement Loan shall be enforceable only against the Real Property. The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

9. <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders (including, without limitation, The Rice Family Trust), Fund I, and Fund III agree: to extend the November 1, 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed, projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official Records as Document No. 2010-0066139.

10. <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration and attached Term Sheet may be subject to approval by the United States Bankruptcy Court presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __28__ day of January, 2013, at _Laguna Beach_ California.

_Patricia A. Rice_, Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1.  California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

DOCS_SF:79825.16 49666/0001

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

Case: 08-32220   Doc# 1209-7   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 61 of 78

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~proceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8.  Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions  reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9.  If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process.  The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date.  Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

DOCS_SF:79825.16 49666/0001

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

| | |
|---|---|
| • Re-engage Consultant team | 30-45 days |
| • City Cycle Assessment | 57-60 days |
| • Traffic update | 60-90 days |
| • Complete Architectural drawings | 15-30 days |
| • Complete Engineering | 15-30 days |
| • Complete Planning | 15-30 days |
| • Complete Wastewater | 15-30 days |
| • Complete MSCP/Biology | 15-30 days |
| • Mapping | 15-30 days |
| • REA | 30-40 days |
| • Environmental Services | 15-20 days |
| • City Processing | 160-180 days |
|    o Cycle 5 submittal and response | 15-30 days |
|    o Cycle 6 submittal and response | 15-30 days |
|    o Cycle 7 submittal and response | 15-30 days |
|    o CEQA findings | 20-40 days |
|    o Public Notice | 28 -35 days |
|    o Response to public comments | 5-10 days |
|    o Final CEQA Doc | 10-15 days |
|    o Planning Commission schedule | 30 days |
|    o City Council schedule | 30-60 days |
| • Blackstone | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • Water Ridge | |
|    o Discussions | 60-90 days |
|    o Documentation | 60-90 days |
| • SDG&E Approval | |
|    o Application Process | 90-120 days |
|    o 851 decision | 60-90 days |

## DECLARATION OF CRAIG E. RICE REGARDING 21 MIRA MESA LLC.

I, Craig E. Rice, declare as follows:

1. <u>Declarant</u>. I am one of two trustees of <u>**the Rice Family Trust dtd April 4, 1990 ("the**</u> <u>**Rice Family Trust")**</u> and am authorized on its behalf to make the representations set forth herein.

2. <u>Underlying Real Property</u>. 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3. <u>The Entitlement Loan:</u> In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein, and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4. <u>**The Rice Family Trust's Interest**</u>. The Rice Family Trust is the beneficial owner and holder of an interest in the Entitlement Loan.

5. <u>Current Status of Entitlement Loan</u>. The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6. <u>The Subordinated $6M Loan:</u> There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 08-32220    Doc# 1209-7    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 68
of 78

of January 26, 2004 and was recorded in the real estate records of San Diego County, California on January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). The Rice Family Trust owns a beneficial interest in the $6M Loan, as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) is $9,538,433.12.

7.  Prior Forbearance. As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8.  Additional Funding For Entitlements. I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **The Rice Family Trust**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

available to fund the completion of the entitlements. The Rice Family Trust understands that the Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended Entitlement Loan will be consistent with the terms described in this declaration. The Amended Entitlement Loan will be nonrecourse. The rights of The Rice Family Trust and the other Lenders under the Amended Entitlement Loan shall be enforceable only against the Real Property. The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

9. <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders (including, without limitation, The Rice Family Trust), Fund I, and Fund III agree: to extend the November 1, 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed, projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official Records as Document No. 2010-0066139.

10. <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration and attached Term Sheet may be subject to approval by the United States Bankruptcy Court presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of January, 2013, at Laguna Beach California.

_Craig E. Rice_, Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

DOCS_SF:79825.16 49666/0001

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4.  Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5.  Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6.  Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8.  Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9.  If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

 Sentinel

Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed.  Note that this are estimated durations for individual tasks some of which will overlap.  These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

| | | |
|---|---|---|
| • | Re-engage Consultant team | 30-45 days |
| • | City Cycle Assessment | 57-60 days |
| • | Traffic update | 60-90 days |
| • | Complete Architectural drawings | 15-30 days |
| • | Complete Engineering | 15-30 days |
| • | Complete Planning | 15-30 days |
| • | Complete Wastewater | 15-30 days |
| • | Complete MSCP/Biology | 15-30 days |
| • | Mapping | 15-30 days |
| • | REA | 30-40 days |
| • | Environmental Services | 15-20 days |
| • | City Processing | 160-180 days |
| | ○ Cycle 5 submittal and response | 15-30 days |
| | ○ Cycle 6 submittal and response | 15-30 days |
| | ○ Cycle 7 submittal and response | 15-30 days |
| | ○ CEQA findings | 20-40 days |
| | ○ Public Notice | 28 -35 days |
| | ○ Response to public comments | 5-10 days |
| | ○ Final CEQA Doc | 10-15 days |
| | ○ Planning Commission schedule | 30 days |
| | ○ City Council schedule | 30-60 days |
| • | Blackstone | |
| | ○ Discussions | 60-90 days |
| | ○ Documentation | 60-90 days |
| • | Water Ridge | |
| | ○ Discussions | 60-90 days |
| | ○ Documentation | 60-90 days |
| • | SDG&E Approval | |
| | ○ Application Process | 90-120 days |
| | ○ 851 decision | 60-90 days |