PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# DECLARATION OF RONALD RUBENSTEIN, M.D. REGARDING 21 MIRA MESA LLC.

I, Ronald Rubenstein, M.D., declare as follows:

1.     <u>Declarant</u>. I am authorized to make the representations set forth herein.

2.     <u>Underlying Real Property</u>. 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3.     <u>The Entitlement Loan:</u> In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein, and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4.     **Ronald Rubenstein's Interest**. Ronald Rubenstein is the beneficial owner and holder of an interest in the Entitlement Loan.

5.     <u>Current Status of Entitlement Loan</u>. The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6.     <u>The Subordinated $6M Loan:</u> There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on

1  January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000
2  promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of
3  CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I
4  subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to
5  CMR Mortgage Fund III, LLC ("Fund III"). Ronald Rubenstein owns a beneficial interest in the
6  $6M Loan, as does Fund I and Fund III. No payments have been made on the $6M Loan since
7  2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all
8  principal, interest, fees and charges) is $9,538,433.12.
9      7.  Prior Forbearance. As a result of the default under the $6M Loan and because
10  additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements,
11  Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a
12  certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance
13  Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things,
14  (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the
15  amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan),
16  and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the
17  necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the
18  Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure
19  proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real
20  Property.
21      8.  Additional Funding For Entitlements. I have been advised that additional funds will
22  be required to complete the entitlement process for the Real Property. To accomplish this, some or
23  all of the Lenders, including **Ronald Rubenstein**, are willing to lend Mira Mesa the additional
24  aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan
25  (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional
26  Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those
27  Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made
28  available to fund the completion of the entitlements. Ronald Rubenstein understands that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 08-32220    Doc# 1209-8    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 2
of 46

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the

2  Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen

3  (18) months from and after the date that the amendments to the Entitlement Loan are fully executed,

4  projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended

5  Entitlement Loan will be consistent with the terms described in this declaration. The Amended

6  Entitlement Loan will be nonrecourse. The rights of Ronald Rubenstein and the other Lenders

7  under the Amended Entitlement Loan shall be enforceable only against the Real Property. The

8  Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The

9  Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier

10  to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with

11  the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

12         9.    <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders, (including,

13  without limitation, Ronald Rubenstein), Fund I, and Fund III agree: to extend the November 1, 2011

14  "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is

15  eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed,

16  projected to be  July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced

17  under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and

18  that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official

19  Records as Document No. 2010-0066139.

20         10.    <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration

21  and attached Term Sheet may be subject to approval by the United States Bankruptcy Court

22  presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

23        I declare under penalty of perjury under the laws of the United States of America that the

24  foregoing is true and correct.

25        Executed this __*10*__ day of January, 2013, at _San Leandro_, California.

26

27

28

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8.   Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions  reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9.   If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process.  The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date.  Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

DOCS_SF:79825.16 49666/0001



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that these are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

- Re-engage Consultant team — 30-45 days
- City Cycle Assessment — 57-60 days
- Traffic update — 60-90 days
- Complete Architectural drawings — 15-30 days
- Complete Engineering — 15-30 days
- Complete Planning — 15-30 days
- Complete Wastewater — 15-30 days
- Complete MSCP/Biology — 15-30 days
- Mapping — 15-30 days
- REA — 30-40 days
- Environmental Services — 15-20 days
- City Processing — 160-180 days
  - Cycle 5 submittal and response — 15-30 days
  - Cycle 6 submittal and response — 15-30 days
  - Cycle 7 submittal and response — 15-30 days
  - CEQA findings — 20-40 days
  - Public Notice — 28 -35 days
  - Response to public comments — 5-10 days
  - Final CEQA Doc — 10-15 days
  - Planning Commission schedule — 30 days
  - City Council schedule — 30-60 days
- Blackstone
  - Discussions — 60-90 days
  - Documentation — 60-90 days
- Water Ridge
  - Discussions — 60-90 days
  - Documentation — 60-90 days
- SDG&E Approval
  - Application Process — 90-120 days
  - 851 decision — 60-90 days

## DECLARATION OF GAIL RUBENSTEIN, M.D. REGARDING 21 MIRA MESA LLC.

I, Gail Rubenstein, M.D., declare as follows:

1. <u>Declarant.</u> I am authorized to make the representations set forth herein.

