David M. Bertenthal (CA Bar No. 167624)
Maxim B. Litvak (CA Bar No. 215852)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail:dbertenthal@pszjlaw.com
        mlitvak@pszjlaw.com
        mmanning@pszjlaw.com

Counsel for Richard M Kipperman,
Chapter 11 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>Debtors. | Case No.: 08-32220-TEC<br>09-30788-TEC<br>09-30802-TEC<br><br>Substantively Consolidated<br><br>Chapter 11<br><br>**THIRD INTERIM APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD NOVEMBER 1, 2012 THROUGH JUNE 30, 2013**<br><br>Date:    September 16, 2013<br>Time:    9:30 AM<br>Place:   United States Bankruptcy Court<br>        235 Pine Street, Courtroom 23<br>        San Francisco, CA<br>Judge:  Honorable Thomas E. Carlson |

Pachulski Stang Ziehl & Jones LLP ("PSZ&J" or the "Firm") hereby submits its Third

Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses

for the period November 1, 2012 through and including June 30, 2013 (the "Application"), in

connection with its representation of Richard M Kipperman, the duly appointed Chapter 11 Trustee

(the "Trustee") for the above-captioned debtors.  The Firm seeks interim approval of compensation

totaling $184,091.00, which sum represents compensation for services rendered in the amount of $172,189.50 and reimbursement for expenses incurred in the amount of $11,901.50 for the period commencing on November 1, 2012, and ending on June 30, 2013 (the "<u>Application Period</u>").[1]

Summary charts detailing (i) the amount of fees charged and hours worked by each of the Firm's professionals and para-professionals during the Application Period, and (ii) the amounts requested by the Firm for reimbursement of expenses incurred (by category) during the Application Period are annexed hereto as **Exhibit A**.

PSZ&J submits this Application pursuant to sections 330 and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* ("<u>Northern District Guidelines</u>"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, and the Local Bankruptcy Rules for the Northern District of California.

The Application is based upon the Application and the exhibits, including the declaration of David M. Bertenthal filed concurrently herewith, the pleadings, papers, and records on file in this case, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

# I.

# <u>INTRODUCTION</u>

## A.    <u>Background</u>

CMR Mortgage Fund, LLC ("<u>Fund I</u>") filed a voluntary chapter 11 petition in this Court on November 19, 2008 as Case No. 08-32220.  On March 31, 2009, CMR Mortgage Fund II, LLC ("<u>Fund II</u>") filed a voluntary chapter 11 petition in this Court as Case No. 09-30788, and CMR Mortgage Fund III, LLC ("<u>Fund III</u>") filed a voluntary chapter 11 petition in this Court as Case No. 09-30802.  Fund I, Fund II and Fund III are collectively referred to herein as the "<u>Debtors</u>."

On April 7, 2011, the Court substantively consolidated the Debtors' cases, and ordered the appointment of a chapter 11 trustee in the Debtors' cases.

---

[1] The Firm has voluntarily written off in excess of $27,000 of fees and expenses during the Application Period.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On April 13, 2011, the Office of the United States Trustee filed a motion to appoint the Trustee as chapter 11 trustee for the Debtors' cases. By order dated April 14, 2011, the Trustee was appointed as chapter 11 trustee of the Debtors' cases, which are now treated as a single case.

**B.** **Employment of PSZ&J**

PSZ&J is a law firm with offices in San Francisco and Los Angeles, California, Wilmington, Delaware, and New York, New York. The Firm currently employs approximately 65 attorneys and specializes in business reorganizations, bankruptcy, commercial law, and litigation. The order approving PSZ&J's employment as counsel to the Trustee, effective April 14, 2011, was entered on May 3, 2011, a copy of which is attached hereto as **Exhibit B**.

**C.** **First Interim Fee Application**

On May 21, 2012, the Firm filed its *First Interim Application of Pachulski Stang Ziehl & Jones LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period April 15, 2011 through December 31, 2011* (the "First Interim Fee Application") [Docket No. 1013]. Pursuant to the First Interim Fee Application, the Firm sought interim approval of $337,664.39, consisting of $321,151.50 in compensation for professional services rendered and $16,512.89 in reimbursement for expenses incurred.

On June 11, 2012, the Court entered an order granting the First Interim Fee Application and authorizing payment to the Firm of all unpaid amounts due under the First Interim Fee Application (the "First Interim Fee Order") [Docket No. 1040]. The Trustee subsequently paid the Firm for all amounts allowed under the First Interim Fee Order.

