McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Attorneys for Official Committee of
Equity Security Holders

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>Debtors. | Case Nos. 08-32220 TEC<br><br>(Substantively consolidated with Case Nos. 09-30788 TEC and 09-30802 TEC)<br><br>Chapter 11<br><br>**MOTION TO ENFORCE CLASS AND DERIVATIVE ACTION SETTLEMENT AGREEMENT REGARDING INSURANCE SET ASIDE**<br><br>Judge: Hon. Thomas E. Carlson<br>Date: March 10, 2014<br>Time: 9:30 a.m.<br>Place: 235 Pine Street<br>Courtroom 24<br>San Francisco, CA 94104 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. JURISDICTION ................................................................................................................. 2

III. FACTUAL BACKGROUND ............................................................................................ 2

    A.    Background of the Cases ................................................................................ 2

    B.    The Class and Derivative Action and the Settlement Agreement ............................ 3

    C.    The Defense Cost Set Aside and Related Provisions of the Settlement Agreement ................................................................................................................ 5

    D.    Satisfaction of Conditions for Release of Set Aside ................................................ 7

    E.    The Platinum Transfer Issue ................................................................................... 9

IV. RELIEF REQUESTED .................................................................................................... 10

V. BASIS FOR RELIEF ........................................................................................................ 11

    A.    Release of the Set Aside is Clearly Required by the Settlement Agreement .......... 11

    B.    Accounting of Any Reduction in Defense Cost Set Aside ..................................... 12

    C.    The Platinum Interest Must Be Conveyed To the Estate ........................................ 13

    D.    This Court Has Authority to Enforce the Settlement Agreement ........................... 13

VI. CONCLUSION ................................................................................................................ 13

The Official Committee of Equity Security Holders (the "Committee") in the above substantively consolidated bankruptcy proceedings of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC (collectively, the "Debtor Funds"), hereby moves for an order directing the release of certain insurance funds reserved pursuant to the Class and Derivative Action Settlement Agreement approved by this Court on December 31, 2012 (the "Settlement Agreement").

## I. INTRODUCTION

The Settlement Agreement resolved the class action adversary proceeding against David Choo ("Choo") and California Mortgage and Realty, Inc. ("CMRI"), the former managers of the Debtor Funds. The adversary proceeding was filed by three members of the Committee as a means to recover against available insurance coverage. The Settlement Agreement provided for recovery of nearly all of the available insurance, subject to a reserve of $2.1 million (the "Set Aside"), which was provided for coverage of a potential criminal action. The terms of the Settlement Agreement required release of the Set Aside either after 30 months, or immediately if the defendants were informed that a criminal action would not be proceeding.

The conditions for release have been fully satisfied, but the defendants have failed to release the Set Aside. This is despite the fact that the terms of the Settlement Agreement clearly require prompt release of the funds. Further, the 1% recovery to the class of equity holders under the Settlement Agreement cannot occur until the Set Aside is released. As a result, the Committee is compelled to bring this motion seeking an order from the Court enforcing the Settlement Agreement. The equity holders, many of whom have lost much or all of their life savings, should not be forced to wait even longer to receive even 1% of what they lost. By this motion, the Committee seeks entry of an order directing that all funds in the Set Aside be released to the Chapter 11 trustee (the "Trustee").

This motion is based on the memorandum of points and authorities set forth herein, the declaration of Scott H. McNutt filed concurrently herewith (the "McNutt Declaration"), the Settlement Agreement which is attached as Exhibit A to the McNutt Declaration, the representations of counsel who appear at the hearing on this motion, the record in this case, any

other evidence properly before the Court prior to or at the hearing on this motion, and all matters of which this Court may take judicial notice.

## II. JURISDICTION

Jurisdiction for the filing of this motion exists pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper pursuant to 28 U.S.C. § 1408 and 1409. The subject matter of the motion is a core proceeding pursuant to 28 U.S.C§§ 157(b)(2)(A) and (O). Authority for the relief requested exists pursuant to 11 U.S.C. § 105 and the ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF FINAL JUDGMENT entered by this Court on December 28, 2012, in related adversary proceeding case number 10-03107 (the "Adversary Proceeding").

