# Exhibit A

1    David M. Bertenthal (CA Bar No. 167624)
     Maxim B. Litvak (CA Bar No. 215852)
2    Miriam Manning (CA Bar No. 178584)
     PACHULSKI STANG ZIEHL & JONES LLP
3    150 California Street, 15th Floor
     San Francisco, California  94111-4500
4    Telephone: 415/263-7000
     Facsimile: 415/263-7010
5    E-mail: dbertenthal@pszjlaw.com
            mlitvak@pszjlaw.com
6             mmanning@pszjlaw.com

7    Counsel for Richard M Kipperman,
       Chapter 11 Trustee

8

9                **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No.: 08-32220-TEC |
| | 09-30788-TEC |
| CMR MORTGAGE FUND, LLC, | 09-30802-TEC |
| CMR MORTGAGE FUND II, LLC, | |
| CMR MORTGAGE FUND III, LLC, | Substantively Consolidated |
| Debtors | Chapter 11 |
| | **DISCLOSURE STATEMENT IN SUPPORT OF TRUSTEE'S CHAPTER 11 PLAN OF LIQUIDATION DATED FEBRUARY 26, 2014** |
| | <u>Plan Confirmation Hearing</u>: |
| | Date:     TBD |
| | Time:     TBD |
| | Place:    235 Pine Street, 23rd Floor |
| |             San Francisco, California |
| | Judge:   Honorable Thomas Carlson |

23

24 **SECTION 1125(B) OF THE BANKRUPTCY CODE PROHIBITS SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN UNLESS A COPY OF THE PLAN, OR A SUMMARY THEREOF, IS ACCOMPANIED OR PRECEDED BY A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.  THIS PROPOSED DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT, AND, THEREFORE, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT IS NOT INTENDED TO BE A SOLICITATION.**

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

I. INTRODUCTION .................................................................................................. 1

   A.   PURPOSE OF THE PLAN ........................................................................ 2

   B.   SUMMARY OF PLAN AND PROJECTED DISTRIBUTIONS TO CREDITORS ............... 4

   C.   VOTING INSTRUCTIONS ........................................................................ 5

      1.   How to Vote. ................................................................................ 5

      2.   Who May Vote ........................................................................... 6

   D.   CONFIRMATION .................................................................................. 6

II. DEBTORS' CHAPTER 11 CASES ........................................................................ 7

   A.   EVENTS LEADING UP TO THE FILING OF THE CHAPTER 11 PETITIONS ............... 7

      1.   Historical Background. ................................................................ 7

      2.   The Debtors' Bankruptcy Filings ................................................. 9

      3.   The Debtors' Schedules. .............................................................. 9

   B.   SIGNIFICANT EVENTS AFTER THE TRUSTEE'S APPOINTMENT ......................... 11

      1.   Retention of Trustee's Professionals. ........................................... 11

      2.   Tracing and Investigation of Estate Assets. ................................... 11

      3.   Sale of the Debtors' Interests in Assets. ........................................ 11

      4.   Compromise of the Class and Derivative Action. ........................... 12

      5.   Compromise With Wheatland Creditors. ....................................... 13

      6.   Relief From Stay Matters. ........................................................... 13

      7.   Remaining Real Property Interests. .............................................. 14

III. DESCRIPTION OF PLAN ................................................................................. 16

   A.   CLASSIFICATION OF CLAIMS AND INTERESTS .......................................... 16

      1.   Class 1 Claims (Priority Non-Tax Claims). .................................. 16

      2.   Class 2 Claims (Miscellaneous Secured Claims). ........................... 16

      3.   Class 3 Claims (General Unsecured Claims). ................................ 16

      4.   Class 4 Claims (Convenience Claims). ......................................... 16

      5.   Class 5 Interests in the Debtors. .................................................. 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | | |
|---|---|---|
| B. | TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 16 |
| | 1. Class 1 (Priority Non-Tax Claims). | 16 |
| | 2. Class 2 (Miscellaneous Secured Claims). | 17 |
| | 3. Class 3 (General Unsecured Claims). | 17 |
| | 4. Class 4 (Convenience Claims). | 18 |
| | 5. Class 5 (Interests in the Debtors). | 18 |
| C. | TREATMENT OF UNCLASSIFIED CLAIMS | 18 |
| | 1. Administrative Claims. | 18 |
| | 2. Priority Tax Claims. | 19 |
| | 3. Claims for Professional Fees. | 19 |
| IV. | IMPLEMENTATION OF THE PLAN | 21 |
| A. | LIQUIDATING TRUST FOR THE ESTATES | 21 |
| B. | PURPOSE OF LIQUIDATING TRUST | 22 |
| C. | LIQUIDATING TRUSTEE | 23 |
| | 1. Generally. | 23 |
| | 2. Responsibilities and Authority of Liquidating Trustee. | 23 |
| | 3. Powers of Liquidating Trustee. | 24 |
| | 4. Compensation of Liquidating Trustee and Professionals. | 25 |
| | 5. Limitations on Liquidating Trustee. | 25 |
| D. | VESTING OF ESTATE ASSETS | 26 |
| E. | LIQUIDATING TRUST RETAINED CLAIMS AND/OR DEFENSES | 26 |
| F. | DISSOLUTION OF THE DEBTORS | 27 |
| G. | DISSOLUTION OF THE EQUITY COMMITTEE | 27 |
| H. | DISCHARGE OF TRUSTEE | 27 |
| I. | FINAL DECREE | 28 |
| V. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 28 |
| A. | REJECTION OF CONTRACTS AND LEASES | 28 |
| B. | BAR DATE FOR REJECTION DAMAGES | 28 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | | |
|---|---|---|
| VI. EFFECTS OF CONFIRMATION | | 29 |
| | A. BINDING EFFECT | 29 |
| | B. PROPERTY REVESTS FREE AND CLEAR | 29 |
| | C. PERMANENT INJUNCTION | 29 |
| | D. EXONERATION AND RELIANCE | 30 |
| VII. KEY PLAN PROVISIONS | | 31 |
| | A. SOURCE OF PLAN FUNDING | 31 |
| | B. RETAINED CLAIMS AND/OR DEFENSES | 31 |
| | C. PRIORITY CLAIMS | 33 |
| | D. ADMINISTRATIVE CLAIMS | 33 |
| VIII. FEASIBILITY | | 34 |
| IX. RISK FACTORS | | 35 |
| X. CERTAIN FEDERAL INCOME TAX CONSEQUENCES | | 35 |
| | A. INCOME TAX CONSEQUENCES TO CREDITORS OF THE DEBTORS | 36 |
| | B. IMPORTANCE OF OBTAINING PROFESSIONAL TAX ADVICE | 38 |
| XI. SECURITIES LAW CONSIDERATIONS | | 38 |
| | A. INITIAL ISSUANCE | 39 |
| | B. EXCHANGE ACT COMPLIANCE | 40 |
| | C. APPLICABILITY OF INVESTMENT COMPANY ACT | 40 |
| XII. LIQUIDATION ANALYSIS | | 41 |
| XIII. CONCLUSION | | 41 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DISCLOSURE STATEMENT IN SUPPORT OF
CHAPTER 11 TRUSTEE'S PLAN

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# I.

## <u>INTRODUCTION</u>

Richard M Kipperman (the "Trustee"), the duly appointed trustee for the chapter 11 estates ("Estates") of CMR Mortgage Fund, LLC ("Fund I"), CMR Mortgage Fund II, LLC ("Fund II") and CMR Mortgage Fund III, LLC ("Fund III") (collectively, the "Funds" or "Debtors"), hereby submits this Disclosure Statement pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to holders of Claims against the Debtors in connection with (i) the solicitation of acceptances of the *Chapter 11 Trustee's Plan of Liquidation*, dated February 26, 2014 as the same may be amended (the "Plan"), filed by the Trustee in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court") and (ii) the hearing to consider confirmation of the Plan that is scheduled for February __, 2014 at _____a.m. Unless otherwise defined, capitalized terms contained herein shall have the same meanings set forth in the Plan.

On or about _____, 2014, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment on whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. Certain of the statements contained in this Disclosure Statement, by nature, are forward-looking and contain estimates and assumptions. There can be no assurance that such statements will reflect actual outcomes. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling.

This Disclosure Statement is for the purpose of enabling you to make an informed judgment about the Plan. You are urged to review both this Disclosure Statement and the Plan in making your decision about whether to accept the Plan. Based on the information contained in this Disclosure Statement and for the reasons set forth below, the Trustee has concluded that the Plan provides the best and most rapid recovery to Creditors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Note that Exhibit B to the Plan contains a non-exclusive list of retained claims and/or defenses that will be retained and may be pursued following confirmation and effectiveness of the Plan. All rights to pursue any such claims are expressly reserved under the Plan.

In addition, a ballot for the acceptance or rejection of the Plan is enclosed with this Disclosure Statement submitted to those holders of Claims that the Trustee believes are entitled to vote to reject or accept the Plan. The Trustee urges you to accept the Plan by completing and returning the enclosed ballot so that it is received by no later than _____, 2014.

## A.    PURPOSE OF THE PLAN

The Funds were formed between 2000 and 2005 for the purpose of making or investing in business loans secured by deeds of trust on real estate properties. The investments made by the Funds apparently did well during the period of real estate boom, but then suffered dramatic losses as the real estate market and general economy began to decline. By the time of the Funds' bankruptcy filing in 2008, the Funds' liabilities far exceeded available assets.

