**Entered on Docket**
**February 27, 2015**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA




**Signed and Filed: February 27, 2015**

THOMAS E. CARLSON U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC,<br>CMR MORTGAGE FUND III, LLC,<br><br>Debtors. | Case Nos: 08-32220 TEC<br>09-30788 TEC<br>09-30802 TEC<br><br>Substantively Consolidated<br><br>Chapter 11 |

**MEMORANDUM RE FEE APPLICATION OF CORPORATE MANAGEMENT, INC.**

On January 30, 2015, the court held a hearing regarding the Fifth Interim and Final Application of Corporate Management, Inc., as Accountants and Financial Advisor to Chapter 11 Trustee. David M. Bertenthal appeared for Corporate Management, Inc. Julie M. Glosson appeared for the United States Trustee (UST).

UST opposes the allowance of certain fees sought in the current application, and seeks the disgorgement of fees previously allowed on an interim basis, contending that Corporate Management improperly seeks to be paid for “trustee’s duties that are generally performed by a trustee without the assistance of an attorney or accountant.” See 11 U.S.C. § 328(b) and Boldt v.

United States Trustee (In re Jenkins), 130 F.3d 1335 (9th Cir. 1997).

For the reasons stated below, I determine that the services billed by Corporate Management for "case administration" are not compensable, and that it is appropriate to review fees previously allowed on an interim basis for the limited purpose of determining whether Corporate Management should be allowed to collect any additional fees on its current application. I determine that no new fees should be awarded, and that no fees previously approved should be disgorged.

**BACKGROUND**

This has been a long, complicated case. Debtor solicited funds from investors that Debtor was to use to make real estate loans. Many of those loans went into default and became worthless in the real-estate collapse that accompanied the Great Recession of 2008. Debtor became hopelessly insolvent and filed a chapter 11 petition on November 19, 2008.[1]

There are few creditors; the most important parties in interest are the equity holders who invested in the funds operated by Debtor. The official equity committee appointed by the UST filed and confirmed a chapter 11 plan which contemplated that Debtor would raise new capital and use that money to preserve Debtor's assets until the real estate market recovered. The confirmed plan never went into effect because the reorganized Debtor was unable to raise new capital.

[1] This petition was filed by CMR Fund I. Funds II and III filed on March 31, 2009. The three cases were substantively consolidated on April 7, 2011.

Case: 08-32220 Doc# 1664 Filed: 02/27/15 Entered: 02/27/15 16:00:52 Page 2 of 15

The court ordered the appointment of a chapter 11 trustee on April 7, 2011. The UST selected Richard M. Kipperman (hereinafter Trustee or Kipperman) to serve as trustee. Upon Kipperman's request, the court appointed Pachulski Stang Ziehl & Jones to serve as his attorney, Berkeley Research Group to serve as his accountant and financial advisor, and Kipperman's wholly owned company, Corporate Management, Inc. to serve as his accountant and financial advisor.

Kipperman performed ably as Trustee, deriving as much value as possible from those promissory notes in Debtor's portfolio that still had value and the properties that Debtor had foreclosed upon. He also helped to secure for the benefit of equity holders and the estate the realizable value of the insurance coverage protecting Debtor's directors and officers. That the dividend to equity holders was small was not the fault of Trustee.

The controversy at issue is not whether Trustee or Corporate Management performed ably, or even whether their services had the value claimed, but whether certain services performed by Corporate Management were routine trustee duties that can be paid only through the compensation awarded Trustee directly.

Corporate Management filed four interim fee applications, the first of which was filed almost three years ago.

| Application | Time Period | Fees and Expenses |
|---|---|---|
| First Interim | April-December 2011 | $154,964 |
| Second Interim | January-October 2012 | $198,473 |
| Third Interim | November 2012-June 2013 | $154,412 |
| Fourth Interim | July 2013-February 2014 | $126,201 |
| TOTAL | | $634,050 |

Neither the UST nor any other party in interest filed any opposition to any of these fee applications, and each was allowed on an interim basis. The court entered the order approving the fourth interim application ten months ago. Trustee has paid the Corporate Management the full amount awarded in each of the interim applications.