2. <u>Underlying Real Property.</u> 21 Mira Mesa, LLC ("Mira Mesa") holds title to approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County, California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

3. <u>The Entitlement Loan:</u> In 2009, Mira Mesa borrowed the sum of $600,000 from Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan, Ronald and Gail Rubenstein, and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could complete certain requirements of the about-to-expire entitlements with respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real Property.

4. **Gail Rubenstein's Interest.** Gail Rubenstein is the beneficial owner and holder of an interest in the Entitlement Loan.

5. <u>Current Status of Entitlement Loan.</u> The Entitlement Loan matured on December 1, 2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of principal, interest and all fees and charges) is $900,363.96.

6. <u>The Subordinated $6M Loan:</u> There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000

2  promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of

3  CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I

4  subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to

5  CMR Mortgage Fund III, LLC ("Fund III"). Gail Rubenstein owns a beneficial interest in the $6M

6  Loan, as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and

7  the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal,

8  interest, fees and charges) is $9,538,433.12.

9      7.     Prior Forbearance. As a result of the default under the $6M Loan and because

10  additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements,

11  Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a

12  certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance

13  Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things,

14  (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the

15  amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan),

16  and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the

17  necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the

18  Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure

19  proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real

20  Property.

21      8.     Additional Funding For Entitlements. I have been advised that additional funds will

22  be required to complete the entitlement process for the Real Property. To accomplish this, some or

23  all of the Lenders, including **Gail Rubenstein**, are willing to lend Mira Mesa the additional

24  aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan

25  (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional

26  Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those

27  Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised and made

28  available to fund the completion of the entitlements. Gail Rubenstein understands that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended Entitlement Loan will be consistent with the terms described in this declaration. The Amended Entitlement Loan will be nonrecourse. The rights of Gail Rubenstein and the other Lenders under the Amended Entitlement Loan shall be enforceable only against the Real Property. The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

9.    Extension of Forbearance and Amendment. Additionally, the Lenders (including, without limitation, Gail Rubenstein), Fund I, and Fund III agree: to extend the November 1, 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed, projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official Records as Document No. 2010-0066139.

10.    Court Approval. I understand that the matters that are the subject of this Declaration and attached Term Sheet may be subject to approval by the United States Bankruptcy Court presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of January, 2013, at _____, California.

_____

DOCS_SF:79101.12 49666/001

DECLARATION OF GAIL RUBENSTEIN
REGARDING MIRA MESA, LLC

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Case: 08-32220    Doc# 1209-8    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 15 of 46

Company. As such, Fund III has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees. The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate. In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement"). For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

DOCS_SF:79825.16 49666/0001

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

Case: 08-32220   Doc# 1209-8   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 18 of 46

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8. Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9. If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

### Schedule

| | |
|---|---|
| • Re-engage Consultant team | 30-45 days |
| • City Cycle Assessment | 57-60 days |
| • Traffic update | 60-90 days |
| • Complete Architectural drawings | 15-30 days |
| • Complete Engineering | 15-30 days |
| • Complete Planning | 15-30 days |
| • Complete Wastewater | 15-30 days |
| • Complete MSCP/Biology | 15-30 days |
| • Mapping | 15-30 days |
| • REA | 30-40 days |
| • Environmental Services | 15-20 days |
| • City Processing | 160-180 days |
|    ○ Cycle 5 submittal and response | 15-30 days |
|    ○ Cycle 6 submittal and response | 15-30 days |
|    ○ Cycle 7 submittal and response | 15-30 days |
|    ○ CEQA findings | 20-40 days |
|    ○ Public Notice | 28 -35 days |
|    ○ Response to public comments | 5-10 days |
|    ○ Final CEQA Doc | 10-15 days |
|    ○ Planning Commission schedule | 30 days |
|    ○ City Council schedule | 30-60 days |
| • Blackstone | |
|    ○ Discussions | 60-90 days |
|    ○ Documentation | 60-90 days |
| • Water Ridge | |
|    ○ Discussions | 60-90 days |
|    ○ Documentation | 60-90 days |
| • SDG&E Approval | |
|    ○ Application Process | 90-120 days |
|    ○ 851 decision | 60-90 days |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  **DECLARATION OF GARRY M. SAMUELS REGARDING 21 MIRA MESA LLC.**