**D.** **Second Interim Fee Application**

On January 29, 2013, the Firm filed its *Second Interim Application of Pachulski Stang Ziehl & Jones LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period January 1, 2012 through October 31, 2012* (the "Second Interim Fee Application") [Docket No. 1141]. Pursuant to the Second Interim Fee Application, the Firm sought interim approval of $345,835.59, consisting of $331,957.00 in compensation for professional services rendered and $13,878.59 in reimbursement for expenses incurred.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On February 19, 2013, the Court entered an order granting the Second Interim Fee Application and authorizing payment to the Firm of all unpaid amounts due under the Second Interim Fee Application (the "Second Interim Fee Order") [Docket No. 1182]. The Trustee subsequently paid the Firm $270,737.07, leaving $75,098.52 payable under the Second Interim Fee Order.

Aside from the First Interim Fee Application, the Second Interim Fee Application and the instant Application, the Firm has not made any other requests for payment in this case.

II.

**PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED**

In accordance with the Northern District Guidelines and the Local Rules, PSZ&J classified all services performed for which compensation is sought into categories. PSZ&J attempted to place the services performed in the category that best relates to the service provided. However, because certain services in the Debtor's chapter 11 case affected multiple categories, services pertaining to one category may occasionally be included in another category. PSZ&J has established the following billing categories relevant to this Application:

- Asset Analysis
- Asset Disposition
- Bankruptcy Litigation
- Case Administration
- Claims Analysis/Administration
- Compensation of Professionals
- Compensation of Professionals (Others)
- Financial Filings
- Financing
- General Business Advice
- Stay Litigation

**Exhibit C** provides a detailed breakdown of the time entries and expenses incurred during the Application Period.

A. **Asset Analysis**

Time billed to this category relates to the Firm's continuing efforts in assisting the Trustee in analyzing and maximizing the value of the various assets of the Debtors' estate, including real property interests, guaranty claims, and potential litigation causes of action. Many of the Debtors'

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

real property interests are complex. The Trustee continues to devote significant time to administering such interests and implementing a process for maximizing the value thereof. The Firm assisted in this effort from a legal perspective. Also included in this category is time spent on the settlement negotiations referenced in "Bankruptcy Litigation" below.

**Total Hours 18.30/Total Fees $12,677.50**

**B.** **Asset Disposition**

Time billed to this category relates primarily to the Firm's efforts to negotiate, document, and obtain Court approval of various asset dispositions, including the sale of certain real property interests.

Sale of Dyer Property. In particular the Firm assisted the Trustee with documenting and seeking Court approval of his consent to the sale of 7,130 acres of undeveloped real property and timberlands commonly referred to as the "Dyer Property" located in Lassen and Plumas Counties, California for the sum of $17,165,000 on an "as-is" basis and subject to certain terms and conditions set forth in a *Timberlands Purchase and Sale Agreement*, dated May 13, 2013 (the "Sale"). The proposed sale is a short-sale as it would not provide payment in full to the holders of the notes secured by the Dyer Property. The proposed short-Sale is expected to provide over $640,000 to the Estates on account of their interest in a Junior Note, as described below.

Title to the Dyer Property is held in Dyer Management LLC, an entity in which the Debtors hold a membership interest but which the Trustee or Debtors do not control or manage. The Debtors also hold a 55% interest in a junior note secured by the Dyer Property in the principal amount of $10,000,000 (the "Junior Note").

In June 2013, senior lenders who had an interest in a senior note secured by the Dyer Property obtained an *Order Granting Motion For Relief From The Automatic Stay (Dyer Mountain Property)*, authorizing them to enforce their rights and remedies to the Dyer Property. Despite obtaining relief from the automatic stay, the senior lenders consented to the proposed Sale and a Senior Release Agreement that was drafted by the Firm. The Senior Release Agreement provided, among other things, that the senior lenders would receive less than the full amount owing on their senior note and would provide the Estates with a release of any and all claims related to the senior

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  loan and the Dyer Property, including a waiver of any claims arising under that certain Amended and

2  Restated Standstill Agreement (the "Standstill Agreement") as it related to the Dyer Property.  The

3  Standstill Agreement required the some of the Debtors to  make payments, up to a maximum of $5.1

4  million dollars, to certain third parties out of any proceeds that the Debtors received on account of

5  the Junior Note in the context of a sale or refinance of the Dyer Property. However, by virtue of the

6  Senior Release Agreement, the Debtors obtained a release of all obligations under the Standstill

7  Agreement thereby preserving any value from the Sale for the benefit of creditors.

8          In addition to the releases provided by the Senior Release Agreement, the Firm also drafted

9  and  assisted the Trustee with negotiations of a Junior Release Agreement which reflected the

10  Trustee's consent to the pending sale subject to certain conditions including that the Estates receive

11  approximately $640,000 from the sale of the Dyer Property and obtain a release of all claims

12  associated with the Dyer Property and the Junior Note.