## III. FACTUAL BACKGROUND

**A.   Background of the Cases**

The Debtor Funds were formed for the purpose of making or investing in loans secured by deeds of trust primarily on California real estate, both commercial and residential. Fund I was formed in 2000, and Fund II and Fund III were formed in 2003 and 2005 respectively. The Debtor Funds were formed by and managed by Choo and CMRI. The Debtor Funds solicited and received investments from individuals (the "Investors") in the form of LLC membership interests.

As of April 30, 2008, all three Debtor Funds had ceased accepting investments and making distributions. At the time, Fund I had 362 member accounts totaling $41,932,813, Fund II had 889 accounts totaling $88,438,739, and Fund III had 711 accounts totaling $56,020,498. In total there were 1,962 member accounts valued at $186 million. The Investors have had no access to any portion of these funds since April 2008.

In 2008 and 2009, CMRI caused the Debtor Funds to file the Chapter 11 bankruptcy cases currently pending before this Court. In April 2011, after it became clear that obtaining funding for a plan was not going to be possible, the Committee recommended the appointment of a Chapter 11 trustee. The Trustee was appointed by order of the Court on April 14, 2011. At the same time, the cases were substantively consolidated. Since that time, the Trustee has been diligently working to liquidate the Debtor Funds' assets. Although the Trustee's work has resulted in better results than expected, the reality is that the assets are simply not worth more than a very small fraction of the

amount invested. Based on the Trustee's status reports, it appears unlikely that liquidation of the Debtor Funds' assets will generate enough money to provide for any significant distribution to Investors after satisfaction of administrative and unsecured claims.

**B.      The Class and Derivative Action and the Settlement Agreement**

On June 25, 2010, three members of the Committee (the "Named Plaintiffs") filed the Adversary Proceeding, a class and derivative action before this Court, seeking to recover available insurance proceeds. The Named Plaintiffs filed the Adversary Proceeding seeking damages incurred by Investors arising out of Choo and CMRI's conduct alleged therein, regardless of whether such damages derived from injury to the Debtor Funds or were the result of individual injuries to Investors.[1]

Through the Adversary Proceeding, the Named Plaintiffs sought to recover against available insurance coverage from two insurance policies under which Choo and CMRI were insureds. These were a Financial Services Liability Policy issued by Indian Harbor Insurance Company with a limit of $5,000,000 (the "Indian Harbor Policy") and a Mortgage Bankers & Brokers Professional Liability Policy issued by Certain Underwriters at Lloyd's, London ("Lloyd's") with a limit of $3,000,000 (the "Lloyd's Policy"). Both policies were "wasting" policies, *i.e.*, costs incurred by Choo and CMRI in defending against claims that fell within the policies' coverage were paid from the policy, reducing available policy limits. Indian Harbor paid a team of attorneys at Orrick, Herrington and Sutcliffe to defend Choo and CMRI against the Adversary Proceeding, as well as a number of state court actions brought by individual Investors. As of the date of final approval of the Settlement Agreement, Indian Harbor had been authorized to pay approximately $1.5 million in defense costs out of the $5 million policy limit.

The filing of the Adversary Proceeding was followed by nearly two years of litigation, factual investigation, and negotiation. The defendants filed two extensive motions to dismiss

---

[1] The causes of action and their bases are more fully set forth in the First Amended Complaint, filed on January 7, 2011 [Adversary Proceeding, Docket No. 12], and the pleadings in the Adversary Proceeding. For various reasons set forth in the pleadings in the Adversary Proceeding, it was necessary for members of the Committee to act as Named Plaintiffs in their individual capacities.

during this time. Class counsel conducted an extensive investigation into the finances of Choo and CMRI, reviewing thousands of pages of documents, and conducting extensive interviews with Choo. Throughout this time, class counsel continued to negotiate with the defendants regarding the possibility of settlement. Ultimately, this resulted in the Settlement Agreement, which was executed in May 2012.