Since his appointment in 2011, the Trustee has sought to liquidate the assets of the Debtors' Estates for the benefit of Creditors. The Trustee has already disbursed approximately $8,347,840 million out of the Estates and is currently holding about $793,000 in cash, of which $143,000 is held in a segregated class action account. The Trustee anticipates receiving another $4,900,000 in the next eighteen months, of which $1,600,000 million in cash will be received over the next ninety days as part of the sale of certain assets and from the Debtors' insurers as part of a class action settlement against the Debtors' former insiders (as more fully described below).

The purpose of the Plan is to further maximize the value of the assets of the Estates, and to effectuate an efficient distribution of available assets to Creditors. Pursuant to the Plan, the assets of the Estates will be transferred to the Liquidating Trust for the purpose of maximizing the value of such assets, reconciling claims against the Estates, and making distributions to Creditors of the Estates in accordance with the priorities set forth in the Plan.

According to the Bankruptcy Court's claims register, there are approximately $25,529,350 million in unsecured claims filed against Fund I, of which approximately $861,650 are filed as

Case: 08-32220    Doc# 1375-1    Filed: 02/26/14    Entered: 02/26/14 16:20:06    Page 7
of 47

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

priority claims.  The Trustee believes that a material portion of the foregoing filed claims are actually investor equity claims that should be reclassified or otherwise reduced or disallowed.

According to the Bankruptcy Court's claims register, there are approximately $32,950,675 million in unsecured claims filed against Fund II, of which approximately $2,240,213 are filed as priority claims.  The Trustee believes that a material portion of the foregoing filed claims are actually investor equity claims that should be reclassified or otherwise reduced or disallowed.

According to the Bankruptcy Court's claims register, there are approximately $14,179,768 million in unsecured claims filed against Fund III, of which approximately $13,320 are filed as priority claims.  The Trustee believes that a material portion of the foregoing filed claims are actually investor equity claims that should be reclassified or otherwise reduced or disallowed.

The chart below reflects the Trustee's best estimate of the total amount of Claims that may be allowed against the Estates, and summarizes the treatment of, and recoveries that can be anticipated by holders of, Claims and Interests under the Plan.  The amounts listed below are estimates only, as of the anticipated Effective Date of the Plan on May 30, 2014.  The Trustee expects that post-Effective Date administration costs will total approximately $800,000, but that amount is subject to increase.  No value has been assessed to any litigation claims for purposes of this Disclosure Statement.

| CLASS NO. | DESCRIPTION | ESTIMATED AMOUNT OR VALUE OF CLAIM | ESTIMATED RECOVERY PERCENTAGE | TREATMENT |
|---|---|---|---|---|
| N/A | Allowed Administrative Claims | $3,040,896 | 100 % | Payment in full. |
| N/A | Allowed Priority Tax Claims | $0 | 100 % | Payment in full. |
| 1 | Allowed Priority Non-Tax Claims | $0 | 100 % | Payment in full. |
| 2 | Miscellaneous Secured Claims | $0 | Value of collateral. | Recovery of value of collateral, if any. |
| 3 | General Unsecured Claims | $2,046,810 | 14% | Pro-Rata share of $300,000 (minus payment to Convenience Claims), plus additional available estate assets. |

| 4 | Convenience Claims | $43,752 | 25% | Fixed recovery of 25%, plus any excess estate assets if general unsecured claims paid in full. |
| 5 | Claims of Equity Interest Holders in All Funds | N/A | N/A | No recovery, unless all creditors paid in full. |

## B.  SUMMARY OF PLAN AND PROJECTED DISTRIBUTIONS TO CREDITORS

Pursuant to the Plan, the assets of the Debtors' consolidated estates will be transferred to a newly-created liquidating trust to be administered by Richard M Kipperman, as liquidating trustee, for the purpose of maximizing the value of such assets, reconciling claims against the estates, and making distributions to creditors and possibly interest holders in accordance with the priorities set forth in the Plan.  As part of the Plan, most holders of Professional Fee Claims have agreed to defer payment of 55% of their unpaid fees so that holders of General Unsecured Claims can realize an immediate recovery.  Under the Plan, General Unsecured Claims will share in recoveries from a pool of $300,000 in cash, net of amounts paid to convenience claimants.  Additional recoveries are possible depending on the value realized from the estates' assets.  Holders of Convenience Claims (*i.e.*, holders of claims equal to $7,500 or less) will receive a recovery of 25% on account of their claims.  The Plan will minimize the expense and delay that would be associated with a conversion of these bankruptcy cases to Chapter 7 and allow Mr. Kipperman to continue to maximize the value of the estates' assets in an efficient manner.  Further, by virtue of the transfer of assets to the trust, holders of Interests may be provided with an opportunity to take a tax loss on their investment in the Debtors.

Under the Bankruptcy Code, holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims are entitled to receive payment on account of their Claims before holders of Allowed General Unsecured Claims.  The Plan satisfies these requirements, except as to the deferral of certain Professional Fees by agreement or deemed consent.

As to Allowed General Unsecured Claims, distributions shall total no less than $300,000, net of amounts paid on account of Allowed Convenience Claims, and are otherwise tied to available cash on hand in the Estates and projected receipts primarily in the form of proceeds generated from

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  the sale of estate assets, minus administrative and priority claims.  Allowed Convenience Claims

2  shall receive a fixed 25% recovery, subject to increase only if Allowed General Unsecured Claims

3  are paid in full.

4     Holders of Allowed General Unsecured Claims should consider that any distributions on

5  account of such Claims will depend on the size of the overall pool of Allowed General Unsecured

6  Claims, which has yet to be determined and remains uncertain.  The Trustee anticipates that the

7  aggregate sum of Allowed General Unsecured Claims will range between $1.5 million and $2.1

8  million.  However, the Trustee can provide no assurance at this time whether Allowed Claims will

9  actually fall within this range.  Accordingly, distributions to holders of Allowed General Unsecured

10  Claims may be further diluted depending on the ultimate size of the pool of Allowed General

11  Unsecured Claims.

12  **C.**  **VOTING INSTRUCTIONS**

13     **1.**  **How to Vote.**

14     A ballot is enclosed herewith for Creditors to use in voting on the Plan.  For the reasons

15  described herein, holders of Interests will not receive a ballot.  To vote on the Plan, indicate on the

16  enclosed ballot that you accept or reject the Plan, provide the requested information, sign your name

17  and mail the ballot in the envelope provided for this purpose.

18     In order to be counted, ballots must be completed, signed and returned so that they are

19  actually received no later than 4:00 p.m., prevailing Pacific Time, on _____, 2014, at

20  the following address:

21       Pachulski Stang Ziehl & Jones LLP
     150 California Street, 15th Floor

22       San Francisco, California  94111-4023
     Attn: Kati Suk – CMR Plan Administrator

23

24     If your ballot is not properly completed, signed and returned as described, it will not be

25  counted.  If your ballot is damaged or lost, you may request a replacement by sending a written

26  request to this same address.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## 2. <u>Who May Vote.</u>

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or interests in classes of claims or interests that are impaired and that will receive distributions under a plan are entitled to vote to accept or reject a proposed plan. Holders of Class 3 Claims (General Unsecured Claims) are impaired under the Plan and, to the extent Claims in such Class are Allowed Claims, the holders of such Claims will receive distributions under the Plan. Holders of Class 4 Claims (Convenience Claims with Allowed amounts not to exceed $7,500) are impaired under the Plan. As a result, holders of Claims in Class 3 and Class 4 are entitled to vote to accept or reject the Plan.

Class 1 (Priority Non-Tax Claims) and Class 2 (Miscellaneous Secured Claims) Claims under the Plan are unimpaired and conclusively presumed to have accepted the Plan.

Class 5, consisting of Interests of the Debtors, will not receive or retain any property on account of such Interests and such Interests shall be extinguished as of the Effective Date of the Plan, *provided, however,* that in the event the holders of allowed Class 3 Claims and Class 4 Claims are paid in full, each holder of an Interest shall thereafter receive a Pro Rata Share of the Liquidating Trust Interests to be distributed to all holders of Interests. As a result, holders of Interests in Class 5 are conclusively presumed to have rejected the Plan. Based on the foregoing, the Trustee is soliciting acceptances only from holders of Allowed Claims in Class 3 and Class 4.

## D. <u>CONFIRMATION</u>

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization. At the Confirmation Hearing, if the Bankruptcy Court determines that all of the requirements of section 1129 of the Bankruptcy Code have been satisfied, the Bankruptcy Court will enter an order confirming the Plan. The Trustee believes that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, including that the Plan has been proposed in good faith and not by any means forbidden by law.

Voting is tabulated by Class. A class of Creditors has accepted the Plan if the Plan has been accepted by at least 2/3 in dollar amount and more than 1/2 in number of Creditors holding Allowed Claims in that class who actually vote to accept or reject such Plan. Holders of Interests are deemed

to have rejected the Plan because their Interests will be extinguished under the Plan, except that in the event the holders of allowed Class 3 Claims and Class 4 Claims are paid in full, each holder of an Interest shall thereafter receive a Pro Rata Share of the Liquidating Trust Interests to be distributed to all holders of Interests.

Section 1129(b) permits the confirmation of a plan of reorganization notwithstanding the nonacceptance of a plan by one or more impaired classes of claims or equity interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" as to each nonaccepting class. With respect to Class 5 (Interests of the Debtors) which is deemed to have rejected the Plan, the Trustee intends to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.

The Bankruptcy Court has set _____ 2014 at _____ a.m. for the Confirmation Hearing at which it will determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for Confirmation of the Plan have been satisfied. The Confirmation Hearing may be continued from time to time and day to day without further notice. Any objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Trustee and the Office of the United States Trustee on or before the date set forth in the notice of the Confirmation Hearing sent to you with this Disclosure Statement and the Plan.