On September 5, 2014, Corporate Management filed the Fifth Interim and Final Application that is now before the court. The UST filed timely opposition, contending that the fee application did not describe the services performed with sufficient particularity to enable the court to determine whether those services were necessary and whether the cost of those services was reasonable. The hearing was continued to permit Corporate Management to file a more detailed description of the services performed.

After Corporate Management filed more detailed time records, UST filed a supplemental opposition contending that Corporate Management had been improperly billing the estate for "trustee's duties that are generally performed by a trustee without the assistance of an ... accountant for the estate." 11 U.S.C. § 328(b). Specifically, UST objects to the time spent by Teri Ferguson under three billing categories: "case administration," "claims administration," and "financial reports." Supplement To United States Trustee's Objection To Final Fee Application Of Corporate Management, Inc. (Dkt. No. 1648 at 3-4).

UST also objects to $29,063 fees sought for air travel time that UST argues is not compensable under this court's fee guidelines. Those guidelines provide that air travel time is

compensable only to the extent work is performed during the travel. UST argues that Corporate Management's time records do not show that actual work was performed during the air travel in question.

The UST objection covers services billed in the four fee applications previously approved on an interim basis, as well as services billed for the current application period. The fees that UST contends are non-compensable total $448,662, an amount well in excess of the $82,132 "new" fees and expenses sought for all billing categories in the current application. Thus, UST asks this court to order Corporate Management to disgorge more than $350,000 previously allowed on interim applications to which no objections were raised.

Corporate Management argues that it is unfair to permit UST to challenge interim fee awards to which no prior objection was raised, and that all the services performed by Ms. Ferguson required accounting expertise and were within the scope of employment approved by the court.

**DISCUSSION**

**A. Does Corporate Management Seek Compensation for Routine Trustee Duties?**

The Ninth Circuit has ruled that no one other than a trustee may receive compensation for duties that do not require expertise beyond that of an ordinary trustee and are generally performed by a trustee without the assistance of a professional. Jenkins, 130 F.3d at 1340-42. The court held that a trustee may use clerical and paraprofessional personnel in performing core trustee duties, and may seek compensation for the services performed by such personnel, so long as the compensation paid to trustee for his own

services and ancillary personnel together does not exceed the statutory cap fixed in section 326(a). Id. at 1341. This is so whether the core trustee duties are performed in the trustee's own office or by some independent person or firm. Id.

This principle is also embodied in section 328(b) of the Bankruptcy Code, which provides that a trustee may retain his or her own firm to perform legal or accounting functions, but also states:

> the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

This court perceives no reason why this rule should not apply to services performed by Trustee's wholly-owned accounting firm.

Under Jenkins and section 328(b), whether compensation may be awarded to an entity other than the trustee depends upon whether the duty performed requires expertise beyond that of an ordinary trustee. If the services in question require such expertise and are not generally performed by a trustee without the assistance of an attorney or accountant, the court may appoint a professional to perform those services, and that professional may charge for support services performed by paraprofessional and clerical staff. To the extent a court-appointed professional is performing duties that are generally performed by a trustee without the assistance of a professional, however, that professional may not recover compensation for services performed by either professional or paraprofessional staff.

> We agree with the BAP's conclusion that a trustee may receive total compensation in excess of the 326(a) limit only where the paraprofessional has been employed under § 327 *and the services performed by the paraprofessional require expertise beyond that expected of an ordinary trustee*.

Jenkins, 130 F.3d at 1341 (emphasis added).

Thus, in determining whether Corporate Management can properly receive compensation for Ms. Ferguson's services, I do not focus solely on her qualifications and whether her services were professional, paraprofessional, or clerical in nature. Instead, I focus on whether "financial filings," "claims administration," and "case administration" were properly delegated to Corporate Management because they are duties not generally performed by a trustee without the assistance of an accountant. Stated differently, Corporate Management can be compensated for time spent by clerical, paraprofessional, and professional personnel, if but only if, that time is spent in furtherance of work that requires the skills of an accountant.