2  I, Garry M. Samuels, declare as follows:

3  1.  Declarant. I am the Trustee of the **Garry M. Samuels 1998 Trust ("the Samuels**

4  **Trust")** and am authorized on its behalf to make the representations set forth herein.

5  2.  Underlying Real Property. 21 Mira Mesa, LLC ("Mira Mesa") holds title to

6  approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County,

7  California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds

8  an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

9  3.  The Entitlement Loan: In 2009, Mira Mesa borrowed the sum of $600,000 from

10  Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay

11  Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust

12  dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan,

13  Ronald and Gail Rubenstein, and the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit

14  Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), so that it could

15  complete certain requirements of the about-to-expire entitlements with respect to the Real Property.

16  The loan (the "Entitlement Loan") is evidenced by a Promissory Note, dated November 23, 2009,

17  bearing interest at the rate of 15% per annum. The Entitlement Loan is secured by a certain Deed of

18  Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement, dated

19  November 25, 2009 and recorded in the real estate records of San Diego County, California on

20  February 9, 2010, as Document No. 2010-0066138 (the "First Deed of Trust"). The lien of the First

21  Deed of Trust is a first priority lien encumbering the Real Property.

22  4.  **The Garry M. Samuels 1998 Trust's Interest**. The Garry M. Samuels 1998 Trust is

23  the beneficial owner and holder of an interest in the Entitlement Loan.

24  5.  Current Status of Entitlement Loan. The Entitlement Loan matured on December 1,

25  2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of

26  principal, interest and all fees and charges) is $900,363.96.

27  6.  The Subordinated $6M Loan: There is also a second priority Deed of Trust

28  encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as

of January 26, 2004 and was recorded in the real estate records of San Diego County, California on January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). The Garry M. Samuels 1998 Trust owns a beneficial interest in the $6M Loan, as does Fund I and Fund III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) is $9,538,433.12.

7. Prior Forbearance. As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000, to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), and (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lenders, Fund I and Fund III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8. Additional Funding For Entitlements. I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **The Garry M. Samuels 1998 Trust**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds, Frontier agrees, pursuant to the Amended Entitlement Loan, to contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000 is raised

DECLARATION OF GARRY M. SAMUELS
REGARDING MIRA MESA, LLC

Case: 08-32220   Doc# 1209-8   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 24
of 46

and made available to fund the completion of the entitlements. The Garry M. Samuels 1998 Trust understands that the Entitlement Loan and the related First Deed of Trust will be amended to reflect the loan of the Additional Funds, and to extend the maturity date of the Entitlement Loan to a date that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the Amended Entitlement Loan will be consistent with the terms described in this declaration. The Amended Entitlement Loan will be nonrecourse. The rights of The Garry M. Samuels 1998 Trust and the other Lenders under the Amended Entitlement Loan shall be enforceable only against the Real Property. The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier to pursue the entitlements for the Real Property to be negotiated and put in place concurrently with the execution and delivery of the documentation memorializing the Amended Entitlement Loan.

9. <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders (including, without limitation, The Garry M. Samuels 1998 Trust), Fund I, and Fund III agree: to extend the November 1, 2011 "Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed, projected to be July 31, 2014, and to re-subordinate the Junior Loan to all amounts to be advanced under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official Records as Document No. 2010-0066139.