13          The Firm negotiated extensively with the manager of the Dyer Property, the senior lenders,

14  the junior lenders and other parties in an effort to maximize the value to the Estates from the sale of

15  the Dyer Property.  Upon receiving all of the necessary signatures to both the Senior Release and the

16  Junior Release Agreements, the Firm prepared and filed a motion seeking approval of the Trustee's

17  consent to the sale of the Dyer Property on the terms set forth in the sale agreement and the two

18  release agreements.  The hearing on the motion is set for August 30, 2013.  Although the Dyer

19  Property was believed to have no value to the Estates as a result of the *Order Granting Motion For*

20  *Relief From The Automatic Stay (Dyer Mountain Property)* and Standstill Agreement, the Trustee's

21  consent to the Sale is expected to generate substantial value to the Estates.

**Total Hours 47.30/Total Fees $32,443.00**

23  **C.**     **Bankruptcy Litigation**

24          A substantial portion of the Firm's time during the Application Period was devoted to

25  assisting the Trustee in connection with negotiating and documenting a settlement involving the

26  class action matter.   The Firm worked with others to draft an *Agreement Regarding Defense Cost*

27  *Set Aside,* dated May 2013 (the "Agreement") by and between the Trustee, counsel to the Class

28  Plaintiffs (defined below), Indian Harbor Insurance Company ("Indian Harbor") and defendants,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

California Mortgage and Realty, Inc. and David Choo. The Firm drafted and negotiated the terms of a settlement agreement that arose out of an earlier Court approved settlement of a class and derivative lawsuit (the "Class and Derivative Action") which resulted in, among other things, the release of the remaining limits of a certain D&O insurance policy issued by Indian Harbor (the "Policy") to the Trustee and the Class Plaintiffs in accordance with a certain Plan of Allocation. As part of that settlement, portion of the settlement proceeds, in the amount of $2,115,000 ("Defense Reserve"), were held back as a defense reserve of coverage for the Defendants relating to a governmental investigation of the Defendants.

Since settlement of the Class and Derivate Action, the parties have negotiated a consensual reduction in the size of the Defense Reserve and reduced the length of the hold-back for the remaining balance of the Defense Reserve. To memorialize the arrangement, the parties have negotiated an *Agreement Regarding Defense Cost Set Aside*. The Firm has also prepared a motion pursuant to Bankruptcy Rule 9019 seeking approval of the Agreement. The Trustee expects that the motion will be filed forthwith.

**Total Hours 70.70/Total Fees $49,533.50**

**D.    Case Administration**

Time billed to this category primarily relates to miscellaneous case matters that are not easily classified within any other specific categories, including such items as communicating with the Trustee and his staff, the Equity Committee and its professionals, and creditors, investors and other parties in interest; analyzing case documents and correspondence; and miscellaneous legal research.

**Total Hours 20.80/Total Fees $13,172.00**

**E.    Claims Analysis/Objection**

Time billed to this category relates to the review and analysis of various claims filed against the Debtors' estates.

**Total Hours 0.30/Total Fees $247.50**

**F.    Compensation of Professionals**

Time billed to this category (and the next category referenced below) relates to the preparation of the Firm's second and third interim fee applications, plus coordination with other professionals in this case and review of other professionals' fee applications.

**Total Hours 20.20/Total Fees $10,215.50**

**G.** **Compensation of Professionals (Others)**

Time billed to this category also relates to the Firm's coordination and review with other estate professionals as to their respective fee requests.

**Total Hours 6.30/Total Fees $4,845.50**

**H.** **Financial Filings**

Time billed to this category relates to the review and analysis of the Debtors' monthly operating reports.