Approval of the Settlement Agreement took another seven months, as a result of opposition by a small group of litigants who had sued Choo in state court, and sought to defeat the Settlement Agreement in order to preserve the availability of insurance funds for their individual recovery. After extensive briefing, and some discovery, the Court approved the Settlement Agreement by order dated December 28, 2012 [Docket No. 93]. A more detailed description of the litigation and the Settlement Agreement is provided in the MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT, PRELIMINARILY CERTIFYING SETTLEMENT CLASS, APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL, filed on May 18, 2012 [Adversary Proceeding Docket No. 32], the MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS AND APPROVING PROPOSED SETTLEMENT, filed on November 16, 2012 [Adversary Proceeding Docket No. 72], and the supporting declarations and documents filed therewith. A copy of the Settlement Agreement is attached as Exhibit A to the McNutt Declaration.[2]

---

[2] In addition to the insurance recovery at issue in this motion, the Settlement Agreement also provided for future payments by Choo and CMRI based on any gains recognized by them in connection with certain real properties that they had an interest in. It may be necessary at some point in the future to seek this Court's help in enforcing the CMR estate's rights with regard to a possible recovery by Choo from properties located at First and Mission Streets. The proceedings from liquidation of these properties are presently the subject of bankruptcy court proceedings before Judge Efremsky in the Oakland bankruptcy court. These issues are discussed further in the EQUITY COMMITTEE'S STATUS CONFERENCE STATEMENT REGARDING CLASS AND DERIVATIVE ACTION SETTLEMENT AGREEMENT, filed on January 16, 2014 [Docket No. 1356]. The Committee does not believe it is timely to address those issues in here, and merely reserves the right to do so in the future if necessary.

Through the Settlement Agreement, the Named Plaintiffs were able to limit further drain from the wasting policies, making substantially all of the policy limits not already used for defense costs available for the benefit of the CMR estate and the class members.[3] The result of this was an immediate recovery of more than $4 million, which was transferred into a settlement account managed by the Trustee, and allocated between the CMR estate (on account of derivative claims), and the class members (on account of direct claims) as provided in the Plan of Allocation approved by this Court in connection with the Settlement Agreement. The Trustee has made an initial distribution to class members from the funds allocated for direct distribution.

## C. The Defense Cost Set Aside and Related Provisions of the Settlement Agreement

Not all of the remaining insurance coverage under the Indian Harbor Policy was immediately available following the Settlement Agreement, as a result of the Set Aside. The Settlement Agreement provided for the Set Aside of $2,115,000 to be held back by Indian Harbor as a reserve to cover certain potential defense costs. The Settlement Agreement also provided for the unused Set Aside funds to be released to the Trustee following the passage of time or the satisfaction of certain conditions.

The Set Aside was largely the result of Choo's concerns regarding a criminal investigation by the San Francisco District Attorney (the "District Attorney"). As originally conceived, the settlement would have provided a very limited reserve for covered costs incurred in the time between execution of a settlement agreement and final approval of the settlement. In March 2012, however, class counsel was informed that CMRI's offices had been raided by investigators for the District Attorney. As a result, Choo was unwilling to execute a settlement agreement that did not provide a significant reserve for defense of a potential criminal action. The Named Plaintiffs reluctantly consented to the Set Aside, under the conditions set forth in the Settlement Agreement, and described below.

---

[3] Lloyd's refused to provide coverage under its policy and sued Choo and CMRI, seeking a declaration that it has no obligation to pay for claims brought by the Investors. To avoid the substantial uncertainty of coverage litigation, and to facilitate a global settlement, the parties agreed to a settlement with Lloyd's which made $2,550,000 available, out of the $3,000,000 policy limit.

The terms of the Settlement Agreement relevant to the Set Aside are briefly set forth below. The complete terms are found in the full Settlement Agreement, a true and accurate copy of which is attached as Exhibit A to the McNutt Declaration. The Set Aside is defined by Paragraph 1.10 of the Settlement Agreement, which provides that the "'Defense Cost Set Aside' means an amount of up to $2,115,000, which is specifically reserved by Indian Harbor for payment of (a) defense costs incurred by Defendants prior to the Estate and Class Release Effective Date and (b) the defense of potential governmental matters, as such defense costs are covered by the Indian Harbor Policy."