## II.

## DEBTORS' CHAPTER 11 CASES

**A.  EVENTS LEADING UP TO THE FILING OF THE CHAPTER 11 PETITIONS**

**1.  Historical Background.**

The Funds were formed at various times between 2000 and 2005 for the purpose of making or investing in business loans that were secured by deeds of trust on real estate properties. The majority of the properties were located in California with others located in Florida, Arizona and South Carolina. Loans in which the Funds invested were arranged and serviced by a management company, California Mortgage and Realty, Inc. (the "Manager" or "CMRI"). The president and principal of CMRI was David Choo. The Manager provided general operating and administrative

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

services to the Funds and controlled all of the Funds business activities. The Manager used income that it generated from the fees and charges assessed on loan origination and servicing to pay for the Funds' administrative expenses.

The real estate boom of the early and mid-2000's enabled the Funds to expand and by April 2008 (the date when distributions to investors ceased), Fund I had 362 member accounts totaling $41,932,813, Fund II had 889 accounts totaling $88,438,739, and Fund III had 711 accounts totaling $56,020,498. In total, there were over 1,900 member accounts valued at $186 million. There is considerable overlap among the Funds, with many members having interests in two or even three of the Funds.

CMRI is believed to have engaged in activity that may have accelerated its decline into bankruptcy. On certain occasions when CMRI did not have funds sufficient to make an investment, it drew on funds in more than one Fund to make such an investment, even though that may have been inappropriate and in some instances was in violation of the geographic restrictions on the Fund's investments. CMRI also transferred monies from one Fund to another as loans, with little if any repayment ever occurring as if the investors were participants in a single, large fund.

By 2007 when the real estate market and economy began to encounter difficulties, a significant number of borrowers to whom the Funds had lent money stopped making payments on their notes. This caused the notes to go into default and also hindered the Manager's ability to meet the Funds' administrative expenses. The Funds eventually foreclosed on such notes and placed title to those real properties in special purpose entities referred to as REO Entities (referring to "real estate owned" by a lender that began with a mortgage interest rather than ownership when the loan was made). The REO Entities were organized as limited liability companies with one or more of the Funds as members. CMRI also became the Manager for the REO Entities and continued to have complete control over the administration of the REO Entities.

In some instances, the Funds invested in a junior lien position on the real properties and became subject to possible loan enforcement activities by a senior lender.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2.     The Debtors' Bankruptcy Filings.**

On November 18, 2008, Fund I filed a voluntary chapter 11 petition.  On March 31, 2009, Funds II and III each filed separate chapter 11 petitions.

In October 2009, an Official Committee of Equity Security Holders ("Equity Committee") was appointed by the Office of the United States Trustee in each of the Funds' cases and McNutt Law Group LLC was employed as counsel to the Equity Committee.

The Bankruptcy Court established March 23, 2009 as the deadline by which creditors (other than governmental units) were required to file proofs of claim against Fund I.  The Bankruptcy Court also established July 27, 2009 as the deadline for creditors (other than governmental entities) of Funds II and III to file proofs of claim.

On March 31, 2010, the Court substantively consolidated the bankruptcy estates of the three Funds into a single entity and they are pending as Case No. 08-32220.

In June 2010, the Debtors and Equity Committee filed a Joint Plan of Reorganization (the "Joint Plan") which was later modified to extend the effective date by a period of 90 days so that the Debtors could secure exit financing.   The Joint Plan, as subsequently modified, was approved by the Court in September 2010.  However, because the Debtors were unable to secure the necessary financing, they were not able to consummate the Joint Plan.   Accordingly, on April 5, 2011, the Court vacated the order confirming the Joint Plan and directed the appointment of a chapter 11 trustee.  On April 14, 2011, Richard M Kipperman was appointed as the chapter 11 trustee of the Debtors' Estates.

**3.     The Debtors' Schedules.**

Fund I filed its Schedules with the Bankruptcy Court on December 4, 2008.   The Schedules have since been amended or supplemented.  According to the Schedules, Fund I held interests in various secured notes receivables totaling over $35 million dollars.  Fund I's Schedules, as amended or supplemented, also listed liabilities totaling approximately $6 million as of the Petition Date.

The scheduled liabilities of Fund I are summarized as follows:

Secured Claims:                    $0

Priority Claims:                    $0

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   General Unsecured Claims:        $6,083,909

2   To date, approximately $27,477,506.84 in claims have been filed in the Fund I case.

3   Fund II filed its Schedules with the Bankruptcy Court on April 22, 2009.  The Schedules

4   have since been amended or supplemented.  According to the Schedules, Fund II held interests in

5   approximately $3 million in accounts receivable and interests in various notes secured by real

6   property totaling over $42 million.  Fund II's Schedules, as amended or supplemented, list assets

7   totaling approximately $45 million and liabilities totaling approximately $22 million as of the

8   Petition Date.

9   The scheduled liabilities of Fund II are summarized as follows:

10      Secured Claims:               $20,421,658

11      Priority Claims:              $11,690

12      General Unsecured Claims:     $1,593,715

13  To date, approximately $71,248,949.59 in claims have been filed in the Fund II case.

14  Fund III filed its Schedules with the Bankruptcy Court on April 21, 2009.  The Schedules

15  have since been amended or supplemented.  According to the Schedules, Fund III held interests in

16  millions of dollars in worth of notes secured by real property and interests in entities that held title to

17  real property.  However, because the value of the collateral or real properties were deemed

18  "unknown" the value of the notes or entity was not tabulated as an asset.  Fund III's Schedules, as

19  amended or supplemented, list assets of $46,000 and liabilities totaling approximately $4 million as

20  of the Petition Date.

21  The scheduled liabilities of Fund III are summarized as follows:

22      Secured Claims:               $0

23      Priority Claims:              $0

24      General Unsecured Claims:     $3,841,098

25  To date, approximately $19,021,747.89 in claims have been filed in the Fund III case.

26  Although the Debtors each filed their own schedules and statement of financial affairs, the

27  cases were consolidated in March 2010 by an order of the Court.

28

DOCS_SF:84509.8 49666/0001                    DISCLOSURE STATEMENT IN SUPPORT OF
                                              CHAPTER 11 TRUSTEE'S AND COMMITTEE'S PLAN

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**B.    SIGNIFICANT EVENTS AFTER THE TRUSTEE'S APPOINTMENT**

Since April 2011, the Trustee has acted in possession of property of the Debtors' Estates pursuant to sections 1107 and 1108 of the Bankruptcy Code.  During the period since the Trustee's appointment, the following significant events have occurred:

**1.    Retention of Trustee's Professionals.**

The Trustee retained Pachulski Stang Ziehl & Jones LLP as his bankruptcy counsel, and his firm, Corporate Management Inc., as accountants and financial advisors.  The Trustee also retained Berkeley Research Group, LLC as his tax accountants.

**2.    Tracing and Investigation of Estate Assets.**

As noted above, the Debtor's Schedules list numerous investments made by the Funds in various secured loans and REO entities.  The Trustee and his professionals have spent considerable time reviewing documents obtained from the Debtors and meeting with the Debtors' or CMRI's former principals regarding their numerous investments.

**3.    Sale of the Debtors' Interests in Assets.**

The Trustee has invested significant time and effort on consummating the sale of the Debtors' various interests in real property, including the following:

a.    <u>Dyer Property</u>.  After entry of an order authorizing the holders of a certain senior note to obtain relief from the automatic stay to commence foreclosure proceedings, the Trustee successfully negotiated the sale of the real property, consisting of 7,130 acres of undeveloped land in Lassen and Plumas County, California, in which the Debtors' Estates had an interest through a junior note.  In connection with the sale, the Trustee also negotiated and obtained releases of claims that could have been asserted by third parties, including parties to a certain Amended and Restated Standstill Agreement, on account of the Trustee's sale or disposition of the Debtors' interest in the property.  Despite the pending foreclosure, the Trustee was able to swiftly negotiate a sale and settlement which generated over $850,000 in net proceeds for the Estates.

b.    <u>Lincoln Property</u>.  The Trustee obtained Bankruptcy Court approval of the sale of real property held by 2 Lincdev, LLC, an entity in which the Debtors held a majority membership interest.  The entity held title to approximately 114 acres of land, a house, barn and

other structures, located in Lincoln, California. The property was sold for $850,000 and after payment of past due property taxes, broker's commissions and related sale expenses, the Estates received approximately $470,000 in net proceeds.

        c.    <u>Turlock Property</u>. The Trustee negotiated the sale of real property held by 724 Glenwood LLC, an entity in which the Debtors held a majority membership interest, consisting of 28.2 acres of undeveloped land located in Turlock, California. The Bankruptcy Court approved the sale of the property for the sum of $420,000 and after the payment of unpaid tax liens, broker's commissions and sale expenses, the Estates received approximately $214,000 in net proceeds.

    **4.**    <u>**Compromise of the Class and Derivative Action.**</u>

The Trustee and Equity Committee settled the claims and allegations that were set forth in a certain class and derivative lawsuit ("Class and Derivative Action") that was filed by three members of the Equity Committee, individually and on behalf of a class ("Class Plaintiffs") consisting of the members of the Debtors against the Debtors' sole manager, CMRI, and its principal, David Choo (the "Defendants"). The Class and Derivative Action was pending as adversary proceeding no. 10-03107. The Class Plaintiffs sought to recover against available insurance coverage from two insurance policies under which David Choo and CMRI were the insureds.

The claims asserted in the Class and Derivative Action consisted of contract and tort claims relating to the Defendants' alleged mismanagement of the Debtors' real estate investments (and in large part asserted claims that were derivative in nature).