Trustee argues that each of the three categories in question is within the description of services that the court authorized Corporate Management to perform:

> (a) analyzing financial and accounting matters involving the Debtors;
> (b) completing chapter 11 operating and interim reports in compliance with U.S. Trustee guidelines;
> (c) assisting in the identification and recovery of assets, including causes of action;
> (d) assisting in the pursuit of any litigation, including providing any expert witness testimony that may be necessary;
> (e) performing any necessary financial analysis which is required to properly administer the estates and conclude the cases;
> (f) assisting in the preparation of documents necessary to submit to a CPA for the subsequent preparation of federal and state income tax returns for the estates;

(g) communicating with taxing authorities on behalf of the estate;
(h) assisting with any liquidation of the Debtors' remaining assets;
(i) assisting with such other accounting services request by the Trustee;
(j) assisting with the preparation and consummation of a chapter 11 plan; and
(k) assisting with regard to the validity of any claims or equity interests that were filed in the Debtors' bankruptcy case.

Chapter 11 Trustee's Application for Order Employing Corporate Management, Inc. as Accountants and Financial Advisors, p. 2-3. (Dkt. No. 811).

Trustee offers the following explanation of why the services performed by Ms. Ferguson in the three categories in question required expertise beyond that expected of an ordinary trustee.

The Debtors also had over 1,900 member accounts valued at over $186 million for the approximate 2,400 investors in the Debtors' equity interests. Many of these member accounts overlapped amongst the Debtors with multiple investors having interest in two or even all three of the Debtors. During the pendency of the Debtors' case, certain investors passed away, transferred their interests or sought to abandon or dispose of their interests in order to realize tax losses on their investments. Each of the members' accounts had to be updated on a continual basis for accounting and distribution purposes. It would have been very difficult, if not impossible, for me as Trustee to analyze, manage and document all of the investor accounts, real property holdings, and other assets, without the expertise of outside professionals.

Ms. Ferguson was the person changed with the task of handling the bulk of the foregoing matters, including addressing issues relating to the vast number of investor accounts and numerous real property issues. Her 25 years of experience in residential and commercial property management, loan portfolio management, construction administration and financing, and entitlement work made her the natural choice to spearhead the work for which Corporate Management was employed. Over the last three and one-half years, Ms. Ferguson made several trips to San Francisco to interview the Debtors' employees and investigate the company's books and records. She managed issues relating to the Debtors' numerous real property holdings and loan portfolios, the process of procuring and disseminating tax information to hundreds of

> investors, and maintaining over 1,900 investor accounts. Also, because of her firm grasp of and familiarity with the investor accounts, Ms. Ferguson was tasked with the job of analyzing and managing distributions to the hundreds of beneficiaries under the class action settlement approved by this Court. Her significant experience with construction and entitlements also landed her with the task of managing the entitlement process for the estate's interests in certain real property located in San Diego that had been mired in development and financing issues since the inception of the Debtors' cases. With her assistance, the Court approved a settlement relating to that property and the entitlement process is currently under way. Ms. Ferguson, who bills at an hourly rate of only $200, has successfully performed the tasks for which Corporate Management was employed in an efficient and cost-effective manner and provided professional services that I could not have performed as Trustee.
>
> . . .
>
> Here, in stark contrast to *Jenkins* and as reflected in the additional detailed time entries submitted herewith, Corporate Management provided highly technical professional services in an extremely complicated case that involved, among other things: (a) the liquidation of real estate holdings worth tens of millions of dollars, (b) the reconciliation of numerous real and personal property interests, (c) the prosecution and subsequent settlement of a large class and derivative action lawsuit, and (d) the administration of nearly 2,400 direct and indirect investors in the Debtors and related assets. Thus, due to the size and nature of the Debtors' case and based on my experience in other cases of this type, I could not have been expected to effectively manage all of the aforementioned tasks without the assistance and guidance of Corporate Management's seasoned professionals. It is for this reason that Corporate Management was retained and approved by this Court in the first place.

Supplemental Declaration of Richard Kipperman at 6-7 (Dkt. No. 1640).

<u>Financial Filings</u>. I have read each of the time entries under this billing category in each of the five interim applications. I agree with Trustee that the services in question were related to the filing of operating reports and the preparation of government-required financial reports, that the preparation of such reports in a case of this complexity is true accounting work that requires

Case: 08-32220 Doc# 1664 Filed: 02/27/15 Entered: 02/27/15 16:00:52 Page 9 of 15

skills beyond those expected of an ordinary trustee, that the services performed were necessary, and that the amounts billed for those services was reasonable. Accordingly, the objection of UST is overruled.