10. <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration and attached Term Sheet may be subject to approval by the United States Bankruptcy Court presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Executed this 28th day of January, 2013, at Pleasinton, California.

_Garry M. Samuels_

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Company.  As such, Fund III   has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees.  The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate.  In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2. The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement").  For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3. Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

Case: 08-32220   Doc# 1209-8   Filed: 03/08/13   Entered: 03/08/13 12:57:02   Page 28 of 46

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8. Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9. If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.

DOCS_SF:79825.16 49666/0001



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

- Re-engage Consultant team                          30-45 days
- City Cycle Assessment                              57-60 days
- Traffic update                                     60-90 days
- Complete Architectural drawings                    15-30 days
- Complete Engineering                               15-30 days
- Complete Planning                                  15-30 days
- Complete Wastewater                                15-30 days
- Complete MSCP/Biology                              15-30 days
- Mapping                                            15-30 days
- REA                                                30-40 days
- Environmental Services                             15-20 days
- City Processing                                    160-180 days
  - Cycle 5 submittal and response                   15-30 days
  - Cycle 6 submittal and response                   15-30 days
  - Cycle 7 submittal and response                   15-30 days
  - CEQA findings                                     20-40 days
  - Public Notice                                     28 -35 days
  - Response to public comments                       5-10 days
  - Final CEQA Doc                                    10-15 days
  - Planning Commission schedule                      30 days
  - City Council schedule                             30-60 days
- Blackstone
  - Discussions                                       60-90 days
  - Documentation                                     60-90 days
- Water Ridge
  - Discussions                                       60-90 days
  - Documentation                                     60-90 days
- SDG&E Approval
  - Application Process                               90-120 days
  - 851 decision                                      60-90 days

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    **DECLARATION OF Minoo Sultan REGARDING 21 MIRA MESA LLC.**

2    I, Minoo Sultan, declare as follows:

3    1.    <u>Declarant</u>. I am the Trustee of the <u>**Sultan Trust dated April 15, 1994 ("Sultan**</u>

4    <u>**Trust")**</u> and am authorized on its behalf to make the representations set forth herein.

5    2.    <u>Underlying Real Property</u>. 21 Mira Mesa, LLC ("Mira Mesa") holds title to

6    approximately 14 acres of undeveloped land located on Mira Mesa Boulevard in San Diego County,

7    California (the "Real Property"). I understand that CMR Mortgage Fund II, LLC ("Fund II") holds

8    an approximate 41% membership interest in Mira Mesa as of November 1, 2012.

9    3.    <u>The Entitlement Loan</u>: In 2009, Mira Mesa borrowed the sum of $600,000 from

10    Frontier, the Rice Family Trust, dated April 4, 1990, the Garry M. Samuels 1998 Trust, East Bay

11    Head and Neck Surgery Medical Group Pension and Profit Sharing Fund, Inc., the Sultan Trust

12    dated April 15, 1994, Jason Hammerman and Julie Hammerman, TD CM Profit Sharing Plan,

13    Ronald and Gail Rubenstein, the Ronald Rubenstein, M.D. Corp. Employee Pension & Profit

14    Sharing Trust Account (collectively, the "Lenders" or individually, a "Lender"), including The

15    Sultan Trust, so that it could complete certain requirements of the about-to-expire entitlements with

16    respect to the Real Property. The loan (the "Entitlement Loan") is evidenced by a Promissory Note,

17    dated November 23, 2009, bearing interest at the rate of 15% per annum. The Entitlement Loan is

18    secured by a certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and

19    Fixture Financing Statement, dated November 25, 2009 and recorded in the real estate records of

20    San Diego County, California on February 9, 2010, as Document No. 2010-0066138 (the "First

21    Deed of Trust"). The lien of the First Deed of Trust is a first priority lien encumbering the Real

22    Property.

23    4.    <u>**The Sultan Trust's Interest**</u>. The Sultan Trust is the beneficial owner and holder of

24    an interest in the Entitlement Loan.