**Total Hours 6.70/Total Fees $3,255.50**

**I.** **Financing**

Time billed to this category relates to the Firm's review and analysis of financing issues relating to the Debtors' interests in approximately 15 acres of undeveloped real property located in San Diego County, referred to as the Mira Mesa property. Prior to the appointment of the Trustee, the Debtors began a process to obtain entitlements for the Mira Mesa Property which were envisioned to permit, among other things, development of 540,000 square feet of Class "A" office space on the Property (the "Entitlements"). The Trustee understands that the proposed commercial use of the Property is the best use of the Property in that it is expected to yield the highest return to investors and lenders alike. The Debtors own an equity interest in 21 Mira Mesa, LLC ("Mira Mesa") the entity that holds title to the Mira Mesa Property as well as an interest in a certain junior note secured by the Mira Mesa Property. The Mira Mesa Property is also encumbered by a senior note that was procured by the Debtors for the purpose of obtaining the Entitlements. Those Entitlements were not completed by the time of the Trustee's appointment and pursuant to the terms of a certain *Forbearance and Modification Agreement*, the Debtors had until 2011 to complete the Entitlements.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

In order to complete the Entitlement process and thereby potentially increase the value of the Mira Mesa Property, the Firm assisted the Trustee with negotiating with the senior lenders to continue to forbear from foreclosing so that the Entitlements could be completed. The Firm negotiated a term sheet with the developer who agreed to complete the Entitlements and communicated with each investor who held an interest in the senior note (and who had agreed to fund the completion of the Entitlements). The Firm thereafter prepared a motion for authority pursuant to 11 U.S.C. §§ 105, 363(b) and Bankruptcy Rule 9019, authorizing Mira Mesa to incur $580,000 in additional funding to complete the Entitlements, to document the additional funding consistent with the terms of the existing Entitlement Loan and related senior deed of trust, to extend the termination date set forth in the *Forbearance and Modification Agreement*, to re-subordinate the junior note to the additional funding, and to enter into a development agreement providing for the management of the entitlement process. The Firm obtained Court approval of the proposed transactions in April 2013 and thereafter continued to work with the developer to revise and finalize the terms of an Omnibus Agreement Regarding Loan Modification and Amendment to Forbearance, Escrow Agreement, Development Agreement and related loan documentation. The documents are expected to be finalized shortly.

**Total Hours 40.30/Total Fees $27,146.00**

**J.** **General Business Advice**

Time billed to this category relates to the analysis and discussions regarding the transition of managers for several properties.

**Total Hours 6.20/Total Fees $4,797.00**

**K.**      <u>Stay Litigation</u>

Time billed to this category primarily relates to the Firm's review, analysis and handling of various stay relief motions filed in the case, including a motion relating to the Debtor's interests in the Dyer Property. The Firm filed an objection to the motion and appeared at the hearing on the relief from stay matter. The Firm also reviewed and analyzed a stay relief motion relating to real property located at 353 Grand Avenue, Oakland, California, commonly referred to as the "Liberty" property.

**Total Hours 18.50/Total Fees $13,856.50**

**L.**      <u>List of Expenses by Category</u>

PSZ&J advanced costs, including certain in-house charges, on behalf of the Trustee in connection with the performance of the services described in this Application. During the Application Period, PSZ&J incurred a total of $11,901.50 in expenses. PSZ&J made every effort to keep the costs in this case to a minimum.

PSZ&J customarily charges $0.20 per page for photocopying expenses and $0.10 per page for scanning and printing charges. PSZ&J's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZ&J summarizes each client's photocopying charges on a daily basis. Whenever feasible, PSZ&J sends large copying projects to an outside copy service that charges a reduced rate for photocopying.

Ordinarily, PSZ&J charges $1.00 per page for out-going facsimile transmissions. Pursuant to the Northern District Fee Guidelines, however, PSZ&J has agreed not to charge for outgoing facsimiles. Fax receipts are charged at $0.20 per page, the same cost as PSZ&J charges for photocopies.

PSZ&J does not charge for local or long distance calls placed by attorneys from their offices. PSZ&J only bills its clients for the actual costs charged to PSZ&J by teleconferencing services in the event that a multiple party teleconference is initiated through PSZ&J.

Regarding providers of on-line legal research (e.g., LEXIS and Westlaw), PSZ&J charges the standard usage rates these providers charge for computerized legal research. PSZ&J bills its clients

the actual amount charged by such services, with no premium. Any volume discount received by PSZ&J is passed on to the client.

**M.**   **Hourly Rates**

The hourly rates of all professionals and paraprofessionals rendering services in this case are set forth on the Billing Summary Chart on **Exhibit A** hereto.

**N.**   **Professionals and Paraprofessionals**

The biographies of the principal attorneys who have worked on this matter and a description of their professional education and biographies during the Application Period are attached hereto as **Exhibit D**.