Treatment of the Set Aside is provided in Paragraphs 9.2.3 and 12.4 of the Settlement Agreement. Together, these provisions have the effect of requiring that the funds in the Set Aside be released to the Trustee no later than 10 days following David Choo being informed that the District Attorney is not pursuing an action against him. They also place a maximum time limit of 30 months for release of the funds.

Paragraph 12.4 provides that Choo may elect to instruct Indian Harbor to withhold the Set Aside "for the defense of government matters related to the matters in the First Amended Complaint for a period not to exceed thirty months from the Estate and Class Release Effective Date." Paragraph 12.4 also provides for release of the Set Aside prior to the expiration of thirty months, as follows: "If, prior to the expiration of the 30 month period described herein, David Choo is informed that a governmental matter is not being pursued, all such reserved funds that have not been used for the defense of governmental matters shall be promptly paid to the Chapter 11 Trustee." Paragraph 9.2.3 further clarifies, providing that "Within ten (10) business days of David Choo having been informed that a governmental matter is not being pursued, Indian Harbor shall pay the funds remaining in the Defense Cost Set Aside, if any, to the Chapter 11 Trustee."

The relevant terms of the Settlement Agreement refer to a potential criminal action by the District Attorney as "a governmental matter." This term in the Settlement Agreement was understood by all parties to mean only and exclusively a criminal action by the District Attorney. The blander term was used to describe a criminal action, because at the time Choo did not want to make public in filings with the Court the fact that he was potentially subject to a criminal

investigation, and that the District Attorney had actually raided his offices. It was the explicit understanding of the parties that the term "a governmental matter" would be interpreted to mean a criminal action by the District Attorney.[4]

It is important to note that use of the Set Aside funds is specifically limited to two uses, and only to the extent those costs are actually covered under the terms of the Indian Harbor Policy and applicable law. *See* Settlement Agreement, paras. 1.10, 12.4. In particular, the Committee believes that defense of a criminal action would likely not be covered under the policy, and the Settlement Agreement terms preserved the ability to raise this issue should the need arise.

In addition, use for general, non-criminal covered defense costs is limited to the time period before the "Estate and Class Release Effective Date" as that term is defined. Under the terms of the Settlement Agreement, the Estate and Class Release Effective Date occurred on January 15, 2013. *See* Settlement Agreement, para. 1.13 (defining the date as the later of the settlement effective date or 91 days after initial payment of the insurance funds).

In order to provide for enforcement of the terms limiting use of the Set Aside funds, the Settlement Agreement provides that their use is "subject to approval of the Chapter 11 Trustee and Class Counsel or, in the absence of such approval, an order of the Bankruptcy Court." *See* Settlement Agreement, para. 12.4. To date, Class counsel and the Trustee have not approved any use of funds in the Set Aside, and no request for such approval has been made.

### D. Satisfaction of Conditions for Release of Set Aside

During the past year since approval of the Settlement Agreement, Committee counsel has been working to obtain release of the Set Aside funds, based on the District Attorney's apparent intent not to move forward with any action against Choo as well as the expiration of any applicable statutes of limitations. The Committee and Trustee's prior attempts to obtain a negotiated release of the Set Aside are described in the EQUITY COMMITTEE'S STATUS

---

[4] Because the Committee believes this point is undisputed, and in order to avoid the need to introduce settlement communications, the McNutt Declaration is provided as sufficient evidence of this point of interpretation. In the unlikely event this interpretation is disputed, the Committee will offer evidence in the form of communications from defense counsel.

CONFERENCE STATEMENT REGARDING CLASS AND DERIVATIVE ACTION SETTLEMENT AGREEMENT, filed on January 16, 2014. These attempts were unsuccessful as a result of Choo's failure to disclose certain information to the Trustee. The Committee now believes that the necessary conditions have been satisfied, requiring immediate release of the Set Aside.

In order to satisfy the precondition of Mr. Choo being informed that a criminal action by the District Attorney is not preceding, Committee counsel arranged for a meeting between a representative of the District Attorney and counsel for Mr. Choo. After extensive discussions with the District Attorney, and a number of communications with counsel for Mr. Choo, Committee counsel was able to arrange a meeting, which took place on December 27, 2013 (the "December 27 Meeting"). The December 27 Meeting was attended by Richard Gallagher, as counsel for David Choo, and by the Managing Attorney of the District Attorney's Economic Crimes Unit (the "DA Managing Attorney").

At the December 27 Meeting, the DA Managing Attorney specifically and unambiguously stated that the District Attorney is not pursuing the investigation of Choo or CMRI related to the matters described in the Adversary Proceeding First Amended Complaint. The DA Managing Attorney also specifically and unambiguously stated that the District Attorney will not be filing a criminal action based on that investigation. It is the understanding of Committee counsel that the District Attorney is also prepared to return to CMRI and Choo all of the property seized by the District Attorney.

It is also clear that any applicable statute of limitations has expired. The statute of limitations in California for felony fraud is four years from discovery or completion of the fraud. Cal. Penal Code §§ 801.5, 803(c). There could not reasonably be any argument that discovery of any fraud occurred later than notice of the bankruptcy filings, the last of which was sent on April 3, 2009, for Fund III. *See* NOTICE OF CHAPTER 11 BANKRUPTCY CASE, MEETING OF CREDITORS, & DEADLINES, [Case No. 09-30802, Docket No. 13]. To the extent the facts gave rise to a misdemeanor fraud claim, the relevant statute of limitations would be one year. Cal. Penal Code § 802.

1   Based on the statements made by the District Attorney at the December 27 Meeting, Committee counsel sent a demand letter to the defendants on January 9, 2014.  The letter set forth the relevant facts, and requested that the defendants respond no later than January 17, 2014, with a commitment to promptly release all funds remaining in the Set Aside.  A copy of this letter is attached as Exhibit B to the McNutt Declaration.  Committee counsel received no response of any kind prior to January 17, 2014, despite the fact that the clear terms of the Settlement Agreement required actual release of the Set Aside by Indian Harbor no later than January 6, 2014 (ten days after the December 27 Meeting).  Committee counsel and counsel for the Trustee have since been in communication with counsel for the defendants, but the defendants have not unconditionally released the Set Aside, nor have they agreed to do so.

**E.     The Platinum Transfer Issue**

In addition to the obligations identified above, the Settlement Agreement requires the CMRI and Choo to release various claims against the Debtor Funds and transfer interests in assets, including interests in an 85-acre parcel of undeveloped real property located in Polk County, Florida commonly referred to as the "Platinum Property."  Specifically, Paragraph 6.2.1.1 of the Settlement Agreement requires CMRI to transfer its interest in Platinum Hwy 27 Orlando, LLC ("Platinum LLC"), an entity which holds title to the Platinum Property, to the Trustee, in exchange for the Trustee's release or re-conveyance of a certain carry-back note.  Similarly, the Settlement Agreement requires Mr. Choo to relinquish his interest in the Platinum Property which is currently held through an IRA account (Pensco Trust Company).

Compelling CMRI and David Choo's performance under the Settlement Agreement is critical at this stage of the bankruptcy proceeding because Platinum LLC has negotiated a sale of the Platinum Property which, if consummated, may generate approximately $1,000,000 in net proceeds for the CMR estate on account of their approximate 53% membership interest in Platinum LLC.  The Trustee understands that the sale of the Platinum Property is subject to the Trustee obtaining a Court order approving his consent to the sale of the Platinum Property, as required by the operating agreement for Platinum LLC.  If CMRI and Mr. Choo do not promptly transfer their membership interest to the Trustee, on behalf of the CMR estate, the proceeds

generated from the sale of the Platinum Property may not be timely disbursed to the Trustee on account of the estate's interest in Platinum LLC.

Although the Trustee has repeatedly requested that CMRI and David Choo comply with the Settlement Agreement and formally transfer their membership interests in Platinum LLC to the Trustee, neither party has expressed any willingness to cooperate. Having no indication that Mr. Choo intended to fulfill his obligations under the Settlement Agreement after prior requests, the Trustee wrote a letter to counsel for CMRI and Mr. Choo on January 13, 2014, wherein it was requested that both parties confirm their willingness to cooperate with the Trustee by January 17, 2014, or alternatively, sign and return the Assignment of Membership Interest forms that had been provided or face a motion to compel their cooperation with the Settlement Agreement. The Trustee never received any response to that letter, thereby requiring the instant motion to be filed.[5]

### IV. RELIEF REQUESTED

The Committee respectfully requests entry of an order directing release of all remaining funds in the Set Aside within ten days of entry of the order, and directing Indian Harbor to turn over such funds to the Trustee pursuant to the terms of the Settlement Agreement.

The Committee also respectfully requests that the order direct Choo and CMRI to transfer their membership interests in Platinum LLC and Choo's interests in the Platinum Property to the Trustee within ten days of entry of the order, and to execute any and all documents as necessary to effectuate the terms of the Settlement Agreement.

To the extent that the defendants assert that defense costs have been incurred that are properly chargeable to the Set Aside, but have not yet been paid, the Committee proposes the following resolution. First, all funds in the Set Aside, less an amount sufficient to pay any such defense costs, should be released to the Trustee within ten days, as set forth above. Second, defense counsel should file a motion within a reasonable time, setting forth the amounts the

---

[5] The Trustee and Choo have met to discuss this issue, but Choo and CMRI have not complied with the obligation to transfer the interests.

defendants believe are payable out of the Set Aside under the terms of the Settlement Agreement, and seeking Court approval for any such payment.[6]

## V. BASIS FOR RELIEF

This is a simple matter of contract interpretation and enforcement. The facts are not subject to any reasonable dispute, and the Settlement Agreement requirements are clear.

**A.  Release of the Set Aside is Clearly Required by the Settlement Agreement**

The terms of the Settlement Agreement, as described above, explicitly require release of all remaining funds in the Set Aside if David Choo is informed that the District Attorney is not pursuing a criminal action against him based on the matters that are the subject of the Adversary Proceeding. The only precondition for release of the Set Aside is Choo being so informed. There are no other conditions or limitations to the obligation to release the Set Aside.

There is also no reasonable dispute as to whether this condition has been satisfied. Choo's counsel met with the Managing Attorney for the District Attorney's Economic Crimes Unit. At that December 27 Meeting, Choo's counsel was told that the District Attorney is no longer pursuing its investigation of matters related to the Adversary Proceeding complaint, and would not be filing a criminal action based on those matters. The Committee does not believe that these facts are disputed.

The terms of the Settlement Agreement require that all remaining funds in the Set Aside be turned over to the Trustee within ten days of Choo being informed that the District Attorney matter is not being pursued. Choo was informed of this at the December 27 Meeting, by way of his counsel. The explicit terms of the Settlement Agreement therefore required that the funds be released to the Trustee on or before January 6, 2014. Nevertheless, the funds were not released, and both Indian Harbor and the defendants are therefore in breach of the Settlement Agreement.

The Committee does not believe that there can be any serious dispute that the conditions for release of the Set Aside have been satisfied. While the defendants have failed to provide for

---

[6] Notwithstanding the foregoing proposal, the Committee will object to the payment of fees unless they fall within the limited scope authorized under the Settlement Agreement.

release of the funds, they also have not indicated that they dispute that the conditions are fully satisfied, in response to the Committee's demand letter or otherwise.

It should be noted that the Committee has serious questions regarding whether the Indian Harbor Policy actually covers defense of a criminal action. As the Court is aware, the Trustee and Named Plaintiffs accepted the Set Aside despite these reservations in order to avoid further depletion of the wasting policies through ongoing litigation. To the extent that defense of a criminal action would not be covered under the Indian Harbor Policy, this would provide an additional grounds to direct immediate release of the Set Aside. Because the Committee believes there are much more straightforward grounds to order release, which do not require the parties and the Court to delve into insurance coverage questions, this issue is not briefed here. The Committee and Trustee reserve the right to seek release of the Set Aside based on the unavailability of the Indian Harbor Policy for criminal defense if the Court does not find that it must be released for the reasons set forth in this motion.

### B. <u>Accounting of Any Reduction in Defense Cost Set Aside</u>

As described above, the Set Aside could only be used for the specific uses of defense of an action by the District Attorney, and other defense costs incurred prior to January 15, 2013. And in either case, the Set Aside could only be used for costs actually covered under the terms of the Indian Harbor Policy.

In connection with release of the Set Aside, the defendants should be required to account for all amounts by which they assert that the Set Aside has been reduced. The Settlement Agreement specifically provides that any costs charged against the Set Aside are subject to either approval by the Trustee and class counsel, or an order of the Court. *See* Settlement Agreement, para. 12.4. By necessity, this requires that counsel for the defendants provide sufficient information as to all costs so that the Trustee, class counsel, and/or the Court can reasonably make a determination regarding the extent to which such costs (i) are covered by the Indian Harbor Policy, and (ii) fit within the parameters of the Settlement Agreement.

To this end it should be noted that the Court entered an ORDER FURTHER MODIFYING AUTOMATIC STAY, on October 10, 2012 [Docket No. 1080] (the "Stay Modification Order"),

which modified the automatic stay to raise the Court imposed cap on the maximum amount payable to defense counsel under the Indian Harbor Policy. It is unclear whether the Stay Modification Order amounts to an authorization under the terms of the Settlement Agreement for use of the Set Aside funds. In any case, to the extent it raised the automatic stay cap to allow for estimated costs not yet incurred at that time, the defendants should have the burden of (i) demonstrating the amount of such costs later incurred, and (ii) demonstrating that any costs later incurred comply with the terms of the Settlement Agreement.

### C. The Platinum Interest Must Be Conveyed To the Estate

The Settlement Agreement requires Choo and CMRI to transfer their Platinum LLC membership interests to the Trustee, on behalf of the CMR estate, and to transfer their interests in the Platinum Property. Both parties have failed and refused to do so and must therefore be forced to immediately comply with the terms of the Settlement Agreement so as not to jeopardize the Trustee's ability to receive proceeds from the sale of the Platinum Property.

### D. This Court Has Authority to Enforce the Settlement Agreement

There is also no question that this Court has jurisdiction and authority to resolve these issues. The Settlement Agreement specifically provides that "[t]he Bankruptcy Court shall retain jurisdiction over the Action and the Parties for purposes of enforcing the settlement." Settlement Agreement, para. 14.2. The terms also state that any dispute regarding "the rights or obligations of any Party under this Settlement Agreement, or with respect to the terms and conditions of this Settlement Agreement, shall be submitted to the Bankruptcy Court for a final, binding and non-appealable determination." Id.

## VI. CONCLUSION

The Committee respectfully submits that, for the reasons set forth above, the defendants and Indian Harbor should be ordered to promptly release all remaining funds in the Set Aside. The Investors in the CMR funds lost their entire investments almost five years ago. It is unlikely that they will ever receive anything from the CMR estate, and if they do, it will be minimal. Release of the Set Aside is necessary to provide the Investors with the remainder of the 1% distribution that class counsel and the Trustee sought to provide through the Settlement

| | |
|---|---|
| 1 | Agreement. The defendants should not be allowed to further delay this distribution, where it is |
| 2 | clear that all conditions for release of the Set Aside funds have been satisfied. CMRI and Choo |
| 3 | should also be ordered to transfer their membership interests in Platinum LLC and the Platinum |
| 4 | Property to the Trustee, on behalf of the CMR estate, as required by the terms of the Settlement |
| 5 | Agreement. |

DATED: February 6, 2014　　　　　McNUTT LAW GROUP LLP

By:     /s/ *Shane J. Moses*
    Shane J. Moses
    Attorneys for Official Committee of
    Equity Security Holders