After nearly two years of litigation and many months of negotiations, the parties entered into a Class and Derivative Action Settlement Agreement (the "Class Settlement") that was approved by the Bankruptcy Court in December 2012 and approved by the Debtors' insurers, Indian Harbor Insurance Company ("Indian Harbor") and Certain Underwriters at Lloyd's, London ("Lloyd's"). The Settlement Agreement effectuated a global settlement which (1) resolved all claims between the Debtors and their members, on the one hand, and CMRI and David Choo, on the other hand; (2) provided initial payments to all class members; (3) provided substantial funds to the Trustee to maximize recoveries by the Debtors' Estates; and (4) allowed the Debtors' Estates and the Class

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Plaintiffs to share in future profits earned by the Defendants, should there be any. A summary of the major terms is as follows:

Settlement Fund: Indian Harbor and Lloyd's contributed a total of $4,056,862.78 directly into a Settlement Account. Indian Harbor reserved the sum of $2,115,000 (the "Reserve"), the remaining limit of liability under its policy, for covered defense costs. Any portion of the reserved amount not actually consumed by covered costs would be also be contributed.

Plan of Allocation: The Plan of Allocation provided for the distribution of the net settlement proceeds to individual class members, on account of "class claims," and to the Debtors' Estates, on account of claims deemed "derivative." Forty percent of net settlement proceeds was apportioned to the class and distributed among the Debtors' members. Sixty percent of net settlement proceeds were attributed to the Debtors' Estates for administration by the Trustee according to applicable bankruptcy priorities.

Waiver of Claims: David Choo and CMRI waived their claims against the Debtors for fees, repayment of loans, and other obligations with an asserted total value of $6,651,260, except as to an allowed administrative expense claim in favor of CMRI for postpetition advances to the Debtors in the amount of $112,546.12.

Future Payments: David Choo and CMRI were obligated to pay 10% of future profits, if any, from the development, hypothecation, rental, or sale of properties in which David Choo has an interest, over a period of ten years, up to a maximum of additional settlement payments totaling $21 million. To date, the Trustee has recovered $240,000 as a result of this provision and additional funds may be recovered. The amount of any future profit recoveries is uncertain.

Releases: The Class Plaintiffs, the Equity Committee and the Debtors' Estates released their claims against CMRI and David Choo for losses asserted in the Class and Derivative Action, including claims for intercompany receivables and those matters specified in the Settlement Agreement.

The Estates have received approximately $4,296,862 in proceeds from the Class Settlement to date and expect to receive an additional $1 million dollars from the Reserve.

**5. Compromise With Wheatland Creditors.**

The Trustee negotiated a settlement that resulted in the waiver of a potential deficiency claim asserted against the Debtors' Estates by SPI Wheatland, LP (as successor to Wells Fargo Foothill, Inc.) in the amount of $23,480,183 arising out of a loan payable by Fund II to CMR Income Fund, LLC.

**6. Relief From Stay Matters.**

Throughout the pendency of the Debtors' bankruptcy case, numerous lenders sought and obtained relief from the automatic stay to foreclose against their collateral on various grounds, including the lack of value of the collateral to the Estates.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The real property assets that were lost to foreclosure were commonly known as (i) the "Myrtle Beach Property" consisting of 200+ acres of land located in Myrtle Beach, Horry County, South Carolina (May 2012), (ii) the "Antioch Property" consisting of 50 acres of land located at 3941 Neroly Road, Antioch, California (February 2012), (iii) the "Byron Park Property" consisting of two parcels of land located in Walnut Creek, California (APNs 189-040-016 and 184-462-021 (August 2011) and (iv) 11844 Old Tunnel Road, Grass Valley, California (October 2011). An order for relief from the automatic stay had also been entered with regard to the Dyer Property but as noted above, the Trustee was subsequently able to sell that property prior to the sale and generate substantial proceeds for the Estates.

**7.      Remaining Real Property Interests.**

The Debtors continue to hold interests in real property either through loans that are secured by real property or through limited liability companies that hold title to real property, as follows:

        a.      Platinum Highway

The Debtors hold an approximate 53% membership interest in Platinum Hwy 27 Orlando, LLC, an entity which holds title to approximately 85 acres of raw land in Polk County, Florida. Other than unpaid real property taxes, this property is largely unencumbered. The property is currently under contract to be sold for $2,343,600. If the pending sale closes, the Debtors' Estates may receive approximately $1,000,000 in net proceeds.

        b.      Laurel Lakes

The Debtors hold a 39.28% membership interest in Laurel Lakes Venice, LLC due to a foreclosure of loan no. 06-032. The property owned by this entity consists of 161 acres of raw land located in Venice, Florida that was planned for multi-family residential units. The manager for Laurel Lakes Venice, LLC has accepted an offer for the purchase of the property and the sale is expected to close in the near term. If the pending sale closes, the Debtors' Estates may receive approximately $530,000 in net proceeds.

        c.      Mira Mesa

The Debtors are the sole member of 21 Mira Mesa, LLC ("Mira Mesa") an entity that holds title to approximately 15 acres of undeveloped land in San Diego, California. The real property is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

subject to two deeds of trust: (1) a first deed of trust, in the principal amount of $1,180 million dollars, which was incurred to enable Mira Mesa to complete certain entitlements to the real property; and (2) a second deed of trust in the principal amount of $6 million dollars. The Debtors do not have any interest in the first priority deed of trust but hold a 31.1% interest in the second priority deed of trust. The Trustee has obtained Bankruptcy Court approval to continue with the process to obtain entitlements for the property for the development of 540,000 square feet of Class "A" office space on the property which is expected to yield the highest return to investors and lenders alike. The Trustee understands that the property is currently worth, on an "as is" basis (without Entitlements), approximately $4 million. However, once entitled, it is estimated that the Property may be worth considerably more.

        d.    <u>Casa Grande</u>

The Debtors are the sole member of 5 Casa Grande Land, LLC, an entity which holds title to 907 acres of real property located in Casa Grande, Arizona. The real property is subject to two deeds of trust: (a) a first deed of trust, in the principal amount of $20 million dollars, of which the Debtors own an aggregate 1.5% interest; and (2) a second deed of trust in the approximate amount of $26 million dollars, of which Debtors own a 100% interest.

In July 2012, a motion for relief from the automatic stay to foreclose on the first deed of trust was filed and was opposed by the Trustee. On July 31, 2012, the Court entered a *Memorandum Re Motion for Relief From Stay Re Casa Grande Property* pursuant to which the Court required the movant to provide further evidence that it was "authorized by a contract binding upon all the holders of fractional shares of the Note to make decisions regarding foreclosure on behalf of those holders." No such further filings have been filed with the Court and as such, no order granting or denying the relief from stay motion has been entered. The Trustee does not believe that the property is currently worth more than the amounts due on the first and second deeds of trust such that the only value to the Debtors' Estates is in the first and second deeds of trust. The value of this asset to the Estates is uncertain and depends, in large part, on the value received by a future sale transaction.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# III.

## DESCRIPTION OF PLAN

A discussion of the principal provisions of the Plan as they relate to the treatment of Classes of Allowed Claims and Interests is set forth below. The discussion of the Plan that follows constitutes a summary only. You are urged to read the Plan in full in evaluating whether to accept or reject the Plan.

**A.    CLASSIFICATION OF CLAIMS AND INTERESTS**

The Plan divides Creditors into Classes. Creditors with similar Claims are placed in the same Class. There are four (4) Classes of Claims and one (1) Class of Interests under the Plan as follows:

**1.    Class 1 Claims (Priority Non-Tax Claims).**

Class 1 consists of Allowed Priority Non-Tax Claims.

**2.    Class 2 Claims (Miscellaneous Secured Claims).**

Class 2 consists of Allowed Miscellaneous Secured Claims.

**3.    Class 3 Claims (General Unsecured Claims).**

Class 3 consists of Allowed General Unsecured Claims against the Debtors.

**4.    Class 4 Claims (Convenience Claims).**

Class 4 consists of Allowed Convenience Claims against the Debtors.

**5.    Class 5 Interests in the Debtors.**

Class 5 consists of all Interests in the Debtors.

**B.    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

The treatment of Claims and Interests classified under the Plan is as follows:

**1.    Class 1 (Priority Non-Tax Claims).**

Class 1 Claims are unimpaired. Each holder of an Allowed Priority Non-Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, receive from the Liquidating Trust, in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Priority Non-Tax Claim, a Cash payment in an amount equal to the difference between: (a) such Allowed Non-Tax Claim, and (b) the amount of any Permitted

Payments made to the holder of such Claim, on the latest of: (i) the Effective Date, or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim may agree.

**2.      Class 2 (Miscellaneous Secured Claims).**

Class 2 Claims are unimpaired.  On or as soon as practicable following the Effective Date, the Liquidating Trust shall select one of the following alternative treatments for each Allowed Miscellaneous Secured Claim in Class 2, which treatment shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Miscellaneous Secured Claim:

a.      Abandonment or Surrender.  The Liquidating Trust will abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

b.      Cash Payment.  The Liquidating Trust will pay to the holder of such Claim Cash equal to the amount of such Claim, or such lesser amount to which the holder of such Claim shall agree, in full satisfaction and release of such Claim.

c.      Unimpairment.  The Liquidating Trust will leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

Any Unsecured Deficiency Claim asserted by a holder of an Allowed Miscellaneous Secured Claim in Class 2 shall be filed with the Bankruptcy Court within thirty (30) days following the date of the abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan.  Any such Allowed Unsecured Deficiency Claim shall be treated in accordance with Section 4.2 of the Plan.

**3.      Class 3 (General Unsecured Claims).**

Class 3 Claims are impaired.  On or as soon as practicable following the Effective Date, each holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the Liquidating Trust Interests to be distributed to all holders of Allowed Claims in Class 3.  Such distribution shall be the sole and exclusive dividend to holders of Allowed General Unsecured Claims.  Under the Plan, holders of Allowed General Unsecured Claims shall receive certain distributions before Professional Fees are paid in full.  The Liquidating Trust shall distribute

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

$300,000 in the aggregate, net of amounts paid on account of Allowed Convenience Claims, to holders of Allowed General Unsecured Claims on account of their Liquidating Trust Interests before Professional Fees are paid in full, consistent with the Plan. Additional funds may become available for the benefit of holders of General Unsecured Claims after Professional Fees are paid in full.

### 4. Class 4 (Convenience Claims).

Class 4 Claims are impaired. Holders of Convenience Claims are entitled to vote on the Plan. On or as soon as practicable following the Effective Date, each holder of an Allowed Convenience Claim in Class 4 shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, receive from the Liquidating Trust, in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Convenience Claim, a Cash payment in an amount equal to 25% of the Allowed amount of such Claim, *plus* to the extent any funds remain after payment of Allowed General Unsecured Claims in full, a Pro Rata Share of such excess funds to be distributed to all holders of Allowed Class 4 Claims.

### 5. Class 5 (Interests in the Debtors).

Class 5 Interests are impaired. Upon the Effective Date, all remaining interests in the Debtors shall be extinguished, provided, however, that in the event the holders of allowed Class 3 Claims and Class 4 Claims are paid in full, each holder of an Interest shall thereafter receive a Pro Rata Share of the Liquidating Trust Interests to be distributed to all holders of Interests.

## C. TREATMENT OF UNCLASSIFIED CLAIMS

Certain Claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan. The treatment of unclassified Claims under the Plan is as follows:

### 1. Administrative Claims.

Each Allowed Administrative Claim (except for Professional Fees, which shall be treated as set forth in Section 2.4 of the Plan) shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by the Liquidating Trust on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim

DOCS_SF:84509.8 49666/0001
DISCLOSURE STATEMENT IN SUPPORT OF
CHAPTER 11 TRUSTEE'S AND COMMITTEE'S PLAN
18

is Allowed, or as soon thereafter as practicable; (d) such date as the holder of such Claim may agree; and (e) the date such Claim is otherwise due according to its terms.   All requests for payment of Administrative Claims (except with respect to Professional Fees, which instead shall be subject to the Professional Fees Bar Date) must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Estates, the Liquidating Trust and/or the Estates Assets, and/or from sharing in any distribution under the Plan.

### 2.    Priority Tax Claims.

Each Allowed Priority Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by the Liquidating Trust, on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; (d) such date as the holder of such Claim may agree; and (e) the date such Claim is otherwise due according to its terms.

### 3.    Claims for Professional Fees.

Each Professional seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Professional Fees Bar Date.  If the Bankruptcy Court grants such an award, each such Person will be paid by the Liquidating Trust: (a) as an interim distribution as soon as practicable following the first day after such order has been entered by the Bankruptcy Court and is not stayed, to the extent not previously paid by the Trustee or the Debtors (inclusive of any retainers), forty-five percent (45%) of the Professional Fees allowed by the Bankruptcy Court; and (b) thereafter, if and when additional funds are available after no more than $800,000 in the aggregate is reserved or utilized for the expenses of the Liquidating Trust and no more than $300,000 in the aggregate is distributed to holders of General Unsecured Claims and Convenience Claims, a Pro Rata Share of such additional funds calculated by dividing each Professional's remaining unpaid allowed Professional Fees by the aggregate remaining unpaid allowed Professional Fees of all Professionals.  Each of the Professionals has

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

agreed, or shall be deemed to have agreed, to the foregoing treatment absent the filing of an objection to Confirmation of the Plan. In the event that any objection is filed and sustained by the Bankruptcy Court, the Trustee reserves the right to withdraw the Plan.

All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order.

The Debtors, Trustee and Equity Committee have employed various Professionals throughout the pendency of the Debtors' cases. The Professionals, with the exception of Binder & Malter LLP, have already obtained Bankruptcy Court approval of their interim or final fee applications.

Following the Trustee's appointment, various Professionals of the Debtors entered into a series of stipulations to subordinate their unpaid fees and expenses to the fees and expenses of the Trustee and his Professionals, ultimately up to the aggregate amount of $1,150,000.

The outstanding fees due to these professionals as of the date of the filing of the Plan are noted in the below chart:

| Professional | Interim or Final Application | Amount Approved But Unpaid: |
|---|---|---|
| LECG (financial consultants to Equity Committee) | Final | $446,828.63 |
| Lee Law Offices (counsel to the Debtors) | Final | $50,938.80 |
| Macdonald Fernandez LLP (counsel to Fund III) | Final | $79,047.63 |
| Stein & Lubin LLP (special corporate and regulatory counsel to the Debtors) | Final | $146,000.49 |
| Jeffery D. Trowbridge (special litigation counsel to the Debtors) | Final | $51,602.14 |
| Wendel Rosen Black & Dean LLP (counsel to Fund I) | Final | $634,112.25 |
| Binder & Malter LLP (general reorganization counsel to Fund II) | N/A[1] | $450,000 (estimated) |

---

[1] Binder and Malter has provided an estimate to the Trustee of the fees that such firm has incurred during the pendency of the Debtors' cases. The firm has not yet applied for Bankruptcy Court approval of its fees.

DOCS_SF:84509.8 49666/0001

DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 TRUSTEE'S AND COMMITTEE'S PLAN

20

| | | |
|---|---|---|
| Richard M Kipperman (Trustee) | Interim | $53,038.96 |
| Berkeley Research Group (accountants and financial advisors to Trustee) | Interim | $58,277.68 |
| Corporate Management Inc. (accountants and financial advisor to Trustee) | Interim | $108,563.86 |
| McNutt Law Group LLP (counsel to the Equity Committee) | Interim | $800,244.49 |
| Navigant Consulting (Financial Advisors to the Equity Committee)[2] | Interim | $29,940.62 |
| PSZJ (Counsel to the Trustee) | Interim | $182,260.22 |
| TOTAL: | | $3,040,896.81 |

IV.

**IMPLEMENTATION OF THE PLAN**

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in the Plan regarding means of execution, the following shall constitute the principal means for implementation of the Plan.

A. **LIQUIDATING TRUST FOR THE ESTATES**

On the Effective Date, the Trustee, on behalf of the Estates, shall take any and all actions as may be necessary or appropriate to establish the Liquidating Trust and to transfer the Estate Assets of the Estates to the Liquidating Trust, which shall thereupon constitute the Liquidating Trust Assets. The Liquidating Trust is organized and established as a trust for the benefit of the beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation 301.7701-4(d). In accordance with Treasury Regulation 301.7701-4(d), the sole beneficiaries of the Liquidating Trust shall be the holders of Allowed General Unsecured Claims in Class 3 under the Plan, until such Claims are paid in full. In the event Allowed General Unsecured Claims (and Allowed Convenience Claims in Class 4) are paid in full, holders of Interests in Class 5 under the Plan shall become the beneficiaries of the Liquidating Trust. For federal income tax purposes, the transfer of the assets to the Liquidating Trust will be treated by the Estates as a sale or other disposition of assets. The Debtors are treated as partnerships for

---

[2] Navigant was employed as financial advisors to the Equity Committee to replace LECG, LLC effective April 25, 2011.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 08-32220    Doc# 1375-1    Filed: 02/26/14    Entered: 02/26/14 16:20:06    Page 26 of 47

federal income tax reporting purposes. Therefore, the transfer of assets to the Liquidating Trust will not result in a direct income tax liability to the Debtors. Alternatively, each interest holder's distributive share of taxable gain or loss resulting from the transfer of assets to the Liquidating Trust will be reported to him/her through the final income tax returns of the Debtors. Each interest holder may utilize existing net operating losses and other available tax attributes to offset as much income or gain as possible and will pay any remaining tax liability, after considering any other tax consequences associated with termination of his/her interest in the Debtors. For federal income tax purposes, the beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and deemed to be the owners of the assets of the Liquidating Trust, and the transfer of the Estate Assets to the Liquidating Trust shall be deemed a transfer to such beneficiaries by the Trustee, on behalf of the Estates, followed by a deemed transfer by such beneficiaries to the Liquidating Trust. The Trustee, on behalf of the Estates, the beneficiaries of the Liquidating Trust and the Liquidating Trust will consistently report the valuation of the assets transferred to the Liquidating Trust. Such consistent valuations will be used for all federal income tax purposes. Income, deductions, gain or loss from the Liquidating Trust shall be reported to the beneficiaries of the Liquidating Trust in conjunction with the filing of the Liquidating Trust's income tax returns. Each beneficiary shall report income, deductions, gain or loss on his/her respective income tax returns.

**B.**    **PURPOSE OF LIQUIDATING TRUST**

The Liquidating Trust shall be established for the purpose of: (a) addressing the Claims of holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Allowed Convenience Claims to the extent contemplated by the Plan; and (b) liquidating and distributing the Liquidating Trust Assets for the benefit of holders of Allowed General Unsecured Claims in Class 3 under the Plan, subject to the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of the Estates for any purpose other than as specifically set forth herein. For the avoidance of doubt, the Liquidating Trust's obligations to holders of Allowed Administrative

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Allowed Convenience Claims under the Plan shall be contractual in nature and limited to the express requirements set forth in the Plan. The Liquidating Trust shall owe no fiduciary duty to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Allowed Convenience Claims against the Estates.

**C.** **LIQUIDATING TRUSTEE**

    **1.** **Generally.**

The initial Liquidating Trustee shall be Richard M Kipperman. Any successor Liquidating Trustee shall be appointed pursuant to the Liquidating Trust Agreement and subject to the approval of the Bankruptcy Court. The Liquidating Trustee shall be deemed to have been appointed as the representative of the Estates by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Estate Assets, specifically including the Liquidating Trust Cash and the Liquidating Trust Retained Claims and/or Defenses. On the Effective Date, the Liquidating Trustee shall be the sole authorized representative and signatory of the Liquidating Trust, with authority to render any and all services necessary to effectuate the terms of the Plan. The powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by the Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

    **2.** **Responsibilities and Authority of Liquidating Trustee.**

The responsibilities and authority of the Liquidating Trustee shall include (a) calculating and implementing all distributions from the Liquidating Trust in accordance with the Plan; (b) investigating or pursuing any lawsuit or other legal or equitable action that constitutes a Liquidating Trust Retained Claim and/or Defense, in any court of competent jurisdiction; (c) filing all required tax returns and paying taxes and all other obligations on behalf of the Liquidating Trust from funds held by the Liquidating Trust; (d) periodic reporting to the beneficiaries of the

Liquidating Trust; (e) liquidating the assets of the Liquidating Trust and providing for the distribution of the net proceeds thereof in accordance with the provisions of the Plan; (f) retaining and paying at normal and customary rates, or on a contingency fee basis, professionals in connection with the Liquidating Trustee's duties; (g) reconciling and, if appropriate, objecting to Claims that may be asserted against the Estates; and (h) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement or the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan.

**3.     Powers of Liquidating Trustee.**

As set forth in the Plan and the Liquidating Trust Agreement, the powers of the Liquidating Trustee to administer the Liquidating Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia*, (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and professionals to assist the Liquidating Trustee with respect to his or her responsibilities, (c) the power to prosecute, compromise and settle the Liquidating Trust Retained Claims and/or Defenses on behalf of or against the Liquidating Trust, and (d) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.  As set forth in the Plan and the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any and all Liquidating Trust Retained Claims and/or Defenses, as he or she determines is in the best interests of the beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his/her decision, other than those decisions constituting gross negligence or willful misconduct.  The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating and converting the assets in the Liquidating Trust to Cash.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## 4. Compensation of Liquidating Trustee and Professionals.

The Liquidating Trustee shall serve on (i) the terms, conditions and rights set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement, or (ii) such terms, conditions and rights as otherwise agreed to by the Liquidating Trustee. The compensation for the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court. The Liquidating Trustee shall not be required to file a fee application to receive compensation. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents in the discretion of the Liquidating Trustee to assist and advise the Liquidating Trustee in the performance of his/her duties and compensate such professionals from the assets of the Liquidating Trust, subject to the oversight of the Liquidating Trust Committee. Any professionals retained by the Liquidating Trustee shall not be required to file a fee application to receive compensation.

## 5. Limitations on Liquidating Trustee.

The Liquidating Trustee shall not at any time: (a) enter into or engage in any trade or business (other than the management and disposition of the Liquidating Trust Assets), and no part of the Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (b) except as provided below, reinvest any Liquidating Trust Assets.

The Liquidating Trustee may (but shall not be required to) obtain an order of the Bankruptcy Court concerning any matter involving any sale or other disposition of an asset of the Liquidating Trust, or any release, modification or waiver of existing rights as to an asset of the Liquidating Trust.

The Liquidating Trustee shall not reserve or utilize more than $800,000 in the aggregate for the expenses of the Liquidating Trust until all Professional Fee Claims allowed by the Bankruptcy Court have been paid in full.

Other than as provided in the Plan, the Liquidating Trustee is not empowered to incur indebtedness.

The Liquidating Trustee may only invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement, the Bankruptcy Code or any order of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Bankruptcy Court modifying such requirements and, provided that the Liquidating Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any funds of the Liquidating Trust.

The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Plan and the Liquidating Trust Agreement, and pay and distribute amounts as set forth herein for the purposes set forth in the Plan and the Liquidating Trust Agreement. Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

**D.    VESTING OF ESTATE ASSETS**

Upon the Effective Date, the Liquidating Trust shall be vested with all right, title and interest in the Estate Assets of the Estates, including the Liquidating Trust Cash, and the Liquidating Trust Retained Claims and/or Defenses, and such property shall become the property of the Liquidating Trust free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as set forth in the Plan. Further, as of the Effective Date, the Liquidating Trust shall retain any stock or interests that the Debtors may hold in their affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests. After the Effective Date, the Liquidating Trust may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

**E.    LIQUIDATING TRUST RETAINED CLAIMS AND/OR DEFENSES**

Unless any Liquidating Trust Retained Claim and/or Defense is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Trustee and the Liquidating Trust expressly reserve such Liquidating Trust Retained Claim and/or Defense for later adjudication by the Liquidating Trust. The reservation set forth in Section 5.5 of the Plan shall include, without limitation, a reservation by the Trustee and the Liquidating Trust of any Liquidating Trust Retained Claims and/or Defenses not specifically identified in the Plan or Disclosure Statement, or of which the Trustee or the Liquidating Trust may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Trustee and/or the Liquidating Trust at this time

or facts or circumstances that may change or be different from those the Trustee and/or the Liquidating Trust now believe to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Liquidating Trust Retained Claims and/or Defenses upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order. Following the Effective Date, the Liquidating Trust may assert, compromise or dispose of the Liquidating Trust Retained Claims and/or Defenses without further notice to Creditors or authorization of the Bankruptcy Court.

**F.      DISSOLUTION OF THE DEBTORS**

On the Effective Date, the Debtors shall be dissolved without need for further action by the Trustee, the Liquidating Trust, or any other Person.

**G.      DISSOLUTION OF THE EQUITY COMMITTEE**

On the Effective Date, the Equity Committee shall be dissolved and the members of the Equity Committee shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Chapter 11 Cases, except that the Equity Committee shall continue in existence and have standing and capacity to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Equity Committee or its Professionals.

**H.      DISCHARGE OF TRUSTEE**

On the Effective Date, the Trustee shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Debtors or the Chapter 11 Cases, except that the Trustee shall continue to have standing and capacity to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Trustee or his Professionals.

Left margin: PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  **I.      FINAL DECREE**

2        At any time following the Effective Date, the Liquidating Trust shall be authorized to file a

3  motion for the entry of a final decree closing such Chapter 11 Cases pursuant to Section 350 of the

4  Bankruptcy Code.

5                                    **V.**

6              **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7  **A.      REJECTION OF CONTRACTS AND LEASES**

8        Except for any executory contracts or unexpired leases of the Debtors:  (i) that previously

9  were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the

10  Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such

11  contract or lease has been filed and served prior to Confirmation; or (iii) that constitute contracts of

12  insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and

13  unexpired lease entered into by the Debtors prior to the Petition Date that has not previously

14  expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of

15  the Bankruptcy Code as of the Effective Date.  The Confirmation Order shall constitute an order of

16  the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code,

17  as of the Effective Date.  For the avoidance of doubt, any insurance policy acquired for the benefit

18  of the Debtors (or any representatives thereof or successors thereto) before or after the Petition

19  Date shall remain in full force and effect after the Effective Date according to its terms.

20  **B.      BAR DATE FOR REJECTION DAMAGES**

21        If the rejection of an executory contract or unexpired lease pursuant to the Plan or

22  otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim

23  shall be forever barred and shall not be enforceable against the Estates, the Liquidating Trust

24  unless a proof of Claim is filed with the Bankruptcy Court by the Rejection Claim Bar Date.

25

26

27

28

# VI.

## EFFECTS OF CONFIRMATION

**A.  BINDING EFFECT**

The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against, and Interests in the Estates, the Liquidating Trust, including any interest accrued on such Claims from and after the Petition Date or interest which would have accrued but for the commencement of the Chapter 11 Cases.  Confirmation of the Plan shall bind and govern the acts of the Estates, the Liquidating Trust, and all holders of all Claims against, and Interests in the Debtors, whether or not: (i) a proof of Claim or proof of Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or Interest has accepted the Plan.

**B.  PROPERTY REVESTS FREE AND CLEAR**

As set forth in Sections 5.4 of the Plan, upon the Effective Date, title to all remaining Estate Assets shall vest in the Liquidating Trust for the purposes contemplated under the Plan and shall no longer constitute property of the respective Estates.  Except as otherwise provided in the Plan, upon the Effective Date, all Estate Assets shall be free and clear of all Claims and Interests, including Liens, charges or other encumbrances of Creditors of the respective Debtors.

**C.  PERMANENT INJUNCTION**

Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Persons that have held, currently hold or may hold a Claim, Interest or other debt or liability that is stayed, impaired or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Trustee, the Liquidating Trust, the Liquidating Trustee, or their property on account of all or such portion of any such Claims, Interests, debts or liabilities that are stayed, impaired or terminated:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

against any debt, liability or obligation due; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan. To avoid any doubt, nothing in the Plan shall be construed or is intended to affect, enjoin, modify, release or waive any claims, rights, and actions that a third party or creditor may have against anyone other than the Debtors, the Trustee, the Liquidating Trust, the Liquidating Trustee, or their property. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to Sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, except as provided in the Plan or in the Confirmation Order, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, (a) seeking to hold (i) the Debtors, the Trustee, the Liquidating Trust, or the Liquidating Trustee, or (ii) the property of the Debtors, the Trustee, the Liquidating Trust, or the Liquidating Trustee liable for any Claim, obligation, right, interest, debt or liability that has been addressed or released pursuant the Plan.

## D. <u>EXONERATION AND RELIANCE</u>

The Trustee, the Liquidating Trust, the Liquidating Trustee, the Equity Committee and each of their respective Agents, shall not be liable, other than for gross negligence or willful misconduct, to any holder of a Claim or Interest or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with the Chapter 11 Cases or the negotiation, formulation, development, proposal, disclosure, Confirmation or implementation of the Plan. The Trustee, the Liquidating Trust, the Liquidating Trustee, the Equity Committee, and each of their respective Agents may reasonably rely upon the opinions of their respective counsel, accountants, and other experts and professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of gross negligence or willful misconduct; *provided, however*, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination or finding of bad faith, gross negligence or willful misconduct. For the avoidance of doubt, nothing in Section 9.4 of the Plan shall be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

construed as an exoneration or release of any claims that relate to conduct or actions taken prior to the Petition Date.

## VII.

## **KEY PLAN PROVISIONS**

The Plan sets forth the procedures and guidelines governing the implementation and administration of the Plan, including creation of the Liquidating Trust and the duties and obligations of the Liquidating Trustee from and after the Effective Date. Generally speaking, the Liquidating Trustee will administer the Liquidating Trust and liquidate the Liquidating Trust Assets, evaluate and (if appropriate) pursue Liquidating Trust Retained Claims and/or Defenses, review and object to Claims as appropriate, make distributions to Creditors to the extent of available funds as contemplated by the Plan, and eventually close the cases by obtaining an order of final decree. The Liquidating Trustee shall generally prosecute objections to claims pending as of the Effective Date and shall generally prosecute any additional objections filed from and after the Effective Date.

Under the Plan, the Liquidating Trustee will have considerable discretion, without need for further approval of the Bankruptcy Court or notice to Creditors, to administer the Liquidating Trust to make distributions to Creditors consistent with the Plan, to retain and compensate professionals, and to pursue or resolve litigation claims or objections to Creditor claims.

### A. **SOURCE OF PLAN FUNDING**

The Plan will be funded chiefly from Cash on hand in the Estates as of the Effective Date, and additional Cash proceeds expected to be received in the future. As of the date hereof, the Estates have about $793,000 in cash, of which $143,000 is held in a segregated class action account. Any administrative and priority claims allowed against the Debtors will be funded by the Estates pursuant to the terms of the Plan.

### B. **RETAINED CLAIMS AND/OR DEFENSES**

One component of the assets to be conveyed to the Liquidating Trust under the Plan are any potential litigation claims and causes of action (*i.e.*, the Liquidating Trust Retained Claims and/or Defenses). The Liquidating Trust Retained Claims and/or Defenses include, without

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

limitation, those rights of action identified in Exhibit B to the Plan, respectively. In addition, the Liquidating Trust retained Claims and/or Defenses include any and all claims, causes of action, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, held by the Debtors or their Estates, whether arising before, on or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, the term "Causes of Action and Defenses" shall include, but not be limited to: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) all claims pursuant to Section 362 of the Bankruptcy Code, (d) all Avoidance Actions, including claims under Sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any state law fraudulent transfer claims, whether or not such actions seek an affirmative recovery or are raised as a defense to, or offset against, the allowance of a Claim; and (e) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in Section 558 of the Bankruptcy Code.

The Trustee is continuing to review and analyze available information regarding the Liquidating Trust Retained Claims and/or Defenses which review has not been completed and will be continued by the Liquidating Trustee. The Trustee and the Liquidating Trustee do not intend, and it should not be assumed, that because any existing or potential Liquidating Trust Retained Claims and/or Defenses have not yet been pursued or may not be described herein or in the Plan, that any such Liquidating Trust Retained Claims and/or Defenses will not be pursued by the Liquidating Trustee or has been waived.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The potential net proceeds from the Liquidating Trust Retained Claims and/or Defenses identified herein or which may subsequently arise or be pursued are speculative and uncertain and therefore no value can be assigned to such recoveries.

## C. PRIORITY CLAIMS

There is approximately $3,115,185 in priority claims filed against the Estates. The Trustee disputes the priority claims asserted against the Estates and anticipates that such claims ultimately will be disallowed.

## D. ADMINISTRATIVE CLAIMS

The Trustee believes that all administrative expenses have either been paid or provided for in these cases. With respect to the administrative claims of the Estates' professionals, the following chart lists the fee applications that have been filed in these cases to date:

| Professional | Role | Application | |
|---|---|---|---|
| Berkeley Research Group | Accountants and Financial Advisors to the Chapter 11 Trustee | First Interim<br>Second Interim<br>Third Interim<br>Total: | $29,868.57<br>$169,617.49<br>$73,129.79<br>**$272,615.85** |
| Corporate Management Inc. | Accountants and Financial Advisors to the Chapter 11 Trustee | First Interim<br>Second Interim<br>Third Interim<br>Total: | $154,963.83<br>$198,472.81<br>$154,411.76<br>**$507,848.40** |
| LECG, LLC | Financial Consultants to the Equity Committee | First Interim<br>Second Interim and Final<br>Total: | $185,179.50<br>$627,236.20<br><br>**$812,415.70** |
| Lee Law Offices | Special Insurance Counsel for the Equity Committee | First Interim<br>Second Interim and Final<br>Total: | $34,010.00<br>$58,606.00<br><br>**$92,616.00** |
| Macdonald Fernandez LLP | Attorneys for Debtor CMR Mortgage Fund III, LLC | First and Final<br>Total: | $254,047.63<br>**$254,047.63** |
| McNutt Law Group LLP | Counsel for Official Committee of Equity Security Holders | First Interim<br>Second Interim<br>Third Interim<br>Total: | $286,286.47<br>$596,397.05<br>$572,306.47<br>**$1,454,989.99** |
| Navigant Consulting | Financial Consultants to the Equity Committee | First Interim<br>Total: | $54,437.50<br>**$54,437.50** |
| Pachulski Stang Ziehl & Jones LLP | Counsel to the Chapter 11 Trustee | First Interim<br>Second Interim<br>Third Interim<br>Total: | $337,664.39<br>$345,835.59<br>$184,091.00<br>**$867,590.98** |
| Stein & Lubin LLP | Special Counsel for CMR Mortgage Fund II, LLC and CMR Mortgage Fund III, LLC | First Interim (Fund II)<br>First Interim (Fund III)<br>Second Interim and Final<br>Total: | $57,395.24<br>$57,395.24<br>$150,664.96<br><br>**$265,455.44** |
| Law Offices of Todd B. Rothbard | Special Eviction Counsel to CMR Mortgage Fund II, LLC | First Application<br>Total: | $5,600.00<br>**$5,600.00** |
| Jeffery D. Trowbridge | Special Litigation Counsel to the Debtors | First Interim and Final<br>Total: | $93,822.08<br>**$93,822.08** |

| Professional | Role | Application | |
|---|---|---|---|
| Richard M Kipperman | Chapter 11 Trustee | First Interim<br>Second Interim<br>Third Interim<br>Total: | $20,067.64<br>$111,397.38<br>$116,644.70<br>**$248,109.72** |
| Wendel, Rosen, Black & Dean LLP | Chapter 11 Counsel to Debtor CMR Mortgage Fund, LLC | First Interim<br>Second Interim and Final<br>Total: | $536,058.25<br>$616,873.12<br>**$1,152,931.37** |
| Binder & Malter LLP | General Reorganization Counsel to Debtor CMR Mortgage Fund II, LLC | No Fee Applications Filed. | |
| | | **GRAND TOTAL:** | **$6,082,480.06** |

All of the professionals, except for Binder & Malter, LLP, have obtained orders from the Bankruptcy Court allowing their fees on an interim or final basis. With regard to any allowed but unpaid portion of their fees, all of the professionals have agreed that they will accept as an interim distributions, forty-five percent (45%) of the Professional Fees that have been (or may be approved) allowed by the Bankruptcy Court and thereafter, a Pro Rata Share of any additional funds after $800,000 in reserves are provided for the expenses of the Liquidating Trust and no more than $300,000 in the aggregate is distributed to holders of General Unsecured Claims and Convenience Claims.

Additional fees totaling approximately $800,000 are expected to be incurred by the Liquidating Trust professionals following the Effective Date of the Plan.

## VIII.

## FEASIBILITY

The Bankruptcy Court must determine that the Plan is feasible and is not likely to be followed by liquidation or further reorganization of the Debtors. To determine whether the Plan meets this requirement, the Trustee has analyzed the ability of the Estates to meet the obligations under the Plan.

Because the Plan contemplates the liquidation of the Debtors' assets without the need for any further financial reorganization and the Trustee believes that sufficient funds will exist as of the Effective Date to make all payments required to be made on such date, the Trustee believes that the Plan satisfies the feasibility requirement under the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## IX.

## RISK FACTORS

Although the Trustee believes that the Plan is confirmable, there is a risk that the Bankruptcy Court will decide not to confirm the Plan.

There are also some risks associated with the ability of the Liquidating Trustee to realize value from the Estates' remaining assets. Although holders of Professional Fee Claims will receive a recovery of 45% on account of their claims and holders of General Unsecured Claims and Convenience Claims will share in a recovery pool of $300,000, additional distributions are dependent on the value recovered from the Estates' remaining assets.

Additionally, because uncertainty exists with respect to the allowance of Claims, it is possible that the pool of Allowed Claims is ultimately determined to be substantially higher than anticipated herein, which could further dilute recoveries by holders of Allowed General Unsecured Claims. The Trustee currently anticipates that the aggregate amount of Allowed General Unsecured Claims will total in the range of $1.5 million to $2.1 million.

However, the Trustee believes each of the foregoing risks is equally present in, and significantly greater to Creditors in, the context of a case under chapter 7 of the Bankruptcy Code. Accordingly, the Trustee urges Creditors to support the Plan.

## X.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The tax consequences of the Plan will vary based on the individual circumstances of each holder of a Claim or Interest. Accordingly, each Creditor and Interest holder is strongly urged to consult with its own tax advisor regarding the federal, state, local and foreign tax consequences of the Plan.

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to the Debtors and to holders of Claims and Interests. This discussion is based on the Internal Revenue Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. Due to the complexity of certain aspects of the Plan, the lack

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims (including Claims within the same Class) and Interests, the holder's status and method of accounting (including holders within the same Class) and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are subject to significant uncertainties. No legal opinions have been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. Further, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the holders of Claims and Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the holders of Claims or Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies, regulated investment companies and foreign taxpayers). This discussion does not address the tax consequences to holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local or estate and gift taxation is addressed.

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

A. **INCOME TAX CONSEQUENCES TO CREDITORS OF THE DEBTORS**

For U.S. federal income tax law purposes, an entity can be organized as a corporation, a partnership, or a hybrid entity (otherwise known as S corporations and limited liability companies). The two primary differences between corporations and partnerships are how the entity's earnings

are taxed and whether or not the shareholder/owners are shielded from the liabilities of the entity. Generally, corporations are treated as independent tax-paying entities, unaffected by the personal characteristics of their shareholders or changes in their composition as a result of transfers of stock from old shareholders to new ones, giving rise to the potential for double taxation. Because corporations are treated independently, corporate income is taxed to a corporation as it is received or accrued, and is taxed at the shareholder level when and if the corporation distributes earnings to the shareholders or they sell their stock. Partnerships, however, are not entities subject to income tax. Instead, the partners are taxed directly on partnership income whether or not it is actually distributed to them.

Hybrid entities, on the other hand, combine the two primary differences between corporations and partnerships. As to S corporations, shareholders are shielded from entity level liability similar to that of a corporation; however, generally, the earnings of the entity are taxed at the ownership level similar to that of a partnership. As to limited liability companies ("LLCs"), member-owners are shielded from entity level liability similar to that of a corporation; however, unique to the LLC, an option exists to be taxed as a corporation or taxed as a partnership, provided that the LLC has at least two member-owners, as set forth under Treasury Regulations Section 301.7701-3.

For U.S. federal income tax purposes, an LLC with multiple member-owners can be treated as either a partnership or a corporation, including an S Corporation. An LLC must have two or more members in order for the entity to be classified as a "partnership". Absent an election to be taxed as a corporation, the IRS will generally classify a multi-member LLC as a partnership for federal tax purposes. An LLC wholly-owned by a single member may also elect to be classified and taxed as a corporation.

Generally, pass-through entities, partnerships, LLCs (taxed as a partnership), or S corporations are subject to a single layer of tax on their earnings at the ownership level (partner, member, or shareholder depending on entity type). Taxable income of pass-through entities is computed at the entity level (generally each type of entity will file a tax return showing no tax liability at the entity level); however, each owner is taxed separately on his, her, or its distributive

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

share of income, gain, loss, deduction, and/or credit, as applicable. The character of the items included in taxable income is determined at the entity level with no regard to the owners' individual characteristics. With respect to tax attributes, pass-through entities are generally not allowed to maintain certain tax attributes, such as net operating losses, given such entities are not directly taxable. These tax attributes pass-through to the owners, and usage, carryback, or carryforward of these attributes is determined at the ownership level.

The Debtors are treated as partnerships for federal income tax reporting purposes. Therefore, the transfer of assets to the Liquidating Trust will not result in a direct income tax liability to the Debtors. Alternatively, each interest holder's distributive share of taxable gain or loss resulting from the transfer of assets to the Liquidating Trust will be reported to him/her through the final income tax returns of the Debtors. Each interest holder may utilize existing net operating losses and other available tax attributes to offset as much income or gain as possible and will pay any remaining tax liability, after considering any other tax consequences associated with termination of his/her interest in the Debtors.

**B.** **IMPORTANCE OF OBTAINING PROFESSIONAL TAX ADVICE**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## XI.

## SECURITIES LAW CONSIDERATIONS

The Plan provides for the establishment of the Liquidating Trust for purposes of addressing Claims against the Estates and the issuance of beneficial interests therein (designated the Liquidating

Trust Interests under the Plan). The Liquidating Trust Interests may be deemed "securities" under applicable law.

**A.      INITIAL ISSUANCE**

Unless an exemption is available, the offer and sale of a security generally is subject to registration with the United States Securities and Exchange Commission (the "SEC") under Section 5 of the Securities Act of 1933, as amended (the "Securities Act"). The Trustee believes that Section 1145 of the Bankruptcy Code provides such an exemption, and that the Liquidating Trust Interests therefore may be issued to the holders of Allowed General Unsecured Claims in accordance with the Plan without registration under the Securities Act or any state securities law or regulation (a "Blue Sky Law").

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under the Securities Act and Blue Sky Laws if three principal requirements are satisfied:

1.      The securities are offered and sold under a plan and are securities of the debtor, of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan;

2.      The recipients of the securities hold a prepetition or administrative claim against the debtor or an interest in the debtor; and

3.      The securities are issued entirely in exchange for recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property.

The Trustee believes that the Liquidating Trust Interests will qualify as securities of a "successor to the debtor" pursuant to Section 1145(a)(1). The "successor" status of the Liquidating Trust is established by the fact that this entity, in liquidating and distributing assets of the Estates, will be functioning as a successor to the Estates pursuant to the Plan. In addition, the Liquidating Trust Interests will be issued "principally" in consideration of Allowed General Unsecured Claims for purposes of Section 1145(a)(1). Accordingly, the Trustee believes that the issuance of the Liquidating Trust Interests under the Plan will satisfy the applicable requirements of Section

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  1145(a)(1) of the Bankruptcy Code, and that such issuance will be exempt from registration under

2  the Securities Act and any applicable Blue Sky Law.

3      The Trustee believes that his reliance upon the foregoing exemptions in respect of the

4  issuance of the Liquidating Trust Interests is consistent with positions taken by the SEC with respect

5  to similar transactions and arrangements by other Chapter 11 debtors.  However, the Trustee has not

6  sought any "no-action" letter by the SEC with respect to any such matters, and therefore no

7  assurance can be given regarding the availability of any exemptions from registration with respect to

8  any securities issued pursuant to the Plan.

9  **B.    EXCHANGE ACT COMPLIANCE**

10      The Trustee does not believe that the Liquidating Trust will be subject to registration

11  requirements under Section 12(g) of the Securities Exchange Act of 1934, as amended (the

12  "Exchange Act").  The Trustee is advised that the staff of the SEC has issued no-action letters with

13  respect to the non-necessity of Exchange Act registration of a bankruptcy plan trust when the

14  following are true:

15      1.    The beneficial interests in the trust are not represented by certificates or, if they are,

16  the certificates bear a legend stating that the certificates are transferable only upon death or by

17  operation of law;

18      2.    The trust exists only to effect a liquidation and will terminate within a reasonable

19  period of time; and

20      3.    The trust will issue annual unaudited financial information to all beneficiaries.

21      Based on the foregoing, the Trustee believes that the Liquidating Trust will not be subject to

22  registration under the Exchange Act.  However, the views of the SEC on the matter have not been

23  sought by the Trustee and, therefore, no assurance can be given regarding this matter.

24  **C.    APPLICABILITY OF INVESTMENT COMPANY ACT**

25      As the assets of the Liquidating Trust will not consist of securities issued by any of the

26  Debtors or any other person, the Trustee does not believe that the Liquidating Trust falls within the

27  definition of "investment company" in any manner requiring such entity to register under the

28  Investment Company Act of 1940.

DOCS_SF:84509.8 49666/0001                                      DISCLOSURE STATEMENT IN SUPPORT OF
                                                                CHAPTER 11 TRUSTEE'S AND COMMITTEE'S PLAN

40

## XII.

## LIQUIDATION ANALYSIS

Pursuant to section 1129(a)(7) of the Bankruptcy Code, unless there is unanimous acceptance of the Plan by an impaired Class, the Trustee must demonstrate, and the Bankruptcy Court must determine that, with respect to such Class, each holder of a Claim or Interest will receive property of a value, that is not less than the amount that such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test." The Trustee submits that the Plan satisfies the Best Interests Test.

The Plan provides greater recovery to the holders of Allowed Claims than such holders would receive in a liquidation under chapter 7 for several reasons. First, the Plan avoids a layer of administrative expense and delay associated with the appointment of a chapter 7 trustee and the possible employment of new professionals unfamiliar with these Estates, while increasing the efficiency of administering the Debtors' assets for the benefit of Creditors.

Second, it is anticipated that a chapter 7 liquidation would result in delay in distributions to Creditors. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). Hence, a chapter 7 liquidation would not only delay distributions, but raise the prospect of additional Claims that were not asserted in the chapter 11 cases.

In sum, the Plan proposed by the Trustee presents a better alternative to creditors than a chapter 7 liquidation because the Plan will allow Creditors to realize more value from the Debtors' assets and to do so more efficiently than a chapter 7 trustee.

## XIII.

## CONCLUSION

The Trustee believes that the Plan is in the best interests of Creditors and urges you to vote to accept the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Dated:  _____, 2014

2

3                                                          By: _____
                                                               Richard M Kipperman
4                                                              Chapter 11 Trustee of the Estates

5

6    Respectfully submitted by,

7    PACHULSKI STANG ZIEHL & JONES LLP

8

     By: _____
9            David M. Bertenthal
             Maxim B. Litvak
10           Attorneys for Richard M Kipperman,
             Chapter 11 Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:84509.8 49666/0001

DISCLOSURE STATEMENT IN SUPPORT OF
CHAPTER 11 TRUSTEE'S AND COMMITTEE'S PLAN