Claims Administration. This category requires a bit more discussion, because the review of claims is normally a core trustee function performed without professional assistance. In this case, however, claims administration involved tax accounting. Investors needed information about their claims for their own tax reporting. I have read each of the time entries under this billing category in each of the five interim applications. I agree with Trustee that the services in question were related to the calculation of shares and tax treatment, that in a case of this complexity this was true accounting work that required expertise beyond that expected of an ordinary trustee, that the services performed were necessary, and that the amounts billed for those services was reasonable. Accordingly, the objection of UST is overruled.

Case management. I find that $113,180 of the $117,180 services billed by Ms. Ferguson under the category "case administration" constituted routine trustee duties within the meaning of Jenkins and section 328(b).[2] In making this finding, I note and rely upon the following considerations.

First, I have read every time entry in the "case administration" billing category in each of the five fee

[2] I find that 20 hours billed as "case administration" in the First Interim Application constituted the preparation of operating reports, which in the particular facts of this case required expertise beyond that of an ordinary trustee and was therefore compensable.

Case: 08-32220 Doc# 1664 Filed: 02/27/15 Entered: 02/27/15 16:00:52 Page 10 of 15

applications submitted by Corporate Management. The activity described in those time entries consists largely of routine communications with creditors and interest holders. I find no evidence that those communications concerned specialized accounting information, or that the method of communication required skills beyond those normally exercised by a trustee. I note that Corporate Management billed separately for those communications with interest holders that were closely related to functions that required accounting expertise – many of the time entries under the billing categories “financial filings” and “claims administration” also describe communications with interest holders. As explained above, I accept that those communications involved issues requiring the expertise of an accountant, and should be considered part of the accounting services properly performed by Corporate Management. Accordingly, I have overruled the United States Trustee’s objection to all services that Corporate Management itself linked to “claims administration” or “financial filings.” I note further that Kipperman’s above-quoted explanation of the expert nature of Ms. Ferguson’s services, while persuasive with respect to the fees claimed for “financial filings” and “claims administration,” does not show that the work described as “case administration” required accounting skills or other expertise beyond that expected of an ordinary trustee.

Second, the following facts regarding the compensation awarded Trustee suggest that this court should examine closely whether Corporate Management performed routine trustee duties.

(a) The fee applications submitted by the Trustee himself seek no compensation for time spent by clerical or paraprofessional

personnel performing routine trustee duties.[3] While this does not by itself prove that Trustee billed his wholly-owned firm for routine trustee duties performed by clerical and paraprofessional personnel, it is certainly consistent with such a practice.

(b) Trustee received compensation well in excess of that justified by the time he himself spent on the case. Trustee was awarded $429,000, the maximum amount permissible under section 326(a). That amount exceeds by $144,000 the Trustee's hourly rate times the number of hours he worked on the case ($500 x 570 hours = $285,000). It is hardly inappropriate to require Trustee to look to the award he received as trustee as compensation for the $113,180 worth of routine trustee services performed by his wholly-owned company.[4]

**B. Should the Court Re-Examine Fees Previously Approved on an Interim Basis?**

The approval of fees on an interim basis in a bankruptcy case does not create any vested right to the amount awarded, and a

---

[3] The Third Interim Application states that Maggie Lind performed 28 hours of services, but does not apply any hourly rate to that work. The relevant point is that one would expect that a trustee working 570 hours on a case would require more than 28 hours of support services from lesser-paid personnel.

[4] That the trustee's compensation is called a "commission" based on the section 326(a) cap does not mean it is inappropriate to consider the number of hours worked and the service provider's hourly rate. The court is expressly directed to consider such factors in calculating the compensation of a chapter 11 trustee. 11 U.S.C. § 330(a)(3); Mohns v. Lanser, 522 B.R. 594, 599 fn.1 (E.D. Wis. 2015). More important, even if Trustee was entitled to the maximum commission without consideration of hours worked, the trustee is still required to look to that commission as the only source of compensation for the performance of routine trustee duties generally performed without the assistance of an accountant or attorney. 11 U.S.C. § 328(b); Boldt v. United States Trustee (In re Jenkins), 130 F.3d 1335, 1341-42 (9th Cir. 1997).

Case: 08-32220 Doc# 1664 Filed: 02/27/15 Entered: 02/27/15 16:00:52 Page 12 of 15

bankruptcy court may in its discretion re-examine fees previously allowed on an interim basis and make a final fee award of a lesser amount, without making any finding of misconduct. Leichty v. Neary (In re Strand), 375 F.3d 854, 858 (9th Cir. 2004).

In exercising the discretion contemplated in Strand, I first take note of the circumstances in which the interim allowances were approved: how many interim applications there were, how long ago they were approved, how much was allowed for case administration, and whether any objections were raised.

| Interim Application | Allowed for "Case Administration" | Date of Application | Months Before Final Application |
|---|---|---|---|
| First | $14,540 | May 2012 | 28 months |
| Second | $45,120 | January 2013 | 20 months |
| Third | $25,840 | August 2013 | 13 months |
| Fourth | $23,340 | March 2014 | 6 months |

The combined amount of fees for case administration approved on an interim basis was $108,840. I determine that only $4,000 of this amount was compensable. The fifth interim application seeks total fees and expenses of $82,132, of which only $8,340 is for case administration services.

Several factors weigh against re-examination of these interim fee awards. First, neither UST nor any creditor or interest holder objected to final approval of any of fees sought in the interim applications. Second, a substantial amount of time has passed since the earlier of those interim applications were approved. This exacerbates the difficulty of responding to objections raised for the first time in response to a final fee application – applicant had no opportunity to note the objections and preserve

evidence, or to change its conduct in response to those objections. Third, only the UST has objected to final approval of the fees sought by Corporate Management. Fourth, there is no evidence of misconduct by applicant, or of changed circumstances making the interim awards improvident.

Other factors, however, weigh in favor of re-examination of at least some of the fees previously awarded on an interim basis. First, the fifth interim application covering the last time period involves only a small portion (7%) of the total fees sought by Corporate Management for case administration, so that limiting review to only the “new” fees sought in the final application would preclude review of almost all of the fees sought for those services. Second, Corporate Management is wholly owned by Trustee, Trustee received the maximum permissible compensation, and that compensation exceeded the amount justified by the hours worked by Trustee and his staff by more than the entire amount previously awarded Corporate Management for case administration. Thus, this is not a case in which Corporate Management should be permitted to recover for routine trustee work on the basis that Trustee underbilled the estate in his own application for fees and there was unused cap space.

Weighing these competing factors, I determine that the appropriate exercise of discretion is to re-examine the fees previously allowed on an interim basis for case administration up to the total amount of fees and expenses sought in the final application. That is, I will reconsider the interim allowances in determining whether Corporate Management is currently owed any “new” fees, but will not order the disgorgement of any “old” fees.

Case: 08-32220 Doc# 1664 Filed: 02/27/15 Entered: 02/27/15 16:00:52 Page 14 of 15

This approach achieves the following balance: (a) it permits challenge to a meaningful amount of improper charges for case administration; (b) it protects a significant amount of “old” fees against the increased difficulty the applicant faces in carrying its burden of proof as time passes; (c) it requires Trustee to look to the more-than-ample fee he was awarded as trustee as compensation for the performance of routine trustee duties; (d) it does not require Corporate Management to disgorge any funds previously received; and (e) it gives the U.S. Trustee incentive to monitor interim applications more diligently.

Because the amount previously awarded to Corporate Management for non-compensable case administration ($104,840) exceeds the total fees and expenses sought by Corporate Management in its final application ($82,132), I will not allow any of the “new” fees and expenses sought in that final application[5].

****END OF MEMORANDUM****

[5] I do not reach the question whether the travel time claimed by Corporate Management was compensable, because the interim awards for case administration already set aside exceed the amount sought in the final application, because I determine it would be inappropriate to require disgorgement of fees already paid, and because disallowance of travel-time fees would only increase the amount to be disgorged.

Case: 08-32220 Doc# 1664 Filed: 02/27/15 Entered: 02/27/15 16:00:52 Page 15 of 15