25    5.    <u>Current Status of Entitlement Loan</u>. The Entitlement Loan matured on December 1,

26    2011. As of November 1, 2012, the aggregate balance due under the Entitlement Loan (inclusive of

27    principal, interest and all fees and charges) is $900,363.96.

28

6.    <u>The Subordinated $6M Loan</u>: There is also a second priority Deed of Trust encumbering the Real Property (the "Junior Deed of Trust"). The Junior Deed of Trust is dated as of January 26, 2004 and was recorded in the real estate records of San Diego County, California on January 30, 2004, as Instrument No. 2004-0072699. The Junior Deed of Trust secures a $6,000,000 promissory note dated January 26, 2004 and executed by John Franklin Hein, as Trustee in favor of CMR Mortgage Fund, LLC ("Fund I") (the loan evidenced by such note, the "$6M Loan"). Fund I subsequently sold all but $275,000 of the beneficial interests in the original $6M Loan to the Lenders and to CMR Mortgage Fund III, LLC ("Fund III"). The Sultan Trust owns a beneficial interest in the $6M Loan as does Funds I and III. No payments have been made on the $6M Loan since 2008 and the aggregate amount outstanding thereunder as of November 1, 2012 (inclusive of all principal, interest, fees and charges) was $9,538,433.12.

7.    <u>Prior Forbearance.</u> As a result of the default under the $6M Loan and because additional funding was required to enable Mira Mesa to complete the about-to-expire entitlements, Mira Mesa, California Mortgage and Realty, Inc., the Lenders, Fund I and Fund III entered into a certain *Forbearance and Modification Agreement*, dated November 2009 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, the Lenders agreed to, among other things, (i) fund the costs of satisfying certain requirements of the then about-to-expire entitlements, in the amount of $600,000 to be secured by a priming first lien deed of trust (i.e., the Entitlement Loan), (ii) forbear from foreclosing the Junior Deed of Trust on account of the failure to make the necessary monthly payments due under the $6M Loan. Under the Forbearance Agreement, the Lenders and Funds I and III agreed that they would forbear from commencing foreclosure proceedings until November 1, 2011 to allow Mira Mesa to entitle, dispose of or refinance the Real Property.

8.    <u>Additional Funding For Entitlements.</u> I have been advised that additional funds will be required to complete the entitlement process for the Real Property. To accomplish this, some or all of the Lenders, including **The Sultan Trust**, are willing to lend Mira Mesa the additional aggregate amount of $580,000 (the "Additional Funds") pursuant to the Amended Entitlement Loan (defined below). To the extent that any Lender(s) does not contribute any portion of the Additional Funds, Frontier Ridge Global Fund, LP agrees, pursuant to the Amended Entitlement Loan, to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

contribute that/those Lender's share(s) of the Additional Funds to ensure that no less than $580,000
is raised and made available to fund the completion of the entitlements. The Sultan Trust
understands that the Entitlement Loan and the related First Deed of Trust will be amended to reflect
the loan of the Additional Funds and, to extend the maturity date of the Entitlement Loan to a date
that is eighteen (18) months from and after the date that the amendments to the Entitlement Loan are
fully executed, projected to be July 31, 2014, (the "Amended Entitlement Loan"). The terms of the
Amended Entitlement Loan will be consistent with the terms described in this declaration. The
Amended Entitlement Loan will be nonrecourse. The rights of The Sultan Trust and the other
Lenders under the Amended Entitlement Loan shall be enforceable only against the Real Property.
The Amended Entitlement Loan shall continue to accrue interest at the non-default rate of 15%. The
Term Sheet attached as Exhibit "A" to this Declaration describes an arrangement allowing Frontier
Ridge Global Fund, LP to pursue the entitlements for the Real Property to be negotiated and put in
place concurrently with the execution and delivery of the documentation memorializing the
Amended Entitlement Loan.

9.  <u>Extension of Forbearance and Amendment</u>. Additionally, the Lenders, (including,
without limitation, The Sultan Trust), Fund I, and Fund III, agree: to extend the November 1, 2011
"Termination Date" (as such term is defined in the Forbearance Agreement) to the date that is
eighteen (18) months from and after the date that the Amended Entitlement Loan is fully executed,
projected to be July 31, 2014 and to re-subordinate the Junior Loan to all amounts to be advanced
under the Amended Entitlement Loan pursuant to an amendment to the Forbearance Agreement and
that certain Subordination Agreement dated as of November 25, 2009 and recorded in the Official
Records as Document No. 2010-0066139.

10.  <u>Court Approval</u>. I understand that the matters that are the subject of this Declaration
and attached Term Sheet, may be subject to approval by the United States Bankruptcy Court
presiding over Fund II's and its affiliates' chapter 11 bankruptcy case.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Executed this _____ day of December, 2012, at _____, California.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TERM SHEET[1]

This Term Sheet is non-binding and is intended to form the basis for potential negotiation of a mutually-acceptable definitive agreement or agreements with respect to the matters set forth herein ("Definitive Agreement"). Unless and until a Definitive Agreement is executed, no party mentioned herein or their representatives will be under any legal obligation. This Term Sheet is intended to include only a summary of certain key terms of the Definitive Agreement and is not intended to be exhaustive in any respect.

Richard M. Kipperman, solely in his capacity as the duly appointed Chapter 11 Trustee ("Trustee") in the substantively consolidated cases of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtors") is prepared to retain Frontier Ridge Global Fund, L.P. ("Frontier") to obtain and complete certain entitlements for the Real Property in an effort to maximize the value of the Real Property. The entitlements that are the subject of this Term Sheet involve procuring all applicable governmental and other agency and third party approvals necessary to enable Mira Mesa to immediately proceed to construct and develop three Class A office buildings totaling 540,000 square feet on the Real Property, as proposed by and in accordance with the application for the Mira Sorrento project (PTS#162742) that was submitted to the City of San Diego on August 26, 2008 (the "Entitlements"). In furtherance of this objective:

1. California Mortgage and Realty, Inc. has resigned as the Manager of Mira Mesa (which entity is also referred to herein as the "Company"). Pursuant to the *Action By Written Consent of the Majority Interest of Members of 21 Mira Mesa, LLC*, CMR Mortgage Fund III, LLC (the "Fund III") has been appointed as the successor Manager of the

---

[1] All capitalized terms not defined herein shall have the definitions ascribed to them in the attached Declaration.

Case: 08-32220    Doc# 1209-8    Filed: 03/08/13    Entered: 03/08/13 12:57:02    Page 39 of 46

Company.  As such, Fund III   has assumed the duties and obligations as Manager of the Company, and has agreed to waive all past and future management fees.  The Lenders expressly acknowledge that the Trustee is entering into the transactions contemplated herein solely in his capacity as Chapter 11 Trustee for Debtors' bankruptcy estate.  In the event of any default in the performance of the Trustee's or the Debtors' bankruptcy estate's obligations under the Definitive Agreement or in the event that any other claim is asserted against the Trustee or Debtors' bankruptcy estate in connection with the Definitive Agreement or the transaction contemplated herein, under no circumstances shall the Trustee have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Frontier and the Lenders' sole recourse, if any, in such event shall be to the assets of the Debtors' bankruptcy estate.

2.   The Trustee, on behalf of Fund III as Manager of the Company shall retain Frontier as agent for the Company for the purposes of pursuing and completing the Entitlements pursuant to an agreement mutually satisfactory to the Trustee and Frontier ("Development Agreement").  For the avoidance of doubt, the Company's obligations in furtherance of the procurement of the Entitlements will not include any obligation to incur any material liability not contemplated by the scope of the Entitlements, become involved in any litigation relating to the Entitlements or incur any expenses not funded out of the proceeds from the Amended Entitlement Loan.

3.   Frontier shall have full authority to obtain the Entitlements as the Company's agent, so long as such actions are consistent with the objectives of obtaining the Entitlements in the time frame set forth herein, and to sign all documents, applications, attend hearings

DOCS_SF:79825.16 49666/0001

and otherwise act on behalf of the Company in pursuit of the Entitlements. Notwithstanding the ~~preceeding~~preceding sentence (or anything else to the contrary), Frontier shall not be authorized to obtain on the Company's behalf or bind the Company to any entitlements materially different than the Entitlements and Frontier shall be liable to the Company (and indemnify, defend and hold harmless the Company from and against any loss, cost, expense or liability arising out of or in connection with) for Frontier's willful misconduct or gross negligence in connection with Frontier's pursuit of the Entitlements (except as further limited below in Sections 7 and 9).

4. Frontier may, without in any way limiting Frontier's liability or obligations to the Company, subcontract, delegate, retain consultants, or otherwise assign its duties under the Development Agreement in furtherance of obtaining the Entitlements.

5. Pursuant to the Development Agreement, Frontier shall coordinate obtaining additional funding for the Entitlements from the Lenders, however, all such amounts and all disbursements of such funds shall be pursuant to the amendments to and/or modifications of the Amended Entitlement Loan referenced in paragraph 8 of the Frontier Declaration. Further, all monies expended on the Entitlements shall come from or be reimbursed from the proceeds made available pursuant to the Amended Entitlement Loan, and Frontier shall have no obligation under the Development Agreement to fund any costs in connection with obtaining the Entitlements. The parties hereto anticipate that the Amended Entitlement Loan and the Development Agreement will be finalized, if at all, concurrently.

6. Pursuant to the Development Agreement, Trustee, acting on behalf of Fund III as Manager of the Company, shall fully cooperate with Frontier in obtaining the

Entitlements, in the event such further cooperation from the Trustee is necessary. Such cooperation shall include, without limitation, promptly executing all applications, documents, licenses, and authorizations in furtherance of the Entitlements no later than five (5) calendar days from the date Frontier submits the same to the Trustee for execution, subject to Trustee's reasonable comments, if any, provided that such comments will not unreasonably delay, frustrate, or obstruct Frontier from obtaining the Entitlements. In the event the Trustee (acting on behalf of Fund III as Manager of the Company) fails to execute such items within such five (5) calendar day period and has not indicated any objections to executing such items, the Trustee shall be deemed to have approved such item, and Frontier shall be authorized to execute the same on the Company's behalf provided that such documents are in furtherance of the Entitlements; provided, however, in the event that the Trustee does reasonably object in writing during such five (5) day period, Frontier shall not have the authority to (and shall not) execute any such documents.

7. Frontier shall use commercially reasonable efforts to complete the Entitlement Process no later than a date that is at least 30 days prior to the extension of the forbearance deadline which is projected to be July 31, 2014 ("Entitlement Date") and to pursue the Entitlements approximately on the time-line as set forth on Schedule 1 attached hereto. Notwithstanding the preceding sentence, Frontier, its subcontractors, agents, and/or assignees ("Frontier Parties"), shall incur no liability to the Trustee, the Debtors, the Company, or any of their respective affiliates, members, investors, assignees, shareholders, partners, or limited partners (collectively, "Company Parties") in the event the Frontier Parties fail to achieve any incremental Entitlement on or before the

dates set forth on Schedule 1 to the extent they have not engaged in any acts of willful misconduct or gross negligence, and, except for Frontier's failure to obtain the Entitlements by the Entitlement Date or willful misconduct or gross negligence on the part of Frontier or any Frontier Party, the Trustee shall have no right to remove Frontier as the agent of the Company or terminate the Development Agreement in the event the milestones on Schedule 1 are not achieved or not achieved on the dates set forth on Schedule 1.

8. Pursuant to the Development Agreement, Frontier shall also retain licensed real estate brokers to market and sell the Real Property at a price and on other terms and conditions reasonably satisfactory to the Trustee (the "Sale Process"), which shall include, without limitation, a condition relating to obtaining Bankruptcy Court approval of any such transaction in the Debtors' bankruptcy case

9. If the Entitlements are not obtained on or before Entitlement Date, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, the Trustee's sole recourse shall be to terminate the Development Agreement and to resume full responsibility, control and oversight over the Entitlements and the Sale Process. The Frontier Parties shall, in the absence of any gross negligence or willful misconduct on the part of Frontier or any Frontier Party, incur no liability to the Company Parties in the event the Frontier Parties fail to obtain the Entitlements on or before the Entitlement Date. Further, in the event the Additional Funds are not raised and made available to the Company to fund the completion of the Entitlements either before or upon Bankruptcy Court approval of the transactions contemplated herein,

either Frontier or the Trustee may terminate the Development Agreement immediately by written notice to the other.

10. Except for the Amended Entitlement Loan or as otherwise stated in the Development Agreement, Frontier shall not have the authority to incur any debt on behalf of the Company, or to cause the Company to sell, transfer or encumber the Real Property without the prior written consent of the Trustee (which consent the Trustee shall have the right to grant or withhold in his sole but reasonable discretion).

11. Frontier will provide the Trustee with monthly progress reports no later than the 20th day following the end of each month, commencing on the first month after the full execution of the Development Agreement, describing the status of the Entitlements and containing, at minimum, the following information: (i) the specific items of entitlement work that were undertaken (and completed, if applicable) in that month and the names of the professionals who performed such work as well as a schedule of upcoming entitlement work that is contemplated, (ii) a breakdown of the fees and expenses incurred during such period and the individual or entity who are to receive payment for such services, and (iii) any other information that would reasonably be considered useful to the Trustee in assessing the progress of the Entitlements and the current value of the Real Property.

12. In addition to the monthly reporting requirement described above, Frontier shall promptly advise the Trustee if anyone has expressed an interest in acquiring the Real Property or if Frontier has been presented with an offer for the purchase of the Real Property. Frontier shall provide the Trustee with the name(s) of any party(ies) who

has expressed an interest in acquiring the Real Property and copies of any written offers (or a written summary of any oral offers) that may have been presented to Frontier.



Date: March 8, 2013
Client: 21 Mira Mesa, LLC
To: Eric Clapp & Teri Ferguson
RE: Project Entitlement Schedule
From: Colby Durnin

Please see the schedule below, this is an updated schedule from August 22, 2012, as of now we will need to update our Traffic and SanDag models as too much time has passed. Note that this are estimated durations for individual tasks some of which will overlap. These durations are based on working days and will not commence until Sentinel has received written authorization to proceed and knowledge that the development budget is approved and funded, and is only valid assume we have full approval to start in March of 2013.

## Schedule

- Re-engage Consultant team                    30-45 days
- City Cycle Assessment                         57-60 days
- Traffic update                                60-90 days
- Complete Architectural drawings               15-30 days
- Complete Engineering                          15-30 days
- Complete Planning                             15-30 days
- Complete Wastewater                           15-30 days
- Complete MSCP/Biology                         15-30 days
- Mapping                                       15-30 days
- REA                                           30-40 days
- Environmental Services                        15-20 days
- City Processing                               160-180 days
  - Cycle 5 submittal and response              15-30 days
  - Cycle 6 submittal and response              15-30 days
  - Cycle 7 submittal and response              15-30 days
  - CEQA findings                               20-40 days
  - Public Notice                               28 -35 days
  - Response to public comments                 5-10 days
  - Final CEQA Doc                              10-15 days
  - Planning Commission schedule                30 days
  - City Council schedule                       30-60 days
- Blackstone
  - Discussions                                 60-90 days
  - Documentation                               60-90 days
- Water Ridge
  - Discussions                                 60-90 days
  - Documentation                               60-90 days
- SDG&E Approval
  - Application Process                         90-120 days
  - 851 decision                                60-90 days