**O.**   **Client Review of Billing Statements**

Pursuant to the Northern District Guidelines, a cover letter to the Application is being sent to the Trustee concurrently with the filing of this Application. The letter invites the Trustee to discuss with the Firm and/or the Office of the United States Trustee any objections, concerns, or questions the Trustee may have with regard to the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit E**.

**P.**   **Notice of Application and Hearing**

A copy of this Application will be served upon the Trustee, the Office of the United States Trustee, and parties who have requested to receive notices in this case. Notice of the Application and the hearing thereon will be provided to the foregoing parties, plus all creditors of this estate in accordance with Bankruptcy Rule 2002(a).

**III.**

**THE FIRM'S FEES AND EXPENSES SHOULD BE ALLOWED**

**BASED UPON APPLICABLE LAW**

The fees and expenses requested by this Application are an appropriate award for PSZ&J's services as counsel to the Trustee.

**A.**   **Evaluation of Requests for Compensation**

Pursuant to Bankruptcy Code section 330, the Court may award to a professional person reasonable compensation for actual, necessary services rendered, and reimbursement for actual,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

necessary expenses incurred. Pursuant to Bankruptcy Code section 331, the Court may award interim compensation and reimbursement to a professional. As set forth above, the fees for which the Firm requests compensation and the costs incurred for which the Firm requests reimbursement are for actual and necessary services rendered and costs incurred.

In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske* (*In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988).

In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F.2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases.).

The time for which compensation is sought is detailed in the Firm's professional fee statements contained in the exhibits hereto. PSZ&J's services and time expenditures are reasonable in light of the labor required in this case. The Firm's charges for its professional services are based upon the time, nature, extent, and value of such services and the cost of comparable services in the San Francisco area, other than in a case under the Bankruptcy Code. The compensation the Firm seeks by way of this Application is the customary compensation sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**B.** **Section 330(a)(3) Factors**

Bankruptcy Code section 330(a)(3) sets forth five (5) factors to be considered by the Court. 11 U.S.C. § 330 (a)(3). Although several of these factors (such as the time involved, the timeliness of PSZ&J's performance, and the complexity of the case) were addressed above, PSZ&J believes two of the five factors should be discussed separately again here.

First, Bankruptcy Code section 330 (a)(3)(C) requires that the professional services be necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, the case. PSZ&J believes the facts of this case make it evident that PSZ&J's services were both necessary and beneficial. PSZ&J's efforts were essential to the Trustee's efforts to assemble the assets of this estate and to begin the process of maximizing the value of such assets for the benefit of creditors. In this regard, PSZ&J provided advice, counsel and direction to the Trustee to assist him in his central role in this case.

Second, Bankruptcy Code section 330 (a)(3)(E) requires the compensation to be reasonable based on customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. PSZ&J believes its attorneys are skilled and performed well in this case, and that the fees charged by PSZ&J are commensurate with the fees charged by PSZ&J's counterparts engaged in non-bankruptcy specialties of the law.

**C.** **Available Funds**

PSZ&J understands that the Trustee has or will have sufficient funds available in the estate for the payment of fees and costs requested in the Application.

**IV.**

**CONCLUSION**

The compensation presently sought by PSZ&J is interim. Neither PSZ&J, nor any shareholders or associates of the Firm, have any agreement or any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded PSZ&J with any other person or attorney, except among shareholders and associates of the Firm.

PSZ&J believes that the services rendered for which compensation is sought in this Application have been beneficial to the estate, that the costs incurred have been necessary and

proper, and that the sums requested for the services rendered and the costs incurred are fair and reasonable.

WHEREFORE, PSZ&J respectfully requests that this Court (a) authorize allowance and payment of fees and costs, and (b) award interim compensation, as follows:

1.     Allow interim compensation to the Firm in the amount of $184,091.00, inclusive of all fees and costs for the period from November 1, 2012 through June 30, 2013, consisting of $172,189.50 of fees and $11,901.50 of expenses;

2.     Authorize the Trustee to pay the Firm $184,091.00, which represents 100% of the fees and 100% of the costs incurred for the period from November 1, 2012 through June 30, 2013; and

3.     Grant such other and further relief as may be appropriate under the circumstances.

Dated:     August 26, 2013          PACHULSKI STANG ZIEHL & JONES LLP

By     /s/ David M. Bertenthal
          David M. Bertenthal
          Attorneys for Richard M Kipperman
          Chapter 11 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA